Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
butlert@whiteandwilliams.com

*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

**MEMORANDUM OF LAW OF DEFENDANT MIHIR BHANSALI IN
SUPPORT OF HIS MOTION TO DISMISS THE ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................... 2

II.    ALLEGATIONS IN THE COMPLAINT ............................................................... 5

  A.    General Allegations ........................................................................................... 5

  B.    Specific Allegations Against Bhansali.............................................................. 7

  C.    Allegations of Modi's Alleged Dominance ...................................................... 8

  D.    Allegations Not Made ....................................................................................... 9

III.    LEGAL STANDARD ............................................................................................ 9

  A.    Standard for Motion to Dismiss ....................................................................... 9

  B.    Choice of Law for Statute of Limitations ....................................................... 10

  C.    Choice of Law for Pleading Sufficiency ........................................................ 11

IV.    ARGUMENT ........................................................................................................ 12

  A.    The Trustee Lacks Standing to Assert Most of the Claims in the Complaint................................. 12

  B.    The Breach of Fiduciary Duty Claim is Time Barred ..................................... 15

  C.    Without a Duty, There Can Be No Claim for Breach of Fiduciary Duty ....................................... 17

  D.    Even Assuming a Duty, the Conclusory Allegations Fail to Support Any Breach......................... 18

    1.    Without Allegations of Self-Dealing or Personal Gain by Bhansali, the Breach of Duty of Loyalty Claim Fails................................................. 19

    2.    The Complaint Fails to Allege Bhansali Breached His Duty of Care........................................ 19

    3.    If this Court Finds Fraud is Essential to the Breach of Fiduciary Duty Claim, the Complaint Fails to Meet the Heightened Pleading Standard ................................................. 22

  E.    Corporate Waste Claim Must be Dismissed For Failure to State a Cause of Action...................... 23

    1.    Legal Standard ......................................................................................... 24

    2.    Allegations Surrounding the Ithaca Trust and its Use to Purchase Properties Cannot Amount to Corporate Waste Against Bhansali ................................................. 26

    3.    Allegations Surrounding the Purchase of the Essex Apartment Cannot Amount to Corporate Waste Against Bhansali ................................................. 27

  F.    The Corporate Waste Claims are Time-Barred................................................ 29

  G.    The RICO Claim Must be Dismissed .............................................................. 31

    1.    The Trustee Has No RICO Standing......................................................... 32

    2.    The RICO Claims are Time Barred .......................................................... 34

    3.    The Trustee Fails to Plead Adequately the Requisite RICO Predicate Acts............................. 35

    4.    The Trustee Fails to Plead RICO Conspiracy .......................................... 40

V.    CONCLUSION...................................................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Azrielli v. Cohen Law Offices*,
    21 F.3d 512 (2d Cir. 1994) ................................................................................38

*Baiul v. William Morris Agency, LLC*,
    2014 U.S. Dist. LEXIS 62633 (S.D.N.Y. 2014), *aff'd*, 601 F. App'x 58 (2d
    Cir. 2015) ...........................................................................................................34

*Bankruptcy Servs. v. Ernst & Young*,
    529 F.3d 432 (2d Cir. 2008) ...............................................................................13

*BCCI Holdings (Luxembourg) v. Pharaoon*,
    43 F. Supp. 2d 359 (S.D.N.Y. 1999) ...................................................................34

*Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*,
    346 F. Supp.3d 432 (S.D.N.Y. 2018) ..................................................................39

*Blake v. Blake*,
    638 N.Y.S.2d 632 (App. Div. 1996) ....................................................................30

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*,
    906 A.2d 27 (Del. 2006) .....................................................................................25

*Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer (In re Bridgeport Hldgs., Inc.)*,
    388 B.R. 548 (Bankr. D. Del. 2008) .............................................................25,29

*Brown v. Lower Brule Community Dev. Enter., L.L.C.*,
    2014 U.S. Dist. LEXIS 154658 (S.D.N.Y. 2014) ................................................23

*Buchwald v. Renco Group, Inc.*,
    399 B.R. 722 (Bankr. S.D.N.Y. 2009) ................................................................13

*Buller v. Giorno*,
    868 N.Y.S.2d 639 (1st Dep't 2008) .....................................................................15

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*,
    466 B.R. 626 (Bankr. D. Del. 2012) ...................................................................24

*Casio Computer Co. v. Sayo*,
    1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. 1999) ..................................................40

*Cede & Co. v. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ...................................................................................22

*City of New York v. Smoke-Spirits.com, Inc.*,
   541 F.3d 425 (2d Cir. 2008)............................................................................32

*Clark v. Advanced Composites Grp.*,
   2019 U.S. Dist. Lexis 80639 (S.D.N.Y. 2019) ...................................................22,33

*Claybrook v. Morris (In re Scott Acquisition Corp.)*,
   344 B.R. 283 (Bankr. D. Del 2006) ..................................................................13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999)............................................................................35

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013)............................................................................36

*Criden v. Steinberg*,
   2000 Del. Ch. LEXIS 50 (Ch. 2000) ................................................................24,28

*CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*,
   2007 U.S. Dist. LEXIS 74723 (S.D.N.Y. Oct. 3, 2007) ........................................19

*DDR Constr. Servs. v. Siemens Indus.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011).............................................................32

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001)...........................................................................32

*DeFlora Lake Dev. Assoc. v Hyde Park (In re DeFlora Lake Dev. Assoc.)*,
   571 B.R. 587 (Bankr. S.D.N.Y. 2017)..............................................................9

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987).........................................................................37

*Doppelt v. Denahan*,
   144 A.D.3d 573 (1st Dep't 2016) ....................................................................26

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006)..............................................................9

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)...........................................................................40

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994), *cert. denie*d, 513 U.S. 1079 (1995)........................9,32

*Geiss v. Weinstein Co. Holdings LLC*,
   2019 U.S. Dist. LEXIS 66364 (S.D.N.Y. 2019)................................................32,34

*Geltzer v. Altman (In re 1st Rochdale Coop. Gp., Ltd.)*,
  2008 U.S. Dist. LEXIS 4966 (S.D.N.Y. 2008) .................................................................29

*Golden Pac. Bancorp. v. FDIC*,
  273 F.3d 509 (2d Cir. 2001) ...........................................................................................29

*Green v. Phillips*,
  1996 Del. Ch. LEXIS 76 (Ch. June 19, 1996) ...............................................................28

*Grumman Olson Indus. v McConnell*,
  329 B.R. 411 (Bankr. S.D.N.Y. 2005) ...........................................................................17

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*,
  781 F.2d 264 (2d Cir. 1986) ...........................................................................................24

*Harris v. NYU Langone Med. Ctr.*,
  2013 U.S. Dist. LEXIS 99328 (S.D.N.Y. 2013) .............................................................36

*Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*
  507 B.R. 452 (Bankr. S.D.N.Y. 2014) ........................................................................9,10

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) .............................................................................................31

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) .......................................................................................13,14

*In re Bennett Funding Group*,
  1997 Bankr. LEXIS 2366 (Bankr. N.D.N.Y. 1997) .......................................................25

*In re infoUSA, Inc. S'holders Litig.*,
  953 A.2d 963 (Del. Ch. 2007) ........................................................................................25

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  2008 U.S. Dist. LEXIS 53923 (S.D.N.Y. 2008) .............................................................22

*In re Sabine Oil & Gas Corp.*,
  547 BR 503 (Bankr. S.D.N.Y. 2016) ..............................................................................19

*IT Group, Inc. v. D'Aniello*,
  2005 U.S. Dist. LEXIS 27869 (D. Del. 2005) ...............................................................19

*Jerome M. Sobel & Co. v. Fleck*,
  2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. 2003) .............................................................35

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ....................................................................................31

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)..........................................................................35

*Lemond v. Manzulli*,
  2009 U.S. Dist. LEXIS 50135 (E.D.N.Y. 2009).........................................11

*Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Entm't, LLC)*,
  520 B.R. 455 (Bankr. D. Del. 2014) ...........................................................16

*Loengard v. Santa Fe Indus., Inc.*,
  573 F. Supp. 1355 (S.D.N.Y. 1983)............................................................10

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013).....................................................................36,37

*McHale v. Citibank, N.A.*,
  420 B.R. 178 (Bankr. S.D.N.Y. 2009).................................................12,13,14

*McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  727 F. Supp. 833 (S.D.N.Y. 1989) ..............................................................11

*Mediators, Inc. v. Manney*,
  105 F.3d 822 (2d Cir. 1997)........................................................................21

*Meskunas v. Auerbach*,
  2019 U.S. Dist. LEXIS 26531 (S.D.N.Y. Feb. 19, 2019).........................15

*Miller v. Bradley (In re W.J. Bradley Mtge. Capital, LLC)*,
  598 B.R. 150 (Bankr. D. Del. 2019) ...........................................................24

*Mirman v Berk & Michaels, P.C.*,
  1994 U.S. Dist. LEXIS 10771 (S.D.N.Y. 1994).........................................15

*Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir. 1983).............................................................................15

*Murphy v. Morlitz*,
  751 F. App'x 28 (2d Cir. 2018) ...................................................................15

*National Union Fire Ins. Co. v. Forman, 635 Joint Venture*,
  1996 U.S. Dist. LEXIS 13014 (S.D.N.Y. 1996)......................................10,11

*New York v. UPS, Inc.*,
  2016 U.S. Dist. LEXIS 105038 (S.D.N.Y. 2016)........................................40

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
  Credit Partners L.P.*, 405 B.R. 527 (Bankr. D. Del. 2009) ..................11,24

*Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................................11

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112 (Bankr. S.D.N.Y. 2009) ..................................................19

*Patrick v. Allen*,
355 F. Supp. 2d 704 (S.D.N.Y. 2005)......................................................................24

*Prudential Inv. Mgt. Servs. LLC v. Forde*,
2013 U.S. Dist. LEXIS 89190 (S.D.N.Y. 2013)......................................................10

*Lewis re. American Express Co. v. Robinson*,
39 F.3d 395 (2d Cir. 1994).......................................................................................34

*Refco Inc. Sec. Litig. v. Aaron*,
826 F. Supp. 2d 478 (S.D.N.Y. 2010).......................................................................22

