UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

**MEMORANDUM OF LAW OF DEFENDANT AJAY GANDHI IN
SUPPORT OF HIS MOTION TO DISMISS THE ADVERSARY COMPLAINT**

Dated: New York, New York
       May 28, 2019

**SERPE RYAN LLP**

Silvia L. Serpe
Paul W. Ryan
16 Madison Square West
New York, New York 10010
(212) 257-5010
sserpe@serperyan.com
pryan@serperyan.com

*Attorneys for Defendant Ajay Gandhi*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ALLEGATIONS SPECIFIC TO MR. GANDHI………………………………………………3

ARGUMENT………………………………………………………………………………...4

    A.  THE TRUSTEE MUST MEET A HEIGHTENED PLEADING STANDARD………...4

    B.  THE TRUSTEE LACKS STANDING TO ASSERT CLAIMS ON BEHALF OF PNB…5

    C.  THIS COURT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIM….5

        1.    The Breach of Fiduciary Duty Claim is Time-Barred………………………………6

        2.    The Trustee Fails to State a Claim for Breach of Fiduciary Duty…………………...8

    D.  THIS COURT SHOULD DISMISS THE CORPORATE WASTE CLAIM……………..11

    E.  THIS COURT SHOULD DISMISS THE RICO CLAIM………………………………...12

        1.    The Trustee Has No RICO Standing…………………………………………13

        2.    The RICO Claim is Time Barred……………………………………………15

        3.    The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts.16

            a.    The Trustee Fails to Adequately Plead Mail and Wire Fraud………………17

            b.    The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act…………………………………………………………………20

            c.    The Trustee Fails to Adequately Plead Money Laundering…………….…..21

    F. THIS COURT SHOULD DISMISS THE RICO CONSPIRACY CLAIM……… .21

CONCLUSION ...................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)................................................................................4

*Baiul v. William Morris Agency*, LLC, No. 13 CIV. 8683 KBF, 2014 U.S. Dist. LEXIS 62633
(S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015). ..........................15, 16

*BCCI Holdings (Luxembourg) v. Pharoaon*, 43 F.Supp. 2d 359 (S.D.N.Y. 1999) .....................15

*Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp.3d 432 (S.D.N.Y. 2018) ...20

*Beatrice Invs., LLC v. 940 Realty LLC*, 2018 N.Y. Misc. Lexis 2008 (1ˢᵗ Dept 2018) ...............8

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)................................................................4

*Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. 1999) .............................21

*City of New York v. Smoke-Spirits.com, Inc.* 541 F.3d 425 (2d Cir. 2008)..................................14

*Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. Lexis 80639 (S.D.N.Y. 2019)..............9, 10

*Clark v. Nevis Capital Management, LLC,* 2005 U.S. Dist Lexis 3158 (S.D.N.Y. 2005).............7, 10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229 (2d Cir. 1999)..........................16

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013)................................................17

*DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627 (SDNY 2011)..........................13, 14

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001)...............................................................13

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)………………18

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ..............................21

*Geiss v. Weinstein Co. Holdings LLC*, 2019 U.S. Dist. LEXIS 66363 (S.D.N.Y. 2019) .............14, 15

*Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328

(S.D.N.Y. July 9, 2013) ......................................................................................16

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ..................................12

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995).............................................5

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009) ........................................ 6

*In re Argo Communications Corp.*, 134 B.R. 776 (Bankr. S.D.N.Y. 1991) .................................... 5, 6

*In re Grumman Olson Indus.*, 329 B.R. 411 (Bankr. S.D.N.Y. 2005) ............................................ 4

*In re Mundo Latino Market Inc.*, 590 B.R. 610 (Bankr. S.D.N.Y. 2018) ...................................... 11

*Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362
    (S.D.N.Y. Dec. 1, 2003) ...................................................................................................... 16

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) ................................ 12

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ........................................................ 16

*Lewis ex rel. American Express Co. v. Robinson*, 39 F.3d 395 (2d Cir. 1994) ............................ 15

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) .................. 17, 18

*Marino v. Grupo Mundial Tenedora, S.A.*, 810 F Supp. 2d 601 (S.D.N.Y. 2011) .......................... 8

*McHale v. Citibank, N.A.*, 420 B.R. 178 (Bankr. S.D.N.Y. 2009) .............................................. 5

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983) ........................................................ 13

*New York v. UPS, Inc.*, No. 15-CV-1136 (KBF), 2016 U.S. Dist. LEXIS 105038
    (S.D.N.Y. Aug. 9, 2016) ...................................................................................................... 21

*Nightingale Group, LLC v. CW Capital Management, LLC*, 2012 U.S. Dist. LEXIS 93197
    (S.D.N.Y. July 5, 2012) ........................................................................................................ 4

*Pereira v. Cogan*, 294 B.R. 449 (S.D.N.Y. 2003) ................................................................ 10

*Rotella v. Wood*, 528 U.S. 549 (2000) ................................................................................ 15

*Russello v. United States*, 464 U.S. 16 (1983) .................................................................... 12

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124 (S.D.N.Y. 1994) ........................................ 10

*Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585
    (S.D.N.Y. Nov. 19, 2013). .................................................................................................... 12

*United States SBA v. Feinsod*, 347 F. Supp. 3d 147 (E.D.N.Y. 2018). ...................................... 11

*United States v. Gotti*, 457 F. Supp.2d 411 (S.D.N.Y. 2006) .................................................. 21

*United States v. Guadagna*, 183 F.3d 122 (2d Cir. 1999) .................................................. 18, 20

*United States v. Persico*, 832 F.2d 705 (2d Cir. 1987) ......................................................................... 17

*United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000) .......................................................................... 17

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) ........................................................................... 17

*United States v. Turkette*, 452 U.S. 576 (1981) ................................................................................... 12

*Welch Foods v. Gilchrist*, 93 Civ. 0641E(F), 1996 U.S. Dist. LEXIS 15819
    (W.D.N.Y. Oct. 18, 1996)………………………………………………………………………20

*Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) ...................... 13, 17

Defendant Ajay Gandhi submits this memorandum of law in support of his motion to dismiss all claims against him in the adversary proceeding pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure for failure to state a claim, and joins in the Memorandum of Law of Defendant Mihir Bhansali in Support of His Motion to Dismiss the Adversary Complaint.

