UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**HEARING DATE AND TIME: 1/22/20 2:00 pm**

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | **Adv. Proc. No. 19-01102-shl** |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

## DEFENDANT AJAY GANDHI'S NOTICE OF
## MOTION TO DISMISS THE FIRST AMENDED ADVERSARY COMPLAINT

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, dated November 4, 2019, the undersigned on behalf of defendant Ajay Gandhi, hereby moves this Court before the Honorable Sean H. Lane, in Courtroom 701 of the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York, 10004, on **January 22, 2020 at 2 pm**, for an Order dismissing the First Amended Adversary Complaint with prejudice pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure, and for such other and further relief as the court may deem just and proper.

Pursuant to the so ordered stipulation dated October 31, 2019, the Trustee's opposition

papers are due on December 13, 2019, and defendants' reply papers are due on January 8, 2020.

Dated: New York, New York                   Respectfully submitted,
        November 4, 2019

                                            **SERPE RYAN LLP**

                                    By:     _/s/ Silvia L. Serpe_____
                                            Silvia L. Serpe
                                            Paul W. Ryan
                                            16 Madison Square West
                                            New York, New York 10010
                                            (212) 257-5010
                                            sserpe@serperyan.com
                                            pryan@serperyan.com

                                            *Attorneys for Defendant Ajay Gandhi*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

## MEMORANDUM OF LAW OF DEFENDANT AJAY GANDHI IN
## SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Dated: New York, New York
      November 5, 2019

**SERPE RYAN LLP**

Silvia L. Serpe
Paul W. Ryan
16 Madison Square West
New York, New York 10010
(212) 257-5010
sserpe@serperyan.com
pryan@serperyan.com

*Attorneys for Defendant Ajay Gandhi*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................................1

THE FIRST AMENDED COMPLAINT…………………………………………………....3

ALLEGATIONS SPECIFIC TO MR. GANDHI…………………………………………………4

ARGUMENT…………………………………………………………………………………...5

   A.  THE TRUSTEE MUST MEET A HEIGHTENED PLEADING STANDARD………...5

   B.  THE TRUSTEE LACKS STANDING TO ASSERT CLAIMS ON BEHALF OF PNB…6

   C.  THIS COURT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIM….7

      1.  The Breach of Fiduciary Duty Claim is Time-Barred………………………………7

      2.  The Trustee Fails to State a Claim for Breach of Fiduciary Duty…………………..10

   D.  THIS COURT SHOULD DISMISS THE CORPORATE WASTE CLAIM…………….13

   E.  THIS COURT SHOULD DISMISS THE RICO CLAIM………………………………...15

      1.  The Trustee Has No RICO Standing………………………………………………16

      2.  The RICO Claim is Time Barred…………………………………………………..18

      3.  The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts....19

         a.  The Trustee Fails to Adequately Plead Mail and Wire Fraud………………20

         b.  The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act……………………………………………………………22

         c.  The Trustee Fails to Adequately Plead Money Laundering…………….…...23

         d.  The Trustee Fails to Adequately Plead Obstruction of Justice………..…….24

         e.  The Trustee Fails to Adequately Plead Bankruptcy Fraud……………....…..26

  F. THIS COURT SHOULD DISMISS THE RICO CONSPIRACY CLAIM……… .26

CONCLUSION ...........................................................................................................................27

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)............................................................................................. 6

*Baiul v. William Morris Agency,* LLC, No. 13 CIV. 8683 KBF, 2014 U.S. Dist. LEXIS 62633
    (S.D.N.Y. May 6, 2014), *aff'd,* 601 F. App'x 58 (2d Cir. 2015). .................................... 18

*BCCI Holdings (Luxembourg) v. Pharoaon,* 43 F.Supp. 2d 359 (S.D.N.Y. 1999) ................................. 17, 18

*Bd. of Managers of Trump Tower at City Ctr. Condo v. Palazzolo,*

    346 F. Supp.3d 432 (S.D.N.Y. 2018)........................................................................ 22, 23

*Beatrice Invs., LLC v. 940 Realty LLC,* 2018 N.Y. Misc. Lexis 2008 (1ˢᵗ Dept 2018) .............................. 10

*Bell v. Hubbert,* 2006 U.S. Dist. LEXIS 94547 (S.D.N.Y. Jan, 8, 2007)...................................... 15

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)............................................................................ 5

*Bridgeport, Hldgs. Inc. Liquidating Tr. v. Boyer,* 388 B.R. 548 (Bankr. D. Del. 2008) ................................... 14

*Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. 1999) ..................................... 23, 24

*City of New York v. Smoke-Spirits.com, Inc.* 541 F.3d 425 (2d Cir. 2008)...................................... 16

*Clark v. Advanced Composites Grp.,* 2019 U.S. Dist. Lexis 80639 (S.D.N.Y. 2019)............................ 11, 12

*Clark v. Nevis Capital Management, LLC,* 2005 U.S. Dist Lexis 3158 (S.D.N.Y. 2005)........................ 8, 12

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229 (2d Cir. 1999)............................... 19

*Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353 (2d Cir. 2013).......................................................... 20

*DDR Constr. Servs. v. Siemens Indus.,* 770 F. Supp. 2d 627 (SDNY 2011) ................................... 16

*DeFalco v. Bernas,* 244 F.3d 286 (2d Cir. 2001)............................................................................. 16

*DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987)…………………….21

*First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159 (2d Cir. 2004) .................................... 26

*Geiss v. Weinstein Co. Holdings LLC,* 2019 U.S. Dist. LEXIS 66363 (S.D.N.Y. 2019) ............... 16, 17, 18

*Grewal v. v. Cuneo,* 2015 U.S. Dist. LEXIS 87755 (S.D.N.Y. July 17, 2017) ..................................... 24, 25

*Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328

    (S.D.N.Y. July 9, 2013) .................................................................................................. 19

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ............................................ 15

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995). ........................................................ 6

*H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). ............................................... 25

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009) .................................... 7, 8

*In re Argo Communications Corp.*, 134 B.R. 776 (Bankr. S.D.N.Y. 1991) ....................................... 6

*In re Grumman Olson Indus.*, 329 B.R. 411 (Bankr. S.D.N.Y. 2005) ............................................. 6

*In re Mundo Latino Market Inc.*, 590 B.R. 610 (Bankr. S.D.N.Y. 2018) ...................................... 14

*Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362

    (S.D.N.Y. Dec. 1, 2003) ................................................................................................. 19

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) ................................... 15

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) .............................................................. 18

*Lewis ex rel. American Express Co. v. Robinson*, 39 F.3d 395 (2d Cir. 1994) .................................. 18

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ........................ 20

*Marino v. Grupo Mundial Tenedora, S.A.*, 810 F Supp. 2d 601 (S.D.N.Y. 2011) ....................... 10

*McHale v. Citibank, N.A.*, 420 B.R. 178 (Bankr. S.D.N.Y. 2009) .................................................. 7

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983) ............................................................... 15

*New York v. UPS, Inc.*, No. 15-CV-1136 (KBF), 2016 U.S. Dist. LEXIS 105038

    (S.D.N.Y. Aug. 9, 2016) ................................................................................................ 26

*Nightingale Group, LLC v. CW Capital Management, LLC*, 2012 U.S. Dist. LEXIS 93197

    (S.D.N.Y. July 5, 2012) .................................................................................................... 6

