Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

**MEMORANDUM OF LAW OF DEFENDANT MIHIR BHANSALI IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED ADVERSARY COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ALLEGATIONS IN THE AMENDED COMPLAINT ...................................................... 4

    A.    General Allegations ............................................................................................ 4

    B.    Specific Allegations Against Bhansali ........................................................... 6

    C.    Allegations of Modi's Dominance ................................................................... 7

LEGAL STANDARD ......................................................................................................... 7

    A.    Standard for Motion to Dismiss ...................................................................... 7

    B.    Choice of Law for Statute of Limitations ..................................................... 8

    C.    Choice of Law for Pleading Sufficiency ....................................................... 8

ARGUMENT ...................................................................................................................... 9

    A.    The Trustee Lacks Standing to Assert Claims Based on the Alleged Bank Fraud that
Properly Belong to the Creditors ....................................................................... 9

    B.    The Breach of Fiduciary Duty Claim is Time Barred ................................. 12

    C.    In the Absence of a Duty, There Can Be No Claim for Breach of Fiduciary Duty ....... 13

    D.    Even Assuming a Duty, the Conclusory Allegations Fail to Support Any Breach ........ 14

        1.    Without Allegations of Self-Dealing or Personal Gain by Bhansali, the Breach of
Duty of Loyalty Claim Fails ............................................................................. 15

        2.    The Amended Complaint Fails to Allege Bhansali Breached His Duty of Care ....... 16

        3.    If this Court Finds Fraud is Essential to the Breach of Fiduciary Duty Claim, the
Amended Complaint Fails to Meet the Heightened Pleading Standard ............... 19

    E.    Corporate Waste Claims Must be Dismissed for Failure to State a Cause of Action .... 20

        1.    Legal Standard ................................................................................................. 21

        2.    Allegations Surrounding the Ithaca Trust Cannot Amount to Corporate Waste ........ 22

        3.    Allegations Surrounding the Purchase of the Essex Apartment Cannot Amount to
Corporate Waste Against Bhansali ................................................................... 23

        4.    Allegations Surrounding the Diversion of Assets to Mehta Also Fail to Allege
Corporate Waste by Bhansali ........................................................................... 25

    F.    Corporate Waste Claims are Time-Barred .................................................... 26

    G.    The RICO Claim Must be Dismissed ............................................................ 28

        1.    The Trustee Has No RICO Standing ............................................................... 29

        2.    The RICO Claims are Time Barred ................................................................. 31

        3.    The Trustee Fails to Plead Adequately the Requisite RICO Predicate Acts ............. 32

        4.    The Trustee Fails to Plead RICO Conspiracy ................................................ 39

CONCLUSION ................................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Azrielli v. Cohen Law Offices,*
    21 F.3d 512 (2d Cir. 1994)........................................................................44

*Baiul v. William Morris Agency, LLC,*
    2014 U.S. Dist. LEXIS 62633 (S.D.N.Y. 2014)......................................40

*Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.),*
    529 F3d 432 (2d Cir. 2008)........................................................................18

*BCCI Holdings (Luxembourg) v. Pharoaon,*
    43 F. Supp. 2d 359 (S.D.N.Y. 1999)...................................................39, 40

*Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo,*
    346 F. Supp.3d 432 (S.D.N.Y. 2018)........................................................44

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.),*
    906 A.2d 27 (Del. 2006)............................................................................31

*Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer (In re Bridgeport Hldgs., Inc.),*
    388 B.R. 548 (Bankr. D. Del. 2008)....................................................31, 34

*Brown v. Lower Brule Community Dev. Enter., L.L.C.,*
    2014 U.S. Dist. LEXIS 154658 (S.D.N.Y. 2014)....................................29

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.),*
    466 B.R. 626 (Bankr. D. Del. 2012) ...................................................30, 33

*Casio Computer Co. v. Sayo,*
    1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. 1999).....................................45

*City of New York v. Smoke-Spirits.com, Inc.,*
    541 F.3d 425 (2d Cir. 2008)......................................................................38

*Clark v. Advanced Composites Grp.,*
    2019 U.S. Dist. Lexis 80639 (S.D.N.Y. 2019) .......................................29

*Claybrook v. Morris (In re Scott Acquisition Corp.),*
    344 B.R. 283 (Bankr. D. Del 2006) ..........................................................18

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
    187 F.3d 229 (2d Cir. 1999).......................................................................41

*Cohen v. S.A.C. Trading Corp.,*
    711 F.3d 353 (2d Cir. 2013).......................................................................41

*Criden v. Steinberg*,
   2000 Del. Ch. LEXIS 50 (Ch. 2000) .................................................................30, 34

*CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*,
   2007 U.S. Dist. LEXIS 74723 (S.D.N.Y. Oct. 3, 2007) .............................................24

*DDR Constr. Servs. v. Siemens Indus.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011) ......................................................................38

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ....................................................................................37

*DeFlora Lake Dev. Assoc. v Hyde Park (In re DeFlora Lake Dev. Assoc.)*,
   571 B.R. 587 (Bankr. S.D.N.Y. 2017) .......................................................................16

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987) ..................................................................................42

*Doppelt v. Denahan*,
   144 A.D.3d 573 (1st Dep't 2016) ............................................................................32

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
   423 F. Supp. 2d 173 (S.D.N.Y. 2006) .......................................................................16

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ....................................................................................47

*Flaxer v Gifford (In re Lehr Constr. Corp.)*,

   528 B.R. 598, 606 (Bankr. S.D.N.Y. 2015) ..............................................................16

*Geiss v. Weinstein Co. Holdings LLC*,
   2019 U.S. Dist. LEXIS 66363 (S.D.N.Y. 2019) ....................................................38, 40

*Green v. Phillips*,
   1996 Del. Ch. LEXIS 76 (Ch. June 19, 1996) .........................................................34

*Grewal v. Cuneo*,
   2015 U.S. Dist. LEXIS 87755 (S.D.N.Y. July 7, 2015) .............................................46

*Grumman Olson Indus. v McConnell*,
   329 B.R. 411 (Bankr. S.D.N.Y. 2005) .......................................................................22

*H.J., Inc. v. Northwestern Bell Telephone Co.*,
   492 U.S. 229 (1989) ................................................................................................46

*Hanson Trust PLC v. ML SCM Acquisition, Inc.*,
   781 F.2d 264 (2d Cir. 1986) ....................................................................................30

*Harris v. NYU Langone Med. Ctr.*,
    2013 U.S. Dist. LEXIS 99328 (S.D.N.Y. 2013) ...................................................41

*Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*,
    507 B.R. 452 (Bankr. S.D.N.Y. 2014) ...........................................................16

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990) .........................................................................37

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) .............................................................18, 19, 20

*In re infoUSA, Inc. S'holders Litig.*,
    953 A.2d 963 (Del. Ch. 2007) .....................................................................30

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    2008 U.S. Dist. LEXIS 53923 (S.D.N.Y. 2008) ........................................28, 29

*In re Sabine Oil & Gas Corp.*,
    547 BR 503 (Bankr. S.D.N.Y. 2016) .............................................................25

*IT Group, Inc. v. D'Aniello*,
    2005 U.S. Dist. LEXIS 27869 (D. Del. 2005) ................................................24

*Jerome M. Sobel & Co. v. Fleck*,
    2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. 2003) .............................................41

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ..................................................................37

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012) ........................................................................40

*Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Entm't, LLC)*,
    520 B.R. 455 (Bankr. D. Del. 2014) .............................................................22

*Loengard v. Santa Fe Indus., Inc.*,
    573 F. Supp. 1355 (S.D.N.Y. 1983) ..............................................................17

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
    711 F.3d 106 (2d Cir. 2013) ........................................................................42

*Marnavi S.p.A. v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012) ..............................................................35

*McHale v. Citibank, N.A.*,
    420 B.R. 178 (Bankr. S.D.N.Y. December 3, 2009) ....................................18, 20

*Meskunas v. Auerbach*,
   2019 U.S. Dist. LEXIS 26531 (S.D.N.Y. Feb. 19, 2019).......................................................21

*Miller v. Bradley (In re W.J. Bradley Mtge. Capital, LLC)*,
   598 B.R. 150 (Bankr. D. Del. 2019) .....................................................................................30

*Mirman v Berk & Michaels, P.C.*,
   1994 U.S. Dist. LEXIS 10771 (S.D.N.Y. 1994) ....................................................................21

*Moss v. Morgan Stanley, Inc.*,
   719 F.2d 5 (2d Cir. 1983)......................................................................................................37

*New York v. UPS, Inc.*,
   2016 U.S. Dist. LEXIS 105038 (S.D.N.Y. 2016) ..................................................................47

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
   Credit Partners L.P.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ...............................................................................17, 30

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH
   S&B Holdings LLC)*,
   420 B.R. 112 (Bankr. S.D.N.Y. 2009)...................................................................................24

*Patrick v. Allen*,
   355 F. Supp. 2d 704 (S.D.N.Y. 2005)....................................................................................30

*Pereira v EisnerAmper LLP (Waterford Wedgwood USA, Inc.)*,
   529 B.R. 599 (Bankr. S.D.N.Y. 2015) .......................................................................18, 19, 20

*Picard v JPMorgan Chase & Co.*,
   460 B.R. 84 (S.D.N.Y. 2011)................................................................................................18

*Picard v JPMorgan Chase & Co.*,
   460 BR 84 (S.D.N.Y. 2011)..................................................................................................20

*Ray Larsen Assoc., Inc. v. Nikko America, Inc.*,
   1996 U.S. Dist. Lexis 11163 (S.D.N.Y. Aug. 6, 1996) .........................................................47

*In re American Express Co. v. Robinson*,
   39 F.3d 395 (2d Cir. 1994)....................................................................................................39

*Refco Inc. Sec. Litig. v. Aaron*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2010)....................................................................................28

*Roselink Investors, LLC v. Shenkman*,
   386 F. Supp. 2d 209 (S.D.N.Y 2004).....................................................................................22

*Rotella v. Wood*,
   528 U.S. 549 (2000)...........................................................................................................40

*RSL Communs. PLC v. Bildirici*,
   649 F. Supp. 2d 184 (S.D.N.Y. 2009).............................................................................22

