UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW OF DEFENDANT AJAY GANDHI IN
FURTHER SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT**

Dated: New York, New York
          January 27, 2020

**SERPE RYAN LLP**

Silvia L. Serpe
Paul W. Ryan
16 Madison Square West
New York, New York 10010
(212) 257-5010
sserpe@serperyan.com
pryan@serperyan.com

*Attorneys for Defendant Ajay Gandhi*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT…………………………………………………………………………………………………...3

I. THIS COURT SHOULD DISMISS THE TRUSTEE'S CLAIMS AGAINST MR. GANDHI FOR FAILURE TO STATE A CLAIM

……………………………………………………………………………............................................3

    A.  THE TRUSTEE FAILS TO MEET THE HEIGHTENED PLEADING STANDARD…5

    B. THE TRUSTEE LACKS STANDING TO BRING THE STATE LAW CLAIMS……….6

    C. THIS COURT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIM….8

        1.  The Trustee Cannot Rely on Equitable Tolling…………………………………8

        2.  The Trustee Fails to State a Claim for Breach of Fiduciary Duty…………………..10

    D.  THIS COURT SHOULD DISMISS THE CORPORATE WASTE CLAIM……………..12

    E.  THIS COURT SHOULD DISMISS THE RICO CLAIM………………………………...13

        1.  The Trustee Has No RICO Standing………………………………………………13

        2.  The RICO Claim is Time Barred……………………………………………………16

        3.  The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts....17

            a.  The Trustee Fails to Plead Mail and Wire Fraud…………………………..17

            b.  The Trustee Fails to Plead Violations of the National Stolen Property Act……………………………………………………………………………...19

            c.  The Trustee Fails to Plead Money Laundering…………...…………….…19

            d.  The Trustee Fails to Plead Obstruction of Justice…………….…..….……19

            e.  The Trustee Fails to Plead Bankruptcy Fraud……………...….…….…..20

    F. THIS COURT SHOULD DISMISS THE RICO CONSPIRACY CLAIM………...20

CONCLUSION ...................................................................................................................21

TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Alpin*, 699 F.2d 79 (2d Cir. 1983) ........................................................................ 8-9

*Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302 (S.D.N.Y. 1989)................................. 8

*BCCI Holdings (Luxembourg) v. Pharaon*, 43 F. Supp. 2d 359 (S.D.N.Y. 1999) ......................................... 14

*Berk v. Tradewell, Inc.*, 2003 U.S. Dist. LEXIS 12078 (S.D.N.Y. July 14, 2003) ......................................... 11

*Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer*, 388 B.R. 548 (Bankr. D. Del. 2008)) .................................. 13

*DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627 (S.D.N.Y. 2011) ................................ 16

*E.F. Hutton & Co. v. Hadley*, 901 F.2d 979 (11th Cir. 1990) ...................................................................... 15

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................................. 16

*Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) ...................................................................... 16

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) .................................................................... 14

*In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) .................................................................... 14

*In re Bennett Funding Group, Inc.*, 367 B.R. 269 (Bankr. N.D.N.Y. 2007) .................................................. 11

*In re GNK Enterprises, Inc.*, 197 B.R. 444, 448 (Bankr. S.D.N.Y. 1996) ...................................................... 9

*In re Refco Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 202831 (Bankr. S.D.N.Y. Mar. 11, 2013) .................. 10

*In re Rickel & Assocs.*, 272 B.R. 74 (Bankr. S.D.N.Y. 2002) .................................................................. 10-11

*In re W.J. Bradley Mortg. Capital, LLC*, 598 B.R. 150 (Bankr. Delaware 2019). ........................................ 13

*Jerome M. Sobel and Co. v. Fleck*, 2003 WL 22830799 (S.D.N.Y. 2003) ...................................................... 18

*Liquidation Trust v. Daimler AG (In re Old CarCo LLC)*, 09-50002 (AJG), 435 B.R. 169; 2010 Bankr. LEXIS 2280 (Bankr. S.D.N.Y. 2010) ...................................................................................................... 3

*Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986 (E.D.N.Y. 1995) .................................................. 21

*Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BHS & B Holdings, LLC),*

420 BR 112 (Bankr. S.D.N.Y.
2009)…………………………………………………………….............................................4

*US. v. D'amato,* 39 F. 3d 79 (1984) ........................................................................................................19

Defendant Ajay Gandhi submits this reply memorandum of law in further support of his motion to dismiss all claims against him in the First Amended Complaint ("FAC" or "Amended Complaint") in the adversary proceeding pursuant to Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure for failure to state a claim.

## PRELIMINARY STATEMENT

In his opposition brief, the Trustee has again recharacterized the fraud underlying his claims. First, in the original complaint, he referred to it as the "PNB Fraud". Then, in the Amended Complaint, he renamed it as the "Bank Fraud" in order to try to mask the emphasis on injuries sustained to PNB. Now, he describes a three-step scheme in which he arbitrarily selects and renames random events that purportedly begin and end each of the three phases of the fraud: "Bank Scheme"; "Funnel Scheme"; "Exit Scheme". Perhaps most contrived is the newly minted "Exit Scheme," and the notion that Mr. Gandhi has been part of a six year scheme to "exit" the Bank Scheme, for which the Trustee admits the lack of "significant evidence" demonstrating Mr. Gandhi's personal involvement. (Opp. at 3). Despite that admission, the Trustee tediously lays out mundane transactions performed by Mr. Gandhi in the ordinary course of his employment, which the Trustee now re-characterizes as purported evidence of Mr. Gandhi's involvement in the newly birthed "Funnel Scheme". But despite these cosmetic changes offered in his opposition brief, the Trustee cannot state a claim against Mr. Gandhi. All of the claims in the Amended Complaint sound in fraud, and must be pled with particularity in order to satisfy Rule 9. The Trustee does not dispute this.

