Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
butlert@whiteandwilliams.com

*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

FIRESTAR DIAMOND, INC., et al.,                    Chapter 11

                                   Debtors.          Case No. 18-10509 (SHL)

                                                     (Jointly Administered)

RICHARD LEVIN, Chapter 11 Trustee of               Adv. Proc. No. 19-01102-shl
FIRESTAR DIAMOND, INC., FANTASY, INC.,
and OLD AJ, INC. f/k/a. JAFFE, INC.,

                                   Plaintiff,

        v.

NIRAV DEEPAK MODI, MIHIR BHANSALI,
and AJAY GANDHI,

                                   Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MIHIR
BHANSALI'S MOTION TO DISMISS THE AMENDED ADVERSARY COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................- 1 -

ARGUMENT .......................................................................................................- 2 -

I.   The Trustee Lacks Standing to Bring the State Law Claims ..........................- 2 -

II.  The Breach of Fiduciary Claim Fails ..............................................................- 4 -

   A.   The Breach of Fiduciary Duty Claims are Untimely.................................- 4 -

     1.   The Claims are Outside the Limitations Period ................................ - 4 -

     2.   There is no Basis for Tolling the Statute of Limitations .................... - 5 -

   B.   Bhansali had No Duty to Debtors...........................................................- 7 -

   C.   Even if a Duty Existed, the Trustee Has Failed Properly to Plead Breach..............- 8 -

     1.   The Amended Complaint Fails to Allege Breach of Duty of Loyalty ................. - 9 -

     2.   The Amended Complaint Fails to Plead Breach of Duty of Care ....................... - 9 -

     3.   To the Extent that the Claims Sound in Fraud, the Trustee has not Satisfied Rule 9(b).... - 11 -

III.  The Corporate Waste Claim Fails .................................................................- 11 -

   A.   The Trustee Has No RICO Standing .....................................................- 13 -

   B.   The RICO Claims are Time Barred .......................................................- 16 -

   C.   The Trustee Fails Adequately to Plead the Requisite RICO Predicate Acts ..........- 16 -

     1.   The Trustee Fails to Plead Mail and Wire Fraud Adequately........................... - 16 -

     2.   The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act ... - 18 -

     3.   The Trustee Fails to Plead Money Laundering Adequately............................... - 18 -

     4.   The Trustee Fails to Plead Obstruction of Justice Adequately ......................... - 19 -

     5.   The Trustee Fails to Plead Bankruptcy Fraud Adequately .............................. - 19 -

     6.   This Court Should Dismiss the RICO Conspiracy Claim.................................. - 19 -

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armstrong v. McAlpin*,
    699 F.2d 79-87 (2nd Cir. 1983) ................................................................6

*BCCI Holdings (Luxembourg) v. Pharaon*,
    43 F. Supp. 2d 359 (S.D.N.Y. 1999)....................................................13, 14

*Buchwald v. Remco Group, Inc.* (*In re Magnesium Corp. of M*),
    399 BR 722,734 (Bankr. S.D.N.Y. 2009) ...............................................8

*Burch v. Seaport Capital, LLC (In re Direct Response Media, Inc.,)*
    466 BR 626 (Bankr. D.Del. 2012) ..........................................................12

*City of Roseville Entles. Retirement Fys. v. Dimon*,
    2014 N.Y. (Slip. Op. 33987) [U] (2014)................................................12

*Clark v. Advanced Composites Grp.*,
    *2019 U.S. Dist. Lexis 80639* (S.D.N.Y. 2019) ......................................11

*Criden v. Steinberg*,
    2000 Del. Ch. LEXIS 50 (Ch. Mar. 2000)..............................................12

*DDR Const. Servs., Inc. v. Siemens Indus., Inc.*,
    770 F. Supp. 2d 627 (S.D.N.Y. 2011).....................................................15

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019).....................................................15

*Gellert v. ColTec Indus. (In re Crucible Materials Corp.)*
    Bankr. LEXIS 5102 (Bankr. D. Del Mar. 1, 2012)..................................7

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)....................................................................................15

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)....................................................................14

*In re Am. Exp. Co. S'holder Litig.*,
    39 F.3d 395 (2d Cir. 1994)......................................................................13

*Jerome M. Sobel and Co. v. Fleck*,
    2003 WL 22830799 (S.D.N.Y. 2003)......................................................17

*Official Comm. of Unsecured Creditors v Bay Harbour Master Ltd. (In re BH S&B Holdings LLC),*
    420 BR 112 (Bankr. S.D.N.Y. 2009) ..................................................................................8, 9

*Roselink Inds., LLC v. Shenkman,*
    386 F. Sup. 2B 209, 2018 ...........................................................................................8

*Teras Intl. Corp v. Gimbel,*
    2014 U.S. Dist. LEXIS 174328 (S.D.N.Y. Dec. 7, 2014) ...........................................8

*U.S. v. D'Amato,*
    39 F. 3d 79 (2d. Cir. 1984)........................................................................................18

*US SBA v. Fiensod,*
    347 F. Sup. 3D 147-54 (E.D.N.Y. 2018) ..................................................................8