*Roselink Investors, LLC v. Shenkman*,
386 F. Supp. 2d 209 (S.D.N.Y 2004)........................................................................17

*Rotella v. Wood*,
528 U.S. 549 (2000).................................................................................................43

*RSL Communs. PLC v. Bildirici*,
649 F. Supp. 2d 184 (S.D.N.Y. 2009)......................................................................18

*Russello v. United States*,
464 U.S. 16 (1983)...................................................................................................31

*South Rd. Assocs. v. IBM*,
216 F.3d 251 (2d Cir. 2000).....................................................................................10

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*,
673 F.3d 180 (2d. Cir. 2012)....................................................................................10

*Stern v. Gen. Elec. Co.*,
924 F.2d 472 (2d Cir. 1991).....................................................................................25

*Targum v. Citrin Cooperman & Co., LLP*,
2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. 2013).....................................................31

*Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*,
493 F.3d 345 (3d Cir. 2007).....................................................................................18

*Tepper v. Bendell*,
2002 U.S. Dist. LEXIS 23303 (S.D.N.Y. 2002).......................................................11

*Teras Int'l Corp. v. Gimbel,*
    2014 U.S. Dist. LEXIS 174328 (S.D.N.Y. Dec. 17, 2014) ..............................................17,18

*Tese-Milner v. TPAC, LLC (In re Ticketplanet.com),*
    313 B.R. 46 (Bankr. S.D.N.Y. 2004) ....................................................................................11

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,*
    906 A.2d 168 (Del. Ch. 2006)...............................................................................................17

*Trump v. The Carlyle Group,*
    2010 N.Y. Slip. Op. 30687[U] (N.Y. Co. 2010)....................................................................17

*United States SBA v. Feinsod,*
    347 F. Supp. 3d 147 (E.D.N.Y. 2018) ...................................................................................17

*United States v. Agrawal,*
    726 F.3d 235 (2d Cir. 2013)..................................................................................................39

*United States v. Gotti,*
    457 F. Supp.2d 411 (S.D.N.Y. 2006)....................................................................................40

*United States v. Guadagna,*
    183 F.3d 122 (2d Cir. 1999)..............................................................................................37,38

*United States v. Persico,*
    832 F.2d 705 (2d Cir. 1987)..................................................................................................36

*United States v. Pierce,*
    224 F.3d 158 (2d Cir. 2000)..............................................................................................36,38

*United States v. Shellef,*
    507 F.3d 82 (2d Cir. 2007)....................................................................................................36

*United States v. Turkette,*
    452 U.S. 576 (1981)...............................................................................................................31

*Wagner v. Selinger,*
    2000 Del. Ch. LEXIS 1 (Ch. 2000) ......................................................................................28

*Westchester Cnty. Independence Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015)...............................................................................13,32

*Wornick v. Gaffney,*
    544 F.3d 486 (2d Cir. 2008)..................................................................................................13

*Zelouf Int'l Corp. v. Zelouf,*

5 N.Y.S.3d 331 (N.Y. Co. 2014) ...........................................................................................29,30

**STATUTES**

18 U.S.C. § 1961(1) ................................................................................................................35

18 U.S.C. § 1962(c) ............................................................................................................31,32

18 U.S.C. § 1962(d) ................................................................................................................49

18 U.S.C. § 2314 .....................................................................................................................48

National Stolen Property Act ...............................................................................................45, 47

Racketeer Influenced and Corrupt Organizations Act ......................................................... 31-40

**OTHER AUTHORITIES**

Bankruptcy Rule 7012(b) ...........................................................................................................9

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................9

N.Y. C.P.L.R. § 202 .................................................................................................................18

Fed. R. Civ. P. 8 ......................................................................................................................22

Fed. R. Civ. P. 9 ......................................................................................................................22

Defendant Mihir Bhansali ("Bhansali"), by his attorneys, White and Williams LLP, respectfully submits this Memorandum of Law in Support, Declaration of Thomas E. Butler ("Butler Decl."), and accompanying exhibits, in support of his Motion to Dismiss the Adversary Complaint (the "Complaint").

## I.    PRELIMINARY STATEMENT

In the Complaint, Plaintiff Richard Levin (the "Trustee" or "Plaintiff"), as Chapter 11 Trustee for Debtors Firestar Diamond, Inc. ("Firestar"), Fantasy, Inc. ("Fantasy"), and Old AJ, Inc. f/k/a A. Jaffe, Inc. ("Jaffe") (collectively "Debtors"), asserts claims against Mihir Bhansali ("Bhansali") and two other individual defendants, Nirav Modi ("Modi") and Ajay Gandhi ("Gandhi")  (collectively, "Defendants"), arising from what Trustee alleges was a pattern of fraudulent activity involving a number of non-Debtor entities, and directed towards a third-party, Punjab National Bank ("PNB"). The Trustee alleges that, as a result of the Defendants' purported involvement in this scheme, a substantial creditor's claim has been asserted against the Debtors by PNB, and the Debtors' business has been destroyed. Thus, the Trustee now seeks recovery of the amounts allegedly sought by PNB and other unspecified damages. The Trustee asserts claims against Bhansali for breach of fiduciary duty, corporate waste, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO",) primarily arising from the purported PNB fraud.

The Complaint should be dismissed in its entirety. As set forth below, the Trustee lacks standing to pursue most of the asserted claims against Bhansali; many of the claims asserted are time-barred; and the Complaint otherwise fails to state a cognizable claim or plead the elements of the claims with the requisite particularity.

First, it is well established that a bankruptcy trustee has standing only to assert claims belonging to the ***debtors and on the debtors' behalf***. Conversely, a trustee has no standing to

-2-

assert claims that belong to third parties, including individual creditors. Nevertheless, the crux of the Complaint consists of allegations that Bhansali and his co-defendants engaged in fraudulent activity specifically directed towards PNB and causing harm to PNB, and the Complaint seeks recovery from the Defendants of those damages, under the guise that the Debtors may be liable for them. To the extent there is any basis at all for such claims, the claims belong to PNB and not to the Trustee. In the absence of any claim belonging to the Debtors and seeking to recover for concrete injury purportedly inflicted on the Debtors, the Complaint should be dismissed.

The Trustee also has no standing to assert claims for violations of the RICO statute. It is black letter law that standing to assert claims under RICO requires a plaintiff to demonstrate that plaintiff itself was the intended target of the alleged pattern of racketeering activity, and that there was a direct relationship between the wrongful act and its injury. Here, the allegations show neither. The Trustee has alleged that Bhansali and the other Defendants engaged in fraudulent activity intended to facilitate and advance a scheme to obtain unauthorized loans from PNB. Thus, the "intended target" of the activities complained of necessarily was PNB. The Debtors, whose claim of injury arises from the assertion of claims by PNB against them, were not intended or direct victims of any alleged fraud, the Trustee has not pled that they were (nor could he) and any alleged injury to the Debtors was incidental and indirect. Thus, the RICO claims must be dismissed for lack of standing.

The Complaint also must be dismissed because it fails to plead any cognizable claim against Bhansali, and such claims are otherwise time-barred. The Complaint fails to state a breach of fiduciary duty claim. As a threshold matter, such a claim is time-barred. The statute of limitations for a breach of fiduciary duty claim is three years. Yet, the Trustee fails to assert any allegations of activities within this time period that could constitute a breach of any duty on

Bhansali's part. Indeed, the only allegations that are asserted to have occurred within that time period are scant, and entirely disconnected from the alleged PNB fraud that is at the center of this case. Even if the Court applied a longer six-year statute of limitations, the claim still fails for the same reason. But even to the extent it were timely, the claim must fail because Bhansali did not owe a fiduciary duty to the Debtors. It is well settled that where, as here, the plaintiff corporation is a wholly owned subsidiary of another corporation, it is the duty of the officers and directors to act in the best interests of the corporate parent – in this case, non-Debtors Firestar Group, Inc. and Synergies, Inc., both ultimately owned by Firestar International, Inc. And even if such duty existed, the Trustee's pleading is still inadequate. The Complaint contains no allegations that rise to the level of a breach of the duty of care or duty of loyalty on the part of Bhansali. On the contrary, the essential allegations are that Bhansali followed the direction of his boss, Modi, the ultimate owner of the corporations in his management. The Complaint is entirely devoid of any allegation that Bhansali benefitted from any wrongful conduct, or that he put his own interests ahead of those of the Debtors.

The allegations of corporate waste are likewise fatally flawed. To survive a motion to dismiss, a corporate waste claim must offer particularized allegations that the defendant utilized corporate assets in a way that brought insufficient compensation to the corporation, or served no corporate purpose. The Complaint fails to make such allegations against Bhansali. The claims of corporate waste are premised on two separate transactions. With respect to one transaction, the Trustee fails to allege either (1) that actual corporate assets of the Debtors were utilized; or (2) that Bhansali took any steps in connection with the purchase of the property at issue, or had any other involvement whatsoever in the transaction. With respect to the other, the Complaint fails to allege that the corporation received inadequate consideration or that the corporation saw no

benefit. At the same time, most of the allegations pled by the Trustee in support of this claim took place outside of the applicable six-year statute of limitations. Thus, even if the claim was viable, it would be time-barred.

Furthermore, even leaving aside the lack of standing, there is no basis for a RICO claim. The RICO claims are also time-barred. But even if they were not, the Trustee's sketchy and conclusory allegations fail to satisfy the demanding requirements of the RICO statute.

For all of the aforementioned reasons, the Complaint should be dismissed.

## II.    ALLEGATIONS IN THE COMPLAINT

### A. *General Allegations*

The Complaint alleges that from 2011 to early 2018, Modi orchestrated a scheme to obtain loans, credits or other funds under false pretenses and without collateral from PNB. Compl. ¶ 18. The Complaint asserts that the scheme involved the use of so-called "Letters of Undertaking" ("LOUs") – guarantees under which PNB allowed its customers to obtain short-term credit from other Indian banks' foreign branches to engage in foreign import transactions into India without providing ordinarily-required collateral. Butler Decl. ¶ 2, Ex. A ("Compl."), ¶ 19. The Complaint also alleges that entities controlled by Modi that obtained the LOUs did not provide collateral, and that PNB failed to record properly the LOUs in its core banking system, and specifically identifies employees of PNB who purportedly assisted with the alleged scheme. Compl. ¶ 19, 24.