## PRELIMINARY STATEMENT

The Trustee's adversary complaint against Mr. Gandhi lacks substance. He audaciously asserts claims that he has no standing to bring, which are stale, and which fail to state a claim. Disguised as breach of fiduciary duty, corporate waste, and civil RICO claims, the Trustee alleges a fraudulent scheme orchestrated by defendant Nirav Deepak Modi, the former controlling owner of the Debtors, who has been arrested in London and will be extradited to India to face criminal charges arising out of what the Trustee refers to as the PNB Fraud. The Complaint describes the PNB Fraud as a scheme that began eight years ago – outside the applicable statute of limitations – in which Mr. Modi obtained loans from Punjab National Bank, a government owned Indian bank, under allegedly false pretenses and without collateral via a purportedly fraudulent practice referred to as "round tripping" in which diamonds were exported from and re-imported back into India multiple times in transactions involving numerous companies, all of which were controlled by Mr. Modi. Notably, Mr. Gandhi – the former Chief Financial Officer of the Debtors – has never been charged with any crime. Nonetheless, the Trustee seeks to hold Mr. Gandhi liable for following the instructions of Mr. Modi, who is described by the Trustee as "exert[ing] total ultimate control over Debtors' affairs" and who had "omnipresent oversight and control" over the Debtors.

Relying on a number of emails that on their face are far from nefarious, the Trustee insinuates that Mr. Gandhi knew of Mr. Modi's fraudulent scheme. But the Trustee does not allege a cause of action for fraud against Mr. Gandhi, and his attempts to wrangle liability under fiduciary duty, corporate waste and civil RICO fall short. First, the Trustee lacks standing to asserts claims

against Mr. Gandhi where the injury alleged is to PNB, rather than the Debtors, in whose shoes the Trustee stands. Although this applies to all claims against Mr. Gandhi that are based on the PNB Fraud, it is particularly true in the context of civil RICO. The two civil RICO counts are fatally flawed because the intended target of the alleged RICO scheme was PNB, and not the Debtors.

Second, the bulk of the claims against Mr. Gandhi are time barred. The Complaint is rife with allegations that date back to 2010 and 2011, and even the few allegations that fall within the applicable statute of limitations ultimately fall short because they do not state a claim against Mr. Gandhi. Specifically, with respect to breach of fiduciary duty, the Trustee fails to meet the heightened pleading standard with conclusory allegations that Mr. Gandhi somehow caused the Debtors to engage in the PNB Fraud, and that he failed to stop Mr. Modi from allegedly "usurping" the managerial responsibilities of defendant Mihir Bhansali, the former Chief Executive Officer. With respect to the corporate waste claim, the Trustee fails to allege that the Essex House Apartment, in which Mr. Modi resided when he was in New York and worked out of Debtor's New York office, was used for an improper or unnecessary purpose. At Mr. Modi's direction, Mr. Gandhi made certain mortgage payments for that residence with debtor funds. The Trustee fails to allege that as CFO, Mr. Gandhi did not receive comfort that either the payments would be repaid, or that such expense was justified.

Finally with respect to civil RICO, the claim falls outside of the applicable statute of limitations, and the Trustee fails to adequately plead the requisite predicate acts against Mr. Gandhi. In addition to the Trustee's lack of standing to pursue the civil RICO claims, each of the other shortcomings warrants dismissal. Accordingly, for all of the many independent reasons addressed below, this Court should dismiss all of the allegations against Mr. Gandhi.

## ALLEGATIONS SPECIFIC TO MR. GANDHI

The Complaint alleges that beginning in 2011, Mr. Modi devised and orchestrated a scheme to defraud PNB by obtaining loans and other funds under false pretenses and without collateral. (Complaint, ¶ 18). PNB advanced over $1 billion under allegedly false pretenses and without collateral via a purportedly fraudulent practice referred to as "round tripping" in which diamonds were exported from and re-imported back into India multiple times in transactions involving numerous companies, all of which were controlled by Mr. Modi. (*Id.*, ¶ 20). The Complaint also alleges that Mr. Modi purchased a residence in New York, referred to as the Essex House Apartment, which was funded in part by Firestar, one of the debtors that had its principal place of business in New York. (*Id.*, ¶76). That purchase was done in 2007, well outside the statute of limitations, and Firestar allegedly paid off the balance on the mortgage in December 2017. (*Id.*,¶ 80). Notably, the Complaint is silent as to whether the debtor funds were loaned and ultimately repaid by Mr. Modi. The Complaint also describes a purchase of a residence by Mr. Modi referred to as the Ritz Carlton Apartment, but there is no allegation that debtor funds were used to pay for that apartment. (*Id.*, ¶¶ 70-73).