*Pereira v. Cogan*, 294 B.R. 449 (S.D.N.Y. 2003) ......................................................................... 12

*Ray Larsen Assoc., Inc. v. Nikko America, Inc.*, 1996 U.S. Dist. Lexis 11163 (S.D.N.Y. Aug. 6, 1996) ... 25

*Russello v. United States*, 464 U.S. 16 (1983) ............................................................................... 15

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124 (S.D.N.Y. 1994) ............................................... 12

*Stern v. v. Gen. Elec. Co.*, 924 F.2d 472 (2d Cir. 1991) ...................................................................14

*Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585
   (S.D.N.Y. Nov. 19, 2013). ......................................................................................................15

*United States SBA v. Feinsod*, 347 F. Supp. 3d 147 (E.D.N.Y. 2018)..........................................14

*United States v. Gotti*, 457 F. Supp.2d 411 (S.D.N.Y. 2006).......................................................24

*United States v. Guadagna*, 183 F.3d 122 (2d Cir. 1999) ....................................................... 20, 22

*United States v. Persico*, 832 F.2d 705 (2d Cir. 1987) .................................................................19

*United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000).............................................................. 20, 21

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007)....................................................................20

*United States v. Turkette*, 452 U.S. 576 (1981)............................................................................15

*Welch Foods v. Gilchrist*, 93 Civ. 0641E(F), 1996 U.S. Dist. LEXIS 15819
   (W.D.N.Y. Oct. 18, 1996)…………………………………………………………………22

*Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586 (S.D.N.Y. 2015) ....................... 16, 20

*World Wrestling Entertainment Inc. v. Jakks Pacific Inc.*, 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ................25

Defendant Ajay Gandhi submits this memorandum of law in support of his motion to dismiss all claims against him in the first amended complaint in the adversary proceeding pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure for failure to state a claim, and joins in the Memorandum of Law of Defendant Mihir Bhansali in Support of His Motion to Dismiss the First Amended Adversary Complaint.

## PRELIMINARY STATEMENT

The Trustee's lengthy First Amended Complaint against Mr. Gandhi lacks substance. He audaciously asserts claims that he has no standing to bring, which are stale, and which fail to state a claim. Disguised as breach of fiduciary duty, corporate waste, and civil RICO claims, the Trustee alleges a fraudulent scheme orchestrated by defendant Nirav Deepak Modi, the former controlling owner of the Debtors, who has been arrested in London and will be extradited to India to face criminal charges arising out of what the Trustee now refers to as the "Bank Fraud". Notably, Mr. Gandhi – the former Chief Financial Officer of the Debtors – has never been charged with any crime.

The First Amended Complaint describes the Bank Fraud as a scheme that began at least eight years ago – outside the applicable statute of limitations – in which Mr. Modi obtained loans from Punjab National Bank, a government owned Indian bank, under allegedly false pretenses and without collateral via a purportedly fraudulent practice referred to as "round tripping". That practice as alleged involved the export and import of diamonds into India via transactions involving numerous companies, all of which were controlled by Mr. Modi. The Trustee seeks to hold Mr. Gandhi liable for following the instructions of Mr. Modi, who is described by the Trustee as having "exerted total ultimate control over Debtors' affairs" and as someone who had "omnipresent oversight and control" over the Debtors, including the day to day affairs.

1

Relying on a number of harmless emails, the Trustee insinuates that Mr. Gandhi knew of Mr. Modi's fraudulent scheme. The Trustee does not allege a cause of action for fraud against Mr. Gandhi, and instead attempts to wrangle liability under theories of fiduciary duty, corporate waste and civil RICO. These efforts fall short. First, the Trustee lacks standing to assert claims against Mr. Gandhi where the injury alleged is to Punjab National Bank, rather than the Debtors, in whose shoes the Trustee stands. Although this applies to all claims against Mr. Gandhi that are based on the Bank Fraud, it is particularly true in the context of civil RICO. The two civil RICO counts are fatally flawed because the intended target of the alleged RICO scheme was Punjab National Bank, and not the Debtors. The Trustee attempts to rectify this fatal flaw in his amended complaint by re-characterizing the previously alleged "PNB Fraud" as the "Bank Fraud," but this is nothing more than a name change. Thus, the Trustee's attempt to mask the focus on Punjab National Bank falls flat.

Second, most of the claims against Mr. Gandhi are time barred. The First Amended Complaint is rife with allegations that date back to 2010 and 2011, and the allegations that fall within the applicable statute of limitations do not state a claim against Mr. Gandhi. Specifically, with respect to breach of fiduciary duty, the Trustee's conclusory allegations that Mr. Gandhi caused the Debtors to engage in the Bank Fraud, and failed to stop Mr. Modi from allegedly "usurping" his managerial responsibilities fail to meet the heightened pleading standard. The Trustee adds new allegations under the heading of breach of fiduciary duty, but they all boil down to accusing Mr. Gandhi of committing a fraud, which the Trustee fails to plead with the requisite particularity. Tellingly, the Trustee does not allege (and cannot allege) that Mr. Gandhi personally benefitted from any of the alleged wrongful conduct.

With respect to the corporate waste claim, the Trustee does not even allege that the Essex House Apartment, in which Mr. Modi resided when he was in New York and worked out of

2

Debtor's New York office, was used for an improper or unnecessary purpose. As alleged, Mr. Gandhi (at Mr. Modi's direction) made certain mortgage payments for that residence with Debtor funds. The Trustee fails to allege that as CFO, Mr. Gandhi did not receive comfort that either the payments would be repaid, or that such expense was justified.

Finally with respect to civil RICO, the claim falls outside of the applicable statute of limitations, and the Trustee fails to adequately plead the requisite predicate acts against Mr. Gandhi. In addition to the incurable defect that the Trustee lacks standing to pursue the civil RICO claims, each of the other shortcomings detailed below warrants dismissal. Accordingly, for all of the many independent reasons addressed below, this Court should dismiss all of the allegations against Mr. Gandhi.

## THE FIRST AMENDED COMPLAINT

On May 28, 2019, Mr. Gandhi filed a motion to dismiss the Trustee's Adversary Complaint. The Trustee did not file an opposition to the motion, but instead with the agreement of the defendants, filed a First Amended Complaint. The First Amended Complaint does not overcome any of the deficiencies raised in Mr. Gandhi's initial motion to dismiss, and as demonstrated below, the Court should dismiss the First Amended Complaint in its entirety.

The First Amended Complaint does not add any new causes of action against Mr. Gandhi. Instead, the Trustee seeks to avoid his lack of standing by no longer describing the alleged fraud as one against Punjab National Bank ("PNB"), but instead asserts it as a "Bank Fraud." However, the substance of the claims are the same, and the fact remains that the claims alleged in the First Amended Complaint belong to PNB, and not the Trustee. The First Amended Complaint also newly alleges additional communications relating to the RICO predicate act, wire and wire fraud. However, as discussed below, none of the communications evince the requisite fraudulent intent necessary to sufficiently allege a RICO claim. Finally, the First Amended Complaint adds two RICO

3

predicate acts, obstruction of justice and bankruptcy fraud. However, neither alleges a cognizable claim.