*Russello v. United States*,
   464 U.S. 16 (1983).............................................................................................................36

*Samuels v Air Transp. Local 504*,

   992 F.2d 12, 15 (2d Cir. 1993) ........................................................................................16

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)..............................................................................................19

*South Rd. Assocs. v. IBM*,
   216 F.3d 251 (2d Cir. 2000)..............................................................................................16

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*,
   673 F.3d 180 (2d. Cir. 2012)............................................................................................17

*Stern v. Gen. Elec. Co.*,
   924 F.2d 472 (2d Cir. 1991)........................................................................................31, 34

*Targum v. Citrin Cooperman & Co., LLP*,
   2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. 2013) ...........................................................37

*Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*,
   493 F.3d 345 (3d Cir. 2007)..............................................................................................22

*Teras Int'l Corp. v. Gimbel*,
   2014 U.S. Dist. LEXIS 174328 (S.D.N.Y. Dec. 17, 2014) ...................................................22

*Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*,
   313 B.R. 46 (Bankr. S.D.N.Y. 2004)................................................................................17

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006)...........................................................................................22

*Trump v. The Carlyle Group*,
   2010 N.Y. Slip. Op. 30687[U] (N.Y. Co. 2010)...............................................................17

*United States SBA v. Feinsod*,
   347 F. Supp. 3d 147 (E.D.N.Y. 2018) ..............................................................................17

*United States v. Gotti*,
   457 F. Supp. 2d 411 (S.D.N.Y. 2006)...............................................................................45

*United States v. Guadagna*,
    183 F.3d 122 (2d Cir. 1999)................................................................42, 43, 44

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987)........................................................................41

*United States v. Pierce*,
    224 F.3d 158 (2d Cir. 2000)..................................................................42, 44

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007).........................................................................42

*United States v. Turkette*,
    452 U.S. 576 (1981)....................................................................................37

*Wagner v. Selinger*,
    2000 Del. Ch. LEXIS 1 (Ch. 2000) ............................................................34

*Welch Foods v. Gilchrist*,
    1996 U.S. Dist. LEXIS 15819 (W.D.N.Y. 1996) .......................................44

*Westchester Cnty. Independence Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015)..................................................38, 42

*World Wrestling Entertainment Inc. v. Jakks Pacific Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007)........................................................47

**STATUTES**

18 U.S.C. § 1512.................................................................................................45, 46

18 U.S.C. § 1961(1) ...............................................................................................41

18 U.S.C. § 1962(c) ....................................................................................37, 41, 47

18 U.S.C. § 2314....................................................................................................45

Fed. R. Civ. P. 12(b)(6).........................................................................................16

Fed. R. Civ. P. 8..............................................................................................28, 41

Fed. R. Civ. P. 9..................................................................................28, 41, 42, 44

CPLR 202...............................................................................................................17

Defendant Mihir Bhansali ("Bhansali"), by and through his undersigned attorneys, White and Williams LLP, respectfully submits this Memorandum of Law, Declaration of Nicole A. Sullivan ("Sullivan Decl."), and attached exhibits, in support of his Motion to Dismiss the First Amended Adversary Complaint, filed September 20, 2019 (the "Amended Complaint" or "FAC").

## PRELIMINARY STATEMENT

In the Amended Complaint, the Plaintiff Richard Levin (the "Trustee"), as Chapter 11 Trustee for Debtors Firestar Diamond, Inc. ("FDI"), Fantasy, Inc. ("Fantasy"), and Old AJ, Inc. f/k/a A. Jaffe, Inc. ("Jaffe") (collectively "Debtors"), asserts claims against Bhansali and two other individual Defendants, Nirav Modi ("Modi") and Ajay Gandhi ("Gandhi") (collectively, "Defendants"), arising from what the Trustee alleges was a pattern of fraudulent activity involving a number of non-Debtor entities, and directed towards a third-party, Punjab National Bank ("PNB") (the "Bank Fraud").[1] The Trustee alleges that, as a result of the Defendants' purported involvement in this scheme, PNB has asserted a substantial creditor's claim against the Debtors, the Debtors' assets have been diverted and their businesses have been destroyed. Thus, the Trustee now seeks recovery of the amounts allegedly sought by PNB and other unspecified damages based on claims against Bhansali for breach of fiduciary duty, corporate waste, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), primarily arising from the purported Bank Fraud. The Amended Complaint, which is the Trustee's second attempt to manufacture valid claims against Bhansali, after he chose not even to attempt to oppose the motion to dismiss his first complaint, once again falls short.

---

[1] In the Amended Complaint, the Trustee now attempts to expand his claims to include additional allegations that "other banks" that he notably never identifies who were purportedly also involved in the Bank Fraud. FAC ¶ 28 ("PNB and other banks advanced amounts . . . ."). However, there is no support, and the Trustee submits none, for such allegations given that it is only PNB that was ever alleged to have been involved in the purported Bank Fraud.

It is well established that a bankruptcy trustee has standing only to assert claims belonging to the ***debtors and on the debtors' behalf***. Conversely, a trustee has no standing to assert claims that belong to third parties, including creditors. Nevertheless, the crux of the Amended Complaint consists of allegations that Bhansali and his co-defendants engaged in fraudulent activity specifically directed towards PNB and caused harm to PNB, and the Amended Complaint seeks recovery from the Defendants of those damages, under the guise that the Debtors may be liable to a third-party. To the extent there is any basis at all for such allegations, the claims belong to PNB, not to the Trustee. Without a claim belonging to Debtors, the Amended Complaint should be dismissed.

The Trustee also has no standing to assert claims for violations of the RICO statute. It is black letter law that a plaintiff must allege that plaintiff itself was the intended target of the alleged pattern of racketeering activity, and that there was a direct relationship between the wrongful act and the injury. Here, the allegations show neither. The Trustee alleges that Bhansali and the other Defendants engaged in fraudulent activity intended to facilitate and advance a scheme to obtain unauthorized loans from PNB. Thus, the "intended target" of the activities complained of necessarily was PNB – not the Debtors. In fact, there are no allegations that the Debtors were intended or direct victims of any alleged fraud. The Trustee has not – and could not – plead that they were. Any alleged injury to the Debtors was necessarily incidental and indirect, and therefore insufficient to form the basis of a RICO claim. Thus, the claim must be dismissed.

The Amended Complaint also must be dismissed because it fails to plead any cognizable claim against Bhansali, and such claims are otherwise time-barred. The breach of fiduciary duty claim is time-barred. The statute of limitations for a breach of fiduciary duty claim here is three years. Yet, the Trustee fails to assert any valid allegations of activities within this time period that

could constitute a breach of any duty on Bhansali's part. Indeed, the allegations of conduct that took place within that time period are scant, and entirely disconnected from the alleged Bank Fraud that is the epicenter of this action. Even if the Court applied a six-year statute of limitations, the claim still fails for the same reason.

Moreover, if the claim were timely, it also fails because Bhansali did not owe a fiduciary duty to the Debtors. It is well settled that where, as here, the corporation is a wholly owned subsidiary of another corporation, it is the duty of the officers and directors to act in the best interests of the corporate parent, and, in this case, the Debtors were ultimately owned by Firestar International, Ltd. And even if such duty existed, the Trustee's pleading is still inadequate. The Amended Complaint contains no allegations that rise to the level of a breach of the duty of care or duty of loyalty on the part of Bhansali. On the contrary, the essential allegations are that Bhansali acted at the direction of his boss, Modi, the ultimate owner, who had complete control over the corporations. The Amended Complaint is entirely devoid of any viable allegation that Bhansali benefitted from any wrongful conduct, or that he put his own interests ahead of Debtors.' Without such allegations, there can be no breach of any duty.

The allegations of corporate waste are likewise fatally flawed. To survive a motion to dismiss, a corporate waste claim must offer particularized allegations that the defendant utilized corporate assets in a way that brought insufficient compensation to the corporation, or served no corporate purpose. The Amended Complaint fails to make such allegations against Bhansali. The claims of corporate waste are premised on three separate transactions. With respect to each transaction, the Trustee fails to allege either that actual corporate assets of the Debtors were utilized; that Bhansali took any steps in connection with the purchase of the property at issue, or had any other involvement whatsoever in the transaction; or that the corporation received

inadequate consideration or saw no benefit. At the same time, most of the allegations pled by the Trustee in support of this claim took place outside of the applicable three-year statute of limitations. Thus, even if the claim was viable, it would also be time-barred.

Finally, any purported RICO claim is decidedly time-barred, and the Trustee's sketchy and conclusory allegations do not come close to satisfying the demanding requirements of the RICO statute.

For all of the aforementioned reasons, the Amended Complaint should be dismissed. Given the Trustee's previous failure to plead a viable claim against Bhansali, it is respectfully submitted that leave to amend again should not be granted.

## ALLEGATIONS IN THE AMENDED COMPLAINT

### A.  *General Allegations*

The Amended Complaint alleges that, from 2011 to early 2018, Modi "orchestrated and directed a scheme to obtain loans, credits or other funds under false pretenses and without collateral from" PNB through the use of so-called Letters of Undertaking ("LOUs"). Sullivan Decl. ¶ 2, Ex. A ("FAC"), ¶¶ 23, 24-26. The Amended Complaint alleges that Modi perpetrated this scheme by artificially inflating the import volume of certain entities under his control with sham transactions. FAC ¶ 27. In doing so, PNB "advanced amounts equal to over $1 billion under LOUs for the benefit of entities under Modi's control." FAC ¶ 28. Doing so allegedly "resulted in [the] accrual of claims against the Debtors for over $1 billion in favor of Punjab National Bank, the diversion of millions of dollars of the Debtors' assets for the benefit of the family of Nirav Modi and Mihir Bhansali, and the collapse of the Debtors and the resulting loss of value of their businesses." FAC ¶¶ 1.