Instead, the Trustee proclaims that he has satisfied Rule 9 with "damning allegations" of Mr. Gandhi's purported knowledge and participation in the fraud. (Opp. at 2). The Amended Complaint, and the Trustee's opposition brief, recite numerous examples of transactions that the Trustee conclusorily claims constitute circular transactions. There are also numerous examples of Mr.

1

Gandhi sending emails to individuals seeking answers to questions posed by auditors, that the Trustee conclusorily claims as examples of Mr. Gandhi deceiving auditors. The Trustee accuses Mr. Gandhi (and co-defendant Bhansali) of keeping two sets of books and records, claiming that only one of which reflects Shadow Entity transactions (Opp. at 2), but on its face the allegation of two sets of books is not only not nefarious, but insufficient to demonstrate with particularity Mr. Gandhi's knowledge or participation in any fraud. As alleged they are simply two sets of records that the Trustee conclusory alleges was for the purpose of furthering the Bank Fraud. Over and over again, the Trustee seeks to have this Court adopt the innuendo that he puts forth as sufficient allegations. In fact, none of the Trustee's allegations, many of which are based on "information and belief" overcome the steep hurdle of proving Mr. Gandhi's fraudulent intent. For this reason alone, this Court should dismiss all of the claims against Mr. Gandhi with prejudice.

Additionally, the Trustee does not overcome his lack of standing, and his efforts to claim otherwise in his opposition brief fall short. Amendments or further cosmetic changes cannot distract from the ultimate basis of this lawsuit – an alleged fraud committed upon PNB Bank. All of the alleged injuries stem from that alleged fraud. That fact alone is fatal to the Trustee's claims.

Moreover, the bulk of the claims against Mr. Gandhi are time-barred and the Trustee's reliance on equitable tolling is misplaced because the allegations do not rise to the level of demonstrating Mr. Gandhi's full and complete control of the Debtors. Instead, the allegations are clear that Mr. Modi was the controlling shareholder of the Debtors, and that *all of* Mr. Gandhi's actions in the performance of his duties as CFO were at the direction of others.

Finally, were the Trustee to overcome the many hurdles addressed above, the claims against Mr. Gandhi would still fail. The survival of all of the breach of fiduciary duty claims are based on the Trustee alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness by Mr. Gandhi, which he has failed to do. Similarly, the Trustee fails to allege

"extraordinary circumstances" that would justify a finding of corporate waste. And the RICO claims fail for any of a host of reasons, not least of which is his lack of standing to assert claims arising or derivative of the PNB Fraud, his inability to plead predicate acts, and his misplaced reliance on recent allegations baring no relationship to the PNB Fraud in a futile attempt to overcome the continuity requirement.

Accordingly, this Court should dismiss all of the claims against Mr. Gandhi with prejudice.

## ARGUMENT

## I.

## THIS COURT SHOULD DISMISS THE TRUSTEE'S CLAIMS AGAINST MR. GANDHI FOR FAILURE TO STATE A CLAIM

### A. The Trustee Fails to Meet the Heightened Pleading Standard

The Amended Complaint fails to meet the heightened pleading standard required pursuant to Rule 9(b). Significantly, "because the purposes of Rule 9(b) are to give fair notice to a defendant of the claim to enable it to prepare its defense, to protect the defendant's reputation and goodwill from ill-considered charges of misconduct, and to protect the defendant from strike suits, the relaxation of the specificity requirement for scienter is not to be viewed as permission to base fraud claims on speculation and conclusory allegations." *Liquidation Trust v. Daimler AG (In re Old CarCo LLC)*, 09-50002 (AJG), 435 B.R. 169, *191; 2010 Bankr. LEXIS 2280, **52 (Bankr. S.D.N.Y. 2010) (internal quotations and citation omitted). The Trustee has done just that: with rank speculation, innuendo and conclusory allegations, the Trustee casts aspersions on Mr. Gandhi's reputation and good will.

The Amended Complaint fails to allege facts sufficient to give rise to a strong inference of fraudulent intent. The Trustee acknowledges two ways in which he can do that – either by alleging that the defendant had both motive and opportunity to commit the alleged fraud, or by alleging strong circumstantial evidence of conscious misbehavior or recklessness. (Opp. at 8-9). "To

3

sufficiently plead motive, the plaintiff must allege that a defendant benefited in a concrete and personal way from the purported fraud." *Id.* There is no allegation that Mr. Gandhi personally benefitted from the alleged fraud.[1]

As to the second way to infer fraudulent intent, the Amended Complaint fails to allege facts sufficient to rise to the level of establishing conscious misbehavior or recklessness by Mr. Gandhi. The Amended Complaint is peppered with allegations based on "information and belief" even where there is no basis to believe that those allegations are "peculiarly" within Mr. Gandhi's knowledge.[2] Indeed the major accusations underlying the Bank or PNB Fraud are based "upon information and belief":

- "During the Relevant Period, Gandhi and Bhansali engaged in and oversaw suspicious accounting, corporate finance, and inventory management practices which, *upon information and belief*, were for the purpose of furthering and concealing the Bank Fraud." (FAC ¶ 84 (emphasis added));

- ""*[u]pon information and belief*, Modi, Bhansali, and Gandhi agreed, expressly or implicitly, to … perpetrate the Bank Fraud." (*id.* ¶ 274 (emphasis added));

- "From around 2013 onward, *upon information and belief*, the Shadow Entities were used as intermediary between the Firestar Entities and LOU Entities." (*id.* ¶ 56 (emphasis added)).