### STATUTES

Bankruptcy Code §108(a) ..............................................................................................6, 7

Racketeer Influence and Corrupt Organizations Act ....................................2, 3, 13, 14, 15, 16, 19

Defendant, Mihir Bhansali, respectfully submits this Reply Memorandum of Law in Further Support of his Motion to Dismiss the Amended Adversary Complaint (the "Amended Complaint") of Richard Levin as Chapter 11 Trustee of Firestar Diamond, Inc., Fantasy, Inc., and Old AJ, Inc. f/k/a. Jaffe, Inc., (the "Trustee"), and states as follows:

## PRELIMINARY STATEMENT

In his moving Memorandum of Law (the "Opening Memo"), Bhansali demonstrated that, while the Amended Complaint is long and dense and includes a variety of allegations, it nevertheless failed to state a claim against Bhansali. On the contrary, the Amended Complaint asserts random and sweeping claims of wrongdoing that do not amount to a cognizable claim; conflates alleged wrongdoing involving different parties with claims purportedly against Bhansali; contends that ordinary business practices are actionable wrongdoing; and makes undifferentiated allegations of wrongdoing that were purportedly directed to entities other than the Debtors.  At the same time, the crux of the Trustee's claims involve allegations of wrongdoing that took place well outside of the limitations period. As a result, Bhansali seeks dismissal of the Amended Complaint in its entirety.

In his opposition (the "Opposition"), the Trustee employs similar tactics. Once again, the Trustee focuses on allegations of wrongdoing that have nothing to do with the Debtors or Bhansali; argues that virtually all work Bhansali performed in his role as an officer and director of the Debtors (or for that matter, work he performed for other entities) somehow gives rise to various claims; and purports to rely on a variety of legal doctrines that have no applicability here.

With respect to standing, the Trustee simply offers cosmetic changes to the description of his claims, which fail to address their core flaw – the claims seek to recover for injuries to Punjab National Bank ("PNB"), *not* the Debtors. With respect to his breach of fiduciary duty claim, the Trustee cites cases and a Bankruptcy Rule that purportedly support an argument for tolling the

- 1 -

statute of limitations but in fact are entirely inapplicable, and cites and relies upon allegations that either relate to non-Debtor entities or otherwise cannot possibly constitute a breach of fiduciary duty. In an effort to maintain that Bhansali had a duty where none in fact existed, the Trustee relies on his new, conclusory allegation that the Debtors were "insolvent" at all relevant times, but provides no factual support beyond his conclusory assertion. With respect to the claims themselves, the Trustee focuses on allegations relating to entities other than the Debtor and ordinary day-to-day business activities that he attempts to shoehorn into breaches of Bhansali's obligations. All of these efforts fail.

The corporate waste claim is similarly flawed. The Trustee acknowledges that allegations regarding the use of corporate assets to purchase certain properties for other parties are entirely misplaced and instead contends that the corporate waste claim is premised on sweeping, yet conclusory allegations regarding alleged fraudulent conveyances. But essential elements are absent because the Trustee identifies no wasted corporate assets and no harm to the Debtors.

Finally, the Trustee's efforts to re-characterize his various claims fail to overcome the fact that the allegations of wrongdoing spread throughout the Amended Complaint cannot collectively establish that the Debtors were the intended victims of the alleged RICO scheme, and utterly failed to plead any predicate acts properly. Thus, the RICO claims also fail.

For all of these reasons, discussed in detail below, the Motion to Dismiss should be granted.

## **ARGUMENT**

## I.      **The Trustee Lacks Standing to Bring the State Law Claims**

The Trustee essentially admits that reliance on the injuries to PNB resulting from the alleged PNB Fraud would not give him standing. (*See* Opp. p. 9). Hence, the Trustee seeks to re-characterize the allegations in the Amended Complaint to distance them from the PNB Fraud. But

these efforts, which essentially amount to an improper "Second Amended Complaint," are of no avail and certainly do not save his existing complaint.

In the original complaint, the Trustee referred to the "PNB Fraud" and only after Defendants' first motions to dismiss did the Trustee amend the complaint to refer instead to the "Bank Scheme" alleging that the fraud included PNB and unnamed "other banks." (*See e.g.*, FAC ¶ 28). Now, the Trustee claims for the first time that there are "three distinct, but related fraudulent schemes – each of which the Defendants knew of and participated in directly." (Opp. p. 3).

The cosmetic changes do not alter the reality here. The "Bank Scheme" is just another term for the "PNB Fraud." The newly created "Funnel Scheme" is unambiguously part of the Bank Scheme – aka the PNB Fraud. The third scheme, as described by the Trustee for the first time in his Opposition, is the "Exit Scheme." The Exit Scheme allegedly began "as early as April 2012" when Nirav Modi allegedly gifted a loan receivable by Synergies to his sister. (*Id.* at 6). There is no allegation that Bhansali had anything to do with this. But presumably to address weaknesses in his RICO allegations, which require continuity (*see infra* IV.C.4), the Trustee describes the "Exit Scheme" as purportedly lasting six years. Thus, it was a six-year "scheme" to "exit" the PNB Fraud! Despite these cosmetic proposed changes to the Amended Complaint that the Trustee now asserts in his Opposition, the Trustee cannot hide from the simple fact that the underlying basis of his complaint has always been, and remains, the PNB Fraud, which fails as a matter of law to sustain the claims alleged (Opening Mem. pp. 9-11).