The Complaint asserts that PNB advanced over $1 billion without collateral, or in some cases, via so-called "circular trading," which the Complaint alleges was a fraudulent practice whereby the same diamonds were exported from and re-imported back into India multiple times at varying prices in transactions involving various so-called "Firestar Entities" (which comprise the Debtors and a number of other Non-Debtor corporations) and more than twenty foreign

countries and non-Debtor-companies, so-called the "Shadow Entities," that the Complaint contends were "secretly controlled by Modi." Compl. ¶ 20. The following chart reflects the ownership structure, as set forth in the Complaint, of the various "Firestar Entities" as well as the Debtors that the Trustee alleges were part of the fraud:



**FIRESTAR CORPORATE STRUCTURE**

NIRAV MODI (INDIA)

94.88%

**FIRESTAR INTERNATIONAL LIMITED ("FIL")**
(f/k/a Diamond's 'R' Us – Modi Involved 2000)
(Holding Company)

100%

**FIRESTAR HOLDINGS LTD (HONG KONG)**

100%

**SYNERGIES CORPORATION (DE)**

100%                    95%

**FIRESTAR GROUP, INC. (DE)**            **DEBTOR Old AJ, INC. (NY) ("JAFFE")**
("GROUP")                         (f/k/a Sandberg & Sikorski Corp. acquired
in 2007)

100%

**DEBTOR FIRESTAR DIAMOND, INC. (DE)**
("FIRESTAR")
(f/k/a Firestone, Inc. acquired in 2005)

100%

**DEBTOR FANTASY, INC. (DE)**
("FANTASY")

The Trustee asserts that as a result of the alleged PNB fraud, PNB suffered over $1 billion in supposed losses. Compl. ¶ 27. The Complaint goes on to allege that the so-called "PNB Fraud" was "coordinated and directed by Modi, Bhansali and Gandhi" and that it has "resulted in substantial creditor claims against the Debtors, including a substantial claim by PNB and caused the collapse and resulting loss a value of the Debtors' and their businesses." Compl. ¶ 56. The Complaint alleges that the Debtors were "involved in the PNB Fraud," were "exporters and direct beneficiaries of at least six LOUs totaling $10,192,303.00" and engaged in "circular trading" that facilitated additional LOUs resulting in payments to the Shadow Entities and Firestar Entities, without identifying the particular letters of undertaking involved. Compl. ¶ 28. While the Complaint mentions two examples of "circular trading," both examples were from almost eight years ago (outside of the statute of limitations), and the Complaint alleges no specific damages incurred as a result. Compl. ¶¶ 29, 30. The Complaint also alleges that six PNB LOUs were issued where a Debtor was the exporting entity and direct beneficiary of the funds. Compl. ¶ 32. In particular the Complaint alleges the Debtor received funds and then either returned to an unidentified "Firestar Entity" in India or were used by Debtors or so-called Shadow Entities. Compl. ¶ 32.

### B.  *Specific Allegations Against Bhansali*

The Complaint alleges that Bhansali was the CEO and sole director of each of the Debtors. Compl. ¶¶ 1, 35. It thereafter asserts a number of conclusory allegations against him, seeking to tie him to the alleged fraudulent activity. The Complaint alleges that at the direction of Modi, Bhansali "participated in and advanced the PNB Fraud" (Compl. ¶ 34); that Bhansali coordinated and directed fraudulent transactions among the Debtors and Shadow Entities that were integral to the PNB Fraud that involved hundreds of millions of dollars" (Compl. ¶ 35); and that "Bhansali was intimately involved in and managed the transactions between the Debtors and

-7-

the Shadow Entities" (Compl. ¶ 42). The Complaint further alleges that Bhansali managed the "Debtors' house accounts" where proceeds of loose diamond sales were segregated from regular sales accounts for purposes of computing commissions. Compl. ¶ 36. In addition, the Complaint alleges that Bhansali "coordinated and directed" a number of alleged circular transactions involving the Debtors. Compl. ¶¶ 38, 39. The Complaint also alleges that Bhansali "coordinated and directed the operations of various Shadow Entities." Compl. ¶¶ 44.

The Trustee also alleges a number of innocuous actions on the part of Bhansali that he suggests somehow tied into the alleged fraud. These include the allegation that Bhansali "oversaw and directed operations of other Firestar Entities," including an employee of a Firestar entity seeking permission from Bhansali to make wire transfers from a Firestar Entity in Hong Kong to Firestar and Brilliant Diamonds; an employee of another Firestar Entity asking Bhansali's approval before changing the authorized signatory for Firestar Hong Kong; and a December 14, 2017 request from a Dubai employee for a tablet computer that was directed to Bhansali. Compl. ¶ 48.

### C. *Allegations of Modi's Alleged Dominance*

Despite various allegations of operational control by Bhansali, the Complaint also alleges that the affairs of the Debtors and other Firestar entities were dominated, and completely controlled, by Modi. In particular, the Complaint alleges that "Modi coordinated and directed the execution of the PNB Fraud with senior officers and directors of the Debtors, including Bhansali and Gandhi" (Compl. ¶ 57); that "Modi directed Bhansali and Gandhi and exerted total ultimate control over Debtors' affairs, including in regard to day-to-day details" (Compl. ¶ 58); and that "[o]ne means of Modi's omnipresent oversight and control over the Debtors consisted of the dozens of the flash reports regarding the Debtors' financials that he received throughout the relevant period" (Compl. ¶ 58, among other allegations). The Complaint also includes a number

-8-

of alleged examples from 2009 and 2015 of "Modi's total ultimate control over the Debtors."
Compl. ¶ 59.

### D.  *Allegations Not Made*

Despite the fact that Firestar International, Ltd. ("FIL") was the entity accused of
facilitating the PNB Fraud, there are no allegations whatsoever regarding any of its purported
transactions. There are also no allegations that any proceeds of the supposed fraud were directed
to Bhansali, or that he realized any benefits whatsoever from wrongful conduct, either at the
expense of the Debtors or others. In addition, other than vague allegations about the supposed
destruction of the Debtors' business, the Complaint includes no allegations that the Debtors
themselves were injured by any conduct by Bhansali. Rather, the injury repeatedly alleged was
the injuries purportedly inflicted upon PNB whose claim against the Debtors is the principal
element of damages sought in the Complaint.

## III.    LEGAL STANDARD

### A.  *Standard for Motion to Dismiss*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule
7012(b), is 'designed to test the legal sufficiency of the complaint . . . .'" (*Harrison v. N.J. Cmty.
Bank (In re Jesup & Lamont, Inc.*), 507 B.R. 452, 459 (Bankr. S.D.N.Y. 2014) and "the Court
may dismiss any count in the complaint that fails to state a claim for which relief can be granted"
(*DeFlora Lake Dev. Assoc. v Hyde Park (In re DeFlora Lake Dev. Assoc.)*, 571 B.R. 587, 594
(Bankr. S.D.N.Y. 2017). While the non-conclusory factual allegations contained in the complaint
must be accepted as true and all reasonable inferences drawn in favor of the nonmoving party, a
court is not required to accept as true "conclusions of law or unwarranted deductions of fact."
*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denie*d, 513
U.S. 1079 (1995); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 (S.D.N.Y.

2006) ("Court need not accept as true conclusory allegations and legal conclusions masquerading as facts."); *Prudential Inv. Mgt. Servs. LLC v. Forde*, 2013 U.S. Dist. LEXIS 89190, at *8 (S.D.N.Y. 2013) (stating that "non-conclusory factual allegations" are taken as true on a motion to dismiss). In order to survive a motion to dismiss under Rule 12(b)(6), plaintiff "must allege facts that, if true, would create a judicially cognizable cause of action." *South Rd. Assocs. v. IBM*, 216 F.3d 251, 253 (2d Cir. 2000). In particular, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Harrison*, 507 B.R. at 459. Thus, conclusory allegations will not survive if not supported by facts constituting a legitimate claim for relief. *Prudential Inv. Mgt. Servs. LLC*, 2013 U.S. Dist. LEXIS 89190, at *8-9 (S.D.N.Y. 2013) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'").

### B. *Choice of Law for Statute of Limitations*

Under New York's choice of law rule for statute of limitations, "courts apply New York's statute of limitations to actions brought in New York except if its borrowing statute is triggered." *Loengard v. Santa Fe Indus., Inc.*, 573 F. Supp. 1355, 1359 (S.D.N.Y. 1983) (citing *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 588 (1978)); *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 188 (2d. Cir. 2012) (affirming bankruptcy court's decision to apply choice of law of forum state to determine statute of limitations issue). New York's borrowing statute provides that where the plaintiff is a New York resident, the New York statute of limitations applies, and where the plaintiff is not a New York resident, the applicable statute of limitations is the shorter of (a) New York's or (b) the state in which plaintiff resides. N.Y. C.P.L.R. § 202. The residence of a corporation for purposes of New York's borrowing statute is the corporation's principal place of business, as opposed to the place of incorporation. *National Union Fire Ins. Co. v. Forman, 635 Joint Venture*, 1996 U.S. Dist.

LEXIS 13014, at *9-11 (S.D.N.Y. 1996); *McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F. Supp. 833, 834 (S.D.N.Y. 1989). Here, the principal place of business for all of the Debtors is New York. Compl. ¶¶ 8-10. Accordingly, under any analysis, the statute of limitations must be governed by the laws of New York.

### C. *Choice of Law for Pleading Sufficiency*

"Before assessing the pleading sufficiency of the breach-of-fiduciary-duty claim, the Court must first determine the applicable state law" and "[b]ankruptcy courts adjudicating a state law claim should apply the choice-of-law rules of the forum state in the absence of federal policy concerns." *Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 346 (Bankr. S.D.N.Y. 2010). Under New York law's choice of law rules, the internal affairs doctrine dictates that a claim for breach of fiduciary duty is governed by the law of the state of incorporation. *See Tepper v. Bendell*, 2002 U.S. Dist. LEXIS 23303, at *14 (S.D.N.Y. 2002) ("Questions relating to the internal affairs of corporations should be decided in accordance with the laws of the state of incorporation."); *Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46, 62 (Bankr. S.D.N.Y. 2004) ("Under New York law, the law of the state of incorporation governs an allegation of breach of fiduciary owed to a corporation.").