The Complaint asserts four causes of action against Mr. Gandhi:  breach of fiduciary duty (Count 2); corporate waste (Count 5); RICO (Count 6) and RICO conspiracy (Count 7). Specifically, it alleges that he:

- served as the Chief Financial Officer ("CFO") of each Debtor (Complaint, ¶¶ 1, 15);

- was part of a fraud, referenced in the Complaint as the "PNB Fraud", which is defined as a seven year scheme orchestrated by defendant Modi "and others he directed" to "obtain loans, credits, or other funds under false pretenses and without collateral from Punjab National Bank ("PNB")" (*id.*, ¶¶ 19, 34, 62);

- "controlled the finances of the Debtors" and "coordinated and directed transactions among the Debtors and Shadow Entities," defined as more than twenty foreign shell companies secretly controlled by Mr. Modi (*id.*, ¶¶ 20, 49, 50);

3

- received detailed instructions from defendant Modi to perform various functions (*id.* at ¶¶ 58-63);

- "allow[ed] Modi to usurp Bhansali's management responsibilities and decision-making authority" (*id.* at ¶ 97);

- "caus[ed] the Debtors to engage in the PNB Fraud," and "caus[ed] the Debtors to expend corporate assets to acquire properties for the personal benefit of Modi and his family" (*id.* at ¶ 97).

## ARGUMENT

### I.

### THIS COURT SHOULD DISMISS THE TRUSTEE'S CLAIMS AGAINST MR. GANDHI FOR FAILURE TO STATE A CLAIM

#### A. The Trustee Must Meet a Heightened Pleading Standard

To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This means that the Complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Here, these pleading requirements are heightened because a plaintiff must plead each of the claims sounding in fraud with particularity. *See Nightingale Group, LLC v. CW Capital Management, LLC,* 2012 U.S. Dist. LEXIS 93197, *23-24 n.14 (S.D.N.Y. July 5, 2012) (noting "[w]here RICO claims sound in fraud-as the RICO predicate acts do here-Rule 9(b) imposes a heightened pleading standard"); *In re Grumman Olson Indus.,* 329 B.R. 411, 429 (Bankr. S.D.N.Y. 2005) ("Fraud, *per se,* is not an element of a claim for breach of fiduciary duty. Nevertheless, the allegations must satisfy

FED. R. CIV. P. 9(b) if the claim is based on fraudulent conduct.").[1] As discussed below, the Trustee fails to meet this standard.

### B. The Trustee Lacks Standing to Assert Claims on Behalf of PNB

As more fully explained in connection with the RICO claims, *see infra* Section E1, the majority of the Trustee's claims emanate from the purported PNB Fraud, and the resulting injury to PNB. It is that alleged fraud that led to the "accrual of claims against the Debtors of over $1 billion in favor of" PNB. (Complaint, ¶1). The Trustee's standing to assert claims, however, is limited to "those actions that the debtors could have brought prior to the bankruptcy proceeding." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995). It is for this reason that the Trustee is said to "stand[] in the shoes of the debtors". *Id.* Significantly, when creditors – such as PNB – "have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee *is precluded* from doing so." *Id.* (emphasis added); *see also McHale v. Citibank, N.A.*, 420 B.R. 178, 194 (Bankr. S.D.N.Y. 2009) ("Courts in this Circuit have consistently rejected attempts by trustees to assert claims for injuries that are particularized to creditors."). This standing requirement is necessary to avoid the possibility of the Defendants facing duplicative claims from PNB. Accordingly, this Court should dismiss the Complaint, because the fact that the Trustee seeks to assert claims for injuries particular to PNB is an incurable pleading defect.

### C. This Court Should Dismiss the Breach of Fiduciary Duty Claim

The Trustee alleges that Mr. Gandhi breached a fiduciary duty to Debtors by allowing Modi to "usurp" Bhansali's management responsibilities, "causing" the Debtors to engage in the PNB Fraud, and "causing" the Debtors to waste corporate assets on properties for Mr. Modi. (Complaint, ¶97). The breach of fiduciary duty claims fail for two reasons. First, the claims are barred on statute

---

[1] The Trustee's corporate waste cause of action is based on the identical alleged conduct underlying his breach of fiduciary duty cause of action, and should therefore be subjected to the same heightened pleading requirement. (Complaint, compare ¶113 with ¶97). *See In re Argo Communications*

of limitations grounds, and second, the Trustee fails to allege a breach of fiduciary claim against Mr. Gandhi with the requisite specificity.

1.    *The Breach of Fiduciary Duty Claim is Time-Barred*

The Trustee's breach of fiduciary duty claim against Mr. Gandhi is stale. This court should apply a three-year statute of limitations, instead of the six-year statute of limitations, because the Trustee fails to allege that Mr. Gandhi engaged in any fraud, but rather that he violated his duty of care and loyalty. But even if this Court were to apply a six-year statute of limitations, the allegations in the complaint concern events that transpired before March 27, 2013. Accordingly, the Court should dismiss this claim as time barred.

The statute of limitations for a breach of fiduciary duty claim is either three or six years depending on the remedy sought. Where the plaintiff alleges equitable relief, then the six-year statute of limitations applies, but where the plaintiff only seeks monetary damages – as here – then the three-year period applies. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). The only time that a six-year statute of limitations will apply to a fiduciary duty claim that solely seeks monetary damages is where "an allegation of fraud is essential to a breach of fiduciary duty claim." *Id.*

Here, the Trustee does not allege that Mr. Gandhi committed a fraud. The Complaint does not allege that Mr. Gandhi stole or profited at all from the alleged wrongdoings. Instead it alleges that Mr. Modi "and others at his direction" engaged in the PNB Fraud, and that the Debtors engaged in circular trading. As to Mr. Gandhi, the Trustee alleges that he violated his duty of care and loyalty by: (a) "allowing Modi to usurp Bhansali's management responsibilities and decision-making authority"; (b) "causing the Debtors to engage in the PNB Fraud," and (c) "causing the Debtors to expend corporate assets to acquire properties for the personal benefit of Modi and his family". (Complaint, ¶ 97). These conclusory allegations do not allege with particularity that Mr.