Other than the allegations relating to the two newly alleged RICO predicate acts, nothing has substantively changed since the filing of the Complaint. There are no new factual developments. Yet, the Trustee has both removed factual information that weakened his claims and revised certain allegations without any factual basis or support but rather in a conclusory manner to try to fill the voids highlighted by the defendants in their first motions to dismiss. As discussed below, none of the new allegations cure the defects from the initial Complaint, and the Court should dismiss the action in its entirety.

## ALLEGATIONS SPECIFIC TO MR. GANDHI

The First Amended Complaint alleges that beginning in 2011, Mr. Modi devised and orchestrated a scheme to defraud PNB by obtaining loans and other funds under false pretenses and without collateral. (First Amended Complaint ("FAC"), ¶ 23). PNB advanced over $1 billion under allegedly false pretenses and without collateral via a purportedly fraudulent practice referred to as "round tripping" in which diamonds were exported from and re-imported back into India multiple times in transactions involving numerous companies, all of which were controlled by Mr. Modi. (*Id.*, ¶ 28). The First Amended Complaint also alleges that Mr. Modi purchased a residence in New York, referred to as the Essex House Apartment, which was funded in part by Firestar, one of the Debtors that had its principal place of business in New York. (*Id.*, ¶ 114). That purchase was done in 2007, well outside the statute of limitations, and Firestar allegedly paid off the balance on the mortgage in December 2017. (*Id.*, ¶ 118). Notably, the First Amended Complaint is silent as to whether the Debtor funds were loaned and ultimately repaid by Mr. Modi. It also describes a purchase of a residence by Mr. Modi referred to as the Ritz Carlton Apartment, but there is no allegation that Debtor funds were used to pay for that apartment. (*Id.*, ¶¶ 108-111).

4

The First Amended Complaint asserts four causes of action against Mr. Gandhi: breach of fiduciary duty (Count 3); corporate waste (Count 7); RICO (Count 8) and RICO conspiracy (Count 9). Among the allegations specific to Mr. Gandhi are that he:

- served as the Chief Financial Officer ("CFO") of each Debtor (FAC ¶¶ 1, 20);

- was part of a fraud, referenced in the First Amended Complaint as the "Bank Fraud", which is defined as a seven year scheme orchestrated by defendant Modi "and others he directed" to "obtain loans, credits, or other funds under false pretenses and without collateral from Punjab National Bank ("PNB")" (*id.*, ¶ 23, );

- "controlled the finances of the Debtors" and "coordinated and directed transactions among the U.S. Entities, Shadow Entities and Other-Modi Controlled Entities," defined as more than twenty foreign shell companies secretly controlled by Mr. Modi (*id.*, ¶¶ 28, 64, 65);

- received detailed instructions from defendant Modi to perform various functions (*id.*, ¶¶ 82, 189-194);

- "researched and implemented various tactics to conceal and destroy evidence" along with Modi and Bhansali, that for Gandhi boils down to a sole allegation that he ran certain internet searches pertaining to Adelphia (*id.*, ¶ 145);

- "allow[ed] Modi to usurp [his] management responsibilities and decision-making authority" (*id.*, ¶ 210);

- failed to disclose certain transactions involving the non-debtor Shadow Entities in the Debtors' bankruptcy filings (*id.*, ¶ 158);

- "caus[ed] the Debtors to engage in the PNB Fraud," and "caus[ed] the Debtors to expend corporate assets to acquire properties for the personal benefit of Modi and his family" (*id.*, ¶ 210).

## ARGUMENT

### I.

### THIS COURT SHOULD DISMISS THE TRUSTEE'S
### CLAIMS AGAINST MR. GANDHI FOR FAILURE TO STATE A CLAIM

#### A. The Trustee Must Meet a Heightened Pleading Standard

To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This

means that the First Amended Complaint must include "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of the cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

Here, these pleading requirements are heightened because a plaintiff must plead each of the

claims sounding in fraud with particularity. *See Nightingale Group, LLC v. CW Capital Management,*

*LLC*, 2012 U.S. Dist. LEXIS 93197, *23-24 n.14 (S.D.N.Y. July 5, 2012) (noting "[w]here RICO

claims sound in fraud-as the RICO predicate acts do here-Rule 9(b) imposes a heightened pleading

standard"); *In re Grumman Olson Indus.*, 329 B.R. 411, 429 (Bankr. S.D.N.Y. 2005) ("Fraud, *per se*, is

not an element of a claim for breach of fiduciary duty. Nevertheless, the allegations must satisfy

FED. R. CIV. P. 9(b) if the claim is based on fraudulent conduct.").[1] As discussed below, the

Trustee fails to meet this standard.

### B.  The Trustee Lacks Standing to Assert Claims on Behalf of PNB

As more fully explained in connection with the RICO claims, *see infra* Section E1, the

majority of the Trustee's claims emanate from the purported Bank Fraud, which is namely an alleged

fraud as to PNB, and the resulting injury to that bank. It is that alleged fraud that led to the "accrual

of claims against the Debtors of over $1 billion in favor of" PNB. (FAC ¶ 1). The Trustee's standing

to assert claims, however, is limited to "those actions that the debtors could have brought prior to

the bankruptcy proceeding." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995). It is

for this reason that the Trustee is said to "stand[] in the shoes of the debtors". *Id.* Significantly, when

---

[1] The Trustee's corporate waste cause of action is based on the identical alleged conduct underlying his breach of fiduciary duty cause of action, and should therefore be subjected to the same heightened pleading requirement. (FAC compare ¶ 230 with ¶ 210). *See In re Argo Communications Corp.*, 134 B.R. 776, 789 (Bankr. S.D.N.Y. 1991) ("Corporate waste as a cause of action is based on each fiduciary's duty of highest loyalty to the corporation. Waste is therefore similar to a claim for breach of fiduciary duty.").

creditors – such as PNB – "have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee *is precluded* from doing so." *Id.* (emphasis added); *see also McHale v. Citibank, N.A.*, 420 B.R. 178, 194 (Bankr. S.D.N.Y. 2009) ("Courts in this Circuit have consistently rejected attempts by trustees to assert claims for injuries that are particularized to creditors."). This standing requirement is necessary to avoid the possibility of the Defendants facing duplicative claims from PNB. Accordingly, this Court should dismiss the First Amended Complaint, because the fact that the Trustee seeks to assert claims for injuries particular to PNB is an incurable pleading defect.

### C. This Court Should Dismiss the Breach of Fiduciary Duty Claim

The Trustee alleges that Mr. Gandhi breached a fiduciary duty to Debtors. The Court should dismiss the breach of fiduciary count against Mr. Gandhi for two reasons. First, the claims are barred on statute of limitations grounds, and second, the Trustee fails to allege a breach of fiduciary claim against Mr. Gandhi with the requisite specificity.

#### 1.    *The Breach of Fiduciary Duty Claim is Time-Barred*

The Trustee's breach of fiduciary duty claim against Mr. Gandhi is stale. This court should apply a three-year statute of limitations, instead of the six-year statute of limitations, because the Trustee fails to allege that Mr. Gandhi engaged in any fraud, but rather that he violated his duty of care and loyalty. But even if this Court were to apply a six-year statute of limitations, many of the allegations in the First Amended Complaint concern events that transpired before March 27, 2013. In fact, the purported Bank Fraud underlying the Trustee's complaint began, according to the Trustee, in 2011. Accordingly, the Court should dismiss this claim as time barred.