In particular, the Trustee alleges that PNB advanced over $1 billion without collateral, or in some cases, *via* so-called "circular trading," whereby the same diamonds were exported from

and re-imported back into India multiple times at varying prices in transactions involving various so-called "Firestar Entities," which include the Debtors and a majority of non-Debtor corporations; "LOU Entities", "Shadow Entities," which include non-Debtor corporations; and more than twenty foreign countries (all collectively referred to as the "Modi-Controlled Entities."). FAC ¶¶ 27, 29, 35. The chart below reflects the ownership structure, as stated in the Amended Complaint, of the various entities allegedly involved in the Bank Fraud:



The Trustee alleges that, from approximately 2010 to 2012, the "Debtors were directly involved" in the Bank Fraud because the Firestar Entities traded directly with the LOU Entities. FAC ¶ 55. Specifically, the Debtors were allegedly "exporters and direct beneficiaries" of at least six LOUs and otherwise engaged in "circular trading" that facilitated additional LOUs resulting in payments to the Shadow Entities and Firestar Entities, although the specific LOUs involved are

not identified. FAC ¶¶ 54-55. No specific damages are alleged to have been incurred by the Debtors as a result of these purported transactions. *Id.*

The Amended Complaint next alleges that, from 2013 through 2018, the Debtors "no longer directly participated in import and expert transactions underlying LOU issuances" but that the Shadow Entities were used as intermediaries. FAC ¶¶ 56-57. In particular, the Debtors allegedly received funds from the Shadow Entities on certain occasions and these funds were either used by the Debtors or returned to the Shadow Entities. FAC ¶¶ 57-58. Again, no specific damages are alleged to have been incurred by the Debtors as a result of these claimed transactions. *Id*.

### B. *Specific Allegations Against Bhansali*

The Amended Complaint alleges that Bhansali was the CEO and sole director of each Debtor, and asserts a number of conclusory allegations against Bhansali, seeking to tie him to the alleged fraudulent activity. FAC ¶¶ 1, 19. In particular, the Trustee generally asserts that, at the direction of Modi, Bhansali "participated in and advanced the Bank Fraud" (FAC ¶ 61); Bhansali coordinated and directed fraudulent transactions among the Debtors, LOU Entities and Shadow Entities that were integral to the Bank Fraud (FAC ¶ 63); and exercised "oversight and control" over the alleged circular transactions based on 52 emails, 42 of which do not even reference Bhansali (FAC ¶¶ 81-83); "engaged in and oversaw suspicious" accounting, finance and inventory practices (FAC ¶¶ 84-91); and "personally benefited from the Bank Fraud" because he diverted proceeds from the Bank Fraud for the benefit of himself and his family (FAC ¶¶ 129-141). The Trustee also concludes that Bhansali "made fraudulent omissions, misstatements and misrepresentations" when filing the Chapter 11 Petition for the Debtors, including by stating that the Debtors were not involved in the apparent Bank Fraud when (according to the Trustee's opinion) the Debtors were involved. FAC ¶¶ 152-172. Again, notwithstanding these claims, no specific injury to the Debtors is alleged.

### C.  Allegations of Modi's Dominance

Despite various general allegations of operational control by Bhansali, the Amended Complaint repeatedly alleges that the affairs of the Debtors, as well as the so-called Firestar Entities, LOU Entities and Shadow Entities, were dominated, and completely controlled, by Modi. FAC ¶¶ 28, 188-189, 190-194. In particular, the Amended Complaint alleges that: "Modi coordinated and directed the execution of the Bank Fraud with his family members and various directors, officers, and employees . . . . "; and "Modi directed Bhansali and Gandhi and exerted total ultimate control over Debtors' affairs, including in regard to day-to-day details." FAC ¶¶ 188-189. The Amended Complaint goes on to include a number of alleged examples from 2009 through 2015 that "show Modi's total ultimate control over the Debtors." FAC ¶¶ 190-194.

## LEGAL STANDARD

### A.  Standard for Motion to Dismiss

"A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is 'designed to test the legal sufficiency of the complaint . . . .'" (*Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*), 507 B.R. 452, 459 (Bankr. S.D.N.Y. 2014) and "the Court may dismiss any count in the complaint that fails to state a claim for which relief can be granted" (*DeFlora Lake Dev. Assoc. v Hyde Park (In re DeFlora Lake Dev. Assoc.)*, 571 B.R. 587, 594 (Bankr. S.D.N.Y. 2017). "Court need not accept as true conclusory allegations and legal conclusions masquerading as facts." *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 (S.D.N.Y. 2006). In order to survive a Rule 12(b)(6) motion, plaintiff "must allege facts that, if true, would create a judicially cognizable cause of action." *South Rd. Assocs. v. IBM*, 216 F.3d 251, 253 (2d Cir. 2000). In particular, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Harrison*, 507 B.R. at 459.

### B.  *Choice of Law for Statute of Limitations*

"[C]ourts apply New York's statute of limitations to actions brought in New York except if its borrowing statute is triggered." *Loengard v. Santa Fe Indus., Inc.*, 573 F. Supp. 1355, 1359 (S.D.N.Y. 1983) (citation omitted); *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 188 (2d. Cir. 2012) (affirming application of forum state's choice of law of to determine statute of limitations). Under New York's borrowing statute (CPLR 202), the plaintiff's residence (determined by its principal place of business) determines if New York limitations applies. Here, the principal place of business for all of the Debtors is New York. FAC ¶¶ 8-10. Accordingly, the statute of limitations must be governed by New York law.

### C.  *Choice of Law for Pleading Sufficiency*

Under New York law's choice of law, the internal affairs doctrine dictates that a claim for breach of fiduciary duty and corporate waste is governed by the law of the state of incorporation. *See Tese-Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46, 62 (Bankr. S.D.N.Y. 2004); *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.*, 405 B.R. 527, 549 (Bankr. D. Del. 2009). Here, Delaware law governs the claims for breach of fiduciary duty and corporate waste relating to Firestar and Fantasy, New York law governs these claims relating to Jaffe. FAC ¶¶ 6-8.[2]

---

[2] Notably, the requirements for pleading sufficiency of a claim of breach of fiduciary duty and corporate waste under both Delaware and New York law are substantially the same. *See Trump v. The Carlyle Group*, 2010 N.Y. Slip. Op. 30687[U], *18, n. 3 (N.Y. Co. 2010); *United States SBA v. Feinsod*, 347 F. Supp. 3d 147, 166, n. 18 (E.D.N.Y. 2018).

## ARGUMENT

### A. *The Trustee Lacks Standing to Assert Claims Based on the Alleged Bank Fraud that Properly Belong to the Creditors*

i.   <u>Requirements for Standing</u>

It is well established that "[s]tanding is a threshold issue" and "[i]f a plaintiff does not have standing, a court has no subject matter jurisdiction to hear the case." *McHale v. Citibank*, *N.A.*, 420 B.R. 178, 191 (Bankr. S.D.N.Y. Dec. 3, 2009). "The burden to establish standing remains with the party claiming that standing exists." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995).

Furthermore, "[f]ederal bankruptcy law places a trustee in the shoes of the bankrupt corporation" and he can only bring "claims that the corporation could have instituted prior to filing its petition for bankruptcy." *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 454 (2d Cir. 2008). "[W]hen creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch*, 72 F.3d at 1093; *see also Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 291 (Bankr. D. Del 2006). This "prevents the depletion of a debtor's assets from a trustee's attempt to enforce rights possessed by third parties" and "defendants from facing the danger of duplicative recoveries" (*Pereira v EisnerAmper LLP (Waterford Wedgwood USA, Inc.)*, 529 B.R. 599, 603 (Bankr. S.D.N.Y. 2015)), especially where "giving the Trustee the power to pursue claims on behalf of creditors would usurp the creditors' right to determine whether and in what forum to vindicate their legal injuries, and would raise difficult issues of preclusion." *Picard v JPMorgan Chase & Co.*, 460 B.R. 84, 91 (S.D.N.Y. 2011).

In determining "whether an injury was to a corporation or its creditors, . . . a court may consider multiple factors, including: 'to whom any allegedly breached duty was owed; what was

the injury underlying the claims; who suffered the injury; who would gain from the recovery, or

lose out if the recovery were awarded to a different successful plaintiff; and, to the extent different

from any of the foregoing, whether any creditor of the debtor could assert the claim . . . or just

those creditors suffering a particularized injury.'" *Waterford Wedgwood USA, Inc.*, 529 B.R. at

603. In fact, a bankruptcy trustee may not assert claims of a debtor corporation unless the claimed

injury is distinct from any injury claimed to have been suffered by individual creditors. *Shearson*

*Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118-19 (2d Cir. 1991); *Hirsch*, 72 F.3d at 1094.

    ii.   <u>Amended Complaint Does Not Allege Sufficient Injury to Establish Standing</u>

    The crux of the Amended Complaint is that the allegedly improper conduct was directed

at a specific creditor – PNB – and has exposed the Debtors to claims by that creditor, which alleged

fraud (when discovered) resulted in the loss of value of the Debtors' businesses. The Trustee

plainly has no standing to pursue these claims.

    By the Amended Complaint's own allegations, the claimed injuries accrue only to PNB,

not the Estate. All the allegations are premised only on the purported Bank Fraud; any wrongdoing

is alleged to be directed at PNB, not the Debtors; the particularized injury suffered (if any) was by

PNB, which is also who would gain from any potential recovery; and, if the Trustee were to recover

on his claims, the Defendants would undoubtedly face the prospect of duplicative claims from

PNB. Moreover, there is no other particularized injury alleged to the Debtors. As established *infra*,

the Trustee makes no valid allegations of depletion of corporate assets, distortion of the debtor's

finances or increased debt that would amount to particularized harm to the Debtors themselves. In

fact, the alleged conduct at all times either did not relate to the Debtors or directly benefit them.

Any injury alleged to the Debtors is in the form of potential obligations to PNB. That the

Defendants allegedly forced the Debtors to make fraudulent transfers, causing PNB to suffer injury, is not sufficient for standing.