---

[1] Putting aside the heightened pleading requirement, the failure to plead personal gain is also fatal to the Trustee's breach of fiduciary duty claim based on the duty of loyalty. *See Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BHS & B Holdings, LLC)*, 420 BR 112, 150-51 (Bankr. S.D.N.Y. 2009) (dismissing claim of breach of fiduciary duty of loyalty where there was no allegation of personal gain or any intentional act by the fiduciary).

[2] *See infra* at p. 11.

The Trustee also conclusorily alleges "[u]pon information and belief, Modi, Bhansali, and Gandhi agreed, expressly or implicitly, to: [] effectuate each Actual Fraudulent Transfer and each Subsequent Transfer" and ; to "fraudulently deplete the Debtors' and U.S. Affiliates' assets". (FAC ¶ 274). Even allegations about Mr. Gandhi's alleged fraudulent acts after no longer being employed by the Debtors amount to mere guesses. (*See* FAC ¶ 181 ("Upon information and belief, Bhansali and Gandhi continued to exercise oversight and control over the NMI inventory after their formal resignation from NMI."); *see also* ¶183 ("Upon information and belief, Gandhi gave Ypma permission to remove items up to a specified total value, which, upon information and belief, was around approximately $2 million."). Moreover, the Trustee even audaciously accuses Mr. Gandhi of inappropriate conduct – potentially even criminal conduct – based on "information and belief". (*See* FAC ¶¶ 211, 289 alleging that Mr. Gandhi "upon information and belief, actively endeavored to conceal, destroy, or otherwise render [information] unavailable for use in connection with these chapter 11 cases"; FAC ¶ 287 alleging "[u]pon information and belief, Modi, Bhansali, and Gandhi agreed, expressly or implicitly, with each other and others, including Nehal Modi, to commit each of the obstruction of justice offenses alleged in this Complaint.").

Despite these accusations based on information and belief, the Trustee admits: "**there is not significant evidence of Gandhi's personal participation in the LOU Entities' procurement of fraudulent LOUs or circular transactions between the LOU Entities and Shadow Entities underlying those LOUs**." (Opp. at 3 (emphasis added)). In other words, the Trustee essentially admits that Mr. Gandhi did not personally participate in the fraud perpetrated on PNB. Based on this, coupled with the speculative and conclusory allegations based upon information and belief, it is clear that the Amended Complaint does not satisfy the heightened pleading requirement. Accordingly, for this reason alone, this Court should dismiss all the claims against Mr. Gandhi in their entirety.

5

**B.  The Trustee Lacks Standing to Bring the State Law Claims**

In arguing that the Trustee has standing to bring the state law claims, the Trustee appears to admit that reliance on the injuries to PNB resulting from the alleged PNB Fraud would not give it standing. (*See* Opp. at 9). The Trustee therefore seeks to recharacterize the fraud alleged in the Amended Complaint to try to distance the allegations from the PNB Fraud. The Trustee's cosmetic changes do not change the core of the complaint, which as originally alleged is a fraud upon PNB. First, the Trustee in the original complaint referred to the "PNB Fraud". Then after he received defendants' first motions to dismiss, the Trustee amended the complaint to refer instead to the "Bank Fraud" and alleged that the fraud included PNB and "other [unspecified] banks" (*see e.g.* FAC ¶ 28). Now, in his opposition brief, the Trustee claims that there are "three distinct, but related fraudulent schemes – each of which the Defendants knew of and participated in directly". (Opp. at 3).

This second round of cosmetic tweaks by the Trustee reveals his insecurity in his standing to bring any claims against Mr. Gandhi. The names and characterizations of these alleged three schemes on their face demonstrate the Trustee's weaknesses. With respect to the "Bank Scheme", as discussed above, the Trustee essentially admits that Mr. Gandhi did not participate in this scheme. (Opp. at 3). With respect to the newly dubbed "Funnel Scheme", it apparently was "designed to funnel cash and inventory into and out of the 'loop' comprising the Bank Scheme." (*Id.* at 4). Although this description of the "Funnel Scheme" is unclear, it unambiguously is part of the Bank Scheme – aka the PNB Fraud. The third scheme, as designed and described by the Trustee for the first time in his opposition brief is the "Exit Scheme". The Exit Scheme arbitrarily – at the Trustee's whim – allegedly began "as early as April 2012" when Nirav Modi allegedly gifted a loan receivable by Synergies to his sister. (*Id.* at 6). There is no allegation that Mr. Gandhi had anything to do with this. But presumably in order to address weaknesses in his RICO allegations, which require

6

continuity (*see infra* pp. 20-21), the Trustee describes the "Exit Scheme" as purportedly lasting six years. Apparently, it was a six-year scheme to "exit" the PNB Fraud. So the Trustee would like this Court to believe that Mr. Gandhi, of whom he admits there is little evidence of personal participation in the Bank Scheme, can be tied into the overall fraud in part because he was part of an Exit Scheme, whose beginnings he had nothing to do with. Despite the cosmetic proposed changes to the Amended Complaint that the Trustee asserts in his opposition brief, the Trustee cannot hide from the simple fact that the underlying base of his complaint has been since the filing of the first complaint, is and remains, the PNB Fraud.