The Trustee effectively concedes that he has no standing to bring claims against Mr. Bhansali based on injuries arising from the PNB Fraud. In the Opposition, the Trustee instead tries to focus on alleged "injuries sustained by the Debtors." (Opp. at 9). But a review of the Trustee's claim of breach of fiduciary duty, as an example, demonstrates that the Trustee's attempt to

distance himself from the injuries to PNB is unavailing. In Count 2 for Breach of Fiduciary Duty, the Trustee alleges that Bhansali breached his fiduciary duty by "causing the Debtors to engage in the Bank Fraud." (FAC ¶ 206). This demonstrates that the Trustee still seeks to wear *PNB's* shoes and go after Bhansali for *PNB*'s injuries. The other alleged bases for breach of fiduciary duty claim are also derivative of the PNB Fraud – in fact, according to the Trustee, they are all part of some "Exit Scheme" designed to exit the PNB Fraud. It does not matter how many alleged "schemes" the Trustee depicts, because the Trustee admits that each scheme is related to and stems from the alleged fraud on PNB. Thus, the Trustee's assertion that he has standing because he "narrowly tailored his Amended Complaint to assert only claims premised on injuries sustained by the Debtors" is mistaken. (Opp. at 9).

## II.     The Breach of Fiduciary Claim Fails

In the Opening Memo, Bhansali demonstrated that the breach of fiduciary claim should be dismissed because: 1) it is untimely; 2) Bhansali owed no duty to the Plaintiff; and 3) even if such duty had existed, the Trustee failed to plead any "breach" of it. The Trustee responds by citing a hodgepodge of legal doctrines and relying on a re-characterization of his allegations in an effort to salvage a doomed claim. Such efforts are for naught.

### A.     The Breach of Fiduciary Duty Claims are Untimely

#### 1.     The Claims are Outside the Limitations Period

The fiduciary duty claims are clearly untimely given that any allegations that could possibly support a claim of breach took place outside of the limitations period. The Trustee nevertheless points to allegations that Bhansali: 1) created a spreadsheet outlining the alleged fraudulent schemes; 2) researched and implemented various means of deleting, encrypting, or preventing the creation of electronic data; 3) traveled overseas with Nehal Modi to "intimidate and manipulate potential witnesses, destroy evidence, and remove valuable assets including 50 mg of

gold; 4) made false and misleading statements in the course of the Chapter 11 proceeding; 5) stayed in touch with Nirav Modi after the bankruptcy filing; and  6) orchestrated the diversion of Debtor and affiliate assets overseas. (Opp. p. 12).

As is true throughout the Trustee's Opposition, the Trustee fails to explain how certain allegations are even germane to the Debtors – the only entities on whose behalf he is acting – let alone how actions such as creating spreadsheets or merely staying in touch with another party can amount to breaches of any fiduciary duty owed to any party. Moreover, the allegations referenced by the Trustee that do involve the Debtors – the conclusory allegations that transfers of funds and products by Debtors were fraudulent – *do not even mention Bhansali*. (FAC ¶ 176). Under the Trustee's peculiar logic, any action whatsoever taken by Bhansali in his capacity as an officer and director of the Debtor entities somehow amounts to a breach of his duty. This is not the law. Nonetheless, the "scheme" alleged and Bhansali's purported participation therein all took place outside of the limitation period warranting dismissal.  (Opening Mem. p. 12).[1]

### 2.    There is no Basis for Tolling the Statute of Limitations

The Trustee also argues that the statute of limitations should be "tolled," purportedly because "the corporation has been looted by persons who completely dominated and controlled it." (Opp. p. 13). This contention is inconsistent with the claims asserted in his Amended Complaint and otherwise contrary to established law.

The Trustee contends the limitation period should be tolled because Bhansali purportedly "dominated and controlled" the company, which is particularly perplexing given that one basis for

---

[1] The Court should entirely disregard the scandalous and baseless allegation about Bhansali travelling overseas to intimidate witnesses and destroy evidence.  Not only is there no factual support whatsoever for this claim, but plainly such efforts have nothing to do with alleged breaches of fiduciary duty because they all allegedly occurred after filing of this bankruptcy. They are simply a part of the Trustee's effort to besmirch the character of Bhansali in an effort to maintain claims that have no basis.

the Trustee's breach of fiduciary claim is the allegation that Bhansali allowed another party – Nirav