A claim for corporate waste – much like a claim for breach of fiduciary duty – is also governed by the law of the state of incorporation. *See Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.*, 405 B.R. 527, 549 (Bankr. D. Del. 2009) (determining that "the internal affairs doctrine dictates that Delaware law govern Plaintiff's waste claim" as the place of incorporation); *Lemond v. Manzulli*, 2009 U.S. Dist. LEXIS 50135, at *11 (E.D.N.Y. 2009) (analyzing the claim for corporate waste based on Delaware law because that is where the company was incorporated).

As a result, Delaware law formally governs the claim for breach of fiduciary duty and corporate waste of Firestar and Fantasy, and New York law governs these claims of Jaffe. Compl. ¶¶ 8-10 (alleging that Firestar and Fantasy are incorporated in Delaware, whereas Jaffe is incorporated in New York). However, the requirements for pleading sufficiency of a claim of breach of fiduciary duty and corporate waste under both Delaware and New York law are substantially the same. *See Trump v. The Carlyle Group*, 2010 N.Y. Slip. Op. 30687[U], *18, n. 3 (N.Y. Co. 2010) ("New York and Delaware law are the same with regard to breach of fiduciary duty . . . ."); *United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 166, n. 18 (E.D.N.Y. 2018) (noting that even if "New York courts look to Delaware for additional guidance [on corporate waste], the standard under Delaware law would be similar.").

## IV.    ARGUMENT

### A.  *The Trustee Lacks Standing to Assert Most of the Claims in the Complaint*

Most of the claims asserted in the Complaint should be dismissed given that the Trustee lacks standing to bring them.[1]

It is well established that "[s]tanding is a threshold issue" and "[i]f a plaintiff does not have standing, a court has no subject matter jurisdiction to hear the case." *McHale v. Citibank, N.A.*, 420 B.R. 178, 191 (Bankr. S.D.N.Y. 2009). To establish constitutional standing, the Trustee must demonstrate: (a) an "injury in fact," specifically a "concrete and particularized violation of a legally protected interest that is actual or imminent, not conjectural or hypothetical"; (b) "a causal connection between the complained of conduct and the alleged injury"; and that "a favorable decision" would "likely resolve the alleged injury." *McHale*, 420 B.R. at 192 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) and *Cooper v.*

---

[1] To the extent that the Trustee has asserted claims for corporate waste that are not grounded in the alleged PNB fraud, Bhansali does not contest the Trustee's standing to assert them.

*United States Postal Serv*., 577 F.3d 479, 489 (2d Cir. 2009)). "The burden to establish standing remains with the party claiming that standing exists." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995).

In addition to the above, the Court must determine that a plaintiff satisfies "court-created prudential limits on the exercise of judicial power." *McHale*, 420 B.R. at 192 (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). In this regard, it is well established that "the trustee stands in the shoes of the debtors, and can only maintain those actions that the debtor could have brought prior to the bankruptcy proceedings." *Hirsch*, 72 F.3d at 1093; *Bankruptcy Servs. v. Ernst & Young*, 529 F.3d 432, 447 (2d Cir. 2008); *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008); *Buchwald v. Renco Group, Inc.*, 399 B.R. 722, 758 (Bankr. S.D.N.Y. 2009).

Courts look to state law to determine which claims belong to the estate or its creditors. *Mediators, Inc. v. Manney*, 105 F.3d 822, 825 (2d Cir. 1997). The Court must first determine if the alleged wrongdoing is tied to a particularized injury. *McHale*, 420 BR at 194-195. "Courts in this Circuit have consistently rejected attempts by trustees to assert claims for injuries that are particularized to creditors." *Id.*; *see also Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 291 (Bankr. D. Del 2006) ("A trustee 'does not have standing to pursue the individual claims of creditors or even creditors as a class.'"). "[W]hen creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch*, 72 F.3d at 1093. Additionally, "[e]ven where a bankruptcy trustee seeks to assert a claim of the debtor, such claim may be barred if it might interfere with and/or be duplicative of, litigation which has already been commenced by specific creditors. *In re Bennett Funding Group*, 1997 Bankr. LEXIS 2366, at *15 (Bankr. N.D.N.Y. 1997) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972),

*Wagoner*, 944 F.2d 114 and *Hirsch*, 72 F.3d at 1094). In fact, "a bankruptcy trustee may not assert claims of a debtor corporation unless the claimed injury is distinct from any injury claimed to have been suffered by individual creditors." *In re Bennett Funding Group*, 1997 Bankr. LEXIS 2366, at *15.

The Trustee plainly has no standing to pursue the claims in the Complaint. In *McHale*, although involving a trustee's claim against a bank for aiding and abetting a director's breach of fiduciary duty of a director in misappropriating monies, the court expressly determined that the trustee's claim to "recover damages for being 'subjected to claims by more than 300 creditors'" lacked standing because it essentially "requests damages for money owed" to the creditors. 420 B.R. at 196. The crux of the Complaint likewise is that the allegedly improper conduct was directed at a specific creditor – PNB – and has exposed the Debtors to claims by that creditor. The alleged wrongdoing was directed towards PNB – not the Debtors – and if the Trustee were to recover on his claims, the Defendants would face the prospect of duplicative claims from PNB. The claims to redress similar harm have been held to belong to the creditors, not the corporation. [2] *See Hirsch*, 72 F.3d at 1094 ("It follows that claims predicated upon the distribution of misleading PPMs to investors in Colonial limited partnerships are the property of those investors, and may be asserted only by them and to the exclusion of Hirsch [the trustee].").

In addition, there has no particularized injury alleged to the corporation. The Trustee makes no allegations of depletion of corporate assets, distortion of the debtor's finances or increased debt that would amount to particularized harm to the corporations. In fact, the alleged conduct at all times benefited the corporations and any injury alleged is only when the alleged fraud was revealed – in the form of potential obligations to PNB [and insolvency]. Without a

---

[2]  While many of the cases that have addressed standing in this context  involve a trustee's claims against third parties (e.g. accountant, lawyer, bank), these cases are nonetheless informative, given that they analyze whether the alleged injury caused by the conduct is particular to the creditors or the corporation.

particularized injury to the corporation tied to the alleged wrongdoing by Bhansali, the Trustee

lacks standing and the Complaint must be dismissed.

### B. The Breach of Fiduciary Duty Claim is Time Barred

"The applicable statute of limitations for a claim for breach of fiduciary duty depends

upon the substantive nature of relief the plaintiff seeks." *Mirman v Berk & Michaels, P.C.*, 1994

U.S. Dist. LEXIS 10771, at *37 (S.D.N.Y. 1994). Unless the nature of the relief sought is

equitable, "a breach of fiduciary duty claim carries a three-year statute of limitations." *Id.* While

in certain circumstances the statute of limitations can be increased to six years for a claim for

breach of fiduciary duty "based on actual fraud," such circumstances do not exist here. *See*

*Meskunas v. Auerbach*, 2019 U.S. Dist. LEXIS 26531, *12 (S.D.N.Y. Feb. 19, 2019). As

detailed in *Meskunas*, "if the fraud allegation is only incidental to the claim asserted, the three-

year statute of limitations period applies. *Id.* Fraud is incidental when there is no claim for actual

fraud and "no fraud damages [are] distinct from damages allegedly attributable to the breach of

fiduciary duty." *Buller v. Giorno,* 868 N.Y.S.2d 639, 640 (1st Dep't 2008); *Murphy v. Morlitz*,

751 F. App'x 28, 30 (2d Cir. 2018); *Meskunas*, 2019 U.S. Dist. LEXIS 26531, at *13-14 (finding

that there was no allegation that the "purportedly fraudulent conduct caused any injury distinct

from the injuries caused by the alternative claim" but were, instead "identical"). "[A] fraud

action is not incidental only when: (1) the fraud occurred separately from and subsequent to the

injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are

distinct from the injuries caused by the alternate claim." *Meskunas*, 2019 U.S. Dist. LEXIS

26531, at *12-13.

Here, the relief sought is not equitable and any purported fraud is at most incidental to the

breach of fiduciary claim. There are no allegations that Bhansali committed any fraud against the

Trustee, and no claim for fraud alleged. In fact, any damages from alleged fraud (even if pled)

would be entirely duplicative of the damages allegedly attributable to the claim for breach of fiduciary duty. The allegations concerning the PNB fraud are incidental to the breach of fiduciary duty claim and as the Trustee only seeks monetary damages, the three year statute of limitations period applies. As such, the Trustee's breach of fiduciary duty claims against Bhansali must be dismissed because substantially all of the alleged bad acts occurred prior to March 27, 2016.

Even were this Court inclined to apply the longer six-year statute of limitations period, the claims are still time barred because the alleged breaches occurred before March 27, 2013. In fact, the only factual assertions involving Bhansali post-March 2013 are:

- In March 2016, Evelyn Kosiec (Jaffe employee) was directed by Bhansali to ship to Eternal diamonds (a Shadow Entity) in Hong Kong, the same price, rounded to the nearest 5, 120-day terms (Compl. ¶ 40);

- On August 19, 2017, Universal Fine Jewelry FZE's manager (whose signature also stated he was the general manager of Firestar Diamond in Dubai) emailed Bhansali profiles of three Shadow Entities asking for his review and advise (Compl. ¶ 47);

- On September 14, 2017, a former Firestar employee asked for Bhansali's approval before changing authorized signatory for Firestar Hong Kong (Compl. ¶ 48); and

- On December 14, 2017, a request from a Dubai employee for a tablet computer was directed to Bhansali (Compl. ¶ 48).

None of these post-March 2013 allegations support a claim that Bhansali breached a fiduciary duty to the Debtors as none of them allege any wrongdoing concerning Modi usurping authority, assistance with the alleged PNB fraud, or corporate waste. The single allegation that Bhansali directed a Jaffe employee to ship a diamond to Eternal for the same price does not even allege that this was an illegitimate transaction or any connection to the PNB fraud. The broad conclusory allegation that Modi orchestrated the PNB Fraud from 2011 through 2018 also does

not save this otherwise time barred claim. Compl. ¶ 18. The breach of fiduciary duty claim must be dismissed as time barred.