Gandhi: (1) made any materially false representations, (2) had the requisite intent to defraud, or (3) that anyone reasonably relied on any representations. *See Clark v. Nevis Capital Management, LLC,* 04 Civ. 2702 (RWS), 2005 U.S. Dist. LEXIS 3158, 45 (S.D.N.Y. 2005). Accordingly, this Court should apply a three-year statute of limitations to the Trustee's breach of fiduciary duty claim against him.[2]

The Complaint is dominated by allegations that pre-date March 27, 2013[3], and the majority of which pre-date March 27, 2016. With respect to (a) above, the conclusory allegation begs the following question: when exactly did Mr. Gandhi allow Mr. Modi – the owner of the company – to "usurp" the management responsibilities of Mr. Gandhi's boss – Mr. Bhansali, the Chief Executive Officer (CEO)? The Complaint is silent as to that, but broadly claims that there is a seven-year period (2011 to 2018) that the Trustee characterizes as the Relevant Period in which Mr. Modi engaged in the PNB Fraud. (Complaint, ¶ 18).

But what did Mr. Gandhi do *after* March 27, 2016 to allegedly cause the Debtors to engage in the PNB Fraud, or to allegedly cause the Debtors to use corporate funds to acquire personal property for Mr. Modi? In the eight allegations that the Trustee specifies as to Mr. Gandhi, there is only one email that falls within the three-year statute of limitations: a May 5, 2017 email, in which he allegedly sent a list of the alleged Shadow Entities to a back-office employee in India, and asked him not to share the list with anyone. This email does not form the basis of a breach of fiduciary duty

---

[2] Were the Court to hold that the breach of fiduciary duty claim is based upon fraud by Mr. Gandhi and apply the six year statute of limitations, the discovery rule would not resuscitate the claim because on the face of the complaint, the Debtors knew of the very things that the Complaint alleges Mr. Gandhi "caused" them to do prior to March 27, 2013.

[3] The majority of the allegations regarding the alleged PNB Fraud are in 2011, and some are even before then. (Complaint, ¶¶ 29-31, 64; 62 (communications regarding the PNB Fraud in 2009); 63 (communications regarding circular trading in 2010).

claim, especially as to someone who is alleged to have been directed by his boss, Mr. Modi, to

provide such information.[4]

With respect to the allegation of expending corporate assets to acquire Mr. Modi's personal

assets, the Complaint alleges only one example: the Essex House Apartment, but that was purchased

in 2007, well outside the statute of limitations. (Complaint, ¶ 76). Thus, this Court should dismiss

the breach of fiduciary duty claim as untimely.[5]

2.      *The Trustee Fails to State a Claim for Breach of Fiduciary Duty*

Under New York law, the elements of a breach of fiduciary duty claim are the existence of a

fiduciary relationship, misconduct by the other party, and damages directly caused by that party's

misconduct. *See Beatrice Invs., LLC v. 940 Realty LLC*, 2018 N.Y. Misc. Lexis 2008, *23-24 (1st Dept

2018).[6] The Trustee alleges that Mr. Gandhi breached his fiduciary duty to the Debtors by (a)

"allowing Modi to usurp Bhansali's management responsibilities and decision-making authorities" in

violation of his duty of care, (b) causing the Debtors to engage in the PNB Fraud, and (c) causing

---

[4] This is also true for those allegations that fall within a six-year statute of limitations. As to Mr. Gandhi, the Complaint claims that he directed that a wire be sent in March 2014 and in February 2015 from Firestar to alleged "Shadow Entities". (Complaint, ¶ 51). It also alleges a few communications or reports sent by him in 2010 and 2013. (*Id.*, ¶¶ 52, 53, 54, 55). These allegations do not constitute a timely breach of fiduciary duty claim where they merely describe actions taken by Mr. Gandhi at the direction of his boss.

[5] The Complaint alleges generally that Firestar made "at least $856,335 of the monthly payments on the mortgage between 2011 and 2018" on the Essex House Apartment, but it is unclear what payments were made within the statute of limitations except that it is alleged that $15,828.35 was made in January 2018. (Complaint, ¶ 77). The Complaint also alleges that Mr. Modi directed Mr. Gandhi to pay off the HSBC mortgage on that property in December 2017 from Firestar funds. (*Id.,* ¶ 80). To the extent any of these allegations are timely, they fail to state a breach of fiduciary duty claim against Mr. Gandhi. S*ee infra* Section C2.

[6] For breach of fiduciary duty claims, New York applies the law of the state of incorporation. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F Supp. 2d 601, 607 (S.D.N.Y. 2011). Here, all the Debtors except for Jaffe are alleged to be incorporated in Delaware. (Complaint, ¶¶ 8-10). Under Delaware law, the elements of a claim for breach of fiduciary duty are the same as in New York, except that in Delaware, the plaintiff need not establish the third element: damages resulting from the breach. *Id.* (discussing Delaware law).

the Debtors to expend corporate assets on Mr. Modi's behalf. (Complaint, ¶97). The first allegation

makes no sense. As alleged, Mr. Gandhi was the CFO of Firestar, and he reported to Mr. Bhansali,

the CEO. Mr. Gandhi was in no position to "allow" Mr. Bhansali to do anything, let alone to

prevent him from somehow allowing Mr. Modi, who "owned and controlled 94.88%" of the

company, (*Id.,*¶13), from exercising decision-making authority at his own company. The Trustee

offers no allegations to explain *how* Mr. Gandhi allowed his boss's boss to in turn usurp his boss's

authority or even how such a state of affairs was possible. As alleged, it was Mr. Modi who

"orchestrated and directed" the purported PNB Fraud, and who "exerted total ultimate control over

Debtors' affairs" and who had "omnipresent oversight and control" over the Debtors. (Complaint,

¶¶18, 58, 88). Moreover, the allegation that Mr. Modi somehow "usurped" Mr. Bhansali's executive

functions is at odds with the rest of the Complaint, which alleges that Mr. Bhansali coordinated with

Mr. Modi. (*Id.,* ¶¶ 35, 38, 44, 64, 130(f)).