The statute of limitations for a breach of fiduciary duty claim is either three or six years depending on the remedy sought. Where the plaintiff alleges equitable relief, the six-year statute of limitations applies, but where the plaintiff only seeks monetary damages – as here – the three-year

7

period applies. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). The

only time that a six-year statute of limitations will apply to a fiduciary duty claim that solely seeks

monetary damages is where "an allegation of fraud is essential to a breach of fiduciary duty claim."

*Id.*

Here, the Trustee does not allege a fraud cause of action against Mr. Gandhi. The First

Amended Complaint does not allege that Mr. Gandhi stole or profited at all from the alleged

wrongdoings. Instead it alleges that Mr. Modi "and others at his direction" (notably not including

Mr. Gandhi), obtained loans based on fraudulent misrepresentations. As to Mr. Gandhi, the Trustee

alleges that he violated his duty of care and loyalty by failing to stop Modi's fraud, and by allegedly

engaging in a number of enumerated activities, all of which essentially sound in fraud. (FAC ¶ 210).

However, the conclusory allegations do not allege with particularity that Mr. Gandhi: (1) made any

materially false representations, (2) had the requisite intent to defraud, or (3) that anyone reasonably

relied on any representations. *See Clark v. Nevis Capital Management, LLC*, 04 Civ. 2702 (RWS), 2005

U.S. Dist. LEXIS 3158, 45 (S.D.N.Y. 2005). Accordingly, this Court should apply a three-year

statute of limitations to the Trustee's breach of fiduciary duty claim against him because the

Trustee's breach of fiduciary duty claim is not based on particularized allegations of fraud as to Mr.

Gandhi.[2]

The First Amended Complaint broadly claims that there is a seven-year period (2011 to

2018) that the Trustee characterizes as the Relevant Period in which Mr. Modi engaged in the Bank

Fraud. (FAC ¶ 23). Tellingly, despite this alleged seven-year period, according to the Trustee, the

Debtors were no longer even direct participants in the alleged Bank Fraud as of 2013. (FAC ¶ 57

---

[2] To the extent that there is tension between the argument that a three year statute of limitations
applies to these breach of fiduciary duty claims, and that particularity is required, the Trustee must
choose. He cannot benefit from a six year statute of limitations and argue that pleading with
particularity is not required.

("from around 2013 onwards . . . the Debtors no longer directly participated in import and export

transactions underlying LOU issuances")). This Court should dismiss the First Amended Complaint

because it is dominated by allegations that pre-date March 27, 2016 (three years from the filing of

the original complaint). Many of the allegations regarding the alleged Bank Fraud are in 2011, and

some are even before then. (FAC ¶¶ 54-55, 101; *see also* 82(i – iii) (communications regarding the

Bank Fraud and circular trading in 2009, 2010)).[3] Moreover, even the allegations that post-date

March 27, 2016 are insufficient to state a timely claim because they are not particularized allegations

that support Mr. Gandhi's alleged breach of fiduciary duty or alleged fraudulent intent.

Specifically, there are allegations regarding a spreadsheet sent to Mr. Gandhi in November

2016 and his responses to questions posed to him by auditors. (FAC ¶ 95). There is also reference to

a May 5, 2017 email, in which he allegedly sent a list of the alleged Shadow Entities to a back-office

employee in India, and asked him not to share the list with anyone. (FAC ¶ 77). Also, on April 23,

2018, Mr. Gandhi emailed an employee of Firestar requesting accounts receivable and accounts

payable information. (*Id.*, ¶ 79.) There are additional allegations regarding emails sent to and received

by Mr. Gandhi regarding wire transfers and the movement of cash and property that post-date

March 27, 2016. (*See, e.g., id.*, ¶¶ 81(xxxv) – (xlv), 82(vii), 175, 177, 197). Finally, there are also

allegations that Mr. Gandhi ran various internet searches. (*Id.* at ¶ 145).

None of these emails or wire transfers form the basis of a breach of fiduciary duty claim,

especially as to someone who is alleged to have been directed by his boss, Mr. Modi, to provide or

---

[3] The discovery rule would not resuscitate the claim because on the face of the complaint, the Debtors knew of the very things that the First Amended Complaint alleges Mr. Gandhi "caused" them to do prior to March 27, 2016 (applying three year statute of limitations), or even March 27, 2013 (were the Court to apply a six year statute of limitations).

request such information and to facilitate such transactions. Certainly an internet search does not support a claim of breach of fiduciary duty.[4]

With respect to the allegation of expending corporate assets to acquire Mr. Modi's personal assets, the First Amended Complaint alleges only one example: the Essex House Apartment, but that was purchased in 2007, well outside the statute of limitations. (FAC ¶ 114). Thus, this Court should dismiss the breach of fiduciary duty claim as untimely.[5]

2.      *The Trustee Fails to State a Claim for Breach of Fiduciary Duty*

Under New York law, the elements of a breach of fiduciary duty claim are the existence of a fiduciary relationship, misconduct by the other party, and damages directly caused by that party's misconduct. *See Beatrice Invs., LLC v. 940 Realty LLC*, 2018 N.Y. Misc. Lexis 2008, *23-24 (1st Dept 2018).[6] The Trustee alleges that Mr. Gandhi breached his fiduciary duty to the Debtors by (a)

---

[4] This is also true for those allegations that fall within a six-year statute of limitations. As to Mr. Gandhi, the First Amended Complaint claims that he directed that a wire be sent in March 2014 and in February 2015 from Firestar to alleged "Shadow Entities". (FAC ¶ 81(xviii)). It also alleges communications or reports sent by him from 2010 through 2016. (*Id.*, ¶¶ 72, 75, 81, 82 143). These allegations do not constitute a timely breach of fiduciary duty claim where they merely describe actions taken by Mr. Gandhi at the direction of his boss.

[5] The First Amended Complaint alleges generally that Firestar made "at least $856,335 of the monthly payments on the mortgage between 2011 and 2018" on the Essex House Apartment, but it is unclear what payments were made within the statute of limitations except that it is alleged that $15,828.35 was made in January 2018. (FAC ¶ 115). The First Amended Complaint also alleges that Mr. Modi directed Mr. Gandhi to pay off the HSBC mortgage on that property in December 2017 from Firestar funds. (*Id.*, ¶ 118). To the extent any of these allegations are timely, they fail to state a breach of fiduciary duty claim against Mr. Gandhi. S*ee infra* Section C2.

[6] For breach of fiduciary duty claims, New York applies the law of the state of incorporation. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F Supp. 2d 601, 607 (S.D.N.Y. 2011). Here, all the Debtors except for Jaffe are alleged to be incorporated in Delaware. (FAC ¶¶ 6-8). Under Delaware law, the elements of a claim for breach of fiduciary duty are the same as in New York, except that in Delaware, the plaintiff need not establish the third element: damages resulting from the breach. *Id.* (discussing Delaware law).