The claims to redress similar harm have been held to belong to the creditors, not the corporation.[3] In *McHale*, although involving a trustee's claim against a bank for aiding and abetting a director's breach of fiduciary duty in misappropriating monies, the court expressly determined that the trustee, who sought to "recover damages for being 'subjected to claims by more than 300 creditors'" lacked standing because the trustee essentially "requests damages for money owed" to the creditors. 420 B.R. at 196; *see also Hirsch*, 72 F.3d at 1094 ("It follows that claims predicated upon the distribution of misleading PPMs to investors in Colonial limited partnerships are the property of those investors, and may be asserted only by them and to the exclusion of Hirsch [the trustee]."). Similarly, in *Pereira*, the court stated that "unpaid obligations" could not establish an injury to the estate, especially where "the Debtor appears to have benefitted" from the alleged misconduct. 529 B.R. 599 at 604.

Furthermore, in *Picard*, the trustee alleged a series of common law causes of action against a third-party on behalf of the debtor corporation as a result of alleged Ponzi scheme run by Bernard Maddoff. *Picard*, 460 B.R. at 88. In determining that the trustee lacked standing, the court held that the allegations premised on the Madoff Ponzi scheme belonged to the creditor and the Trustee could not pursue them. *Id*. at 91. Likewise, in the absence of any injury to Debtors arising from Bhansali's alleged wrongdoing, the Trustee lacks standing.

---

[3]  While many of the cases that have addressed standing in this context involve a trustee's claims against third parties (e.g. accountant, lawyer, bank), these cases are nonetheless informative, given that they analyze whether the alleged injury caused by the conduct is particular to the creditors or the corporation.

### B. *The Breach of Fiduciary Duty Claim is Time Barred*

"The applicable statute of limitations for a claim for breach of fiduciary duty depends upon the substantive nature of relief the plaintiff seeks." *Mirman v Berk & Michaels, P.C.*, 1994 U.S. Dist. LEXIS 10771, at *37 (S.D.N.Y. 1994). Unless the nature of the relief sought is equitable, "a breach of fiduciary duty claim carries a three-year statute of limitations." *Id*. While in certain circumstances the statute of limitations can be increased to six years for a claim for breach of fiduciary duty "based on actual fraud," such circumstances do not exist here. *See Meskunas v. Auerbach*, 2019 U.S. Dist. LEXIS 26531 *12 (S.D.N.Y. Feb. 19, 2019).

The Trustee's breach of fiduciary duty claims against Bhansali must be dismissed because substantially all of the alleged bad acts occurred prior to March 27, 2016. In fact, the only factual assertions involving Bhansali post-March 2016 are:

- In March 2016, Evelyn Kosiec (Jaffe employee) was directed by Bhansali to ship to Eternal diamonds (a Shadow Entity) in Hong Kong, the same price, rounded to the nearest 5, 120-day terms (FAC ¶ 40);

- On August 19, 2017, Universal Fine Jewelry FZE's manager (whose signature also stated he was the general manager of Firestar Diamond in Dubai) emailed Bhansali profiles of three Shadow Entities asking for his review and advise (FAC ¶ 47);

- On September 14, 2017, a former Firestar employee asked for Bhansali's approval before changing authorized signatory for Firestar Hong Kong (FAC ¶ 48); and

- On December 14, 2017, a request from a Dubai employee for a tablet computer was directed to Bhansali (FAC ¶ 48).

None of these post-March 2016 allegations supports a claim that Bhansali breached a fiduciary duty to the Debtors as none of them allege any wrongdoing. The Trustee's continued efforts to shoehorn everyday business transactions with no allegation of any illegitimacy into the Bank Fraud cast stark light on the weakness of this pleading. The breach of fiduciary duty claim must be dismissed as time barred.

### C.  In the Absence of a Duty, There Can Be No Claim for Breach of Fiduciary Duty

To plead a breach of fiduciary duty, the complaint must allege: (a) the existence of a duty and (b) the breach of the fiduciary duty. *Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Entm't, LLC)*, 520 B.R. 455, 470 (Bankr. D. Del. 2014). As to Jaffe, New York also requires pleading damages resulting from the breach. *Grumman Olson Indus. v McConnell*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005).

It is well established that a director of a wholly owned subsidiary owes a fiduciary duty to its parent company. Under Delaware law, it is long settled that "in a parent and wholly owned subsidiary context, directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 200 (Del. Ch. 2006); *see Roselink Investors, LLC v. Shenkman,* 386 F. Supp. 2d 209, 215 (S.D.N.Y 2004). The same is true under New York law. "[T]he general rule is that directors and officers of a wholly owned subsidiary . . . owe fiduciary duties only to the parent corporation, not to the subsidiary." *Teras Int'l Corp. v. Gimbel,* 2014 U.S. Dist. LEXIS 174328, *28 (S.D.N.Y. Dec. 17, 2014) (citation omitted).

"This is because 'directors' duties to act as 'guardians of the corporate welfare,' – including fiduciary duties of care and loyalty – operate to the benefit of the corporation's owner[], who stand[s] to gain from the firm's success and also bear[s] the risk of its potential financial failure.'" *Id.* (*quoting RSL Communs. PLC v. Bildirici*, 649 F. Supp. 2d 184, 201 (S.D.N.Y. 2009)). "In the context of a wholly-owned subsidiary, . . . the relevant 'owner' is the firm's parent . . . ." *RSL Communs. PLC*, 649 F. Supp. 2d at 201. "In fact, there is nothing wrong (or even unusual) about a parent causing its solvent wholly owned subsidiary to act in a way that benefits the corporate family but harms the individual subsidiary." *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.*), 493 F.3d 345, 367, n. 24 (3d Cir. 2007).

-13-

At all relevant times, the Debtors were wholly owned subsidiaries of Group and Synergies. Bhansali was a director of Debtors, Group and Synergies. Their parent corporation (and the ultimate parent corporation of the Debtors) was FIL. Bhansali's fiduciary duty was to the parent corporations and not Debtors. Thus, this claim against Bhansali fails as a matter of law.

In addition, as to Jaffe, the Trustee utterly fails to allege any damages to support its claims. In his original complaint, the Trustee alleged that the damages flowing from Bhansali's breach of fiduciary duty was the fact that PNB began an investigation into the Bank Fraud that caused the Debtors insolvency. Presumably realizing this would not survive a motion, the Trustee has now stretched the damages to include those purportedly arising from Bhansali's exercise of his constitutional rights.[4] Such absurd allegations merely demonstrate the ridiculous lengths the Trustee will go to preserve claims with no basis in law or fact.

### D.  *Even Assuming a Duty, the Conclusory Allegations Fail to Support Any Breach*

Even assuming Bhansali had a duty to Debtors, the allegations do not support a breach of that duty. The FAC alleges six distinct breaches by Bhansali: "(a) allowing Modi to usurp Bhansali's management responsibilities and decision-making authority, in violation of his duty of care, (b) causing the Debtors to engage in the Bank Fraud, proceeds of which were diverted to Bhansali's family trust and entities owned by Bhansali and his family members, including by entering into circular trading transactions with Shadow Entities and other Modi-Controlled Entities, in violation of his duties of due care and loyalty, (c) depleting the Debtor's assets through numerous Actual Fraudulent Transfers, (d) looting the recipients of Actual Fraudulent Transfers so as to impair the Trustee's ability to recover from them; (e) making fraudulent misrepresentations

---

[4] Specifically, the Trustee alleges that Bhansali's breach of fiduciary duty caused the depletion of the Debtors' assets; delayed the Trustee's appointment and impaired his ability to recover; caused the Trustee to expend resources by refusing to cooperate; and, increasing creditor claims against the estate thereby causing the collapse and resulting loss of value of Debtors' and their businesses. FAC ¶ 207.

and omissions in connection with the Debtor's chapter 11 cases; and (f) causing the Debtors to expend corporate assets to acquire properties for the personal benefit of Modi and his family, in violation of his duties of care and loyalty." FAC ¶ 206. The allegations in paragraphs (a), (b) and (f) are essentially identical to those in the original complaint and paragraphs (c), (d) and (e) are completely new. *See* Sullivan Decl. ¶ 3, Ex. B ("Compl."). None of these allegations supports any of these alleged breaches.

> 1. <u>Without Allegations of Self-Dealing or Personal Gain by Bhansali, the Breach of Duty of Loyalty Claim Fails</u>

"A breach of loyalty claim requires some form of self-dealing or misuse of corporate office for personal gain." *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 150 (Bankr. S.D.N.Y. 2009) (applying Delaware law). "'The classic example that implicates the duty of loyalty is when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders.'" *CVC Claims Litig. LLC v Citicorp Venture Capital Ltd.*, 2007 U.S. Dist. LEXIS 74723, at *9 (S.D.N.Y. Oct. 3, 2007) ((citations omitted)). In *CVC Claims Litig. LLC*, the Court dismissed the breach of fiduciary claim, in part, because the complaint did not contain any allegation that the individual used his position to engage in "self-dealing or improper personal gain." *Id.* In *In re IT Group, Inc.*, the court dismissed the breach of fiduciary duty claim against the officer when the director did not benefit from the transaction and was not alleged to have taken part in the decision that formed the basis of the complaint. *IT Group, Inc. v. D'Aniello*, 2005 U.S. Dist. LEXIS 27869, at *42 (D. Del. 2005).

Here, in a desperate attempt to save the pleading, the Trustee now alters his original allegation from Bhansali breached his duty of loyalty by causing the Debtors to participate in the PNB Fraud (Compl. ¶ 95), to Bhansali caused the Debtors to participate in the Bank Fraud and

then diverted proceeds of the Bank Fraud to Bhansali's family trust and Bhansali owned entities.[5] FAC ¶ 206(b). In the entire Amended Complaint, there is only one allegation of funds going into a Bhansali family trust and there are <u>no</u> allegations concerning diversion of any funds into an entity owned by Bhansali.

The Amended Complaint alleges that "[u]pon information and belief, the M.R. Family Trust received INR 32.83 crore (approximately $4.57 million) from DRUS [Diamonds 'R' Us] in fiscal year 2011-2012" for the benefit of Mr. Bhansali and his family. FAC ¶ 130; *see also* FAC ¶ 68(iv). This allegation is not substantiated with any evidence whatsoever. Nor could it. Indeed, M.R. Family Trust's bank statement for the period of May 31, 2007 through March 31, 2018 conclusively establishes that there was no such transfer of $4.57 million to the M.R. Family Trust account at any time.[6] Sullivan Decl. ¶ 4, Ex. C. In fact, the only amount deposited in the Trust between 2007 and 2018 was INR 150,000 (approximately $2,107) and a review of Diamonds 'R' Us records would so indicate as well. The Trustee knows these facts or at least should have known after his months of investigation. Given that Bhansali did not engage in any self-dealing or personally benefit from the alleged wrongdoing, there can be no claim for breach of Bhansali's duty of loyalty.