The Trustee appears to concede that he has no standing to bring claims against Mr. Gandhi based on injuries arising from the PNB Fraud. In his opposition brief, the Trustee instead tries to focus on alleged "injuries sustained by the Debtors". (Opp. at 9). But a review of the Trustee's state law claim of breach of fiduciary duty, for example, demonstrates that the Trustee's attempt to distance the injuries from PNB is unavailing. Thus, in Count 3 for Breach of Fiduciary Duty, the Trustee alleges that Mr. Gandhi breached his fiduciary duty by "causing the Debtors to engage in the Bank Fraud". (FAC ¶ 210). Putting aside that this allegation does not square with the Trustee's admission that "there is not significant evidence of Gandhi's personal participation" in the Bank Scheme, it is clear that the Trustee seeks to wear PNB's shoes and go after Mr. Gandhi for PNB's injuries. The other alleged bases for breach of fiduciary duty are derivative of the PNB Fraud  - in fact, according to the Trustee, they are all part of some "Exit Scheme" designed to exit the PNB Fraud. At its core, the Trustee has asserted a cause of action for breach of fiduciary duty on allegations "upon information and belief" as to Mr. Gandhi and they *all* stem from the fraud allegedly perpetrated on PNB. It does not matter how many alleged "schemes" the Trustee depicts, because the Trustee admits that each scheme is related and each stems from the fraud on PNB. Thus, the Trustee's assertion that he has standing because he "narrowly tailored his Amended

Complaint to assert only claims premised on injuries sustained by the Debtors" is just wrong. (Opp. at 9).

### C. This Court Should Dismiss the Breach of Fiduciary Duty Claim

#### 1. *The Trustee Cannot Rely on Equitable Tolling*

The Trustee alleges that the breach of fiduciary duty and RICO claims, to the extent barred by the statute of limitations, are saved by the doctrine of equitable tolling. Specifically, the Trustee argues that the statute of limitations is tolled where an action is brought on behalf of a corporation that has been looted by "persons who completely dominated and controlled it." (Opp. at 13). The Trustee relies on a narrow equitable tolling doctrine articulated in *Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302 (S.D.N.Y. 1989). But in that case, the court made clear that the definition of control persons is narrowly defined as "those persons who exercise *de facto* control of the corporation during the relevant times". 709 F. Supp. at 1306.

Significantly, "[b]efore this doctrine can be applied … the plaintiff has the burden of showing a *full, complete and exclusive* control in the directors or officers charged." *Armstrong v. Alpin*, 699 F.2d 79, 87 (2d Cir. 1983) (internal quotations and citation omitted) (emphasis added). The Trustee has not done so here as to Mr. Gandhi. Indeed, one look no further than the Trustee's own allegations in the Amended Complaint to conclude that Mr. Gandhi did not have "full, complete and exclusive control" of the Debtors. To the contrary, the Amended Complaint makes clear that Mr. Gandhi acted at the direction of others, principally Mr. Bhansali and Mr. Modi. He reported to Mr. Bhansali, the CEO. Also, Mr. Gandhi's co-defendant, Mr. Modi, "owned and controlled *94.88%*" of the company. (FAC at ¶ 18). One cannot reasonably infer from these allegations that Mr. Gandhi was in a position of control. Moreover, the Amended Complaint is clear that it was Mr. Modi who "orchestrated and directed" the purported PNB Fraud, and who "exerted total ultimate control over

Debtors' affairs" and who had "omnipresent oversight and control" over the Debtors. (FAC ¶¶ 23, 189, 199).[3]

The Trustee reveals his weakness here as to Mr. Gandhi when he asserts that "Gandhi *and his co-Defendants*" dominated and controlled the Debtors. (Opp. at 13 (emphasis added)). The Trustee seeks to divert the focus from Mr. Gandhi by alleging that he was part of a group that controlled the Debtors. But Mr. Gandhi, acting as alleged "at the direction of" Mr. Modi (FAC ¶¶ 61, 64), cannot be said to have been in any power position. Were the Trustee's allegations of control as to Mr. Gandhi deemed sufficient to justify equitable tolling, then presumably every employee (regardless of their position or title) could be viewed as controlling a corporate entity merely because that employee acted at the direction of their boss and majority controlling owner of the corporate entity. *See* FAC ¶ 62 (describing Mr. Modi as "the ultimate controlling shareholder of all of the Firestar Entities, including the Debtors and U.S. Affiliates"). Furthermore, it cannot be that every action against a CFO, merely because of that title and its inherent financial duties, is entitled to equitable tolling based on control. Thus, the allegation that Mr. Gandhi as "CFO of each of the U.S. Entities" "coordinated and directed" various transactions "at the direction of Modi and Bhansali" does not meet the "full, complete and *exclusive* control" required to entitle equitable tolling. *See Armstrong*, 699 F.2d at 87 (emphasis added).

Accordingly, the Court should reject the Trustee's reliance on the doctrine of equitable tolling and dismiss the breach of fiduciary duty cause of action and the RICO counts as stale.[4]

---

[3] As discussed in the Moving Brief, the allegation that Mr. Gandhi breached his fiduciary duty by "allowing Modi to usurp Gandhi's management responsibilities and decision-making authorities" not only makes no sense (*see* Moving Br. at 11), but is contradicted by the argument that equitable tolling applies because Mr. Gandhi exercised complete control.

[4] The Trustee also cites to 11 U.S.C. § 108(a), but that provision does not revive already time-barred claims. *See In re GNK Enterprises, Inc.*, 197 B.R. 444, 448 (Bankr. S.D.N.Y. 1996) ("Section 108(a) of the Bankruptcy Code does not serve to extend the statute of limitations."). As the Trustee himself notes, that section simply allows the Trustee an additional two years to add claims that were timely

2.  *The Trustee Fails to State a Claim for Breach of Fiduciary Duty*

In addition to being barred by the statute of limitations, the Trustee does not meet the heightened pleading requirement for the breach of fiduciary duty claims against Mr. Gandhi. Thus, even those claims that are purportedly timely fail to state a claim. All of the examples of breach of fiduciary duty given by the Trustee sound in fraud. (*See* Opp. at 12 (paragraph beginning "For example, . . .")). As addressed above, the Amended Complaint does not sufficiently allege fraudulent intent as to Mr. Gandhi. In his opposition, the Trustee argues that the allegations constitute "strong circumstantial evidence of conscious misbehavior or recklessness." (Opp. at 16-17). Yet, the Trustee relies on conclusory allegations. For example, the Trustee proclaims that Mr. Gandhi "personally designed numerous circular transactions with Shadow Entities" (Opp. at 16), but the allegation in the Amended Complaint that supposedly supports that conclusion is merely a description of various transactions that Mr. Gandhi performed in the ordinary course of his job.