Modi – to usurp his management functions.  (FAC ¶ 205). The Trustee cannot have it both ways;

arguing that the statute of limitations should be tolled because Bhansali "dominated and

controlled" the Debtors while at the same time arguing that Bhansali breached his fiduciary duty

by allowing another party to usurp his management.  But, in any event, the Trustee's argument is

not supported by law. In *Armstrong v. McAlpin*, 699 F.2d 79-87 (2nd Cir. 1983) the Court stated

that "[b]efore this doctrine can be applied, [] the plaintiff has the burden of showing 'a full,

complete and exclusive control in the directors or officers charged.'" There, the Second Circuit

also determined that vague allegations that companies "upon information and belief" are under the

domination and control of an individual and that individual perpetrated "most of the abuses cited

in the complaint" are insufficient and demonstrate only "how far short the allegation falls of

alleging 'full, complete and exclusive' control by any defendant . . . so as to toll the running of the

statute of limitations." *Id.* at *88-89. The Amended Complaint does not even go as far as the

allegations in *Armstrong* that the Circuit found completely lacking.  On the contrary, the Trustee

actually only alleges domination on the part of *Modi*, (*see* FAC ¶ 190 "Examples from a short

period in 2009 *illustrate Modi's total ultimate control over the Debtors*" (emphasis added)). But

he nevertheless asserts this allegation against *Bhansali* at this time in a futile effort to apply a

doctrine that has no applicability here to save his time barred claims. Indeed, not only does the

Amended Complaint fail to allege that Bhansali exercised "complete control" over the Debtors,

but it also fails to allege with any particularity whatsoever that Bhansali "looted" the Debtors in

any way.

        The Trustee's reliance on §108(a) of the Bankruptcy Code is equally misguided. Section

108(a) applies when a Debtor's time to commence the action had not expired before the date of

the petition's filing. Here again, the statute of limitations expired long before the petition was filed.

Thus, there was nothing to extend and § 108(a) is of no value to the Trustee.

**B.**     **Bhansali had No Duty to Debtors**

The Trustee does not – and cannot – challenge the well-established tenet of law that an officer and director of a subsidiary owes a fiduciary duty to the parent company. (Opening Mem. pp. 13-14). Instead, he makes two arguments, contending, first, that the well-established rule does not apply because Debtors were purportedly "insolvent" at the time of the various allegations included in the Amended Complaint; and, second, that the rule is inapplicable because there was a minority shareholder (who owned approximately 5% of Debtors). (Opp. pp. 16-17). These contentions are baseless.

The Trustee's "insolvency" allegation is new to the Amended Complaint, and like so much else, is entirely contrived. Nevertheless, the allegation is of no help to the Trustee. Merely asserting in conclusory fashion that the Debtors were "insolvent" is insufficient to place the claims within any "insolvency exception" advocated by the Trustee. Courts have repeatedly held that a trustee is required to plead facts to establish the legal conclusion that Debtors were insolvent when the allegedly wrongful transaction occurred. *Gellert v. ColTec Indus. (In re Crucible Materials Corp.)* Bankr. LEXIS 5102 at *20 (Bankr. D. Del Mar. 1, 2012). In *In re Crucible Materials Corp.*, the Court – in addressing a fraudulent transfer claim – determined that the Trustee's "near verbatim recitation of the elements" of a claim "without stating any underlying facts to support the conclusion that the payments were made while [the Debtor] was insolvent" were insufficient and dismissed the claim. Similarly, in *O'Toole v. Karnani (In re Crimson Group Inc.)*, the court likewise determined that the complaint "failed[ed] to sufficiently plead the insolvency" to survive a motion to dismiss because the allegations were "insufficient for the court to determine whether the debtors were insolvent or rendered insolvent by the transfers." 460. Br. 379, 393 (Bankr. I.R.

S.D.N.Y. 2011). The Trustee's conclusory and unsupported allegation that the Debtors were "insolvent" at the time each "actual fraudulent transaction" occurred is nothing but a bare legal conclusion unsupported by facts that can in no way permit the Court to determine whether or not Debtors were insolvent. In the absence of any support for this bare legal conclusion, the Trustee cannot rely on any insolvency as a basis for altering the well-established rule.

The cases cited by the Trustee in no way support his position. In each, the complaint specifically detailed the facts to support the insolvency allegation. *See Teras Intl. Corp v. Gimbel*, 2014 U.S. Dist. LEXIS 174328, at 30 (S.D.N.Y. Dec. 7, 2014) (listing out the liabilities and assets in support of playing the Debtor's insolvent)*; US SBA v. Fiensod*, 347 F.Supp.3d 147-54 (E.D.N.Y. 2018) (detailing each of the failing actions that led to the claimed insolvency); *Buchwald v. Remco Group, Inc*. (*In re Magnesium Corp. of M*), 399 B.R. 722,734 (Bankr. S.D.N.Y. 2009) (setting forth the individual transactions that led to the purported insolvency).

Moreover, none of the cases cited by the Trustee support his conclusion that because Jaffe is owned 5% by Samuel Samberg, Bhansali owed a duty of care to Jaffe and not the parent corporation. *Tronix, Inc. McGee Corp. (In re, Tronix, Inc.),* 503 B.R. 239. 325, (Bankr. S.D.N.Y. 2013) (discussing a fiduciary duty owned by the *parent company* to its subsidiaries and minority shareholders); *Official Comm. of Unsecured Creditors v Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 144 (Bankr. S.D.N.Y. 2009) (discussing the duties of a parent corporation and determining that directors of a wholly-owned subsidiary owe a duty to the parent). *Roselink Inds., LLC v. Shenkman*, 386 F.Supp.2d 209, 2018, n.3 (S.D.N.Y. 2004) (involving creditors' claims, not debtors, against directors for breach of fiduciary duty).