### C. *Without a Duty, There Can Be No Claim for Breach of Fiduciary Duty*

To plead a breach of fiduciary duty, the complaint must allege: (a) the existence of a duty and (b) the breach of the fiduciary duty. *Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Entm't, LLC)*, 520 B.R. 455, 470 (Bankr. D. Del. 2014)*.* As to Jaffe, New York also requires pleading damages resulting from the breach.[3] *Grumman Olson Indus. v McConnell*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005).

It is well established that a director of a wholly owned subsidiary owes a fiduciary duty to its parent company. Under Delaware law, it is a long settled rule that "in a parent and wholly owned subsidiary context, directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 200 (Del. Ch. 2006)*; see Roselink Investors, LLC v. Shenkman,* 386 F. Supp. 2d 209, 215 (S.D.N.Y 2004) ("Under Delaware law, when one company owns another, the directors of the parent and subsidiary are obligated to manage the subsidiary in the best interests only of the parent and [parent's] shareholders."). The same is true under New York law. "[T]he general rule is that directors and officers of a wholly owned subsidiary . . . owe fiduciary duties only to the parent corporation, not to the subsidiary." *Teras Int'l Corp. v. Gimbel,* 2014 U.S. Dist. LEXIS 174328, *28 (S.D.N.Y. Dec. 17, 2014) (*quoting Deangelis v. Corzine (In re MF Global Holdings Ltd. Investment Litig.),* 998 F. Supp. 2d 157, 180 n.15 (S.D.N.Y. 2014)).

---

[3] The Complaint utterly fails to allege any damages that were proximately caused by Bhansali's alleged breaches. In fact, the only damages alleged are that because of the Indian Government's investigation into the PNB fraud, the Debtors lost their customers and had to file for insolvency. Thus, the "but for" act is wholly unrelated to Bhansali's acts and there is no allegation of proximate cause.

"This is because 'directors' duties to act as 'guardians of the corporate welfare,' – including fiduciary duties of care and loyalty – operate to the benefit of the corporation's owner[], who stand[s] to gain from the firm's success and also bear[s] the risk of its potential financial failure.'" *Id.* (*quoting RSL Communs. PLC v. Bildirici*, 649 F. Supp. 2d 184, 201 (S.D.N.Y. 2009)). "In the context of a wholly-owned subsidiary, . . . the relevant 'owner' is the firm's parent . . . ." *RSL Communs. PLC*, 649 F. Supp. 2d at 201. "In fact, there is nothing wrong (or even unusual) about a parent causing its solvent wholly owned subsidiary to act in a way that benefits the corporate family but harms the individual subsidiary." *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.*), 493 F.3d 345, 367 n. 24 (3d Cir. 2007).

At all relevant times, the Debtors were wholly owned subsidiaries of Group and Synergies. Bhansali was a director of Debtors, Group and Synergies. Their parent corporation (and the ultimate parent corporation of the Debtors) was FIL. Bhansali's fiduciary duty was to the parent corporations and not Debtors. Without a duty to Debtors, this claim against Bhansali fails as a matter of law.

### D.  *Even Assuming a Duty, the Conclusory Allegations Fail to Support Any Breach*

Even assuming Bhansali had a duty to Debtors, the allegations do not support a breach of that duty. The Complaint alleges three distinct breaches by Bhansali "(a) allowing Modi to usurp Bhansali's management responsibilities and decision-making authority, in violation of his duty of care, (b) causing the Debtors to engage in the PNB fraud, including by entering into circular trading transactions with Shadow Entities and Firestar entities, in violation of his duties of due care and loyalty, and (c) causing the Debtors to expend corporate assets to acquire properties for the personal benefit of Modi and his family, in violation of his duties of care and loyalty." Compl. ¶ 95. Upon examination, it is clear that there are no allegations to support any of these alleged breaches.

1.  Without Allegations of Self-Dealing or Personal Gain by Bhansali, the Breach of
    Duty of Loyalty Claim Fails

"A breach of loyalty claim requires some form of self-dealing or misuse of corporate office for personal gain." *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 150 (Bankr. S.D.N.Y. 2009) (applying Delaware law). "'The classic example that implicates the duty of loyalty is when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders.'" *CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*, 2007 U.S. Dist. LEXIS 74723, at *9 (S.D.N.Y. Oct. 3, 2007) (quoting *In re Walt Disney Co. Derivative Litigation*, 907 A.2d at 751 (citations omitted)). In *CVC Claims Litig. LLC*, the Court dismissed the breach of fiduciary claim, in part, because the complaint did not contain any allegation that the individual used his position to engage in "self-dealing or improper personal gain." *Id.* In *In re IT Group, Inc.*, the court dismissed the breach of fiduciary duty claim against the officer when the director did not benefit from the transaction and was not alleged to have taken part in the decision that formed the basis of the complaint. *IT Group, Inc. v. D'Aniello*, 2005 U.S. Dist. LEXIS 27869, at *42 (D. Del. 2005).

Here, there are no allegations – nor could there be – that Bhansali engaged in any self-dealing or personally benefitted from the alleged wrongdoing. Without such allegations, no claim for breach of Bhansali's duty of loyalty can survive.

2.  The Complaint Fails to Allege Bhansali Breached His Duty of Care

"For a director or officer to breach the duty of care, a plaintiff must show a 'reckless indifference to or a deliberate disregard' of the interests of those to whom fiduciary duties are owed or 'actions which are without the bounds of reason.'" *In re Sabine Oil & Gas Corp.*, 547 BR 503, 557 (Bankr. S.D.N.Y. 2016). There are no allegations to meet this standard.

The Trustee conclusory alleges that Bhansali allowed Modi to usurp management and decision making of the Debtors. The Trustee does not allege when or how Bhansali "allowed" Modi to usurp the management responsibilities. There is also no allegation that Modi did not always maintain the management and operational responsibilities of the Debtors from the time of their formation. In fact, the Complaint acknowledges that Modi was the "*de facto* director, officer, or person in control of the Debtors" at all relevant times and exerted "dominion and total control." Compl. ¶ 89. As Bhansali's duty was to the owner of Debtors, even if these allegations were true, it is inconceivable how his allowing their ultimate owner and primary shareholder, Modi, to exert control and decision-making authority of Debtors' operations was with reckless indifference or without the bounds of reason.

The Complaint also conclusorily alleges that Firestar and Jaffe at the direction of their owner Modi caused funds to be expended for apartments that were ultimately used by Modi and his family. There are no specific acts alleged against Bhansali here, and no allegation that Bhansali participated in the decision to purchase the apartments. This likewise does not allege any reckless indifference or actions without the bound of reason to state sufficiently a breach of Bhansali's duty of care.[4]

Finally, while the Complaint alleges in scant detail the nature of the transactions at issue (noting that six out of hundreds involved the Debtors), none of the allegations specifically tie any acts by Bhansali to the alleged PNB fraud. Compl. ¶¶ 38, 39, 46, 48. There is no specific claim as to how or when it is that Bhansali caused the Debtors to engage in the PNB fraud or even whether he had knowledge of the PNB fraud. There are no allegations that Bhansali had any discretionary control or authority or took part in the decision to engage in the alleged fraud on

---

[4] In addition, as discussed *infra*, the Trustee cannot sustain a claim for corporate waste and, therefore, any purported breach that is a corollary of the waste claim also cannot stand. *See infra Section* IV(E).

PNB. Importantly, there is no allegations that Bhansali received any benefit from these transactions. In fact, the allegations simply state that Bhansali at the direction of Modi caused the Debtors to enter into the circular trades that ultimately benefitted the Debtors, their parent corporations and Modi (who presumably knew and understood the possible gains as well as exposure) until the Indian Government began an investigation into the alleged fraud against PNB. Compl. ¶¶ 34, 58-60.

The allegations that are not time barred (*see supra* Section IV(B)) do not even allege that Bhansali was acting on behalf of any of the Debtors or that any of the alleged transactions involved the Debtors or perpetuated the alleged PNB fraud. Compl. ¶¶ 40, 47, 48. The claims that Bhansali directed a Jaffe employee to sell a diamond to a purported shadow entity for full price without any alleged connection to the PNB fraud, reviewing three profiles of non-Debtor entities, approving a changed signatory for a non-Debtor entity or approving a tablet purchase for an employee of a non-Debtor entity could be breaches of his fiduciary duty to the Debtors are such stretches that they merely cast stark light on the weakness of this pleading. Nor does the allegation that Bhansali knew of the purported PNB fraud because he had a spreadsheet in 2018 that identified receivables and payables between the Modi-controlled entities and the Firestar Entities on one axis and the Shadow Entities on the other axis (Compl. ¶ 42) show that Bhansali breached a fiduciary duty to the Debtors. It is simply an example of Plaintiff's effort to shoehorn day-to-day activities into alleged wrongdoing, which is wholly inadequate.

These allegations do not show that Bhansali acted with "reckless indifference to or a deliberate disregard" for the parent corporations, to whom he owed a fiduciary duty or that his

actions were without the bounds of reason. Without such allegations, the fiduciary duty of care claim fails.[5]

    3.   <u>If this Court Finds Fraud is Essential to the Breach of Fiduciary Duty Claim, the Complaint Fails to Meet the Heightened Pleading Standard</u>

Moreover, to the extent the Court finds that fraud is essential to the alleged breach and was from the PNB fraud, the Trustee fails to meet the heightened pleading standard under Rule 9(b).[6] When a breach of fiduciary duty claim is premised on underlying fraudulent conduct, it must meet the heightened particularity requirements of Fed. R. Civ. P. 9(b). *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 U.S. Dist. LEXIS 53923, at *22-23 (S.D.N.Y. 2008). To properly plead fraud claims pursuant to Rule 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. Lexis 80639 at *52-53 (S.D.N.Y. 2019); *In re Merrill Lynch*, 2008 U.S. Dist. LEXIS 53923, at *25.

Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of [its] alleged participation in the fraud." *Id.* at *53. "Although scienter may be averred generally, the plaintiff must allege facts that give rise to a strong inference of fraudulent intent." *Clark*, 2019 U.S. Dist. LEXIS 80639 at

---

[5] The breach of fiduciary duty claim also fails because the Trustee failed to plead around the business judgment rule as there are no allegations of any personal benefit to Bhansali or that he failed to act in good faith, in the honest belief that the action was in the best interest of the corporation or on an informed basis. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993); *Official Comm. of Unsecured Creditors of Bay Harbour Master Ltd. v. Bay Harbour Master Ltd. (In re BH S & B Holdings, LLC)*, 420 B.R. 112 (Bankr. S.D.N.Y. 2009).

[6] Where, as here, only some of the breach of fiduciary claims sound in fraud and others are based on defendant's breach of fiduciary duties as a director, courts "apply Rule 9(b) to those grounds sounding in fraud and Rule 8 to those that do not." *Refco Inc. Sec. Litig. v. Aaron*, 826 F. Supp. 2d 478, 511, n. 20 (S.D.N.Y. 2010) (citing *Soley v. Wasserman*, 2010 U.S. Dist. LEXIS 23465, at *7-8 (S.D.N.Y. 2010).

53. (citing *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (S.D.N.Y. 1994)). Thus, the Trustee must allege facts that give rise to a strong inference of fraudulent intent by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Brown v. Lower Brule Community Dev. Enter., L.L.C.*, 2014 U.S. Dist. LEXIS 154658, at *14 (S.D.N.Y. 2014) (citing *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)).

The Trustee has not met the heightened pleading standard. He has not alleged that Bhansali knew the alleged circular transactions were fraudulent, or that he even knew they were circular. The Trustee posits no conceivable motive for Bhansali, who was acting under directions from his boss and the owner of the Debtors. Nor does the Trustee allege that Bhansali benefitted or stood to benefit from any alleged fraud. Nor does the Trustee allege that the specific acts Bhansali committed in furtherance of any alleged fraud. This failure is fatal to the claim.

### E. Corporate Waste Claim Must be Dismissed For Failure to State a Cause of Action

The Complaint alleges in general fashion that Bhansali – as sole director and CEO of the Debtors – "committed waste of the Debtors' assets by directing the Debtors and their officers to use corporate assets to acquire properties for the personal benefit of Modi and his family or by facilitating or permitting such use." Compl. ¶ 111. The specific allegations of corporate waste surround two different transactions: (1) the so-called "Ithaca Trust" and its utilization to purchase properties, including the "Ritz Carlton Apartment" (Compl. ¶¶ 66-69); and (2) the purchase of an "Essex House Apartment" (Compl. ¶¶ 66-69). A close consideration of these allegations reveals that the elements for corporate waste have not been satisfied.

    1.  <u>Legal Standard</u>

"Corporate waste exists where the consideration received for a transfer of corporate assets is so deficient that no reasonable person could conclude the transfer serves a corporate purpose." *Miller v. Bradley (In re W.J. Bradley Mtge. Capital, LLC)*, 598 B.R. 150, 175 (Bankr. D. Del. 2019); *see Criden v. Steinberg*, 2000 Del. Ch. LEXIS 50, at *10 (Ch. 2000) (requiring facts pled to "establish that the defendant directors 'authorize[d] an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration"); *Patrick v. Allen*, 355 F. Supp. 2d 704, 715 (S.D.N.Y. 2005) ("Corporate waste occurs when assets are used in a manner 'so far opposed to the true interests [of the corporation so] as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests.'").

"There are two ways for a corporate waste claim to survive a motion to dismiss: (1) the complaint alleges facts showing that [] [the corporation] received no consideration, or (2) the complaint alleges that a transfer of corporate assets served no corporate purpose. *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 657 (Bankr. D. Del. 2012). For a claim to survive, the facts pled must "show that the economics of the transaction were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation" and "[i]f any reasonable person could conclude that the deal made sense, then the judiciary inquiry ends." *Official Comm. of Unsec. Creditors of Fedders N. Am., Inc.* 405 B.R. at 549; *see Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 279 n.9 (2d Cir. 1986) (finding that claimant must "demonstrate that no person of ordinary sound business judgment would say that the corporation received fair benefit.").  This is a "demanding standard"; "the Court must find that in any of the possible set of circumstances inferable from the facts alleged under the complaint, no reasonable person could

deem the received consideration adequate." *See In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 1002 (Del. Ch. 2007) (quoting *Apple Comput., Inc. v. Exponential Tech.*, 1999 Del. Ch. LEXIS 9, at *42 (Ch. Jan. 21, 1999)).

Demonstrating just how strict the standard is, the Delaware Supreme Court has specifically set forth that:

> "A claim of waste will arise only in the rare, 'unconscionable case where directors irrationally squander or give away corporate assets.' This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be 'attributed to any rational business purpose.'"

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*, 906 A.2d 27, 74 (Del. 2006)); *see also Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) ("Under the New York business judgment rule, the actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith."). Thus, "if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky." *See Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer (In re Bridgeport Hldgs., Inc.)*, 388 B.R. 548, 576 (Bankr. D. Del. 2008) (citing *Apple Comput., Inc. v. Exponential Tech.*, 1999 Del. Ch. LEXIS 9, at *42 (Ch. Jan. 21, 1999)).

The allegations set forth in the Complaint in support of corporate waste against Bhansali fail to meet this demanding standard. "Only extraordinary circumstances can justify a finding of waste" and the Complaint here does not present those circumstances. *Bridgeport Hldgs. Inc. Liquidating Tr.*, 388 B.R. at 577.

2.  Allegations Surrounding the Ithaca Trust and its Use to Purchase Properties
    Cannot Amount to Corporate Waste Against Bhansali

The first allegation of corporate waste concerns the establishment of the so-called "Ithaca Trust" by Modi's sister Purvi Mehta ("Mehta") for the benefit of Modi and his family. Compl. ¶ 66. Specifically, the Complaint alleges that Mehta "funded the Ithaca Trust using 'dividends' she received from Fine Classic FZE, a Shadow Entity of which Mehta was the 100% owner" and, because "Fine Classic FZE operated as part of the PNB Fraud," the funds "to establish the Ithaca Trust were funneled to Mehta from the PNB Fraud." Compl. ¶ 68. Funds from the Ithaca Trust were, in turn, "used to purchase an apartment at the Ritz Carlton residences . . . for the sole use of Modi and his family." Compl. ¶ 70.

The allegations surrounding the Ithaca Trust and its purported use to purchase real estate cannot amount to a claim for corporate waste by the Debtors against any acts or omissions by Bhansali.  Neither dividends from purported "Shadow Entities" nor the proceeds of the alleged "PNB Fraud" are alleged to be assets of the Debtors (nor could they be).  The Complaint, by its specific terms, alleges that the Ithaca Trust was funded from "dividends" Mehta received from "Fine Classic FZE, a Shadow Entity" that was "part of the PNB Fraud." Compl. ¶ 68.  A corporate waste claim cannot exist where there is "no asset of the company being wasted." *Doppelt v. Denahan*, 144 A.D.3d 573, 573 (1st Dep't 2016) (finding that a corporate fraud claim could not exist where "there was no 'asset' of the company being wasted"). Far from alleging that assets of the Debtors were being wasted, the Complaint fails to even allege that the Debtors were involved or participated in these transactions.

Furthermore, there are no specific – or even general – allegations of wrongdoing directed against Bhansali in connection with the Ithaca Trust.  *See* Compl. ¶¶ 66-73. While the Complaint describes in detail specific examples of alleged waste on the part of Fine Classic FZE, Modi and

Mehta relating to the Ithaca Trust, there are no allegations relating to or even referencing Bhansali. *See* Compl. ¶¶ 66-73. Indeed, there is no allegation that Bhansali had any involvement in, knowledge of, or responsibility for, any of the alleged transactions or activities surrounding the Ithaca Trust, or that he benefited from any such conduct. *See* Compl. ¶¶ 66-73. The Trustee also does not allege that Bhansali had any involvement in Fine Classic FZE, or that he directed its actions. *See* Compl. ¶¶ 66-73. The Debtors cannot bring a claim for corporate waste against Bhansali

The formation of the Ithaca Trust and its purchase of property cannot amount to a claim of corporate waste on behalf of the Debtors against Bhansali.

3.   <u>Allegations Surrounding the Purchase of the Essex Apartment Cannot Amount to Corporate Waste Against Bhansali</u>

The second allegation of corporate waste concerns the purchase of the so-called "Essex House Apartment" by Central Park Real Estate LLC ("CPRE") for the purported use of Modi as a personal residence. Compl. ¶¶ 75-84. In particular, it is alleged that CPRE was "owned by Firestar until approximately the end of 2009" at which time its ownership was transferred to Group. Compl. ¶ 75. It is further alleged that Firestar and Jaffe funds were used to purchase the property and pay monthly payments on the mortgage. Compl. ¶¶ 78, 80. However, the allegations surrounding the Essex House Apartment likewise fail to meet the stringent standards for pleading a claim for corporate waste against Bhansali.

First, once again the allegations surrounding the purchase of the Essex Apartment cannot amount to corporate waste against Bhansali because, apart from conclusory allegations, there is no claim of wrongdoing directed against him. *See* Compl. ¶¶ 74-84. On the contrary, it alleged that Firestar funded the purchase of the Essex House Apartment at the "direction from Modi and Gandhi" and "Modi told Gandhi to pay off the HSBC mortgage in full." Compl. ¶ 77, 80. The

only reference to Bhansali is that Bhansali "signed the deed [for the Essex House Apartment] on behalf of CPRE" and was copied on an email more than one year later, on December 5, 2008, in which Modi and Gandhi discussed that "Firestar had funded part of the Essex House purchase." Compl. ¶ 76, 78. However, there is no allegation that Bhansali signed the deed for the Essex House Apartment in his role as Director of the Debtors. There is also no allegation that he had any involvement or knowledge at the time of the purchase that Firestar monies were used to fund the acquisition. Neither is there any allegation that Bhansali had any involvement in or knowledge of the mortgage payments paid out for the Essex House Apartment. In fact, it is specifically alleged that these transactions occurred with the involvement of Modi and Gandhi. Bhansali cannot be held liable for the actions of others.