The allegation that Mr. Modi "caused the Debtors to engage in the PNB Fraud" also fails.

The Trustee is essentially advancing a fraud claim repackaged as a breach of fiduciary duty. Because

this claim is rooted in fraud, Rule 9(b) applies. "To properly plead fraud claims pursuant to Rule

9(b), a plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent." *Clark v. Advanced Composites

Grp.*, 16 Civ. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639 at *52-53 (S.D.N.Y. 2019) (internal

citations and quotations omitted).[7]

Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the

complaint should inform each defendant of the nature of [its] alleged participation in the fraud."

---

[7] To the extent that there is tension between the argument that three year statute of limitations applies to these breach of fiduciary duty claims, and that particularity is required, the Trustee must choose. He cannot benefit from a six year statute of limitations and argue that pleading with particularity is not required.

*Advanced Composites*, 2019 U.S. Dist. LEXIS 80639 at *53 (internal citations and quotation omitted).

Although scienter may be averred generally, the plaintiff must allege facts that give rise to a strong

inference of fraudulent intent. *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (S.D.N.Y.

1994). Thus, the Trustee must allege facts that give rise to a strong inference of fraudulent intent by

"(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by

(2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *Nevis Capital,* 2005 U.S. Dist. LEXIS 3158 at *51 (internal quotation marks and

citation omitted). With respect to Mr. Gandhi, the Trustee has not done that. He has not alleged that

Mr. Gandhi knew the alleged circular transactions were fraudulent. He also does not allege that Mr.

Gandhi owned any portion of the debtor companies, or that Mr. Gandhi benefitted or even stood to

benefit from the alleged fraud.

Notably, as an officer (and not a director), Mr. Gandhi can only be liable for a breach of

fiduciary duty where he had "discretionary authority in the relevant functional area and the ability to

cause or prevent the complained-of action." *Pereira v. Cogan*, 294 B.R. 449, 522 (S.D.N.Y. 2003)

(abrogated on other grounds). As the Complaint alleges, it was Mr. Modi – and not Mr. Gandhi –

who had "omnipresent oversight and control" over the Debtors. (Complaint, ¶58). Thus, the

conclusory allegation that Mr. Gandhi breached his fiduciary duties of care and loyalty by "causing"

the Debtors to expend corporate assets for the personal benefit of Mr. Modi is insufficient to state a

claim, and belied by the allegations in the Complaint as to Mr. Modi. (Complaint, ¶80 (specifying

that "Modi told Gandhi to pay off the HSBC mortgage in full."). There is no basis to hold Mr.

Gandhi liable for following a direction from his boss, the sole owner of the corporation whose

assets were allegedly wasted. The Trustee does not allege – nor could he – that Mr. Gandhi

controlled the Debtors, which are Mr. Modi's companies. Thus, the conclusory allegations as to Mr.

10

Gandhi, which are inconsistent with other allegations in the Complaint, do not satisfy the pleading requirement with respect to breach of fiduciary duty.

Finally, the breach of fiduciary duty claim fails as to Debtor A. Jaffe, which is incorporated in New York, because the Trustee has failed to plead damages that are directly caused by Mr. Gandhi's alleged misconduct. The conclusory allegation that Mr. Gandhi's breach of fiduciary duty "proximately caused the Debtors to suffer injury" (Complaint, ¶98) is facially flawed – the injury directly flowing from the breach of fiduciary allegations (except for the allegation that mirrors the corporate waste cause of action) is an injury to PNB, and not to the Debtors. *See infra* Section E1. For all of the above reasons, this Court should dismiss all of the breach of fiduciary duty claims against Mr. Gandhi.

### D.    This Court Should Dismiss the Corporate Waste Claim

The Trustee alleges broadly that Mr. Gandhi committed corporate waste of the Debtors assets by *either* "directing the Debtors and their officers to use corporate assets to acquire properties for the personal benefit of Modi and his family" *or* "by facilitating" *or* "permitting such use". (Complaint, ¶ 113). First, because this claim is identical to the breach of fiduciary duty claim, many of the above reasons warranting dismissal of that claim apply equally here. (*Compare* Complaint ¶ 113 and ¶ 97). Second, the Complaint fails to allege the elements of a corporate waste claim. In one recent bankruptcy decision, the Court noted:

> In New York, [t]he essence of waste is the diversion of corporate assets for improper or unnecessary purposes. … Corporate waste occurs when assets are used in a manner so far opposed to the true interests [of the corporation so] as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests.

*In re Mundo Latino Market Inc.*, 590 B.R. 610, 619 (Bankr. S.D.N.Y. 2018) (internal quotations and citations omitted).[8]

---

[8] The requirements for pleading a claim of corporate waste under both Delaware and New York law are substantially the same.  *See United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 166, n. 18 (E.D.N.Y. 2018).

The only corporate waste allegation in the Complaint pertaining to Mr. Gandhi concerns the Essex House Apartment, and the only timely allegation regarding that residence is that Mr. Modi directed him to have Firestar pay the balance on the mortgage in February 2017. (Complaint, ¶ 80). That allegation is insufficient to hold Mr. Gandhi liable for corporate waste. The Complaint fails to allege that the apartment served no business purpose, or that the corporation had not received adequate consideration. Instead, the Essex House Apartment was used to house Mr. Modi – the owner of that entity – when he was in New York, where Firestar had its principal place of business. Merely alleging that the Essex House was "for the personal benefit of Modi and his family" is not sufficient to allege that it was for an improper or unnecessary purpose. Indeed, the Complaint does not even allege whether there was a bona fide loan between Mr. Modi and the Debtor, or repayment of that loan. Thus, this Court should dismiss the corporate waste allegation against Mr. Gandhi.[9]

### E.    This Court Should Dismiss the RICO Claim

The Trustee fails to allege a RICO claim. Congress enacted RICO for a limited purpose: as an "assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26 (1983); *see also United States v. Turkette*, 452 U.S. 576, 589 (1981). The narrowly construed statute has strict legal requirements and is not designed as a catch-all "instrument against all unlawful acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). For this reason, it is well settled that "[a] plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. Nov. 19, 2013). Notably, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations marks omitted).