"allowing Modi to usurp Gandhi's management responsibilities and decision-making authorities" in violation of his duty of care, (b) causing the Debtors to engage in the Bank Fraud, (c) "deplet[ing] the Debtors assets," through numerous fraudulent transactions (d) "looting the recipients" of the fraudulent transactions so as to impair recovery, (e) "making fraudulent representations and omissions" in the Debtors' Chapter 11 cases, and (f) causing the Debtors to expend corporate assets on Mr. Modi's behalf. (FAC ¶ 210).[7]

The first allegation makes no sense. As alleged, Mr. Gandhi was the CFO of Firestar, and he reported to Mr. Bhansali, the CEO. Mr. Gandhi was in no position to "allow" Mr. Modi to do anything, let alone to prevent him from somehow allowing Mr. Modi, who "owned and controlled 94.88%" of the company, (*Id.,* ¶ 18), to exercise decision-making authority at his own company. Notably, as alleged, it was Mr. Modi who "orchestrated and directed" the purported Bank Fraud, and who "exerted total ultimate control over Debtors' affairs" and who had "omnipresent oversight and control" over the Debtors. (FAC ¶¶ 23, 189, 199).

The remaining allegations that Mr. Gandhi "caused the Debtors to engage in the Bank Fraud," "depleted the Debtors assets," through numerous fraudulent transactions, "loot[ed] the recipients" of the fraudulent transactions so as to impair recovery and made "fraudulent representations and omissions" in the Debtors' Chapter 11 cases, also all fail. The Trustee is essentially advancing a fraud claim repackaged as a breach of fiduciary duty.[8] Because these claims are rooted in fraud, Rule 9(b) applies. "To properly plead fraud claims pursuant to Rule 9(b), a plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4)

---

[7] In reaction to the motion to dismiss the original complaint, the Trustee added (c), (d), and (e) to its amended complaint in order to try to rectify his weak fiduciary duty claims. None of these new allegations state a claim as to Mr. Gandhi.

[8] *See supra* footnote 2.

explain why the statements (or omissions) are fraudulent." *Clark v. Advanced Composites Grp.*, 16 Civ. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639 at *52-53 (S.D.N.Y. 2019) (internal citations and quotations omitted).

Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of [its] alleged participation in the fraud." *Advanced Composites*, 2019 U.S. Dist. LEXIS 80639 at *53 (internal citations and quotation omitted). Although scienter may be averred generally, the plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (S.D.N.Y. 1994). Thus, the Trustee must allege facts that give rise to a strong inference of fraudulent intent by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Nevis Capital,* 2005 U.S. Dist. LEXIS 3158 at *51 (internal quotation marks and citation omitted). With respect to Mr. Gandhi, the Trustee has not done that. He has not alleged that Mr. Gandhi knew the alleged circular transactions were fraudulent. He also does not allege that Mr. Gandhi owned any portion of the Debtor companies, or that Mr. Gandhi benefitted or even stood to benefit from the alleged fraud. Moreover, he does not sufficiently allege that any alleged omissions or misrepresentations during the Debtors' bankruptcy cases were intentional or otherwise done with fraudulent intent.

Notably, as an officer (and not a director), Mr. Gandhi can only be liable for a breach of fiduciary duty where he had "discretionary authority in the relevant functional area and the ability to cause or prevent the complained-of action." *Pereira v. Cogan*, 294 B.R. 449, 522 (S.D.N.Y. 2003) (abrogated on other grounds). As the First Amended Complaint alleges, it was Mr. Modi – and not Mr. Gandhi – who had "omnipresent oversight and control" over the Debtors. (FAC ¶ 189). Thus, the conclusory allegation that Mr. Gandhi breached his fiduciary duties of care and loyalty by

"causing" the Debtors to expend corporate assets for the personal benefit of Mr. Modi is

insufficient to state a claim, and belied by the allegations in the First Amended Complaint as to Mr.

Modi. (*See*, *e.g.*, FAC ¶ 118 (specifying that "Modi told Gandhi to pay off the HSBC mortgage in

full.")). There is no basis to hold Mr. Gandhi liable for following a direction from his boss, the sole

owner of the corporation whose assets were allegedly wasted. The Trustee does not allege – nor

could he – that Mr. Gandhi controlled the Debtors, which are Mr. Modi's companies. Thus, the

conclusory allegations as to Mr. Gandhi do not satisfy the pleading requirement with respect to

breach of fiduciary duty.

Finally, the breach of fiduciary duty claim fails as to Debtor A. Jaffe, which is incorporated

in New York, because the Trustee has failed to plead damages that are directly caused by Mr.

Gandhi's alleged misconduct. The conclusory allegation that Mr. Gandhi's breach of fiduciary duty

"proximately caused the Debtors to suffer injury"(FAC ¶ 211) is facially flawed – the injury directly

flowing from the breach of fiduciary allegations (except for the allegation that mirrors the corporate

waste cause of action) is an injury to PNB, and not to the Debtors. *See infra* Section E1. For all of

the above reasons, this Court should dismiss all of the breach of fiduciary duty claims against Mr.

Gandhi.

### D.    This Court Should Dismiss the Corporate Waste Claim

The Trustee alleges broadly that Mr. Gandhi committed corporate waste of the Debtors

assets by *either* "directing the Debtors and their officers to use corporate assets to acquire properties

for the personal benefit of Modi and his family" *or* "by facilitating" *or* "permitting such use," and by

"engag[ing] in transactions with Shadow Entities and other Modi-controlled Entities that served no

legitimate corporate or economic purpose." (FAC ¶ 230). First, because this claim is identical to the

breach of fiduciary duty claim, many of the above reasons warranting dismissal of that claim apply

13

equally here. (*Compare* FAC ¶ 230 and ¶ 210). Second, the First Amended Complaint fails to allege

the elements of a corporate waste claim. In one recent bankruptcy decision, the Court noted:

> In New York, [t]he essence of waste is the diversion of corporate assets for improper or
> unnecessary purposes. … Corporate waste occurs when assets are used in a manner so far
> opposed to the true interests [of the corporation so] as to lead to the clear inference that no
> one thus acting could have been influenced by any honest desire to secure such interests.

*In re Mundo Latino Market Inc.*, 590 B.R. 610, 619 (Bankr. S.D.N.Y. 2018) (internal quotations and

citations omitted); *see also See United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 166, n. 18 (E.D.N.Y.

2018) (noting that the requirements for pleading a claim of corporate waste under both Delaware

and New York law are substantially the same).

The only corporate waste allegation in the First Amended Complaint pertaining to Mr.

Gandhi concerns the Essex House Apartment, and the only alleged timely allegation regarding that

residence is that Mr. Modi directed Mr. Gandhi to have Firestar pay the balance on the mortgage in

February 2017. (FAC ¶ 118). That allegation is insufficient to hold Mr. Gandhi liable for corporate

waste. *See Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer*, 388 B.R. 548, 577 (Bankr. D. Del. 2008) ("only

extraordinary circumstances can justify a finding of waste"). The First Amended Complaint fails to

allege that the apartment did not serve a business purpose, or that the corporation had not received

adequate consideration. Instead, the Essex House Apartment was used to house Mr. Modi – the

owner of that entity – when he was in New York, where Firestar had its principal place of business.

Merely alleging that the Essex House was "for the personal benefit of Modi and his family" is not

sufficient to allege that it was for an improper or unnecessary purpose. Allegations of waste standing

alone are not sufficient to assert a claim. *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991).