### 2.   The Amended Complaint Fails to Allege Bhansali Breached His Duty of Care

"For a director or officer to breach the duty of care, a plaintiff must show a 'reckless indifference to or a deliberate disregard' of the interests of those to whom fiduciary duties are

---

[5] The original complaint did not allege any self-dealing on the part of Bhansali, which we argued in our original motion was fatal to any breach of a duty of loyalty claim.

[6] *Samuels v Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993) (stating that, on a motion to dismiss, courts may consider matters outside of the pleadings); *Flaxer v Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598, 606 (Bankr. S.D.N.Y. 2015)

owed or 'actions which are without the bounds of reason.'" *In re Sabine Oil & Gas Corp.*, 547 BR

503, 557 (Bankr. S.D.N.Y. 2016). There are no allegations to meet this standard.

### a.    Allegation that Bhansali Allowed Modi to Usurp Management Falls Short

Conclusory allegations that Bhansali allowed Modi to usurp management and decision

making of the Debtors do not allege any breach. The Trustee does not allege when or how Bhansali

"allowed" Modi to usurp the management responsibilities. The allegations suggest that Modi was

always in control of the management and operations of the Debtors. In fact, the Amended

Complaint acknowledges that Modi was the "indirect controlling majority shareholder and/or *de*

*facto* director, officer, or controlling person of the Debtors" and exerted "dominion and ultimate

total control over the Debtors and their directors, officers, and was the ultimate authority for the

Debtors." FAC ¶¶ 1, 199, 200. Insofar as Bhansali's duty was to the owner of Debtors, even if

these allegations were true, it is inconceivable how his allowing the Debtors' ultimate owner and

controlling majority shareholder to exert control and decision-making authority over Debtors'

operations was with reckless indifference or without the bounds of reason.[7]

### b.    The Allegation that Bhansali Caused Debtors to Participate in Bank Fraud Also Falls Short

There are no allegations that specifically tie any act by Bhansali to the alleged Bank Fraud.

FAC ¶¶ 38, 39, 80, 81(x). There is no specific claim as to how or when it is that Bhansali caused

the Debtors to engage in the Bank Fraud. There are no allegations that Bhansali had any

discretionary control or authority or took part in the decision to engage in the alleged fraud on any

bank. In fact, the allegations simply state that Bhansali at the direction of Modi caused the Debtors

to enter into the circular trades that ultimately benefitted the Debtors, their parent corporations and

---

[7] In addition, as discussed *infra*, the Trustee cannot sustain a claim for corporate waste and, therefore, any purported breach that is a corollary of the waste claim also cannot stand. *See infra* Section E.

Modi (who presumably knew and understood the possible gains as well as exposure) until the Indian Government began an investigation into the alleged fraud against PNB. FAC ¶¶ 61, 189-193.[8]

The allegations do not even assert that any of the alleged transactions involving Bhansali perpetuated the alleged Bank Fraud. FAC ¶¶ 78, 80, 81(xviii). Nor does the allegation that Bhansali knew of the purported Bank Fraud because he had a spreadsheet in 2018 that identified receivables and payables between various entities – not Debtors – allegedly involved in the Bank Fraud (FAC ¶ 68) show that Bhansali breached a fiduciary duty to the Debtors. It is simply an example of the Trustee's effort to shoehorn day-to-day activities into alleged wrongdoing.

These allegations also do not show that Bhansali acted with "reckless indifference to or a deliberate disregard" for the parent corporations, to whom he owed a fiduciary duty or that his actions were without the bounds of reason. The fiduciary duty of care claim fails.

        c.     <u>Alleged Depletion of Debtors' Assets Through Every Day Business Transactions Also Falls Short</u>

The Trustee's conclusory characterization of everyday business transactions as "Actual Fraudulent Transfers" does not make them so. The Trustee alleges seven "Actual Fraudulent Transactions" that occurred during the three year limitations period (and four that occurred prior to March 2016). FAC ¶¶ 175(xiii)-(xv), 176(i)-(iv). The Trustee does not allege that any of these transactions involved circular trading or even involved a LOU. In fact, the Trustee does not allege any wrongdoing associated with any of these "Actual Fraudulent Transfers" other than his own conclusory characterization of otherwise legitimate business transactions as such. At the same time, the Trustee's allegation that Bhansali breached his fiduciary duties by "looting the recipients of Actual Fraudulent Transfers" (FAC ¶ 206), likewise falls short. This allegation, once again,

---

[8] General allegations of Bhansali's purported misconduct post-investigation are insufficient to satisfy the standard.

improperly (but no doubt deliberately) conflates the acts or omissions of non-debtor entities with that of the Debtors. In fact, the alleged transfer of monies between the Debtors' debtors and non-debtor entities overseas cannot be a basis for a claim that Bhansali breached his duty to the Debtors. And the Amended Complaint itself alleges that the monies received by the Debtors as a result of these "Actual Fraudulent Transfers" were "linked to or supporting the Bank Fraud." Thus, they were never properly assets of the Debtors. FAC ¶ 173.

### d.    Impair the Trustee's Ability to Investigate and Recover Assets

These alleged breaches defy logic given that they are all acts or omissions directed to the Trustee. Bhansali does not owe any duty to the Trustee nor could he. There is no special relationship between Bhansali and the Trustee. Nor does the Trustee allege one. Instead the Trustee alleges that Bhansali owed a duty to the Debtors and then stretches the scope of the duty to include the Trustee in his investigation and recovery of assets. The law simply does not allow this. Nor can Bhansali invoking his constitutional right under the Fifth Amendment form the basis for a breach of fiduciary duty.

### 3.    If this Court Finds Fraud is Essential to the Breach of Fiduciary Duty Claim, the Amended Complaint Fails to Meet the Heightened Pleading Standard

To the extent the Court finds that fraud is essential to the alleged breach and was from the Bank Fraud, the Trustee fails to meet the heightened pleading standard under Rule 9(b).[9] When a breach of fiduciary duty claim is premised on underlying fraudulent conduct, it must meet the heightened particularity requirements of Fed. R. Civ. P. 9(b). *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2008 U.S. Dist. LEXIS 53923, at *22-23 (S.D.N.Y. 2008). To properly plead fraud claims pursuant to Rule 9(b), a plaintiff must "(1) detail the statements (or

---

[9] Where, as here, only some of the breach of fiduciary claims sound in fraud and others are based on defendant's breach of fiduciary duties as a director, courts "apply Rule 9(b) to those grounds sounding in fraud and Rule 8 to those that do not." *Refco Inc. Sec. Litig. v. Aaron*, 826 F. Supp. 2d 478, 511, n. 20 (S.D.N.Y. 2010) (citation omitted).

omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. Lexis 80639 at *52-53 (S.D.N.Y. 2019); *In re Merrill Lynch*, 2008 U.S. Dist. LEXIS 53923, at *25.

Furthermore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of [its] alleged participation in the fraud." *Id.* at *53. "Although scienter may be averred generally, the plaintiff must allege facts that give rise to a strong inference of fraudulent intent." *Clark*, 2019 U.S. Dist. LEXIS 80639 at 53 (citation omitted). Thus, the Trustee must allege facts that give rise to a strong inference of fraudulent intent by alleging defendants had motive and opportunity to commit fraud and facts showing conscious misbehavior or recklessness. *Brown v. Lower Brule Community Dev. Enter., L.L.C.*, 2014 U.S. Dist. LEXIS 154658, at *14 (S.D.N.Y. 2014) (citation omitted).

The Trustee has not come close to meeting the heightened pleading standard. He has not alleged that Bhansali knew the alleged circular transactions were fraudulent, or that he even knew they were circular. The Trustee posits no conceivable motive for Bhansali, who was acting under directions from his boss and the owner of the Debtors. Nor does the Trustee allege that Bhansali benefitted or stood to benefit from any alleged fraud. Finally, the Trustee does not allege that the specific acts Bhansali allegedly committed were even committed in furtherance of any alleged fraud. These failures are fatal to the claim.

### E. Corporate Waste Claims Must be Dismissed for Failure to State a Cause of Action

The Amended Complaint alleges in general fashion that Bhansali "committed waste of the Debtors' assets." FAC ¶ 225. The specific allegations of corporate waste surround three different transactions: (1) the so-called "Ithaca Trust" and its utilization to purchase properties, including the "Ritz Carlton Apartment"; (2) the purchase of an "Essex House Apartment"; and (3) the alleged

transfer of certain funds to Modi's sister, Purvi Metha. FAC ¶¶ 104-128. It is alleged, in a single conclusory line, that the "economics of these transactions were so flawed that no disinterested person of right mind and ordinary business judgment could think such transactions beneficial to the Debtors." FAC ¶ 226. This certainly does not amount to corporate waste.

1. Legal Standard

"Corporate waste exists where the consideration received for a transfer of corporate assets is so deficient that no reasonable person could conclude the transfer serves a corporate purpose." *Miller v. Bradley (In re W.J. Bradley Mtge. Capital, LLC)*, 598 B.R. 150, 175 (Bankr. D. Del. 2019); *see Criden v. Steinberg*, 2000 Del. Ch. LEXIS 50, at *10 (Ch. 2000); *Patrick v. Allen*, 355 F. Supp. 2d 704, 715 (S.D.N.Y. 2005).

"There are two ways for a corporate waste claim to survive a motion to dismiss: (1) the complaint alleges facts showing that [] [the corporation] received no consideration, or (2) the complaint alleges that a transfer of corporate assets served no corporate purpose. *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 657 (Bankr. D. Del. 2012). For a claim to survive, the facts pled must "show that the economics of the transaction were so flawed that no disinterested person of right mind and ordinary business judgment could think the transaction beneficial to the corporation" and "[i]f any reasonable person could conclude that the deal made sense, then the judiciary inquiry ends." *Official Comm. of Unsec. Creditors of Fedders N. Am., Inc.* 405 B.R. at 549; *see Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 279 n.9 (2d Cir. 1986). This is a "demanding standard" because "the Court must find that in any of the possible set of circumstances inferable from the facts alleged under the complaint, no reasonable person could deem the received consideration adequate." *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 1002 (Del. Ch. 2007) (citation omitted)).