Another example is the allegation that Mr. Gandhi (and co-defendant Bhansali) "maintained two sets of books and records for Jaffe". (FAC ¶ 85). That there are two different financial records that serve two different purposes is not nefarious on its face. But the Trustee would have the Court think so, and even goes so far as to allege that "Gandhi did not provide any real explanation as to why he maintained two sets of financial statements." (*Id.* ¶ 87). The Court should ignore this allegation (along with all the other conclusions of the Examiner) because the Examiner's report constitutes  inadmissible hearsay. *See In re Refco Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 202831, *65 (Bankr. S.D.N.Y. Mar. 11, 2013) (holding that an Examiner's report is hearsay and that there is no exception that would permit it to be admitted into evidence); *In re Rickel & Assocs.*, 272 B.R. 74, 87-

---

as of the petition date. (*See* Opp. at 13). As detailed in our moving brief, the Trustee cannot recover on the alleged breach of fiduciary duty claims based on conduct that occurred on or before March 27, 2016; and he cannot recover for any RICO injuries the Debtors discovered or should have discovered on or before March 27, 2015.

88 (Bankr. S.D.N.Y. 2002) (finding that Examiner Report was "not binding" hearsay, noting that although "[t]he Examiner conducted an investigation, [] he was not charged – nor could he be – with the duty to 'hear and determine' any claims in this case"). This Court should thus reject the Trustee's spin that this allegation is "damning" to Mr. Gandhi. (Opp. at 2).

Additionally, as discussed above, the Trustee tries to establish "conscious misbehavior or recklessness" through allegations that are based on "information and belief." (*See, eg.* Opp. at 17 (subparagraph (iv) cites to Paragraph 89 of the Amended Complaint which is an allegation based on information and belief)). The Trustee defends this by asserting that he is entitled to "[g]reater liberality in the pleading of fraud" (Opp. at 17-18), but then cites to a case in the Northern District of New York against a *pro se* litigant (whose "complaint and supporting papers may be read liberally") and in which it was law of that case that Rule 9(b) had been met, and "[h]ence, any argument that [] because the complaint is pled on information and belief it does not meet the Fed. R. Civ. P. 9(b) requirement fails at the outset." *In re Bennett Funding Group, Inc.*, 367 B.R. 269, 297 (Bankr. N.D.N.Y. 2007).

Also, Mr. Gandhi is not the type of "corporate insider" that would entitle the Trustee to a relaxed pleading requirement. Unlike the facts in *Berk*, relied upon by the Trustee (Opp. at 18), "the documents necessary to plead the scheme with greater particularity" are not in Mr. Gandhi's possession. *Berk v. Tradwell, Inc.*, 2003 U.S. Dist. LEXIS 12078, *39 (S.D.N.Y. July 14, 2003). In fact, the Trustee took possession of all of the Debtors' books and records, and he had access to a 165 page report by the Examiner. (Dkt. 394-1). According to the Examiner report, Mr. Gandhi provided documents and participated in multiple interviews, both during his tenure as CFO, and afterwards, when he had no obligation to cooperate with the Examiner.

Finally, the Trustee makes repeated reference to a person he alone refers to as "Operation 1" in order presumably to have the reader believe that there is something nefarious on its face. In fact,

as alleged, Operation 1 refers to an email address, operation1@firestardiamond.com allegedly used

by Firestar India employee Sandeep Mistry. (FAC ¶ 195). The Trustee relies on numerous allegations

that merely demonstrate that Mr. Gandhi forwarded emails and sought answers from Firestar

Diamond India in order to complete an audit. (*See eg* Opp at. 17 subsection (v) citing paragraph 196

of the Amended Complaint). In one email exchange, Mr. Gandhi seeks answers noting that "you are

holding up my audit". (FAC ¶ 196(ii)). These are hardly the words of a fraudster or co-conspirator,

and they certainly do not constitute allegations rising to the level of "strong circumstantial evidence

of conscious misbehavior or recklessness." In summary, despite the extensive information available

to the Trustee, the Trustee cannot meet the heightened pleading requirement under Rule 9(b) as to

Mr. Gandhi. Thus, the Court must dismiss the breach of fiduciary duty claims against him.

### D.  The Court Should Dismiss the Corporate Waste Claim

The Trustee argues that at the motion to dismiss stage, a claim for waste is stated where no

corporate purpose is reflected in the complaint. (Opp. at 20). For the Trustee, the drafter of the

complaint, it is then sufficient for him to withhold allegations explaining the legitimate purpose of

the purchase of the Essex House, and to withhold any allegations regarding legitimate loans between

the Debtor and Mr. Modi. The allegation of corporate waste against Mr. Gandhi is so thin that now

the Trustee relies upon self-described "Actual Fraudulent Transfers" as the basis for corporate

waste. According to the Amended Complaint, these transfers were "linked to or support[ed] the

Bank Fraud." (FAC ¶ 173(i)). Thus, as alleged by the Trustee, these transfers were part of a fraud.