### C.   Even if a Duty Existed, the Trustee Has Failed Properly to Plead Breach

Even if the Trustee were to establish that a duty existed (and that his claims were timely), the pleading nevertheless fails properly to assert a breach of such duty. Once again, the Trustee

relies upon disparate allegations of wrongdoing, many of which do not even involve the Debtors, in an attempt to shoehorn allegations into a breach of fiduciary claim. Ultimately, this gambit fails.

### 1.   The Amended Complaint Fails to Allege Breach of Duty of Loyalty

"[A] breach of loyalty claim requires some sort of self-dealing or misuse of corporate office for personal gain*." Official, Comm of Unsecured Creditors, the Bay Harbour Master, Ltd. (In re BHS & B Holdings, LLC)*, 420 B.R. 112, 150 (Bankr. S.D.N.Y. 2009) (applying Delaware law). Thus, a duty of loyalty claim hinges on an allegation of personal gain or misuse of corporate office. The Trustee sidesteps this critical element and makes sweeping allegations of wrongdoing that do not involve profiteering on the part of Bhansali. Each of the examples he cites demonstrates this failing. The allegation that Bhansali "orchestrated numerous actual fraudulent transfers," does not amount to any breach of loyalty; nor does the allegations that he sought to "permanently shield assets from creditors." Merely citing alleged wrongdoing is not sufficient to establish a claim for breach of loyalty, and the Trustee has failed to allege any wrongdoing that Bhansali benefitted at the expense of the Debtors.[2] Nor does the Trustee's claim that Bhansali received payments from "Nirav Modi, Purvi Modi, and various Modi-controlled Entities (Opp. p. 19), *establish a breach as to the Debtors.* Thus, the Trustee has utterly failed to plead a cognizable claim for breach of a duty of loyalty.

### 2.   The Amended Complaint Fails to Plead Breach of Duty of Care

The Opposition does not establish that Bhansali breached his duty of care. First, the Trustee takes issue with Bhansali's argument that allegations that he allowed Modi – the owner of the Debtors – to "usurp" his management functions, could not constitute a breach. The Trustee

---

[2] In his papers, Bhansali also pointed out that a central allegation in the Trustee's Amended Complaint – that Bhansali's family entity received $4.7 million is entirely refuted by relevant evidence. (Opening Mem. p. 16). The Trustee does absolutely nothing to counter or contradict this, merely pointing out that it is a fact issue and "not properly resolved here." (Opp. p. 19). The Trustee's inability to say anything that supports this pleading and insistence on continuing to assert a claim that has no basis in fact or any chance of being successful speaks volumes regarding his position.

provides no legal support for this position and instead simply insists that "Bhansali owed fiduciary duties to the Debtors, not Modi." Whether in fact that is so (*see supra* at II.B) is beside the point; the question is whether allowing the majority owner of a corporation to manage the corporation – which is the owner's prerogative – is a breach of fiduciary duty. Plainly, it is not.

Second, the Trustee takes issue with Bhansali's argument that the Amended Complaint does not "specifically tie any act by Bhansali to the alleged fraud." However, the Trustee fails to point to a single allegation that demonstrates how Bhansali purportedly *"caused"* the Debtors to participate in the alleged fraud. On the contrary, he simply contends that the "allegations sufficiently demonstrate Bhansali's knowledge of and participation in the fraudulent schemes" without any specificity. (Opp. p. 21). The Trustee's attempts to support his claim with allegations surrounding Bhansali's interactions with non-Debtor entities does not overcome the hurdle either because such allegations do not support a claim that he breached his fiduciary duty *to the Debtors*. There simply is no detailed allegation that Bhansali orchestrated any wrongdoing having any impact on the Debtors. This failure is fatal to this breach of fiduciary duty claim.

Third, the Trustee takes issue with Bhansali's contention that the "Actual Fraudulent Transfers" are little more than everyday business transactions, contending that this is a factual dispute that is not appropriate for resolution on a motion to dismiss. (Opp. p. 21). Here again, the Trustee embraces the argument that any transfers to affiliated entities are necessarily "fraudulent conveyance," but fails to provide any support or details. Again, this is insufficient.

Finally, the Trustee expresses incredulity at the contention that Bhansali had no duty to the Trustee such that his refusal to cooperate with the Trustee could amount to a breach of fiduciary duty. The Trustee, desperate to survive this Motion, simply ignores the pertinent factual circumstances. Bhansali resigned as an officer and director of the Debtors in May of 2018. (FAC

¶ 167). The Trustee was appointed a month later, in June, 2018. (FAC ¶ 171). At the time, Bhansali was neither an officer nor director of the Debtors and therefore owed no duty to either the Debtors or the Trustee. The alleged failure to cooperate with the Trustee (and to invoke his constitutional rights) simply does not support a claim for breach of fiduciary duty.