Second, the Complaint is devoid of any particularized facts demonstrating, as required, either that the Debtors received no consideration for the exchange or that the transfer of corporate assets served no corporate purpose. *Burtch*, 466 B.R. at 657 (setting forth the pleading requirements). As set forth above, to survive a motion to dismiss, "the complaint must allege particularized facts showing that the corporation, in essence, gave away assets for no consideration." *Green v. Phillips*, 1996 Del. Ch. LEXIS 76, at *17 (Ch. June 19, 1996). In fact, "[t]he transfer in question must either serve no corporate purpose or be so completely bereft of consideration that the 'transfer is in effect a gift.'" *Wagner v. Selinger*, 2000 Del. Ch. LEXIS 1, at *9 (Ch. 2000). And, "allegations of 'waste,' standing alone, will not be enough." *Stern*, 924 F.2d at 476. Indeed, the Court in *Criden v. Steinberg*, specifically held that where allegations of waste are "unaccompanied by any facts demonstrating that the corporation received nothing in kind" they are "merely conclusory." *Criden v. Steinberg*, 2000 Del. Ch. LEXIS 50, at *11 (Ch. Mar. 23, 2000).

Here, the Trustee alleges only that Bhansali directed the use of the Debtors' assets to purchase property to be held by an affiliated company under <u>joint ownership</u>. Compl. ¶¶ 75-84. However, that decision, by itself, cannot amount to a claim for corporate waste. There is no allegation that Bhansali approved these transactions on terms that were so one sided such that no person of ordinary, sound business judgment could conclude they represent a fair exchange. Nor is there any allegation that the Essex House Apartment was used in a manner that served no corporate purpose. There is also no allegation that Bhansali received some personal benefit from the purchase. Absent these allegations, the Complaint reveals no motivation for Bhansali to approve or direct the use of the Debtors' assets for anything less than reasonable value or a legitimate corporate purpose, and the decision should be afforded deference. *See Stern*, 924 F.2d at 476 (finding that "actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith"); *Bridgeport Hldgs. Inc. Liquidating Tr.*, 388 B.R. at 577 ("Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, ex post, to judge appropriate degrees of business risk.").

Therefore, the corporate waste claim must be dismissed for failure to state a claim.

### F. The Corporate Waste Claims are Time-Barred

Even if there were a viable corporate waste claim, the Trustee can only recover for alleged corporate waste after March 27, 2013, because the applicable six-year statute of limitations for waste bars any recovery before that date. *Golden Pac. Bancorp. v. FDIC,* 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for . . . corporate waste . . . is generally six years."); *Geltzer v. Altman (In re 1st Rochdale Coop. Gp., Ltd.),* 2008 U.S. Dist. LEXIS 4966, *7 (S.D.N.Y. 2008) (same). Courts have consistently barred claims for corporate waste where the purported waste occurred outside of the limitations period.  *See e.g., Zelouf Int'l Corp. v. Zelouf,* 5 N.Y.S.3d 331, 331 (N.Y. Co. 2014) (finding that where corporate waste was

committed from 2004 through 2010, funds misappropriated before 2007 were barred by the statute of limitations*); Blake v. Blake*, 638 N.Y.S.2d 632, 632 (App. Div. 1996) ("[M]ost of the alleged acts of corporate waste and breach of fiduciary duty occurred prior to August 13, 1975, and accordingly any cause of action with respect thereto is time-barred by the six-year State of Limitations.").

Again, the first allegation of corporate waste is the formation of the "Ithaca Trust" by Mehta supposedly using funds she received as dividends from Fine Classic FZE, a purported Shadow Entity in which she is the sole shareholder. Compl. ¶¶ 66-69. The complained of waste occurred, not at the time the Ithaca Trust was formed, but at the time the dividends were paid out by Fine Classic FZE to Mehta. While it is alleged that the Ithaca Trust was established in August 23, 2017, there is no allegation concerning when Mehta actually received these distributions. Even assuming any relation to the Debtors (which there is none), the Trustee's claims are time-barred to the extent that any such dividends were paid out prior to March 27, 2013.

The second allegation of corporate waste is the alleged purchase of the Essex Apartment House by Central Park Real Estate LLC ("CPRE") on March 26, 2007 and certain mortgage payments made by the Debtors thereafter. Compl. ¶ 76-77. Specifically, it is alleged that "Firestar funded $2 million of the approximately $5 million purchase price of the Essex House Apartment." Compl. ¶ 77. It is further alleged that Firestar "made at least $856,335 of the monthly payments on the mortgage between 2011 and 2018 and paid JW Marriot Essex House NY $15,828.35 in January 2018, after CPRE had been transferred from Group to the Ithaca Trust." Compl. ¶ 77. Thus, the Complaint, by its own terms, acknowledges that part of the alleged "waste" complained of, the funds used to purchase the Essex House Apartment, concluded at the latest on March 27, 2007 – the date that the property was purchased. The

Complaint further recognizes that some of the mortgage payments complained of occurred prior to March 2013. The six-year statute of limitations precludes recovery for any waste before March 27, 2013 and, therefore, any claim for corporate waste surrounding the purchase of the "Essex House Apartment" and mortgage payments paid out prior to March 27, 2013 should be dismissed. Therefore, the corporate waste claim must be dismissed as it is time barred.

### G. The RICO Claim Must be Dismissed

The Trustee also fails to allege properly a RICO claim. Congress enacted RICO for a limited purpose: as an "assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26 (1983); *see also United States v. Turkette*, 452 U.S. 576, 589 (1981). The narrowly construed statute has strict legal requirements and is not designed as a catch-all "instrument against all unlawful acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). For this reason, it is well settled that "[a] plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. 2013). Notably, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations marks omitted). Under these standards, the RICO claims asserted herein should be promptly dismissed.

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must plead "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In addition, a plaintiff must allege injury to his or her "business or property by reason of a violation of section

1962." *Id.* (quoting 18 U.S.C. § 1964(c)). Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

The Trustee has not even come close to meeting this high burden. First, he has no standing to assert a RICO claim because the Debtors have not been directly injured by the alleged RICO acts. Second, the RICO claim is time-barred. Third, the Trustee fails to allege the requisite predicate acts. Each of these separate, independent bases supports a dismissal of the RICO claims.

### 1. The Trustee Has No RICO Standing

The Trustee lacks standing to bring a RICO claim. RICO requires "a direct relationship between the plaintiff's injury and the defendant's injurious conduct. This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 650 (S.D.N.Y. 2011) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)). Thus, a plaintiff must allege injury to his or her business or property caused "by reason of the substantive RICO violation." *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (citing *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015)). In other words, to satisfy causation, a plaintiff must show that an alleged RICO violation is directly responsible for the injury. Accordingly, a court should not look "much beyond the first step of harm caused." *DDR Constr. Servs.*, 770 F. Supp. 2d at 652. This is because harm that is "contingent upon harm to another" will not satisfy standing requirements. *City of New York v. Smoke-Spirits.com, Inc.*, 541 F.3d 425, 440 (2d Cir. 2008); *Geiss v. Weinstein Co. Holdings LLC*, 2019 U.S. Dist. LEXIS 66364 at *27 (S.D.N.Y. 2019) (holding that "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering or predicate

acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants.") (citations omitted).

The Trustee alleges that each Debtor "has been injured in its business or property as a direct result" of and proximate result of the Rico Enterprise's violations (Compl. ¶ 153), but this allegation is conclusory as well as unsupportable. There is no question that the harm alleged here is derivative, and entirely contingent on the harm to non-party PNB. Tellingly, the Trustee alleges that the purported scheme by defendants "resulted in the *accrual of claim*s against the Debtors . . . ." Compl. ¶ 1 (emphasis added). As alleged in the Complaint itself, the purported scheme took a circuitous route to harm the Debtors. First, Modi and "others he directed" and "acting through at least three entities under Modi's control" (Compl. ¶ 19) obtained letters from PNB. PNB then advanced money to entities under Modi's control. Compl. ¶ 20. This purported fraud then led to investigations and criminal enforcement actions against Mr. Modi and others, which in turn lead to Modi's arrest in London. Compl. ¶ 25. This then led to "revelations" of the fraud in India which in turn lead to "supply chain disruptions and negative publicity" which "dramatically impaired the Debtors' business operations" eventually leading to vendors expressing "reluctance" to continue to do business with the Debtors. Compl. ¶ 26. As a result of that purported disruption and negative publicity, the Debtors filed for Chapter 11 bankruptcy. Compl. ¶ 26; *id.* ¶ 133 (describing the purported "proximately caused injury" as "destroying each Debtor's going-concern value and rendering each Debtor insolvent"); *id.* ¶ 158 (same). Following the bankruptcy filing, PNB asserted claims against the Debtors. Thus, the Complaint on its face demonstrates the multiple links in the chain of causation that led to the harm the Trustee now alleges was inflicted upon the Debtors.

-33-

Because *the Debtors* were not – and could not possibly be – the intended targets of the alleged scheme, the Trustee lacks standing. "In the RICO context, the Second Circuit has repeatedly announced that to have standing, a plaintiff must demonstrate that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI Holdings (Luxembourg) v. Pharoaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal quotations omitted).

The RICO harm alleged in the Complaint was directed at PNB, and the only reason the Debtors suffered harm was because the alleged scheme failed and was exposed, with all the subsequent harm flowing from that exposure. *See BCCI Holdings*, 43 F. Supp. 2d at 366 ("It is equally clear that the harm caused to plaintiff resulted from the exposure, investigation, and prosecution of the scheme by regulatory authorities, rather than from the predicate acts of wire fraud"); *Lewis ex re. American Express Co. v. Robinson,* 39 F.3d 395, 400-401 (2d Cir. 1994) (affirming dismissal of RICO allegations for lack of standing where "any losses to American Express were caused only because the scheme itself was exposed and thus failed"). Accordingly, this Court must dismiss the RICO claim because the Trustee lacks standing to pursue it. *See Geiss*, 2019 U.S. Dist. LEXIS 66364 at *26-28 (S.D.N.Y. 2019) (dismissing RICO claim for lack of standing); *BCCI Holdings*, 43 F. Supp. 2d at 365-366 (same).