---

[9] The Complaint does not allege Mr. Gandhi's involvement in connection with the purchase of the Ritz Carlton apartment. It also does not allege that any of the Debtors' "assets" were used in connection with paying for this apartment. *See* (Complaint, ¶¶ 67, 73, apartment financed by Ithaca Trust, which Mr. Modi's sister funded).

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must plead "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In addition, a plaintiff must allege injury to his or her "business or property by reason of a violation of section 1962." *Id.* (quoting 18 U.S.C. § 1964(c)). Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001).

The Trustee has failed to meet this high burden. First, he has no standing to assert a RICO claim, because the Debtors have not been directly injured by the alleged RICO acts. Second, the RICO claim is stale. Third, the Trustee fails to allege the requisite predicate acts. Each of these are separate, independent bases that support a dismissal of the RICO count for failure to state a claim.[10]

### 1. *The Trustee Has No RICO Standing*

The Trustee lacks standing to bring a RICO claim. RICO requires "a direct relationship between the plaintiff's injury and the defendant's injurious conduct. This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 650 (SDNY 2011)(citations omitted). Thus, a plaintiff must allege injury to his or her business or property caused "by reason of the substantive RICO violation.'" *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp.3d 586, 612 (S.D.N.Y. 2015). In other words, to satisfy causation, a plaintiff must show that an alleged RICO violation is directly responsible for the injury. Accordingly, a court should not look "much beyond the first step of harm caused". *DDR Constr. Serv.*, 770 F. Supp.2d at 652. This is because harm that is "contingent upon harm to another" will

---

[10] In choosing not to address each of the seven elements of a RICO claim, Mr. Gandhi does not admit that they have been adequately plead, or can ultimately be proven.

not satisfy RICO standing requirements. *City of New York v. Smoke-Spirits.com, Inc.* 541 F.3d 425, 440 (2d Cir. 2008); *Geiss v. Weinstein Co. Holdings LLC*, 2019 U.S. Dist. LEXIS 66363 at *27 (S.D.N.Y. 2019) (holding that "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering or predicate acts") (citations omitted).

The Trustee alleges that each Debtor has been injured as a direct result of and proximate result of the RICO Enterprise's violations, (Complaint, ¶153), but this allegation is conclusory. There is no question that the harm alleged here is derivative and entirely contingent on the harm to non-party PNB. Tellingly, the Trustee alleges that the purported scheme by defendants "resulted in the *accrual of claim*s against the Debtors…" (Complaint, ¶1 (emphasis added)). As alleged in the Complaint, the purported scheme took a circuitous route to harm the Debtors. First, Mr. Modi and "others he directed" and "acting through at least three entities under Modi's control" (Complaint, ¶18) obtained letters from PNB. PNB then advanced monies to entities under Mr. Modi's control. (¶20). This purported fraud then lead to investigations and criminal enforcement actions against Mr. Modi and others (*but not* Mr. Gandhi), which in turn lead to Mr. Modi's arrest in London. (Complaint, ¶25). This then lead to "revelations" of the fraud in India which in turn lead to "supply chain disruptions and negative publicity" which "dramatically impaired the Debtors' business operations" eventually leading to vendors expressing "reluctance" to continue to do business with the Debtors. (Complaint, ¶ 26). As a result of that disruption and negative publicity, the Debtors filed for Chapter 11 bankruptcy. (*Id.*; *see also* ¶ 133 (describing the purported "proximately caused injury" as "destroying each Debtor's going-concern value and rendering each Debtor insolvent"; ¶ 158 (same)). Following the bankruptcy filing, PNB asserted claims against the Debtors. Thus, the Complaint on its face demonstrates the multiple links in the chain of causation that lead to the harm the Trustee now alleges *on behalf of PNB*, not on behalf of the Debtors.

14

Because *the Debtors* were not the intended target of the alleged scheme, the Trustee lacks standing. "In the RICO context, the Second Circuit has repeatedly announced that to have standing, a plaintiff must demonstrate that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI Holdings (Luxembourg) v. Pharoaon*, 43 F.Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal quotations omitted).

The RICO harm alleged in the Complaint was directed at PNB, and the only reason the Debtors suffered harm was because the scheme failed and was exposed, with all the subsequent harm flowing from that exposure. *See id.* ("It is equally clear that the harm caused to plaintiff resulted from the exposure, investigation, and prosecution of the scheme by regulatory authorities, rather than from the predicate acts of wire fraud"). *See also Lewis ex rel. American Express Co. v. Robinson,* 39 F.3d 395, 400-401 (2d Cir. 1994) (affirming dismissal of RICO allegations for lack of standing where "any losses to American Express were caused only because the scheme itself was exposed and thus failed"). Accordingly, this Court must dismiss the RICO claim because the Trustee lacks standing to pursue it. *See Geiss,* 2019 U.S. Dist. LEXIS 66363 (dismissal of RICO claim for lack of standing); *BCCI Holdings,* 43 F. Supp. 2d 359 (same).