Indeed, the First Amended Complaint does not even allege whether there was a bona fide loan

14

between Mr. Modi and the Debtor, or repayment of that loan. Thus, this Court should dismiss the corporate waste allegation against Mr. Gandhi.[9]

### E.    This Court Should Dismiss the RICO Claim

The Trustee fails to allege a RICO claim. Congress enacted RICO for a limited purpose: as an "assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26 (1983); *see also United States v. Turkette*, 452 U.S. 576, 589 (1981). The narrowly construed statute has strict legal requirements and is not designed as a catch-all "instrument against all unlawful acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). For this reason, it is well settled that "[a] plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. Nov. 19, 2013).

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Bell v. Hubbert*, No. 95-CV-10456, 2006 U.S. Dist. LEXIS 94547, at *12 (S.D.N.Y. Jan. 8, 2007) (citation and internal quotation marks omitted). "Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation and internal quotation marks omitted).

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must plead "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In addition, a plaintiff must allege injury to

---

[9] The First Amended Complaint does not allege that Mr. Gandhi was involved with the purchase of the Ritz Carlton apartment. It also does not allege that any of the Debtors' "assets" were used in connection with paying for this apartment. (*See* FAC ¶¶ 105, 111, apartment financed by Ithaca Trust, which Mr. Modi's sister funded).

his or her "business or property by reason of a violation of section 1962." *Id.* (quoting 18 U.S.C. § 1964(c)). Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001).

The Trustee has failed to meet this high burden. First, he has no standing to assert a RICO claim, because the Debtors have not been directly injured by the alleged RICO acts. Second, the RICO claim is time0barred. Third, the Trustee fails to allege the requisite predicate acts. Each of these are separate, independent bases that support a dismissal of the RICO count for failure to state a claim.[10]

### 1.    The Trustee Has No RICO Standing

The Trustee lacks standing to bring a RICO claim. RICO requires "a direct relationship between the plaintiff's injury and the defendant's injurious conduct. This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 650 (SDNY 2011)(citations omitted). Thus, a plaintiff must allege injury to his or her business or property caused "by reason of the substantive RICO violation." *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp.3d 586, 612 (S.D.N.Y. 2015). In other words, to satisfy causation, a plaintiff must show that an alleged RICO violation is directly responsible for the injury. Accordingly, a court should not look "much beyond the first step of harm caused." *DDR Constr. Serv.*, 770 F. Supp.2d at 652. This is because harm that is "contingent upon harm to another" will not satisfy RICO standing requirements. *City of New York v. Smoke-Spirits.com, Inc.* 541 F.3d 425, 440 (2d Cir. 2008); *Geiss v. Weinstein Co. Holdings LLC*, 2019 U.S. Dist. LEXIS 66363 at *27 (S.D.N.Y.

---

[10] In choosing not to address each of the seven elements of a RICO claim, Mr. Gandhi does not admit that they have been adequately plead, or can ultimately be proven.

2019) (holding that "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering or predicate acts") (citations omitted).

The Trustee alleges that each Debtor has been injured as a direct result of and proximate result of the RICO Enterprise's violations (FAC ¶ 298), but this allegation is conclusory. There is no question that the harm alleged here is derivative and entirely contingent on the alleged harm to non-debtor PNB. Tellingly, the Trustee alleges that the purported scheme by defendants "resulted in the *accrual of claim*s against the Debtors…" (FAC ¶ 1 (emphasis added)). As alleged in the First Amended Complaint, the purported scheme took a circuitous route to harm the Debtors. First, Mr. Modi and "his co-conspirators" (not including Mr. Gandhi) (FAC ¶ 27) obtained letters of credit from PNB. PNB then advanced monies to entities under Mr. Modi's control. (*Id.*, ¶ 28). This purported fraud then lead to investigations and criminal enforcement actions against Mr. Modi and others (*but not* Mr. Gandhi), which in turn lead to Mr. Modi's arrest in London. (*Id.*, ¶ 50). As a result, the Debtors filed for Chapter 11 bankruptcy. (*Id.*, ¶ 253 (describing the purported "proximately caused injury" as "destroying" each Debtor's going-concern value and "rendering them insolvent")). Following the bankruptcy filing, PNB asserted claims against the Debtors. Thus, the First Amended Complaint on its face demonstrates the multiple links in the chain of causation that lead to the harm the Trustee now alleges *on behalf of PNB*, not on behalf of the Debtors.[11]

Because *the Debtors* were not the intended target of the alleged scheme, the Trustee lacks standing. "In the RICO context, the Second Circuit has repeatedly announced that to have standing,

---

[11] Notably, the First Amended Complaint removed certain accurate factual information from the initial Complaint in a self-serving fashion. The initial Complaint alleged that "revelations" of the fraud in India in turn led to "supply chain disruptions and negative publicity" which "dramatically impaired the Debtors' business operations" eventually leading to vendors expressing "reluctance" to continue to do business with the Debtors. (Complaint, ¶ 26). These removed allegations further demonstrate how far removed the injury was from the alleged conduct of the defendants.

17

a plaintiff must demonstrate that they were the intended targets of the RICO violations, and that any

alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI*

*Holdings (Luxembourg) v. Pharoaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal

quotations omitted).

The RICO harm alleged in the First Amended Complaint was directed at PNB, and the only

reason the Debtors suffered harm was because the scheme failed and was exposed, with all the

subsequent harm flowing from that exposure. *See BCCI*, 43 F. Supp. 2d at 366 ("It is equally clear

that the harm caused to plaintiff resulted from the exposure, investigation, and prosecution of the

scheme by regulatory authorities, rather than from the predicate acts of wire fraud"). *See also Lewis ex*

*rel. American Express Co. v. Robinson,* 39 F.3d 395, 400-401 (2d Cir. 1994) (affirming dismissal of

RICO allegations for lack of standing where "any losses to American Express were caused only

because the scheme itself was exposed and thus failed"). Accordingly, this Court must dismiss the

RICO claim because the Trustee lacks standing to pursue it. *See Geiss*, 2019 U.S. Dist. LEXIS 66363

(dismissal of RICO claim for lack of standing); *BCCI Holdings*, 43 F. Supp. 2d 359 (same).

## 2. *The RICO Claim is Time Barred*

Even if the Trustee had standing to assert the alleged RICO claim, this Court should dismiss

it as time barred. The RICO claim is subject to a four-year statute of limitations. *See Rotella v. Wood*,

528 U.S. 549, 552 (2000). The limitations period begins to run "when plaintiffs discover or should

have discovered their RICO injury, not when they discover or should have discovered the

underlying pattern of racketeering activity . . . ." *Baiul v. William Morris Agency*, LLC, No. 13 CIV.

8683 KBF, 2014 U.S. Dist. LEXIS 62633, at *24 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d

Cir. 2015). Moreover, the statute of limitations "runs even where the full extent of the RICO

scheme is not discovered until a later date." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir.

2012).