Demonstrating just how strict the standard is, the Delaware Supreme Court has specifically stated that:

> A claim of waste will arise only in the rare, 'unconscionable case where directors irrationally squander or give away corporate assets.' This onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be 'attributed to any rational business purpose.'

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*, 906 A.2d 27, 74 (Del. 2006); *see also Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) ("Under the New York business judgment rule, the actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith."). Thus, "if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky." *Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer (In re Bridgeport Hldgs., Inc.)*, 388 B.R. 548, 576 (Bankr. D. Del. 2008) (citation omitted). "Only extraordinary circumstances can justify a finding of waste." *Id.* at 577.

The allegations set forth in support of corporate waste claim against Bhansali completely fail to meet this demanding standard.

## 2.    Allegations Surrounding the Ithaca Trust Cannot Amount to Corporate Waste

The first allegation of corporate waste concerns the establishment of the so-called "Ithaca Trust" by Modi's sister Purvi Mehta ("Mehta") and its use to purchase the Ritz Carlton Apartment for the purported benefit of Modi and his family. FAC ¶¶ 104-111. Specifically, the Amended Complaint alleges that Mehta "funded the Ithaca Trust using 'dividends' she received from Fine Classic FZE ('Fine Classic'), a Shadow Entity of which Mehta was the 100% owner" and, because "Fine Classic operated as part of the Bank Fraud," the funds "to establish the Ithaca Trust were funneled to Mehta from the Bank Fraud." FAC ¶ 106. The Amended Complaint asserts that funds

from the Ithaca Trust were then "used to purchase an apartment at the Ritz Carlton residences . . . for the sole use of Modi and his family." FAC ¶ 108.

Critically, the Amended Complaint alleges that the Ithaca Trust was funded, not from the funds from the Debtors, but from "dividends" Mehta received from "Fine Classic . . . a Shadow Entity" that was "part of the Bank Fraud." FAC ¶ 106. A corporate waste claim cannot exist where there is "no asset of the company being wasted." *Doppelt v. Denahan*, 144 A.D.3d 573, 573 (1st Dep't 2016) (finding that a corporate fraud claim could not exist where "there was no 'asset' of the company being wasted"). Far from alleging that assets of the Debtors were being wasted, the Amended Complaint fails to even allege that the Debtors or their assets were involved or participated in these transactions.

Furthermore, there are no specific – or even general – allegations of wrongdoing directed against Bhansali in connection with the Ithaca Trust or purchase of the Ritz Carlton Apartment. *See* FAC ¶¶ 104-111. While the Amended Complaint describes specific examples of alleged waste on the part of Fine Classic, Modi and Mehta, there are no allegations relating to or even referencing Bhansali. *See id*. Indeed, there is no allegation that Bhansali had any involvement in, knowledge of, or responsibility for, any of the alleged transactions or activities surrounding the Ithaca Trust or its use to purchase properties, or that he benefited from any such conduct. *See id*. The Trustee also does not allege that Bhansali had any involvement in Fine Classic, or that he directed its actions. *See id*. The formation of the Ithaca Trust and its purchase of property cannot amount to a claim of corporate waste on behalf of the Debtors against Bhansali.

3.  <u>Allegations Surrounding the Purchase of the Essex Apartment Cannot Amount to Corporate Waste Against Bhansali</u>

The second allegation of corporate waste concerns the purchase of the so-called "Essex House Apartment" by Central Park Real Estate LLC ("CPRE") for the purported use of Modi as a

personal residence. FAC ¶¶ 112-122. In particular, it is alleged that CPRE was "owned by FDI until approximately the end of 2009" at which time its ownership was transferred to FGI. FAC ¶ 113. It is further alleged that FDI and Jaffe funds were used to purchase the property and pay monthly payments on the mortgage. FAC ¶¶ 77, 118. However, the allegations surrounding the Essex House Apartment likewise fail to meet the stringent standards for pleading a claim for corporate waste against Bhansali.

First, the allegations cannot amount to corporate waste against Bhansali because, apart from conclusory assertions, there is no claim of wrongdoing directed against him. *See* FAC ¶¶ 112-122. On the contrary, it is alleged that FDI funded the purchase of the Essex House Apartment at the "direction from Modi and Gandhi" and "Modi told Gandhi to pay off the HSBC mortgage in full." FAC ¶¶ 115, 118. The only reference to Bhansali is that he "signed the deed [for the Essex House Apartment] on behalf of CPRE" and was copied on an email more than one year later after its purchase, on December 5, 2008, in which Modi and Gandhi discussed that "Firestar had funded part of the Essex House purchase." FAC ¶¶ 114, 116. However, there is no allegation that Bhansali signed the deed for the Essex House Apartment in his role as Director of the Debtors – nor could there be. There is also no allegation that he had any involvement or knowledge at the time of the purchase that the Debtors' monies were used to fund the acquisition. Further, there are no allegations that Bhansali had any involvement in or knowledge of the mortgage payments paid out for the Essex House Apartment. In fact, it is specifically alleged that these transactions occurred at the direction of Modi and with the involvement of Gandhi. FAC ¶¶114, 116. Bhansali cannot be held liable for the alleged actions of others.

Second, the Amended Complaint is devoid of any particularized facts demonstrating either that the Debtors received no consideration for the exchange or that the transfer of corporate assets

served no corporate purpose. *Burtch*, 466 B.R. at 657. As set forth above, to survive a motion to dismiss, "the complaint must allege particularized facts showing that the corporation, in essence, gave away assets for no consideration." *Green v. Phillips*, 1996 Del. Ch. LEXIS 76, at *17 (Ch. June 19, 1996). In fact, "[t]he transfer in question must either serve no corporate purpose or be so completely bereft of consideration that the 'transfer is in effect a gift.'" *Wagner v. Selinger*, 2000 Del. Ch. LEXIS 1, at *9 (Ch. 2000). And, "allegations of 'waste,' standing alone, will not be enough." *Stern*, 924 F.2d at 476. Indeed, the court in *Criden* specifically held that where allegations of waste are "unaccompanied by any facts demonstrating that the corporation received nothing in kind" they are "merely conclusory." 2000 Del. Ch. LEXIS 50, at *11.

Here, the Trustee alleges only that Bhansali directed the use of the Debtors' assets to purchase property to be held by an affiliated company. FAC ¶¶ 112-122. However, that decision, by itself, cannot amount to a claim for corporate waste. There is no allegation that Bhansali approved these transactions on terms that were so one sided such that no person of ordinary, sound business judgment could conclude they represent a fair exchange. Nor is there any allegation that the Essex House Apartment was used in a manner that served no corporate purpose. Notably, there is also no allegation that Bhansali received personal benefit from the purchase. Nor is there any allegation of any motivation for Bhansali to approve or direct the use of the Debtors' assets for anything less than reasonable value or a legitimate corporate purpose, and the decision should be afforded deference. *See Stern*, 924 F.2d at 476 (finding that "actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith"); *In re Bridgeport Hldgs. Inc.*, 388 B.R. at 577 ("Courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, ex post, to judge appropriate degrees of business risk.").

4. Allegations Surrounding the Diversion of Assets to Mehta Also Fail to Allege Corporate Waste by Bhansali

The third allegation of corporate waste surrounds the purported "millions of dollars in proceeds of the Bank Fraud [that] were funneled to Nirav Modi's sister, Purvi Mehta in various ways." FAC ¶ 123. Specifically, it is alleged that: (1) Modi "personally transferred a total of $14,575,000 to Synergies" as a loan and "assigned his interest in the loan" to Mehta as a gift, which Synergies then repaid approximately six years later to Mehta; and (2) Twin Fields Investments, Ltd. ("Twin Fields"), an entity of which Mehta and her father are owners and of which Bhansali is allegedly the "*de jure* or *de facto* director" received, in relevant part, "$21.3 million in cash from Jaffe." FAC ¶¶ 124-128.

Once again, the circumstances surrounding the alleged assignment of a loan interest to Mehta cannot amount to a claim of corporate waste by the Debtors against Bhansali. The Amended Complaint, by its own terms, fails to plead any facts to support the claim that assets belonging to the Debtors were involved, much less transferred. While it is alleged that proceeds of the "Bank Fraud" were transferred to Mehta from Modi through Synergies, there is no allegation that these funds belonged to the Debtors at any time. There is also no allegation that either the Debtors or Bhansali had any involvement in or knowledge of these loan transactions.

Moreover, the allegations surrounding Twin Fields' receipt of funds from Jaffe similarly fail to plead corporate waste because the Trustee has not alleged any facts to show that the transaction was, in fact, *wasteful*. The Trustee's lone claim that Twin Fields received "$23.1 million in cash inflows from Jaffe" does not amount to a claim for corporate waste absent some additional showing that acts or omissions by Bhansali were egregious or that these assets were irrationally squandered without adequate consideration. Without pleading such facts, the presumption of good faith has not been overcome and the corporate waste claim must be dismissed.

### F. Corporate Waste Claims are Time-Barred

Even if there were a viable corporate waste claim, the Trustee can only recover for alleged corporate waste after March 27, 2016, because the applicable three-year statute of limitations bars any recovery before that date. *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 395 (D. Del. 2012).

The first allegation of corporate waste concerns the formation of the "Ithaca Trust" by Mehta supposedly using funds she received as dividends from a non-debtor entity, in which she is the sole shareholder. FAC ¶¶ 104-111. Any alleged waste thus occurred, not at the time the Ithaca Trust was formed in August 2017, but at the time the dividends were paid out by the non-debtor entity to Mehta – a fact the Trustee notably fails to plead. Even assuming any relation to the Debtors (which there is none), the Trustee's claims are time-barred to the extent that any such dividends were paid out prior to March 27, 2016.