The Trustee cannot circumvent the stringent pleading requirements for pleading a fraud claim by

merely re-classifying these "Actual Fraudulent Transfers" as a form of corporate waste. With that

logic, presumably every fraud allegedly committed in a company would qualify as a corporate waste

claim. And that bolsters the argument in Mr. Gandhi's moving brief – to which the Trustee failed to

respond – that this corporate waste claim is identical to the breach of fiduciary duty claim against Mr. Gandhi. (*See* Moving Br., Section D).

Finally, the Trustee relies on *In re W.J. Bradley Mortg. Capital, LLC*, but then fails to cite the standard for corporate waste in full. (Opp. at 19). Notably, as the Court there described, a corporate waste claim embodies an "extreme test, very rarely satisfied" by a plaintiff, and that a motion to dismiss a corporate waste claim must succeed where "any reasonable person could conclude that the deal made sense". *In re W.J. Bradley Mortg. Capital, LLC*, 598 B.R. 150, 176 (Bankr. Delaware 2019). The conclusory allegations that the "Debtors did not receive reasonably equivalent value in exchange for Actual Fraudulent Transfers" and that such transfers were "not made in the ordinary course of the Debtors' businesses and served no legitimate corporate or economic purpose" is insufficient to satisfy the standard. (FAC ¶ 174(iv) and (vi)). Thus, because the Trustee fails to allege "extraordinary circumstances" that would justify a finding of waste, this Court should dismiss the claim against Mr. Gandhi. (*See* Moving Br. at 14 (quoting *Bridgeport Hldgs. Inc. Liquidating Tr. v. Boyer*, 388 B.R. 548, 577 (Bankr. D. Del. 2008)).

### E.    This Court Should Dismiss the RICO Claim

#### 1.    *The Trustee Has No RICO Standing*

As described in Mr. Gandhi's moving brief, the Trustee lacks standing to bring claims on behalf of PNB, because the Debtors are not the direct victims of the Bank Fraud alleged in the Amended Complaint. (*See* Moving Br. at 6-7, 16-18).

Indeed, the gravamen of the Amended Complaint is the so-called "Bank Fraud" – or what was referred in the original complaint as the PNB Fraud – a fraudulent scheme targeting PNB and other unspecified banks. According to the Amended Complaint, the Bank Fraud consisted of obtaining "loans, credits, or other funds under false pretenses and without collateral from numerous banks, including [PNB]." (FAC ¶ 5). In furtherance of the Bank Fraud, the defendants allegedly

13

artificially inflated "the import volume of Modi's India-based companies … with sham transactions so as to obtain more and more LOU funding," and "PNB and other banks advanced amounts equal to over $1 billion under the LOUs." (*Id.* ¶¶ 27-28). Additionally, "[t]o facilitate the issuing of the LOUs and to prevent detection, Modi and others at his direction … worked with certain PNB employees … who authorized the issuance of the LOUs without securing collateral and without properly recording the LOUs in PNB's records." (*Id.* ¶ 41). The Bank Fraud lasted seven years, causing "a total loss to PNB and other banks in excess of $1 billion." (*Id.* ¶¶ 23, 52). Therefore, the Trustee is wrong when claiming that the Amended Complaint only asserts claims of injuries suffered by the Debtors (Opp. at 9): the Bank Fraud targeted PNB and it is the centerpiece of the Amended Complaint.

In light of the Amended Complaint's allegations of fraud perpetuated upon PNB, it is not surprising that the Trustee has not attempted to rebut the legal proposition that a plaintiff seeking to establish standing must show "that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI Holdings (Luxembourg) v. Pharaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal quotations omittedAm); *see also In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994) (affirming dismissal of RICO claims because "[t]he injuries alleged thus were neither the 'preconceived purpose' nor the 'specifically-intended consequence' of the RICO defendants' acts."); *see* Moving Br. at 17-18. Nor has the Trustee tried to rebut the proposition that standing is lacking in cases – such as this one – when the only reason the Debtors suffered harm was because the scheme failed and was exposed, with all the subsequent harm flowing from that exposure. *See* Moving Br. at 18; *BCCI*, 43 F. Supp. 2d at 365 (stating that "courts have repeatedly refused to find standing under RICO where the harm caused to the plaintiff is the result of the exposure of the alleged racketeering activity, rather than from the predicate acts underlying the scheme itself.").

14

The Trustee's failure to address these points in his opposition brief is telling (but not surprising) given that the RICO claims do not belong to the Debtors – but instead to PNB. Indeed, as stated in Mr. Gandhi's moving papers, when third parties like PNB and other banks "have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (emphasis added). And here, the Trustee has **conceded** that "PNB and other victims of the fraudulent schemes might be able to bring their own RICO claims against Gandhi on the basis of the Actual Fraudulent Transfers or his other misconduct." (Opp. at 23, n. 7).[5] Dismissal of the complaint is therefore appropriate because Mr. Gandhi may be subject to duplicative litigation by PNB and other banks stemming from his alleged conduct. *See, e.g., id.* (trustee is precluded from bringing claims when "any action by the trustee would be duplicative of pending litigation brought by the defrauded investors") (discussing *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 986-87 (11th Cir. 1990)).[6]

But realizing the fatal flaw of the Amended Complaint regarding standing, the Trustee now attempts to cure it by downplaying – indeed eliminating – the PNB Fraud as the centerpiece of its claim and instead points to injuries that only the Debtors purportedly suffered, such as the depletion of Debtors' assets by the Actual Fraudulent Transfers, the delay in the Trustee's appointment, and the estate's expenditures on professional fees. (Opp. at 9-10, 20-24). Conveniently, the Trustee now

---

[5] Indeed, PNB filed Proofs of Claim in this bankruptcy in which it attached to each a fourteen page "Annex" that reads like a complaint against the debtors, alleging claims for fraud and RICO, among other claims that mirror the allegations made by the Trustee in this adversary proceeding. *See* Proofs of Claim by PNB Against Firestar Diamond (No. 18-10509), A. Jaffe (No. 18-10510), and Fantasy (No. 18-10511), dated Nov. 29, 2019.