### 3. To the Extent that the Claims Sound in Fraud, the Trustee has not Satisfied Rule 9(b)

To plead fraud claims pursuant to Rule 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. Lexis 80639 at *52-53 (S.D.N.Y. 2019). While the Trustee points to general precepts of law and the general, conclusory allegations he asserted, he utterly fails to point to particular fraudulent statements made by Bhansali, where and when they were made, and why the particular statements were fraudulent. As such, the Amended Complaint fails to meet the requirements of Rule 9(b).

## III. The Corporate Waste Claim Fails

The Trustee has alleged that Bhansali wasted corporate assets by "directing the Debtors and their officers *to use corporate assets to acquire properties for the personal use of Modi and his family or by facilitating or permitting such use*, and to engage in transactions with Shadow Entities and other Modi-controlled Entities that served no legitimate corporate or economic purpose." (FAC ¶ 225) (emphasis added). Nevertheless, in his Opposition, the Trustee states that neither the purchase of the Ritz Carlton apartment nor the assignment of Modi's loan are the basis of his claim (yet another re-characterization). Instead, the Trustee says that the sole grounds for the claim are the conclusory allegations surrounding the "Actual Fraudulent Transfers." Reliance upon such conclusory and general allegations is untenable.

To survive a motion to dismiss, a corporate waste claim must meet the "demanding standard of pleading facts that show that 1) the corporation received no consideration and 2) the transfer of corporate assets served no corporate purpose. *Burch v. Seaport Capital, LLC (In re Direct Response Media, Inc.,)* 466 B.R. 626, 657 (Bankr. D. Del. 2012). The Trustee comes nowhere close to meeting this standard.  The Trustee does not allege any basis for the claim that the Debtors received no consideration for any purported transaction or that the transfer alleged served no corporate purpose. Rather, this claim is yet another example of the Trustee asserting conclusory allegations of normal day-to-day corporate activity, and contending that they must somehow formed the basis for a claim of wrongdoing. The Trustee is required to plead far more.

*Criden v. Steinberg,* is instructive in this regard.  There, the Court dismissed the corporate waste claim stating that the "legal allegations, specifically that the repricing was 'gross, reckless, willful and intentional and that no person of ordinary, sound business judgment would be expected to entertain a view that the consideration, or need, lack of consideration was fair' and were allegations that were wholly conclusory."  *Criden v. Steinberg*, 2000 Del. Ch. LEXIS 50 at *12 (Ch. Mar. 2000); *see also City of Roseville Entles.  Retirement Fys. v. Dimon*, 2014 N.Y. (Slip. Op. 33987) [U], *12 (2014) (dismissing complaint for corporate waste because the allegations were merely conclusory).  The Trustee's allegation of fraudulent transfers without the showing consideration was inadequate or that a reasonable person would have concluded the few transactions were improper simply fails to meet standard. Thus, it should be dismissed.[3]

---

[3] The reconstituted corporate waste claims also are untimely. As discussed above, the Trustee contends that the more "recent" allegations of wrongdoing, which are set forth at FAC ¶ 255, render the state law claims timely.  However, none of these allegations supports a claim of corporate waste.

IV. **This Court Should Dismiss the RICO Claim**

A. **The Trustee Has No RICO Standing**

As described in the Opening Memo, the Trustee lacks standing to bring RICO claims because the Debtors are not the direct victims of the wrongdoing alleged in the Amended Complaint. Indeed, the focal point of the Amended Complaint is the so-called "Bank Fraud" – or, what was referred in the original complaint, as the PNB Fraud – an alleged fraudulent scheme targeting PNB and other unspecified banks. According to the Amended Complaint, the Bank Fraud consisted of obtaining "loans, credits, or other funds under false pretenses and without collateral from numerous banks, including [PNB]." (FAC ¶ 5). In furtherance of the Bank Fraud, the Defendants allegedly artificially inflated "the import volume of Modi's India-based companies … with sham transactions so as to obtain more and more LOU funding," and "PNB and other banks advanced amounts equal to over $1 billion under the LOUs." (*Id.* ¶¶ 27-28). Additionally, "[t]o facilitate the issuing of the LOUs and to prevent detection, Modi and others at his direction … worked with certain PNB employees … who authorized the issuance of the LOUs without securing collateral and without properly recording the LOUs in PNB's records." (*Id.* ¶ 41). The alleged Bank Fraud lasted seven years, causing "a total loss to PNB and other banks in excess of $1 billion." (*Id.* ¶¶ 23, 52). Given these allegations, it is clear that the Bank Fraud allegedly targeted PNB, and thus, the Trustee's contention that the Amended Complaint only asserts claims of injuries suffered by the Debtors is nonsense. (Opp. p. 9).

The Trustee never tries to rebut the proposition that a plaintiff seeking to establish standing must show "that they were the intended targets of the RICO violations, and that any alleged RICO injury must have been the 'preconceived purpose' of the RICO activities." *BCCI Holdings (Luxembourg) v. Pharaon*, 43 F. Supp. 2d 359, 365 (S.D.N.Y. 1999) (citations and internal quotations omitted); *see also In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994)

(affirming dismissal of RICO claims because "[t]he injuries alleged thus were neither the 'preconceived purpose' nor the 'specifically-intended consequence' of the RICO defendants' acts."). Nor has the Trustee tried to rebut the proposition that standing is lacking in cases when the only reason the Debtors suffered harm was because the scheme failed and was exposed, with all the subsequent harm flowing from that exposure. *BCCI*, 43 F. Supp. 2d at 365 (stating that "courts have repeatedly refused to find standing under RICO where the harm caused to the plaintiff is the result of the exposure of the alleged racketeering activity, rather than from the predicate acts underlying the scheme itself").