## 2.   The RICO Claims are Time Barred

Even if the Trustee had standing to assert the alleged RICO claims, this Court should dismiss it, because they are time barred. The RICO claims are subject to a four-year statute of limitations. *See Rotella v. Wood*, 528 U.S. 549, 551 (2000). The limitations period begins to run "when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity . . . ." *Baiul v. William Morris Agency, LLC*, 2014 U.S. Dist. LEXIS 62633, at *17 (S.D.N.Y. 2014), *aff'd*, 601 F. App'x

58 (2d Cir. 2015). Moreover, the statute of limitations "runs even where the full extent of the

RICO scheme is not discovered until a later date." *Koch v. Christie's Int'l PLC*, 699 F.3d 141,

151 (2d Cir. 2012).

The Complaint was filed on March 27, 2019. According to the Complaint, "[t]he RICO

Enterprise's common purpose came into existence *no later than early 2011*, when Defendants

Modi, Bhansali, Gandhi implemented a scheme to defraud PNB by fraudulently obtaining LOUs

by exploiting the web of Shadow Entities and other Modi owned or controlled entities." Compl.

¶ 125 (emphasis added). The Debtors – whose shoes the Trustee stands in – necessarily

discovered or should have discovered the alleged RICO injury *no later than early 2011* when the

purported scheme was implemented. Because that injury arising from the alleged PNB Fraud

occurred before March 27, 2015, the RICO count is time barred.[7]

### 3.   The Trustee Fails to Plead Adequately the Requisite RICO Predicate Acts

Even if the Trustee had standing to allege a RICO violation, and even if the RICO claims

were timely, this Court should dismiss them. The Trustee fails to plead that Bhansali committed

the requisite RICO predicate acts, which amounts to a fatal pleading defect. RICO defines an

exclusive list of predicate acts of racketeering. *See* 18 U.S.C. § 1961(1). "[T]o establish a

violation of § 1962(c), plaintiffs must allege that each defendant committed at least two predicate

acts of racketeering activity" and that these predicate acts occurred within a 10-year period.

*Jerome M. Sobel & Co. v. Fleck*, 2003 U.S. Dist. LEXIS 21362, at *18-19, 25-26 (S.D.N.Y.

2003); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.

1999). "[T]o comply with Rule 8, a complaint should offer specification as to the particular

---

[7] Were the Trustee to assert that the statute of limitations did not begin to run until PNB filed its claim in this bankruptcy, which allegedly caused the Debtors harm, such assertion would serve to highlight that the Trustee has no standing to assert a RICO action on behalf of Debtors because the harm to the Debtors must proximately flow from the alleged RICO violation. *See supra* Section G(1).

activities by any particular defendant" allegedly constituting a RICO predicate act. *See Harris v. NYU Langone Med. Ctr.*, 2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. 2013); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (the focus of § 1962(c) "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise").   And where the RICO predicates sound in fraud (as do the Trustee's allegations) higher pleading standard of Rule 9 must be met, requiring the Trustee to "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."   *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotations and citation omitted).

The Complaint pleads three predicate acts: (1) mail and wire fraud; (2) violation of the National Stolen Property Act; and (3) money laundering.

### i.   The Trustee Fails to Plead Mail and Wire Fraud Against Bhansali

To establish a claim for mail or wire fraud, a plaintiff must allege "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir 2007) (internal quotation marks omitted); *see also Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 600 (S.D.N.Y. 2015).   To establish the first element, the Complaint must allege "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted).   Notably, a scheme to defraud requires actual misrepresentation of material facts by each Defendant. *See Lundy v. Catholic Health Sys. of*

*Long Island, Inc*., 711 F.3d 106, 119 (2d Cir. 2013) (complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which [P]laintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements"). Moreover, it is "not sufficient that [the] defendant realizes that [a] scheme is fraudulent and that it has the capacity to cause harm to its victims." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Rather, the Trustee must "demonstrate that [each] defendant had a 'conscious knowing intent to defraud . . . [and] that the defendant contemplated or intended some harm to" Debtors' property rights. *Id.* Finally, the Trustee must plead each of these elements with particularity for each Defendant. Fed. R. Civ. P. 9(b); *DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")

The Complaint fails to establish that Bhansali engaged in mail or wire fraud because it fails to allege with any specificity that Bhansali had the requisite intent to defraud Debtors. This is evidenced by a consideration of the mails and wires listed by the Trustee. The Complaint lists ten examples of mails and wires, only two of which actually reference Bhansali at all – and both involve communications *before* March 2015 when the statute ran. One is a "September 7, 2011 email communication in which Modi, Bhansali and Gandhi coordinated their communication to prevent detection of the PNB fraud." Compl. ¶ 130(f). The Trustee's conclusory description does not even match the email described in the Complaint. Compl. ¶ 64. Gandhi is alleged to have told Standard Charter Bank that certain entities were not in fact customers and that Firestar would purchase large diamonds from them as vendors. Compl. ¶ 64. Bhansali, who was on the email, is alleged to have forwarded Gandhi's email with Standard Charter to Modi and then Modi

-37-

responded back. Compl. ¶ 64. There is nothing remarkable, or even telling, about this email. Rather, it is another example of the Trustee attempting to twist innocuous communications to fit into his claims of fraudulent activity, and his contention that it somehow supports a RICO claim is an indication of the claim's inherent weakness. Similarly, the second communication references a November 20, 2012 email "in which Bhansali instructed Gandhi to cycle approximately $750,000 from Fantasy through FIL and Firestar and back to Fantasy to clear old invoices drawing unwanted attention from bankers." Compl. ¶ 130(g). Once again, there is nothing noteworthy about the actual exchange. Compl. ¶ 38. The description of the communication does not demonstrate any intent on the part of Bhansali to defraud the Debtors or establish any connection with the PNB fraud.

Finally, even if the Trustee had alleged any misrepresentation by Bhansali, or the requisite intent to defraud, the RICO claim based on a predicate act of mail or wire fraud fails because the Complaint does not allege that Bhansali "contemplated . . . harm to the property rights of the victim." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). "A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with" and the property right must be one "of the victim." *Pierce*, 224 F.3d at 129, 165. Here again, if there were any "intended harm," it was to PNB, and not the Debtors.[8] For all of the above reasons, the Trustee has failed to allege the requisite predicate acts under the Mail and Wire Fraud statute.

---

[8] Yet another fatal flaw is that the Trustee fails to satisfy the requisite participation in the alleged RICO enterprise by Bhansali, for all of the reasons described in this section. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) ("[O]ne is liable under RICO only if he 'participated in the operation or management of the enterprise itself.'") (internal quotation marks and citation omitted).

ii.   *The Trustee Fails to Plead Violations of the National Stolen Property Act
Against Bhansali*

To plead adequately a violation of the National Stolen Property Act, the Trustee must allege that the defendant caused to be transported, transmitted or transferred in interstate commerce property – defined under the statute to include money – having a value of at least $ 5,000 knowing that such property had been stolen, converted or taken by fraud. *See United States v. Agrawal*, 726 F.3d 235, 251 (2d Cir. 2013). Like the allegations of mail fraud and wire fraud, the alleged predicate racketeering acts under this Act must be pled in accordance with the heightened pleading requirements of Rule 9(b). *See Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp.3d 432, 456 (S.D.N.Y. 2018) (noting that all allegations of fraudulent predicate acts in a civil RICO claim, including conduct under the National Stolen Property Act, are subject to the heightened pleading requirements).

In support of its RICO claim, the Trustee provides a laundry list of conclusory statements about Firestar having received various funds from LOUs, which were purportedly "fraudulently procured." Compl. ¶ 135. The Trustee alleges in similarly conclusory fashion that the "Defendants Modi, Bhansali or Gandhi knew the property was transferred, received or disposed of had been stolen, converted, or taken by fraud." Compl. ¶ 136 (emphasis added). The Trustee's use of the disjunctive to describe who knew of the stolen property – indicating an inability to plead specifically that Bhansali (or any one of the Defendants) was in fact aware of the "stolen property" – is fatal to this claim. The Trustee has not alleged the requisite intent by Bhansali. *See* 18 U.S.C. § 2314 ("Whoever transports . . . in interstate or foreign commerce . . . money . . . knowing the same to have been stolen, converted or taken by fraud . . . .").

        *iii.    The Trustee Fails to Plead Money Laundering Violations Against Bhansali*

To state a proper claim of money laundering, a "plaintiff must plead that (1) the defendant conducted a financial transaction in interstate commerce; (2) the defendant knew that the property involved in the transaction represented some form of specific unlawful conduct; (3) the transaction involves the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds." *See Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675, at *53 (S.D.N.Y. 1999). The Trustee alleges that Defendants, including Bhansali, "conducted financial transactions involving the PNB Fraud." Compl. ¶ 144. For all of the reasons described above, the Trustee has failed to allege with any particularity that Bhansali knew about the PNB fraud, that he knew the "property involved" represented "some form of specific unlawful conduct", and that he had the requisite intent to conceal the origin of the funds. *See United States v. Gotti*, 457 F. Supp.2d 411, 422-23 (S.D.N.Y. 2006) ("The 'intent to conceal' the illicit origin of funds is the hallmark of money laundering."). As the Complaint does not plead predicate acts, the RICO claim is fatally deficient.

        4.  <u>The Trustee Fails to Plead RICO Conspiracy</u>

The Complaint also fails to allege a conspiracy by Bhansali to violate RICO under 18 U.S.C. § 1962(d). Because the Complaint does not plead a substantive RICO violation, its conspiracy claim necessarily must fail. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (stating that RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *New York v. UPS, Inc.*, 2016 U.S. Dist. LEXIS 105038, at *13 (S.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that '[a]ny claim under § 1962(d) based on conspiracy to violate the other subsections of

section 1962 necessarily must fail if the substantive claims are themselves deficient.'") (internal

quotation and citation omitted).

## V.    CONCLUSION

For the reasons set forth above, it is respectfully submitted that the Motion must be

granted in its entirety.

Dated:  New York, New York
         May 28, 2019

WHITE AND WILLIAMS LLP

*/s/ Thomas E. Butler*
Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*