## 2.    *The RICO Claim is Time Barred*

Even if the Trustee had standing to assert the alleged RICO claim, this Court should dismiss it, because it is time barred. The RICO claim is subject to a four-year statute of limitations. *See Rotella v. Wood,* 528 U.S. 549, 552 (2000). The limitations period begins to run "when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity . . . ." *Baiul v. William Morris Agency*, LLC, No. 13 CIV. 8683 KBF, 2014 U.S. Dist. LEXIS 62633, at *24 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015). Moreover, the statute of limitations "runs even where the full extent of the RICO

15

scheme is not discovered until a later date." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012).

The Complaint was filed on March 27, 2019. According to the Complaint, "[t]he RICO Enterprise's common purpose came into existence *no later than early 2011….*" (Complaint, ¶125 (emphasis added)). The Debtors – whose shoes the Trustee stands in – necessarily discovered or should have discovered the alleged RICO injury *no later than early 2011* when the purported scheme was implemented. Because that injury arising from the alleged PNB Fraud occurred before March 27, 2015, the RICO count is time barred.[11]

### 3.    *The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts*

Even if the Trustee had standing to allege a RICO violation, and even if the RICO claim were timely, this Court should dismiss it. The Trustee fails to plead that Mr. Gandhi committed the requisite RICO predicate acts, which amounts to a fatal pleading defect. RICO defines an exclusive list of predicate acts of racketeering. *See* 18 U.S.C. § 1961(1). "[T]o establish a violation of § 1962(c), plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity" and that these predicate acts occurred within a 10-year period. *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362, at *18-19 (S.D.N.Y. Dec. 1, 2003); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999). "[T]o comply with Rule 8, a complaint should offer specification as to the particular activities by any particular defendant" allegedly constituting a RICO predicate act. *See Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. July 9, 2013) (internal citations and quotations omitted); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (the focus of § 1962(c) "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities

---

[11] Were the Trustee to assert that the statute of limitations did not begin to run until PNB filed its claim in this bankruptcy, which caused the Debtors harm, such assertion would serve to highlight that the Trustee has no standing to assert a RICO action on behalf of Debtors because the harm to the Debtors must proximately flow from the alleged RICO violation. *See supra* Section E1.

of the members of the enterprise"). And where the RICO predicates sound in fraud (as do the

Trustee's allegations) the higher pleading standard of Rule 9 must be met, requiring the Trustee to

"specify the time, place, speaker, and content of the alleged misrepresentations, explain how the

misrepresentations were fraudulent and plead those events which give rise to a strong inference that

the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the

truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotations and

citation omitted).

The Complaint pleads predicate acts based on: (1) mail and wire fraud; (2) violation of the

National Stolen Property Act; and (3) money laundering. The Trustee fails to adequately plead any

of these.

### a.   <u>The Trustee Fails to Adequately Plead Mail and Wire Fraud</u>

To establish a claim for mail or wire fraud, a plaintiff must allege "(1) a scheme to defraud,

(2) money or property as the object of the scheme, and (3) use of the mails or wires to further the

scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted);

*see also Westchester Cnty.*, 137 F. Supp. 3d at 600. To establish the first element, the Complaint must

allege "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the

part of the defendant, and (iii) the materiality of the misrepresentations." *United States v. Pierce*, 224

F.3d 158, 165 (2d Cir. 2000) (citations omitted). Notably, a scheme to defraud requires actual

misrepresentation of material facts by each defendant. *See Lundy v. Catholic Health Sys. of Long Island,*

*Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (complaint "must adequately specify the statements it claims

were false or misleading, give particulars as to the respect in which [P]laintiff contends the

statements were fraudulent, state when and where the statements were made, and identify those

responsible for the statements") (internal citations and quotations omitted). Moreover, it is "not

sufficient that [the] defendant realizes that [a] scheme is fraudulent and that it has the capacity to

17

cause harm to its victims." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Rather, the

Trustee must "demonstrate that [each] defendant had a conscious knowing intent to defraud and

that the defendant contemplated or intended some harm to" Debtors' property rights. *Id.* (internal

quotations and citation omitted). Finally, the Trustee must plead each of these elements with

particularity for each Defendant. Fed. R. Civ. P. 9(b); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822

F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of

fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud.").

      The Complaint fails to establish that Mr. Gandhi engaged in mail or wire fraud because it

fails to allege with any specificity that Mr. Gandhi had the requisite fraudulent intent to defraud the

Debtors. Review of the mails and wires listed by the Trustee is telling in analyzing Mr. Gandhi's

purported intent. The Complaint lists ten examples of mails and wires, but only seven name Mr.

Gandhi specifically (and all of them involve communications *before* March 2015 when the statute

ran).[12] For four of them, the only act Mr. Gandhi is alleged to have committed is the receipt of an

email from Mr. Modi directing or instructing him to do something. (¶130(c), (d), (g) and (i)). On

their face, these emails to Mr. Gandhi from his boss, who the Trustee describe as having "ultimate

control over the Debtors", do not establish that Mr. Gandhi had a conscious knowing intent to

defraud. Similarly, the October 21, 2010 email communication "in which Modi and Gandhi

discussed the shipment of a diamond to a Shadow Entity" (Complaint, ¶ 130(e)), does not evidence

fraudulent intent. On the face of the Trustee's description of that email, it demonstrates that Mr.

Modi allegedly told Mr. Gandhi which Firestone entity to send a diamond to, and Mr. Gandhi

confirmed where the diamond was to be sent and responded, "glad I asked!!!" when he apparently

---

[12] None of the wires listed in paragraph 131(j) have anything to do with Mr. Gandhi. Indeed, the
Complaint is silent as to any involvement by Mr. Gandhi with respect to the Ithaca Trust and the
purchase of the Ritz Carlton Apartment.

realized he almost sent the diamond to the wrong place. (Complaint, ¶63). These emails fail to give rise to a strong inference that Mr. Gandhi had any intent to defraud.