18

According to the First Amended Complaint, "[t]he RICO Enterprise's common purpose came into existence *no later than early 2011….*" (FAC ¶ 297) (emphasis added). The Debtors – whose shoes the Trustee stands in – necessarily discovered or should have discovered the alleged RICO injury *no later than early 2011* when the purported scheme was implemented. Because that injury arising from the alleged Bank Fraud occurred before March 27, 2015 (four years before the first complaint was filed), the RICO count is time barred.[12]

### 3.     The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts

The Court should dismiss the RICO claims for the further reason that the Trustee fails to plead that Mr. Gandhi committed the requisite RICO predicate acts. This is a fatal pleading defect. RICO defines an exclusive list of predicate acts of racketeering. *See* 18 U.S.C. § 1961(1). "[T]o establish a violation of § 1962(c), plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity" and that these predicate acts occurred within a 10-year period. *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362, at *18-19 (S.D.N.Y. Dec. 1, 2003); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229 (2d Cir. 1999). Notably, "to comply with Rule 8, a complaint should offer specification as to the particular activities by any particular defendant" allegedly constituting a RICO predicate act. *See Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. July 9, 2013) (internal citations and quotations omitted); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (the focus of § 1962(c) "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise"). And where the RICO predicates sound in fraud (as do the Trustee's allegations) the higher pleading standard of Rule 9 must be met,

---

[12] Were the Trustee to assert that the statute of limitations did not begin to run until PNB filed its claim in this bankruptcy, which caused the Debtors harm, such assertion would serve to highlight that the Trustee has no standing to assert a RICO action on behalf of Debtors because the harm to the Debtors must proximately flow from the alleged RICO violation. *See supra* Section E1.

requiring the Trustee to "specify the time, place, speaker, and content of the alleged

misrepresentations, explain how the misrepresentations were fraudulent and plead those events

which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the

falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir.

2013) (internal quotations and citation omitted).

The First Amended Complaint pleads predicate acts based on: (1) mail and wire fraud; (2)

violation of the National Stolen Property Act;  (3) money laundering; (4) obstruction of justice; and

(5) bankruptcy fraud. The Trustee fails to adequately plead any of these.

### a.  The Trustee Fails to Adequately Plead Mail and Wire Fraud

To establish a claim for mail or wire fraud, a plaintiff must allege "(1) a scheme to defraud,

(2) money or property as the object of the scheme, and (3) use of the mails or wires to further the

scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted);

*see also Westchester Cnty.*, 137 F. Supp. 3d at 600. To establish the first element, the First Amended

Complaint must allege "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or

fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."

*United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted). Notably, a scheme to

defraud requires actual misrepresentation of material facts by each defendant. *See Lundy v. Catholic

Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (complaint "must adequately specify

the statements it claims were false or misleading, give particulars as to the respect in which [P]laintiff

contends the statements were fraudulent, state when and where the statements were made, and

identify those responsible for the statements") (internal citations and quotations omitted). Moreover,

it is "not sufficient that [the] defendant realizes that [a] scheme is fraudulent and that it has the

capacity to cause harm to its victims." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

Rather, the Trustee must "demonstrate that [each] defendant had a conscious knowing intent to

defraud and that the defendant contemplated or intended some harm to" Debtors' property rights. *Id.* (internal quotations and citation omitted). Finally, the Trustee must plead each of these elements with particularity for each Defendant. Fed. R. Civ. P. 9(b); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

The First Amended Complaint fails to establish that Mr. Gandhi engaged in mail or wire fraud because it fails to allege with any specificity that Mr. Gandhi had the requisite fraudulent intent to defraud the Debtors. Review of the mails and wires listed by the Trustee is telling in analyzing Mr. Gandhi's purported intent. The First Amended Complaint lists examples of emails and wires. (FAC ¶ 249 (referring to ¶¶ 81, 175, 176, 177)). With regard to the emails, on their face, emails to Mr. Gandhi from his boss, who the Trustee describe as having "ultimate control over the Debtors", do not establish that Mr. Gandhi had a conscious knowing intent to defraud. (*See e.g., id.* at ¶ 82(i)). Similarly, the October 21, 2010 email communication in which "Modi and Gandhi communicated by email about the shipment of a diamond to a Shadow Entity" (FAC ¶ 82(iii)), does not evidence fraudulent intent. On the face of the Trustee's description of that email, it demonstrates that Mr. Modi allegedly told Mr. Gandhi which Firestone entity to send a diamond to, and Mr. Gandhi confirmed where the diamond was to be sent and responded, "glad I asked!!!" when he apparently realized he almost sent the diamond to the wrong place. (*See id.*). These emails fail to give rise to a strong inference that Mr. Gandhi had any intent to defraud.

Similarly, the Trustee relies on a September 12, 2011 email communication from Mr. Gandhi to Standard Charter Bank. (FAC ¶¶ 100-102). Yet, the Trustee's conclusory inference that the communication was some sort of coordination to prevent detection of the Bank Fraud is not supported by the plain language of the emails. Mr. Bhansali, who was on the email chain, forwarded

Mr. Gandhi's email with Standard Charter to Mr. Modi who then responded to Mr. Bhansali noting

that because Standard Charter has offices in India, Antwerp and New York, "[i]t might be a good

idea that Ajay and you discuss all responses" – which suggests nothing more than that the CFO in

New York communicate with the CEO so that everyone is on the same page. (*Id.*, ¶ 102). There is

nothing significant or problematic about this email. [13]

Moreover, the First Amended Complaint is devoid of *any* allegation that Mr. Gandhi

misrepresented any material fact. Finally, even if the Trustee had alleged any misrepresentation by

Mr. Gandhi, or the requisite intent to defraud, the RICO claim based on a predicate act of mail or

wire fraud fails because the Fist Amended Complaint does not allege that Mr. Gandhi

"contemplated…harm to the property rights of the victim." *Guadagna*, 183 F.3d at 129 (internal

quotations and citation omitted). "A scheme to deceive, however dishonest the methods employed,

is not a scheme to defraud in the absence of a property right for the scheme to interfere with," *Pierce*,

224 F.3d at 165, and the property right must be one "of the victim." *Guadagna*, 183 F.3d at 129.

Here, the intended harm was to PNB, and not the Debtors. For all of the above reasons, the Trustee

has failed to allege the requisite predicate acts under the mail and wire fraud statute.

### b.  The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act

To adequately plead a violation of the National Stolen Property Act, the Trustee must allege

that "the defendant caused to be transported, transmitted or transferred in interstate commerce

property -- defined under the statute to include money -- having a value of at least $ 5,000, knowing

that such property had been stolen, converted or taken by fraud." *See Welch Foods v. Gilchrist*, 93 Civ.

0641E(F), 1996 U.S. Dist. LEXIS 15819, *14 (W.D.N.Y. Oct. 18, 1996). Like the allegations of mail

---

[13] The Trustee also relies on a series of emails in which Mr. Gandhi instructs, or is made aware of, the transfer of funds. (FAC *see, e.g.*, ¶ 81). None of these communications speak to the requisite intent required to sufficiently allege a RICO claim against Mr. Gandhi.

fraud and wire fraud, the alleged predicate racketeering acts under this Act must be pled in

accordance with the heightened pleading requirements of Rule 9(b). *See Bd. Of Managers of Trump*

*Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp.3d 432, 456 (S.D.N.Y. 2018) (noting that all

allegations of fraudulent predicate acts in a civil RICO claim, including conduct under the National

Stolen Property Act, are subject to the heightened pleading requirements).