The second allegation of corporate waste is the alleged purchase of the Essex Apartment House by CPRE on March 26, 2007 and certain mortgage payments made by the Debtors between 2011 and 2018. FAC ¶¶ 112-122. Thus, the Amended Complaint, by its own terms, acknowledges that part of the alleged "waste" complained of, the funds used to purchase the Essex House Apartment, concluded at the latest on March 27, 2007 – the date that the property was purchased – and that some of the mortgage payments complained of occurred prior to March 2016. Any claim for corporate waste surrounding the purchase of the "Essex House Apartment" and mortgage payments paid out prior to March 27, 2016 should be dismissed.

The third allegation of corporate waste is the alleged diversion of assets to Mehta for the benefit of Modi and his family evidenced by a transfer in October and March of 2011 as well the subsequent repayment of a loan in July 2017. FAC ¶¶ 123-128. It is also alleged that Twin Fields received a cash infusion from Jaffe. FAC ¶ 128. Once again, to the extent these allegations amount

to corporate waste, the Amended Complaint itself acknowledges that these transactions preceded March 2016 and are time barred.

### G. The RICO Claim Must be Dismissed

The Trustee also fails to allege properly a RICO claim. Congress enacted RICO for a limited purpose: as an "assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26 (1983); *see also United States v. Turkette*, 452 U.S. 576, 589 (1981). The narrowly construed statute has strict legal requirements and is not designed as a catch-all "instrument against all unlawful acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). For this reason, it is well settled that "[a] plaintiff's burden is high when pleading RICO allegations." *Targum v. Citrin Cooperman & Co., LLP*, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. 2013). Notably, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation and internal quotation marks omitted).

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must plead "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). In addition, a plaintiff must allege injury to his or her "business or property by reason of a violation of section 1962." *Id.* (quoting 18 U.S.C. § 1964(c)). Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001).

The Trustee has failed to meet this high burden.  First, he has no standing to assert a RICO claim because the Debtors have not been directly injured by the alleged RICO acts. Second, the RICO claim is stale. Finally, the Trustee fails to allege the requisite predicate acts.[10]

1.    The Trustee Has No RICO Standing

The Trustee lacks standing to bring a RICO claim. RICO requires "a direct relationship between the plaintiff's injury and the defendant's injurious conduct. This requires a showing not only that the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *DDR Constr. Servs. v. Siemens Indus*., 770 F. Supp. 2d 627, 650 (S.D.N.Y. 2011) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)). Thus, a plaintiff must allege injury to his or her business or property caused "by reason of the substantive RICO violation." *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015) (citing *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015)). In other words, to satisfy causation, a plaintiff must show that an alleged RICO violation is directly responsible for the injury. Accordingly, a court should not look "much beyond the first step of harm caused." *DDR Constr. Serv.*, 770 F. Supp. 2d at 652. This is because harm that is "contingent upon harm to another" will not satisfy RICO standing requirements. *City of New York v. Smoke-Spirits.com, Inc.*, 541 F.3d 425, 440 (2d Cir. 2008); *Geiss v. Weinstein Co. Holdings LLC*, 2019 U.S. Dist. LEXIS 66363 at *27 (S.D.N.Y. 2019) (holding that "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering or predicate acts") (citations omitted).

The Trustee alleges that each Debtor "has been injured in its business or property as a direct result" of and proximate result of the RICO Enterprise's violations (FAC ¶ 298), but this allegation

---

[10] In not addressing each of the seven elements of the RICO claim, Bhansali does not admit that they have been adequately pled or can ultimately be proven.

is conclusory. There is no question that the harm alleged here is derivative, and entirely contingent on the harm to non-party PNB. Tellingly, the Trustee alleges that the purported scheme by defendants "resulted in the *accrual of claim*s against the Debtors . . . ." FAC ¶ 1 (emphasis added). As alleged here, the purported scheme took a circuitous route to harm the Debtors. First, Modi and "his co-conspirators," acting through entities under Modi's control, obtained letters from PNB. FAC ¶¶ 27-28. PNB then advanced money to entities under Modi's control. FAC ¶ 28. This purported fraud then led to investigations and criminal enforcement actions against Modi and others, which in turn lead to Modi's arrest in London.[11] FAC ¶¶ 42-52. As a result, the Debtors filed for Chapter 11 bankruptcy. *See e.g.,* FAC ¶ 253 (describing the purported "proximately caused injury" as "irrevocably depleting their assets in the amount of such transfers, rendering them insolvent, and destroying their value as a going-concern"). Following the bankruptcy filing, PNB asserted claims against the Debtors. Thus, the Amended Complaint on its face demonstrates the multiple links in the chain of causation that led to the harm the Trustee now alleges was inflicted upon the Debtors.

Because *the Debtors* were not – and could not possibly be – the intended targets of the alleged scheme, the Trustee lacks standing. "In the RICO context, the Second Circuit has repeatedly announced that to have standing, a plaintiff must demonstrate that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI Holdings (Luxembourg) v. Pharoaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal quotations omitted).

---

[11] Notably, the Amended Complaint removed certain accurate factual information from the initial Complaint in what was a self-serving fashion. The initial Complaint alleged that "revelations" of the fraud in India in turn led to "supply chain disruptions and negative publicity" which "dramatically impaired the Debtors' business operations" eventually leading to vendors expressing "reluctance" to continue to do business with the Debtors. (Compl. ¶ 26). These removed allegations further demonstrate how far removed the injury was from the alleged conduct of the defendants.

The RICO harm alleged in the Amended Complaint was directed at PNB, and the only reason the Debtors suffered harm was because the alleged scheme failed and was exposed, with all the subsequent harm flowing from that exposure. *See BCCI Holdings*, 43 F. Supp. 2d at 366 ("It is equally clear that the harm caused to plaintiff resulted from the exposure, investigation, and prosecution of the scheme by regulatory authorities, rather than from the predicate acts of wire fraud"); *Lewis ex re. American Express Co. v. Robinson,* 39 F.3d 395, 400-401 (2d Cir. 1994) (affirming dismissal of RICO allegations for lack of standing where "any losses to American Express were caused only because the scheme itself was exposed and thus failed"). Accordingly, this Court must dismiss the RICO claim because the Trustee lacks standing to pursue it. *See Geiss*, 2019 U.S. Dist. LEXIS 66364 at *26-28 (dismissing RICO claim for lack of standing); *BCCI Holdings*, 43 F. Supp. 2d at 359 (same).

## 2. The RICO Claims are Time Barred

Even if the Trustee had standing to assert the alleged RICO claims, this Court should dismiss them, because they are time barred. The RICO claims are subject to a four-year statute of limitations. *See Rotella v. Wood*, 528 U.S. 549, 552 (2000). The limitations period begins to run "when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity . . . ." *Baiul v. William Morris Agency, LLC*, 2014 U.S. Dist. LEXIS 62633, at *17 (S.D.N.Y. 2014). Moreover, the statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012).

The original Complaint was filed on March 27, 2019. According to the Amended Complaint, the RICO Enterprise's "common purpose came into existence *no later than early 2011* . . . ." FAC ¶ 240, 297 (emphasis added). The Debtors – whose shoes the Trustee stands in – necessarily discovered or should have discovered the alleged RICO injury *no later than early 2011*

when the purported scheme was implemented. Because that injury arising from the alleged PNB

Fraud occurred before March 27, 2015, the RICO count is time barred.[12]

### 3.   The Trustee Fails to Plead Adequately the Requisite RICO Predicate Acts

Even if the Trustee had standing to allege a RICO violation, and even if the RICO claims

were timely, this Court should still dismiss them. The Trustee fails to plead that Bhansali

committed the requisite RICO predicate acts, which is a fatal pleading defect. RICO defines an

exclusive list of predicate acts of racketeering. *See* 18 U.S.C. § 1961(1). "[T]o establish a violation

of § 1962(c), plaintiffs must allege that each defendant committed at least two predicate acts of

racketeering activity" and that these predicate acts occurred within a 10-year period. *Jerome M.*

*Sobel & Co. v. Fleck*, 2003 U.S. Dist. LEXIS 21362, at *18-19, 25-26 (S.D.N.Y. 2003); *see also*

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  "[T]o comply

with Rule 8, a complaint should offer specification as to the particular activities by any particular

defendant" allegedly constituting a RICO predicate act. *See Harris v. NYU Langone Med. Ctr.*,

2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. 2013); *see also United States v. Persico*, 832 F.2d

705, 714 (2d Cir. 1987) (the focus of § 1962(c) "is on the individual patterns of racketeering

engaged in by a defendant, rather than the collective activities of the members of the enterprise").

And where the RICO predicates sound in fraud (as do the Trustee's allegations) the higher pleading

standard of Rule 9 must be met, requiring the Trustee to "specify the time, place, speaker, and

content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and

---

[12] Were the Trustee to assert that the statute of limitations did not begin to run until PNB's claims arose, which allegedly caused the Debtors harm, such assertion would serve to highlight that the Trustee has no standing to assert a RICO action on behalf of Debtors because the harm to the Debtors must proximately flow from the alleged RICO violation. *See supra* Section G(1).

plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotations and citation omitted).

The Trustee pleads five predicate acts: (1) mail and wire fraud; (2) violation of the National Stolen Property Act; (3) money laundering; (4) obstruction of justice; and (5) bankruptcy fraud – all of which fail to support a RICO claim.