[6] The Trustee also asserts that "it is not clear that PNB could assert a RICO claim" because PNB's injury was an overseas injury. (Opp. at 23, n.7). Even if a RICO claim were not available to PNB – a speculative conclusion, as the Trustee concedes – the Trustee does not dispute that PNB could bring other claims against the Debtors.

proclaims that these injuries are in fact the "two principle" injuries the Debtors purportedly suffered. However, those alleged harms are far removed from the allegations underlying the Bank Fraud that are at the heart, and form the basis, of the Amended Complaint's claims. These injuries to the Debtors are indirect and ancillary to the injuries that were caused to PNB (and allegedly other unspecified banks) by the Bank Fraud, and the law is clear that "a theory of causation that … requires the Court to look much beyond the 'first step' of harm caused" cannot serve as a basis to establish standing. *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 652 (S.D.N.Y. 2011) (citing *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 8 (2010)). Additionally, "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170-71 (S.D.N.Y. 2019) (internal quotation marks omitted). Therefore, the Trustee's allegations of Debtors' injuries cannot serve as a basis for his standing.

Finally, the Trustee argues that the Debtors payed "substantial" legal fees in connection with the Trustee's and Examiner's investigation specifically for the purpose of uncovering information that he would have discovered sooner "but for" the fact that Mr. Gandhi allegedly concealed it from them. (Opp. at 24-25). Incredibly, the Trustee blames the appointment of the Examiner on Mr. Gandhi. (*Id*). This Court knows that to be unfounded. In fact, the Trustee asked the Court to appoint an Examiner after PNB objected to a motion by the Debtors requesting approval of sale procedures for substantially all of the Debtors' assets. (*See* Examiner's Report at Dkt. 394, p. 14 of 116). Nonetheless, the Trustee claims that the moneys expended constitute injuries to the Debtors that are sufficiently direct and proximate to satisfy RICO. (Opp. at 25). This is a stretch. Were this accepted, all trustees could claim that they have standing to assert RICO claims merely because the

debtor necessarily expended fees on the trustee. In fact, these injuries are a step even further removed from the original injury to PNB.

2.      *The RICO Claim is Time Barred*

The Trustee cannot refute that the Debtors should have discovered the alleged PNB scheme in 2011, when it was first implemented. Instead, he argues that the injury suffered was not the billion-dollar injury the Debtors supposedly suffered as a result of the PNB scheme which he trumpets throughout the Amended Complaint. Rather, the Trustee again relies on claims that "two of the principle injuries alleged by the trustee": the impairment of claims against affiliates and the expenditure of professional and legal fees, took place recently and therefore revive his entire RICO claim. (Opp. at 25). The Court must reject this argument. The Trustee is attempting to bootstrap his entire RICO claim onto the fact that the company spent money on lawyers in 2018 and 2019. Under the Trustee's logic, every trustee could revive a stale RICO claim by claiming that his claims against third parties had been impaired. Either that or the Trustee is conceding that his claim for treble damages under RICO should be calculated as a mere multiple of the "unnecessary professional fees". (Opp. at 25).

The trustee next argues that the statute of limitations should be tolled until June 2018, because Mr. Gandhi "dominated and controlled" the Debtors. (Opp. at 25-26). As argued above, this argument should be rejected as to Mr. Gandhi.

3.      *The Trustee Fails to Adequately Plead the Requisite RICO Predicate Acts*

a.      The Trustee Fails to Adequately Plead Mail and Wire Fraud

The Trustee makes three arguments in his opposition brief in response to Mr. Gandhi's argument that he has failed to properly plead the predicate act of mail fraud. First, he argues that he is not required to plead his claim with specificity because he has provided a "detailed description of the underlying scheme". (Opp. at 28). As discussed above, the Trustee has offered nothing more

17

than conclusory allegations to establish that Mr. Gandhi was a part of a "master plan to defraud". *Id.* Moreover, the partial sentence the Trustee cites in support of his argument is misleading. The *Sobel* case states that "in cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. *In such cases*, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Jerome M. Sobel and Co. v. Fleck,* 2003 WL 22830799 at *5-6 (S.D.N.Y. 2003) (citations omitted and emphasis added). The Trustee does not however allege the connection between the communications and the underlying scheme, except to offer his own innuendo and conclusory statements. For example, the Amended Complaint states "Modi, Bhansali, and Gandhi exercised direct oversight and control over transactions between the Debtors and Shadow Entities." ¶81. [7] That paragraph then lists dozens of facially innocent emails in subsections in which Mr. Gandhi is seen forwarding invoices or wiring instructions, actions that were part of his job as CFO. There is no alleged connection between these communications and the underlying alleged fraud.

Similarly, in the next paragraph, the Amended Complaint states that "Modi, Bhansali, and Gandhi communicated frequently with each other and various other co-conspirators concerning the Bank Fraud and to advance the Bank Fraud." (FAC ¶82). However, the emails the Trustee lists in the subsections show no such communication about fraud or advancing a fraud that would support that conclusory allegation. Rather, they show facially innocent emails of Mr. Gandhi doing his job.

---

[7] The *Sobel* case also does not stand for the proposition that the Trustee can evade the particularity requirement of Rule 9(b) by simply lumping Mr. Gandhi in with the other defendants to describe a general fraud. (*See* Moving Br. at 20-21 citing cases explaining that the Trustee must allege facts specific as to each defendant's fraudulent intent and participation in the alleged fraud).