The Trustee's failure to address these points is hardly surprising, given that the RICO claims do not belong to the Debtors – but instead to PNB.  When third parties like PNB "have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995). The Trustee has *conceded* that "PNB and other victims of the fraudulent schemes might be able to bring their own RICO claims against Bhansali on the basis of the Actual Fraudulent Transfers or his other misconduct." (Opp. at 23, n. 7). Dismissal of the Amended Complaint is therefore appropriate because the Trustee has admitted any RICO claim belongs to PNB and, if not, then Bhansali may be subject to duplicative RICO claims by PNB and other banks stemming from the same alleged conduct. *See, e.g.*, *Hirsch* , 72 F.3d at 1093 (trustee is precluded from bringing claims when "any action by the trustee would be duplicative of pending litigation brought by the defrauded investors") (citation omitted).

The Trustee seeks to cure this fatal flaw by attempting to downplay the roll of the PNB Fraud and instead references injuries that only the Debtors purportedly suffered, such as the alleged depletion of Debtors' assets by the Actual Fraudulent Transfers, the delay in the Trustee's

appointment, and the Estates' expenditures on professional fees. (Opp. pp. 24-28). He also opportunistically contends that these injuries are in fact the "principle" injuries the Debtors purportedly suffered. But these alleged harms are far removed from the allegations underlying the Bank Fraud that is the centerpiece of the Amended Complaint. On the contrary, they are indirect and ancillary to the injuries that were caused to PNB (and allegedly other unspecified banks) by the Bank Fraud, and the law is clear that "a theory of causation that … requires the Court to look much beyond the 'first step' of harm caused" cannot serve as a basis to establish RICO standing. *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 652 (S.D.N.Y. 2011) (citing *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 8 (2010)). Additionally, "a plaintiff does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170-71 (S.D.N.Y. 2019) (internal quotation marks omitted). Therefore, the Trustee's allegations of Debtors' injuries cannot serve as a basis to allege his standing.

Finally, the Trustee argues that the Debtors had to pay duplicative fees and costs in connection with the Trustee's and Examiner's investigation specifically for the purpose of uncovering information that he would have discovered sooner "but for" the fact that Bhansali refused to cooperate. (Opp. pp. 27-28). He even goes so far as to blame the appointment of the Examiner on Bhansali. (*Id*). Thus, he claims that the monies expended constitute injuries to the Debtors that are sufficiently direct and proximate to satisfy RICO. (Opp. p. 25). Were this accepted, all trustees could claim that they have standing to assert RICO claims merely because the debtor necessarily expended fees on a trustee! And even worse a trustee could establish

standing by alleging that a defendant chose to invoke its constitutional rights. This is simply not the law.

### B.        The RICO Claims are Time Barred

The Trustee cannot refute that the Debtors should have discovered the alleged PNB scheme in 2011, when it was first allegedly implemented. Instead, he argues that the injury at issue is not the billion-dollar injury the Debtors supposedly suffered as a result of the PNB Fraud, which he trumpets throughout the Amended Complaint. Rather, the Trustee now argues for the first time that "two of the principal injuries alleged by the trustee" – the impairment of claims against affiliates and the expenditure of professional and legal fees – took place recently and therefore revive his entire RICO claim. (Opp. at 28). The Court should reject this argument. The Trustee is attempting to bootstrap his entire RICO claim onto the fact that the Debtors spent money on lawyers in 2018 and 2019. Once again, under the Trustee's logic, every trustee could revive a stale RICO claim simply by claiming that his claims against third parties had been impaired. Indeed, the only alternative is that the Trustee is conceding that his claim for treble damages under RICO should be calculated as a mere multiple of the "unnecessary professional fees." (Opp. at 28).[4]

### C.        The Trustee Fails Adequately to
### Plead the Requisite RICO Predicate Acts

#### 1.        The Trustee Fails to Plead Mail and Wire Fraud Adequately

The Opposition makes two arguments in response to Bhansali's contention that the predicate acts of mail and wire fraud were not properly pled. First, the Trustee argues that he is not required to plead his claim with specificity because he has provided a "detailed description of the underlying scheme." (Opp. p. 31). In fact, the Trustee has offered nothing more than conclusory

---

[4] The Trustee also argues that the statute of limitations should be tolled until June 2018, because Bhansali "dominated and controlled" the Debtors. (Opp. at 29). As argued *supra*, this argument should be rejected as to Bhansali who the Trustee alleges allowed Modi to dominate and control management of the Debtors in violation of Bhansali's duties to the Debtors. The Trustee cannot have it both ways.

allegations to establish that. Bhansali was a part of a "master plan to defraud." *Jerome M. Sobel and Co. v. Fleck,* 2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. Dec. 1, 2003) relied on by the Trustee does not support this position. That case actually states that "in cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. *Id*. at *16. *In such cases*, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Id.* *5-6 (citations omitted and emphasis added).