Similarly, the Trustee describes a "September 7, 2011 email communication in which Modi, Bhansali and Gandhi coordinated their communication to prevent detection of the PNB Fraud." (Complaint, ¶130(f)). The Trustee's conclusory description does not even match the email described in the Complaint. Mr. Gandhi is alleged to have told Standard Charter Bank that certain entities were not in fact customers and that Firestar purchased large diamonds from them as vendors. Mr. Bhansali, who was on the email chain, then forwarded Mr. Gandhi's email with Standard Charter to Mr. Modi who then responded to Mr. Bhansali noting that because Standard Charter has offices in India, Antwerp and New York, "[i]t might be a good idea that Ajay and you discuss all responses" – which suggests nothing more than that the CFO in New York communicate with the CEO so that everyone is on the same page. (Complaint, ¶64). There is nothing telling or nefarious about this email. [13]

Moreover, the Complaint is devoid of *any* allegation that Mr. Gandhi misrepresented any material fact. Finally, even if the Trustee had alleged any misrepresentation by Mr. Gandhi, or the requisite intent to defraud, the RICO claim based on a predicate act of mail or wire fraud fails because the Complaint does not allege that Mr. Gandhi "contemplated…harm to the property rights of the victim." *Guadagna*, 183 F.3d at 129 (internal quotations and citation omitted). "A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with," *Pierce*, 224 F.3d at 165, and the property right must be one "of the victim". *Guadagna*, 183 F.3d at 129. Here, the intended harm was to PNB, and not

---

[13] The Trustee also relies on a "February 15, 2015 email communication in which Gandhi directed $150,000 be transferred from Firestar to Eternal diamond." (Complaint, ¶130(h)). This too does not speak to the requisite intent required to sufficiently allege a RICO claim against Mr. Gandhi.

the Debtors. For all of the above reasons, the Trustee has failed to allege the requisite predicate acts under the mail and wire fraud statute.

### b. The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act

To adequately plead a violation of the National Stolen Property Act, the Trustee must allege that "the defendant caused to be transported, transmitted or transferred in interstate commerce property -- defined under the statute to include money -- having a value of at least $ 5,000, knowing that such property had been stolen, converted or taken by fraud." *See Welch Foods v. Gilchrist*, 93 Civ. 0641E(F), 1996 U.S. Dist. LEXIS 15819, *14 (W.D.N.Y. Oct. 18, 1996). Like the allegations of mail fraud and wire fraud, the alleged predicate racketeering acts under this Act must be pled in accordance with the heightened pleading requirements of Rule 9(b). *See Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp.3d 432, 456 (S.D.N.Y. 2018) (noting that all allegations of fraudulent predicate acts in a civil RICO claim, including conduct under the National Stolen Property Act, are subject to the heightened pleading requirements).

In support of its RICO claim, the Trustee provides a laundry list of conclusory statements about the Debtors having received various funds from LOUs, which were purportedly "fraudulently procured". (Complaint, ¶135(a-p)). The Trustee alleges in similarly conclusory fashion that the "Defendants Modi, Bhansali *or* Gandhi knew the property was transferred, received or disposed of had been stolen, converted, or taken by fraud." (Complaint, ¶136 (emphasis added)). The Trustee's use of the disjunctive to describe who knew of the stolen property is fatal. The Trustee has not alleged the requisite intent by Mr. Gandhi. *See* 18 U.S.C. § 2314 ("Whoever transports . . . in interstate or foreign commerce …money …*knowing* the same to have been stolen, converted or taken by fraud . . .") (emphasis added).

20

### c.  The Trustee Fails to Adequately Plead Money Laundering

To state a proper claim of money laundering plaintiff must plead that (1) the defendant conducted a financial transaction in interstate commerce; (2) the defendant knew that the property involved in the transaction represented some form of specific unlawful conduct; (3) the transaction involved the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds. *See Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675, 54 (S.D.N.Y. 1999). The Trustee alleges that Mr. Gandhi "conducted financial transactions involving the proceeds of the PNB Fraud." (¶144). For all of the reasons described above, the Trustee has failed to allege with particularity that Mr. Gandhi knew about the PNB Fraud, that he knew the "property involved" represented "some form of specific unlawful conduct", and that he had the requisite intent to conceal the origin of the funds. *See United States v. Gotti,* 457 F. Supp.2d 411, 422-23 (S.D.N.Y. 2006) ("The 'intent to conceal' the illicit origin of funds is the hallmark of money laundering."). Accordingly, the Trustee cannot rely on money laundering as a predicate act.

### F.  This Court Should Dismiss the RICO Conspiracy Claim

The Complaint also fails to allege a conspiracy by Mr. Gandhi to violate RICO under 18 U.S.C. § 1962(d). Because the Complaint does not plead a substantive RICO violation, its conspiracy claim necessarily must fail. *See First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir. 2004)(RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *New York v. UPS, Inc.,* No. 15-CV-1136 (KBF), 2016 U.S. Dist. LEXIS 105038, at *13-14 (S.D.N.Y. Aug. 9, 2016) ("Courts in this Circuit have repeatedly held that [a]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (internal quotation and citation omitted).

**CONCLUSION**

For all of the above reasons, Mr. Gandhi respectfully requests that the court dismiss the

claims against him with prejudice.

Dated:  New York, New York
        May 28, 2019

                                    Respectfully submitted,

                                    SERPE RYAN LLP


                        By: _____/s/ Silvia L. Serpe_____
                            Silvia L. Serpe
                            Paul W. Ryan
                            16 Madison Square West
                            New York, New York 10010
                            (212) 257-5010
                            sserpe@serperyan.com
                            pryan@serperyan.com

                            *Attorneys for Ajay Gandhi*