     In support of its RICO claim, the Trustee provides a laundry list of conclusory statements

about the Debtors having received various funds from LOUs and in conclusory fashion titles them

"Actual Fraudulent Transfers". (FAC ¶ 255 (referencing ¶ 175)). The Trustee alleges in similarly

conclusory fashion that "Modi, Bhansali and, Gandhi, knew that the funds involved had been

fraudulently transferred from the applicable Debtor to the applicable U.S. Affiliate, or had otherwise

been stolen, converted, or taken by fraud." (FAC  ¶ 256). The Trustee has not alleged with

specificity the requisite intent by Mr. Gandhi. *See* 18 U.S.C. § 2314 ("Whoever transports . . . in

interstate or foreign commerce …money …*knowing* the same to have been stolen, converted or

taken by fraud . . .") (emphasis added).[14]

### c.   The Trustee Fails to Adequately Plead Money Laundering

     To state a proper claim of money laundering, plaintiff must plead that (1) the defendant

conducted a financial transaction in interstate commerce; (2) the defendant knew that the property

involved in the transaction represented some form of specific unlawful conduct; (3) the transaction

involved the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose

---

[14] The Trustee again makes self-serving revisions from what was alleged in the initial Complaint. The
Complaint originally alleged the knowledge element in the disjunctive -- "For each Stolen Property
Transfer, the RICO Enterprise, through Defendants Modi, Bhansali, *or* Gandhi, knew that the
money or property transferred, received, or disposed of had been stolen, converted, or taken by
fraud." (Complaint, ¶ 136) (emphasis added). Now, with a few strokes of the keyboard, in a
conclusory and baseless manner, the Trustee alleges Mr. Gandhi has the requisite knowledge. Yet,
there are no additional factual allegations to support this claim.

of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds. *See Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675, 54 (S.D.N.Y. 1999).

In conclusory fashion, the Trustee newly alleges in the First Amended Complaint and seemingly in response to Mr. Gandhi's earlier motion to dismiss, that Mr. Gandhi (and Mr. Modi and Mr. Bhansali) "knew that the property involved in each Subsequent Transfer represented the proceeds of some unlawful activity." (FAC ¶ 272). None of the allegations support this. Thus, for all of the reasons discussed above, the Trustee has failed to allege with particularity that Mr. Gandhi knew about the Bank Fraud or any unlawful activity, that he knew the "property involved" represented "some form of specific unlawful conduct," and that he had the requisite intent to conceal the origin of the funds. *See United States v. Gotti*, 457 F. Supp. 2d 411, 422-23 (S.D.N.Y. 2006) ("The 'intent to conceal' the illicit origin of funds is the hallmark of money laundering."). Accordingly, the Trustee cannot rely on money laundering as a predicate act.

### d.  The Trustee Fails to Adequately Plead Obstruction of Justice

In the First Amended Complaint, the Trustee newly alleges obstruction of justice as a RICO predicate, citing to Sections 1503 and 1512 of Title 18 of the United States Code.

As an initial matter, Section 1512, titled "Witness Tampering with a witness, victim, or an informant," covers witness tampering and requires knowing use of intimidation, threats, or corrupt persuasion. 18 U.S.C. § 1512. The First Amended Complaint does not contain any allegations that Mr. Gandhi tampered or attempted to tamper with any witnesses.

Section 1503 pertains to obstruction of justice and requires a plaintiff to allege "that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so—that is, that the defendant corruptly intended to impede the administration of that judicial proceeding." *Grewal v. Cuneo*, 2015 U.S. Dist. LEXIS 87755, *49-50 (S.D.N.Y. July 7, 2015) (quoting *United States v. Quattrone*, 441 F.3d

24

153, 170 (2d Cir.2006)). Here, the First Amended Complaint does not adequately allege the requisite

mental intent. While the First Amended Complaint concludes that Mr. Gandhi acted "corruptly"

(FAC ¶¶ 283 - 284), it is devoid of any allegations to support the notion that Mr. Gandhi's alleged

actions were not the result of a mistake or otherwise not intentional wrongdoing and instead were

done "corruptly."

Moreover, the Trustee does not adequately allege proximate harm or that injury resulted

from the alleged obstruction of justice. Instead, again in conclusory fashion, the Trustee alleges that

defendants' action caused injury and harm to "each Debtor's business and property." (FAC ¶ 289).

While the Trustee alleges additional expenses and a delay in his ability to recover, the Trustee does

not allege a direct relationship between the alleged obstruction and the "harms" to the Debtors. *See*

*Cuneo*, 2015 U.S. Dist. LEXIS 87755, at *50-51 (holding plaintiff did not properly allege that she was

injured by defendants' purported racketeering conduct where the plaintiff did not allege proximate

cause).

Finally, and perhaps most fatal to the Trustee's obstruction of justice claim, for a predicate

act to be part of a pattern of racketeering activity, a plaintiff must show that there is both

relationship and continuity among the predicate acts. *See H.J., Inc. v. Northwestern Bell Telephone Co.*,

492 U.S. 229, 240 (1989). Here, there is a lack of continuity for this new predicate act -- which

occurred well after the alleged racketeering activity had ended -- to be part of the RICO cause of

action. Thus, it cannot be considered by the Court. *See Ray Larsen Assoc., Inc. v. Nikko America, Inc.*,

1996 U.S. Dist. Lexis 11163, *24 n.8 (S.D.N.Y. Aug. 6, 1996) (excluding obstruction of justice

allegations arising out of alleged efforts by the defendant to cover up the underlying conduct and

finding they are inadequate to satisfy the continuity requirement of the RICO statute)*; see also World

Wrestling Entertainment Inc. v. Jakks Pacific Inc.*, 530 F. Supp. 2d 486, 512 (S.D.N.Y. 2007) (holding that

allegations of obstruction, including that defendants destroyed evidence, provided perjured

25

testimony, made false statements to auditors, and concealed documents to cover-up an already-completed scheme, did not extend the pattern of racketeering activity).

Accordingly, the Trustee cannot rely on obstruction of justice as a predicate act and it must be dismissed from the First Amended Complaint.

### e.  The Trustee Fails to Adequately Plead Bankruptcy Fraud

The Trustee has also added a bankruptcy fraud claim as an additional RICO predicate act. However, the allegations that comprise the bankruptcy fraud are identical to the the the obstruction of justice allegations. (FAC ¶ 291, referencing paragraphs 280 - 283). We incorporate by reference all of the above arguments as to why the Trustee does not have a valid obstruction of justice claim. Each argument applies equally here and as a result, the bankruptcy fraud predicate act must be dismissed.

### F.  This Court Should Dismiss the RICO Conspiracy Claim

The First Amended Complaint also fails to allege a conspiracy by Mr. Gandhi to violate RICO under 18 U.S.C. § 1962(d). Because the First Amended Complaint does not plead a substantive RICO violation, its conspiracy claim necessarily must fail. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)(RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *New York v. UPS, Inc.,* No. 15-CV-1136 (KBF), 2016 U.S. Dist. LEXIS 105038, at *13-14 (S.D.N.Y. Aug. 9, 2016) ("Courts in this Circuit have repeatedly held that [a]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (internal quotation and citation omitted).

26

## CONCLUSION

For all of the above reasons, Mr. Gandhi respectfully requests that the court dismiss the

claims against him with prejudice.

Dated:  New York, New York
        November 5, 2019

                        Respectfully submitted,

                        SERPE RYAN LLP


                        By: _____/s/ Silvia L. Serpe___
                            Silvia L. Serpe
                            Paul W. Ryan
                            16 Madison Square West
                            New York, New York 10010
                            (212) 257-5010
                            sserpe@serperyan.com
                            pryan@serperyan.com

                            *Attorneys for Ajay Gandhi*