### i. *The Trustee Fails to Plead Mail and Wire Fraud Against Bhansali*

To establish a claim for mail or wire fraud, a plaintiff must allege "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted); *see also Westchester Cnty.*, 137 F. Supp. 3d at 600. To establish the first element, the Amended Complaint must allege "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted). Notably, a scheme to defraud requires actual misrepresentation of material facts by each Defendant. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which [P]laintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements") (citations and quotations omitted). Moreover, it is "not sufficient that [the] defendant realizes that [a] scheme is fraudulent and that it has the capacity to cause harm to its victims." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Rather, the Trustee must "demonstrate that [each]

defendant had a 'conscious knowing intent to defraud . . . [and] that the defendant contemplated or intended some harm to" Debtors' property rights. *Id.* (internal quotations and citations omitted). Finally, the Trustee must plead each of these elements with particularity for each Defendant. Fed. R. Civ. P. 9(b); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")

The Amended Complaint fails to establish that Bhansali engaged in mail or wire fraud because it fails to allege with any specificity that Bhansali had the requisite intent to defraud Debtors. The Amended Complaint lists ninety examples of purported mails and wires, but it is telling that only twelve of them even reference Bhansali and, of those that do, the majority of the twelve communications are merely ones which were forwarded to or copied Bhansali. FAC ¶ 249 (referring to ¶¶ 81, 175, 176, 177). Moreover, of the twelve communications that reference Bhansali, there are in fact only three that do not involve communications *before* March 2016 when the statute ran. FAC ¶ 249. The three alleged communications are:

- March 2016 email in which an employee of Jaffe emailed to ask "where to re-export loose diamonds, and an hour later she [the employee] emailed Gandhi, 'Mihir informed to ship this to Eternal diamonds in Hong Kong, the same price, rounded to the nearest 5 120 day terms.'" (FAC ¶ 81);

- April 6, 2016 email from someone to Gandhi and Bhansali "asking them to send $2.7 million from Jaffe to FIL to clear outstanding accounts" and, to which, "Gandhi replied, copying Bhansali . . . ." (FAC ¶ 82); and

- January 23, 2018 email from Gandhi emailing someone another individual's contact information and "copying Mihir Bhansali" on the exchange (FAC ¶ 176).

There is nothing telling, let alone remarkable, about these exchanges. None of these three emails shows any act or omission by Bhansali that may indicate an intent to defraud the Debtors or establish any connection with the Bank Fraud. Rather, it is another example of the Trustee taking

innocuous communications and shoehorning them into his claims of fraudulent activity. This simply does not rise to a RICO claim.

Finally, even if the Trustee had alleged any misrepresentation by Bhansali, or the requisite intent to defraud, the RICO claim based on a predicate act of mail or wire fraud fails because the Amended Complaint does not allege that Bhansali "contemplated . . . harm to the property rights of the victim." *Guadagna*, 183 F.3d at 129. "A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with" (*Pierce*, 224 F.3d at 129, 165), and the property right must be one "of the victim" (*Guadagna*, 183 F.3d at 129). Here again, the "intended harm" was to PNB, and not the Debtors.[13] The Trustee has failed to allege the requisite predicate acts under the Mail and Wire Fraud statute.

> ii.     *The Trustee Fails to Plead Violations of the National Stolen Property Act Against Bhansali*

To plead adequately a violation of the National Stolen Property Act, the Trustee must allege that the "defendant caused to be transported, transmitted or transferred in interstate commerce property – defined under the statute to include money – having a value of at least $ 5,000 knowing that such property had been stolen, converted or taken by fraud." *See Welch Foods v. Gilchrist*, 1996 U.S. Dist. LEXIS 15819, *14 (W.D.N.Y. 1996). Like the allegations of mail fraud and wire fraud, the alleged predicate racketeering acts under this Act must be pled in accordance with the heightened pleading requirements of Rule 9(b). *See Bd. Of Managers of Trump Tower at City Ctr. Condo v. Palazzolo*, 346 F. Supp.3d 432, 456 (S.D.N.Y. 2018).

---

[13] Yet another fatal flaw is that the Trustee fails to satisfy the requisite participation in the alleged RICO enterprise by Bhansali, for all of the reasons described in this section. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) ("[O]ne is liable under RICO only if he 'participated in the operation or management of the enterprise itself.'") (internal quotation marks and citation omitted).

In support of his RICO claim, the Trustee provides a laundry list of conclusory statements about the Debtors having received various funds from LOUs and in conclusory fashion titles them "Actual Fraudulent Transfers." (FAC ¶ 255 (referencing ¶ 175)). The Trustee alleges in similarly conclusory fashion that "Modi, Bhansali and, Gandhi, knew that the funds involved had been fraudulently transferred from the applicable Debtor to the applicable U.S. Affiliate, or had otherwise been stolen, converted, or taken by fraud." (FAC ¶ 256).[14] The Trustee has not alleged with specificity the requisite intent by Bhansali. *See* 18 U.S.C. § 2314 ("Whoever transports . . . in interstate or foreign commerce. . .money. . .knowing the same to have been stolen, converted or taken by fraud . . .") (emphasis added).

### iii.    The Trustee Fails to Plead Money Laundering Violations Against Bhansali

To state a proper claim of money laundering, a "plaintiff must plead that (1) the defendant conducted a financial transaction in interstate commerce; (2) the defendant knew that the property involved in the transaction represented some form of specific unlawful conduct; (3) the transaction involved the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds." *Casio Computer Co. v. Sayo,* 1999 U.S. Dist. LEXIS 14675, at *54 (S.D.N.Y. 1999). The Trustee newly alleges, without any supporting allegations, that Modi, Bhansali and Gandhi "knew that the property involved in each Subsequent Transfer represented the proceeds of some unlawful activity." FAC ¶ 272. For all of the reasons described above, the Trustee has failed to allege with any particularity that Bhansali knew about the Bank Fraud, that he knew the "property

---

[14] Once again, the Trustee has made self-serving revisions from what was alleged in the initial Complaint. The Complaint originally alleged the knowledge element in the disjunctive - "For each Stolen Property Transfer, the RICO Enterprise, through Defendants Modi, Bhansali, or Gandhi, knew that the money or property transferred, received, or disposed of had been stolen, converted, or taken by fraud." (Compl. ¶ 136). Now, with a few strokes of the keyboard, in a conclusory manner, the Trustee alleges Bhansali has the requisite knowledge. Yet, there are no additional factual allegations to support this claim.

involved" represented "some form of specific unlawful conduct", and that he had the requisite intent to conceal the origin of the funds. *See United States v. Gotti*, 457 F. Supp. 2d 411, 422-23 (S.D.N.Y. 2006).

    *iv. The Trustee Fails to Adequately Plead Obstruction of Justice*

   In the Amended Complaint, the Trustee newly alleges obstruction of justice as a RICO predicate, citing to Sections 1503 and 1512 of Title 18 of the United States Code. As an initial matter, Section 1512, titled "Witness Tampering with a witness, victim, or an informant," covers witness tampering and requires knowing use of intimidation, threats, or corrupt persuasion. 18 U.S.C. § 1512.

   Section 1503 pertains to obstruction of justice and requires a plaintiff to allege "that the defendant acted with the wrongful intent or improper purpose to influence the judicial or grand jury proceeding, whether or not the defendant is successful in doing so—that is, that the defendant corruptly intended to impede the administration of that judicial proceeding." *Grewal v. Cuneo*, 2015 U.S. Dist. LEXIS 87755, *49-50 (S.D.N.Y. July 7, 2015) (quoting *United States v. Quattrone,* 441 F.3d 153, 170 (2d Cir.2006)). Here, while the Amended Complaint alleges in conclusory fashion that Bhansali acted "corruptly" (FAC ¶¶ 283-284), it is devoid of any allegations to support the notion that Bhansali's actions were not the result of a mistake or otherwise not intentional wrongdoing and instead were done "corruptly."

   Moreover, the Trustee does not adequately allege proximate harm or that injury resulted from the alleged obstruction of justice. Instead, again in conclusory fashion, the Trustee alleges that Defendants action caused injury and harm to "each Debtor's business and property." (FAC ¶ 289). While the Trustee alleges additional expenses and a delay in his ability to recover, the Trustee does not allege a direct relationship between the alleged obstruction and these "harms." *See Cuneo*,

2015 U.S. Dist. LEXIS 87755, at *50-51 (holding plaintiff did not properly allege that she was injured by defendants' racketeering conduct where the plaintiff did not allege proximate cause).

Finally, and perhaps most fatal to the Trustee's obstruction of justice claim, for a predicate act to be part of a pattern of racketeering activity, a plaintiff must show that there is both relationship and continuity among the predicate acts. *See H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). Here, there is a lack of continuity for this new predicate act - which occurred well after the alleged racketeering activity had ended - to be part of the RICO cause of action. Thus, it cannot be considered by the Court. *See Ray Larsen Assoc., Inc. v. Nikko America, Inc.*, 1996 U.S. Dist. Lexis 11163, *24 n.8 (S.D.N.Y. Aug. 6, 1996) (excluding obstruction of justice allegations arising out of alleged efforts by the defendant to cover up the underlying conduct and finding they are inadequate to satisfy the continuity requirement of the RICO statute)*; see also World Wrestling Entertainment Inc. v. Jakks Pacific Inc.*, 530 F. Supp. 2d 486, 512 (S.D.N.Y. 2007) (holding that allegations of obstruction, including that defendants destroyed evidence, provided perjured testimony, made false statements to auditors, and concealed documents to cover-up an already-completed scheme, did not extend the pattern of racketeering activity). Accordingly, the Trustee cannot rely on obstruction of justice as a predicate act.

v.    The Trustee Fails to Adequately Plead Bankruptcy Fraud

The Trustee has also added a bankruptcy fraud claim as an additional RICO predicate act. However, the allegations that comprise the bankruptcy fraud are the same exact allegations that are alleged as part of the obstruction of justice allegation. (FAC ¶ 291, referencing ¶¶ 280 - 283). We incorporate by reference all of the above arguments as to why the Trustee does not have a valid obstruction of justice claim. Each argument applies equally here and as a result, the bankruptcy fraud predicate act must be dismissed.

-38-

4.  <u>The Trustee Fails to Plead RICO Conspiracy</u>

The Amended Complaint also fails to allege a conspiracy by Bhansali to violate RICO under 18 U.S.C. § 1962(d). Because the Amended Complaint does not plead a substantive RICO violation, its conspiracy claim necessarily fails. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *New York v. UPS, Inc.*, 2016 U.S. Dist. LEXIS 105038, at *13-14 (S.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that '[a]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.'") (citation omitted).

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the Motion must be granted in its entirety. Once again, given that the Trustee has now filed two separate complaints, the most recent after having had considerable time to investigate these matters, we also respectfully request that no further amendments be permitted.

Dated:  New York, New York
        November 5, 2019

WHITE AND WILLIAMS LLP

Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
Shruti Panchavati, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*