Second, the Trustee similarly argues that he is not required to plead fraudulent intent through specific allegations. Instead, he argues that "when the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." (Opp. at 28 (citations omitted). This is not the standard, and the *D'Amato* case the Trustee cites did not address a motion to dismiss. *See US. v. D'amato,* 39 F. 3d 79 (1984) (reversing a mail fraud conviction for lack of intent). The Court should reject this sidestepping. As discussed above, Trustee does not properly allege that Mr. Gandhi was part of a scheme, let alone that the "necessary result" of such a scheme was to injure the Debtors. Moreover, the Trustees again plays a bait and switch with what scheme he is even talking about. The Amended Complaint alleges that the Debtors suffered harm stemming from a six-year fraud resulting in over a billion dollars of accrued claims against it in favor of PNB. Having admitted that the evidence is lacking concerning Mr. Gandhi's participation in the Bank Scheme (Opp. at 3), thus explaining his inability to allege Mr. Gandhi's role with specificity or particularity, the Trustee again turns to the purported Exit Scheme schemes to deplete assets, but none of the allegations in the complaint establish the requisite intent on Mr. Gandhi's part.

Third, the Trustee accuses Mr. Gandhi of "minimizing the alleged intent in certain communications" (Opp. at 28), such as an email from October 21, 2010, which is referenced in paragraph 83(iii) of the Amended Complaint. As Mr. Gandhi argued, the email is facially harmless, and the Trustee does not even attempt to articulate how this email establishes that Mr. Gandhi was knowingly part of a fraud. Similarly, the Trustee characterizes a September 12, 2011 email as "suspicious". (Opp. at 29). Such a characterization is purely conclusory.

    b.  <u>The Trustee Fails to Adequately Plead Violations of the National Stolen
Property Act</u>

The Trustee cannot overcome its pleading deficiencies as to Mr. Gandhi's lack of knowledge

of fraudulent activity. Although the Trustee states that the Amended Complaint contains "extensive

new allegations justifying" its claims that Mr. Gandhi knew about fraudulent transfers, he cites to no

examples of such new allegations. (Opp. at 30). Indeed the Trustee had at its finger tips the debtors'

records, and the Examiner's Report, at the time of his original complaint. As in the mail and wire

fraud allegations, the Trustee's allegations of fraudulent intent are purely conclusory.

    c.  <u>The Trustee Fails to Adequately Plead Money Laundering</u>

The Trustee fails to allege with particularity that Mr. Gandhi knew about the PNB Fraud or

any unlawful activity. His Opposition Brief does nothing more than make conclusory arguments.

The paragraphs in the Amended Complaint that the Trustee relies upon in support (¶¶173-176, 272)

do not come close to showing that Mr. Gandhi "knew the property involved in each subsequent

transfer represented the proceeds of unlawful activity." (Opp. at 31). To rule otherwise, would

eviscerate the elements of money laundering.

    d.  <u>The Trustee Fails to Adequately Plead Obstruction of Justice</u>

As the Trustee admits, his obstruction of justice claim concerns conduct, substantially all of

which "occurred after the Debtors's bankruptcy filing or just before." (Opp. at 33). Thus, the

Trustee cannot establish continuity among the predicate acts. (*See* Moving Br. at 25.) The Trustee

counters Mr. Gandhi's continuity argument by relying on his invention of a new – and more recent

– scheme, the "Exit Scheme". Thus as the Trustee would now have it, Mr. Gandhi's alleged lies in

2018 may not have been continuous with the PNB Fraud, but they are continuous with the "Exit

Scheme". Thus, the Trustee argues that Mr. Gandhi "lengthen[ed] the life" of this new purported

scheme and allowed "additional time for looting of the Debtor and U.S. Affiliates to occur." (Opp.

at 35). The Exist Scheme is contrived and does not satisfy the strict continuity requirement explained in Mr. Gandhi's Moving Brief.

e.   The Trustee Fails to Adequately Plead Bankruptcy Fraud

For the same reasons as the obstruction of justice predicate act, the Trustee fails to establish that Bankruptcy Fraud is a predicate RICO act because there is a complete lack of continuity among the alleged predicate acts. Additionally, the Trustee depends again on purely conclusory allegations and inadmissible hearsay allegations that fail to establish that Mr. Gandhi intentionally committed a fraud on the bankruptcy court.

f.   This Court Should Dismiss the RICO Conspiracy Claim

In his Opposition Brief, the Trustee relies on criminal cases to defend his civil RICO conspiracy claims against Mr. Gandhi. (Opp. at 36). But the standard as to pleading a civil RICO conspiracy are clear: there must be an allegation that Mr. Gandhi *agreed* to commit the alleged predicate acts as part of the conspiracy. *See Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995) ("The essence of a RICO conspiracy is an agreement to commit the predicate acts."). The Amended Complaint does not contain any non-conclusory allegations of Mr. Gandhi's agreement to enter into a RICO conspiracy. Accordingly, the conspiracy claim would not survive even if the RICO claim against him were to stand. *See id.* (dismissing RICO conspiracy claim where it was based solely on general and conclusory allegations).

## CONCLUSION

For all of the above reasons as well as those in the moving brief, Mr. Gandhi respectfully

requests that the court dismiss the claims against him with prejudice.

Dated:  New York, New York
        January 27, 2020

                                Respectfully submitted,

                                SERPE RYAN LLP


                        By: _____/s/ Silvia L. Serpe_____
                                Silvia L. Serpe
                                Paul W. Ryan
                                16 Madison Square West
                                New York, New York 10010
                                (212) 257-5010
                                sserpe@serperyan.com
                                pryan@serperyan.com

                                *Attorneys for Ajay Gandhi*