Here, the Trustee does not allege any connection between the communications and the underlying scheme, except his own innuendo and conclusory statements. For example, the Amended Complaint states "Modi, Bhansali, and Gandhi exercised direct oversight and control over transactions between the Debtors and Shadow Entities." (FAC ¶ 81). That paragraph then lists dozens of innocuous emails in which Bhansali addresses various financial and operational issues – hardly surprising given that he was the CEO. But there is nothing in any of these emails to show they were connected to any alleged fraud. The Amended Complaint also states that "Modi, Bhansali, and Bhansali communicated frequently with each other and various other co-conspirators concerning the Bank Fraud and to advance the Bank Fraud." (FAC ¶82). The emails the Trustee lists include no communication about advancing any fraud that would support that conclusory allegation. The Trustee's argument that reading nefarious intent into innocuous emails satisfies his pleading obligations should be rejected.

The Trustee also argues that he is not required to plead fraudulent intent through specific allegations, but instead, "when the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." (Opp. p. 31). This is not the standard,

and the *D'Amato* case the Trustee cites did not address a motion to dismiss. *U.S. v. D'Amato,* 39 F. 3d 79 (2d. Cir. 1984) (reversing a mail fraud conviction for lack of intent). The Court should reject these efforts at evasion. As discussed above, the Trustee does not properly allege that Bhansali was part of a scheme, let alone that the "necessary result" of such a scheme was to injure *the Debtors*. The Trustees conflates and confuses the so-called "schemes" to achieve the result he seeks. The Amended Complaint alleges that the Debtors suffered harm stemming from a six-year fraud resulting in over a billion dollars of accrued claims against it in favor of PNB, but given his inability to set forth Bhansali's role with particularity, the Trustee turns to the purported "Exit Scheme" in order to do so. But none of the allegations establish Bhansali's requisite intent.

### 2.      The Trustee Fails to Adequately Plead Violations of the National Stolen Property Act

The Trustee states that "the Trustee's allegations concerning Bhansali's knowledge of the fraudulent nature of the Actual Fraudulent Transfers are not mere conclusions, but instead solid factual allegations that satisfy Rule 9(b) and for which all reasonable inferences must be drawn in the Trustee's favor." (Opp. pp. 33-34). Tellingly, the Trustee points to no such "solid factual allegations" or "'extensive new factual allegations" to support his lofty rhetoric. As in the mail and wire fraud allegations, the Trustee's allegations of fraudulent intent are purely conclusory.

### 3.      The Trustee Fails to Plead Money Laundering Adequately

The Trustee fails to allege with particularity that Bhansali knew about the Bank Fraud or any unlawful activity. The paragraphs in the Amended Complaint that the Trustee relies upon in support (FAC ¶¶173-176, 272) do not come close to establishing Bhansali's "knowledge that the Subsequent Transfers represented the proceeds of some form of criminal activity and the property involved in each subsequent transfer represented the proceeds of unlawful activity." (Opp. p. 31). To determine otherwise would eviscerate the elements of money laundering.

### 4.    <u>The Trustee Fails to Plead Obstruction of Justice Adequately</u>

As the Trustee admits, his obstruction of justice claim concerns conduct, substantially all of which "occurred after the Debtors' bankruptcy filing or just before." (Opp. p. 37). Thus, the Trustee cannot establish continuity among the predicate acts. (*See* Opening Mem. pp. 29-30) The Trustee counters Bhansali's continuity argument by relying on his new invention, the "Exit Scheme." As the Trustee would now have it, Bhansali's behavior 2018 may not have been continuous with the PNB Fraud, but it was continuous with the "Exit Scheme." Thus, the Trustee argues that Mr. Bhansali "lengthen[ed] the life" of this new purported scheme and allowed "additional time for looting of the Debtor and U.S. Affiliates to occur." (Opp. p. 38). Per the Trustee, this culminated in the shipment of inventory from "U.S. Affiliates" *(not the Debtors)* to overseas entities, in September 2018 – four months after Bhansali's resignation! The contrived and convoluted Exit Scheme argument does not satisfy the strict continuity requirement.

### 5.    <u>The Trustee Fails to Plead Bankruptcy Fraud Adequately</u>

For the same reasons as the obstruction of justice predicate act, the Trustee fails to establish that Bankruptcy Fraud is a predicate RICO act because there is a complete lack of continuity. Additionally, the Trustee's dependence on purely conclusory allegations and inadmissible hearsay fails to establish that Bhansali intentionally committed a fraud on the Bankruptcy Court.

### 6.    <u>This Court Should Dismiss the RICO Conspiracy Claim</u>

As argued in the Opening Memo, the failure to plead a substantive RICO claim is fatal to the Trustee's RICO conspiracy claim. The claim should therefore be dismissed.

Dated:  New York, New York
        January 27, 2020

WHITE AND WILLIAMS LLP

/s/ Nicole A. Sullivan
Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*