**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FIRESTAR DIAMOND, INC., *et al.*<br>　　　　　　　　　Debtors. | Chapter 11<br><br>No. 18-10509 (SHL)<br><br>Jointly Administered |
| RICHARD LEVIN, Chapter 11 Trustee of<br>FIRESTAR DIAMOND, INC., FANTASY, Inc., and<br>OLD AJ, INC. f/k/a A. JAFFE, INC.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>NIRAV DEEPAK MODI, MIHIR BHANSALI, and<br>AJAY GANDHI,<br><br>　　　　　　　　　Defendants. | Adv. Proc. No. 19-1102 (SHL) |

**DEFENDANT NIRAV DEEPAK MODI'S REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED**
**COMPLAINT**

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000

*Attorneys for Nirav Deepak Modi*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

I.    The Trustee Can Recover Only for Injuries to the Debtors as a Result of the Scheme Alleged in the FAC ...........................................................................................2

II.    The Trustee's State-Law Claims Should Be Substantially Narrowed ................................3

III.    The RICO Claims Against Modi Should Be Dismissed Because the Trustee Lacks RICO Standing, the Claims Are Barred By *In Pari Delicto*, and For Failure to Plausibly Allege a Predicate Act...........................................................................................5

    A.    The Trustee Lacks Standing Because the Party Directly Injured By the Alleged Scheme and Better Situated to Bring a Claim Is PNB ..............................5

        1.    Standing Under the RICO Statute Is Limited to Parties Directly Injured as a Result of the Alleged Violation.................................................5

        2.    PNB Is Better Situated to Pursue Claims Against Modi ............................8

    B.    The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto* ........10

    C.    The Trustee Fails to Adequately Allege that Modi Committed A RICO Predicate Act.........................................................................................................12

        1.    The Trustee Fails to Plead Mail or Wire Fraud or Unlawful Transportation of Stolen Property by Modi with Particularity .................12

        2.    The Trustee Fails to Plead Money Laundering Violations Against Modi.........................................................................................................14

        3.    The Trustee Fails to Plead Obstruction of Justice Against Modi .............16

    D.    The Trustee's RICO Claims Against Modi Are Limited by the Applicable Statute of Limitations....................................................................................18

    E.    The Trustee Fails to Plead a RICO Conspiracy Claim Against Modi ..................18

CONCLUSION...........................................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K&D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................8

*Acito v. IMCERA Grp.*,
    47 F.3d 47 (2d Cir. 1995).......................................................................................13

*In re Adelphia Commc'ns Corp.*,
    348 B.R. 99 (Bankr. S.D.N.Y. 2006)....................................................................17

*Apex Maritime Co., Inc. v. OHM Enters., Inc.*,
    No. 10-cv-8119, 2011 WL 1226377 (S.D.N.Y. 2011) ........................................16

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)................................................................................................9

*Bankers Trust Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988)................................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)..............................................................................................10

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
    140 F.3d 898 (11th Cir. 1998) ................................................................................7

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)................................................................................................9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
    187 F.3d 229 (2d Cir. 1999)..................................................................................19

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018)......................................................................................7

*De Sole v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 387 (S.D.N.Y. 2015)....................................................................8

*Empire Merchs., LLC v. Reliable Churchill LLP*,
    902 F.3d 132 (2d Cir. 2018)............................................................................6, 8, 9

*In re FiberMark, Inc.*,
    339 B.R. 321 (Bankr. D. Vt. 2006) .......................................................................17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...................................................................................18

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*,
  551 B.R. 732 (S.D.N.Y. 2016),
  *aff'd*, 666 F. App'x 66 (2d Cir. 2016)...................................................................10

*Hemi Grp., LLC . v. City of New York*,
  559 U.S. 1 (2010)....................................................................................6, 8, 9

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)...................................................................................6, 7, 8

*Int'l Ry. of Cent. Am. v. United Fruit Co.*,
  373 F.2d 408 (2d Cir. 1967).................................................................................3, 18

*Joseph v. Frank (In re Troll Commc'ns, LLC)*,
  385 B.R. 110 (Bankr. D. Del. 2008) ........................................................................3

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
  No. 1:14-cv-3318, 2015 WL 2400182 (S.D.N.Y. 2015),
  *aff'd sub nom.* 640 F. App'x 56 (2d Cir. 2016) ....................................................15

*Kerik v. Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y. 2014)......................................................................17

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
  23 F. Supp. 2d 439 (S.D.N.Y. 1998).....................................................................18

*Merrill Lynch, Pierce, Fenner & Smith v. Young*,
  No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)....................................14

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 2004)..................................................................................13

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
  437 F.3d 1145 (11th Cir. 2006) ..........................................................................2, 11

*Republic of Iraq v. ABB AG*,
  768 F.3d 145 (2d Cir. 2014)...................................................................................2, 5, 10, 11

*Sanchez v. Hoosac Bank*,
  No. 12 Civ. 8455(ALC), 2014 WL 1326031
  (S.D.N.Y. Mar. 31, 2014) .....................................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972)......................................................................13

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008).....................................................................13

*Terminate Control Corp. v. Horowitz*,
    28 F.3d 1335 (2d Cir. 1994).......................................................................8

*Tymoshenko v. Firtash*,
    57 F. Supp. 3d 311 (S.D.N.Y. 2014).......................................................15

*United States v. Binday*,
    804 F.3d 558 (2d Cir. 2015).....................................................................17

*United States v. Maher*,
    108 F.3d 1513 (2d Cir. 1997)...................................................................14

*United States v. Persico*,
    645 F.3d 85 (2d Cir. 2011).......................................................................17

*United States v. Roy*,
    375 F.3d 21 (1st Cir. 2004)......................................................................15

*United States v. Turkette*,
    452 U.S. 576 (1981).................................................................................11

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
    124 F. Supp. 3d 301 (S.D.N.Y. 2015).....................................................13

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998).......................................................................6

**Statutes**

11 U.S.C. § 108.......................................................................................3, 4

18 U.S.C. § 1512........................................................................................17

18 U.S.C. § 1962..........................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................12, 13, 14

## PRELIMINARY STATEMENT

While narrowing the scope of the claims against Nirav Modi, the Trustee argues against dismissal largely by relying on purported schemes that cannot be found in, and go well beyond, the allegations in the First Amended Complaint ("FAC"). In the FAC, the Trustee described the overarching conduct justifying liability as the "Bank Fraud," which he alleged was aimed at "formulating and implementing a common scheme to defraud PNB."[1] (FAC ¶¶ 23, 240). Now, in an about-face, the Trustee argues that his own characterization of the scheme as the "Bank Fraud"—referenced no less than seventy-five times in the FAC—was merely a product of "simplicity and to avoid unnecessary characterization." (Opposition Brief ("Opp.") at 2). Where in the FAC there was *one* "Bank Fraud," the Trustee now claims *three* separate schemes. (*Id.* at 2-7). In addition to a "Bank Scheme," the Trustee argues that alleged transactions between Modi-controlled entities constituted a separate "Funnel Scheme," and, further, that certain transactions involving allegedly ill-gotten assets made up a purported "Exit Scheme," of which the Trustee claims the Debtors were victims.[2] (*Id*).

Despite this sleight of hand, the Trustee acknowledges that he cannot bring claims to redress anything beyond "direct and particularized injur[ies] to the Debtors themselves," a limitation not contained in the FAC. (*Id.* at 10). At the same time, the Trustee continues to rely on the same boilerplate allegations of control to cast Modi as the "kingpin" of the alleged scheme to defraud Punjab National Bank ("PNB"). (*Id.* at 1). But the Trustee's failure to demonstrate

---

[1] For purposes of this brief, we use the Trustee's term—the "Bank Fraud"—to refer to the fraudulent scheme alleged in the FAC. Modi referred to the same alleged course of conduct in his opening brief as the "PNB Scheme." Neither term, however, is consistent with the three new schemes alleged by the Trustee in the Opposition.

[2] Notably, the Trustee's re-pleading is implausible on its face because, according to the Trustee, "[i]mplementation of the Exit Scheme began as early as April 2012," (Opp. at 6), a mere year after the Bank Fraud began, (*see* FAC ¶ 23 (alleging that the "Bank Fraud" began in "early 2011")), and 6 years before it ended, (*see id*. (alleging that the "Bank Fraud" ended in "early 2018")).

Modi's control over the Debtors precludes equitable tolling from salvaging claims based on stale

conduct. (*See id.* at 19-20, 39-40).

Similarly, because the party directly injured by the scheme alleged in the FAC—

*i.e.*, the "Bank Fraud"—was PNB, the Trustee cannot avoid dismissal of his RICO claims on

behalf of the Debtors. He provides no meaningful response, moreover, to Modi's argument that

the RICO claims should be dismissed under the doctrine of *in pari delicto*. The Trustee is silent

on the Second Circuit's decision in *Republic of Iraq v. ABB AG,* 768 F.3d 145 (2d Cir. 2014),

dismissing RICO claims brought by a participant in a RICO enterprise based on the doctrine of

*in pari delicto*. That silence is telling: the Debtors are not victims, but admitted participants in

and beneficiaries of the alleged scheme. As the Second Circuit recognized, a co-conspirator's

"recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result

in a wealth transfer among similarly situated conspirators." *Republic of Iraq*, 768 F.3d at 167

(quoting *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155

(11th Cir. 2006)).

For the reasons set forth in Modi's opening brief and as further explained below,

the FAC's claims against Modi should be dismissed or substantially narrowed.

## ARGUMENT

I.    **The Trustee Can Recover Only for Injuries to the Debtors as a Result of the Scheme
      Alleged in the FAC**

In his opening brief ("Modi Br."), Modi argued that the Trustee cannot bring

claims belonging to creditors and, similarly, cannot recover damages arising from injuries

sustained by creditors. (Modi Br. at 9-11). The Trustee does not dispute these limitations,

asserting that he "narrowly tailored his Amended Complaint to only assert claims premised on

injuries sustained by the Debtors." (Opp. at 9-10). But, to bolster this assertion, the Trustee then

2

introduces two (or three) new fraudulent schemes, beyond the "Bank Fraud" alleged in the FAC. (*Id.* at 2-7). If the Trustee's claims are limited to injuries sustained by the Debtors as a result of the Bank Fraud, those claims may be able to survive at this stage of the proceeding. But the Trustee cannot recover for injuries allegedly sustained by PNB or any other creditor, and likewise cannot recover for injuries resulting from schemes not alleged in the FAC.

## II.    The Trustee's State-Law Claims Should Be Substantially Narrowed

The Trustee's Opposition also reflects a substantial narrowing (or, at a minimum, a clarification) of his state-law claims. There appears to be no dispute that a three-year statute of limitations governs the breach of fiduciary duty and aiding and abetting claims, and a six-year statute of limitations governs the corporate waste claim. (*See id.* at 19-20; *see also* Modi Br. at 12-15). In the absence of equitable tolling, therefore, the Trustee cannot recover on the fiduciary breach and aiding and abetting claims on the basis of conduct that occurred before February 26, 2015, or on the corporate waste claim on the basis of conduct before February 26, 2012, even with the application of 11 U.S.C. § 108(a). (Opp. at 19-20).

Here, the Trustee fails to allege facts giving rise to the application of equitable tolling. The Trustee relies on the doctrine of "adverse domination" to argue that all relevant limitations periods were tolled until his appointment in June 2019. (*Id.*). But that doctrine requires a showing of "full, complete and exclusive control in the directors or officers charged." *Int'l Ry. of Cent. Am. v. United Fruit Co.*, 373 F.2d 408, 414 (2d Cir. 1967). As detailed in Modi's opening brief, (*see* Modi Br. at 16), the Trustee fails to make such a showing.[3] Rather than allege facts to establish Modi's "full, complete and exclusive control" over the Debtors, the

---

[3] Similarly, the Trustee asserts in his opposition that the Debtors were insolvent during the relevant time period. (*See* Opp. at 13-14). But the FAC does not contain facts supporting that assertion. *Cf. Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 123-24 (Bankr. D. Del. 2008) (relying on specific allegations of insolvency based on financial statements).

Trustee doubles down on the FAC's conclusory allegations. (*See* Opp. at 19 (citing FAC ¶¶ 18, 61-91, 188-94)). Indeed, the specific examples of Modi's alleged involvement in the Bank Fraud (only five during a period of nearly seven years) are either so scant as to belie Modi's complete control over the Debtors, (*e.g.*, FAC ¶¶ 81(ii), 81(xi)), or pre-date the Bank Fraud entirely, (*e.g.*, *id.* ¶¶ 82(i)-(iii)). As explained previously, (*see* Modi Br. at 16; FAC ¶¶ 190-94), the FAC's allegations regarding Modi's alleged control of the Debtors is limited to two sets of discrete examples—one from 2009 and one from 2015—both of which largely pre-date the cutoff for breach of fiduciary duty claims the Trustee asserts based on 11 U.S.C. § 108(a) (*i.e.*, February 26, 2015).[4] Accordingly, the Trustee fails to allege a sufficient basis for equitable tolling.

Finally, the Trustee abandons the breach of fiduciary duty and corporate waste claims to the extent they are based on the formation of the Ithaca Trust or the purchases of the Ritz Carlton and Essex House apartments. (Opp. at 14). There were legitimate reasons for these purchases and, therefore, these properties are not proper bases for the Trustee's corporate waste claims. (Modi Br. at 17-18). The Trustee apparently does not disagree. He explains that he "included those allegations as examples of how Modi tried to shield his ill-gotten wealth," but that the fiduciary breach and waste claims are "based on separate allegations." (Opp. at 14). Accordingly, as he concedes, the Trustee cannot rely on transactions involving the Ithaca Trust or the purchase of the Ritz Carlton or Essex House apartments as the basis for his state-law claims.

---

[4] With respect to the 2015 example, the only communication attributed to Modi that post-dates the February 26, 2015 cutoff is a one-word e-mail that in no way illustrates control over the Debtors. (*See* FAC ¶ 193).

III.    **The RICO Claims Against Modi Should Be Dismissed Because the Trustee Lacks RICO Standing, the Claims Are Barred By *In Pari Delicto*, and For Failure to Plausibly Allege a Predicate Act**

Contrary to the Trustee's arguments, (Opp. at 22-26), the RICO claims against Modi should be dismissed because the party directly injured by the alleged racketeering activity was PNB, not the Debtors.  Because the single "Bank Fraud" alleged in the FAC too obviously injured PNB most directly, the Trustee introduces two entirely new purported schemes to try to salvage the RICO claims.  But it is too late for the Trustee to introduce new theories of recovery, and the FAC makes clear that the party directly harmed by the alleged unlawful conduct was PNB.  The Trustee also fails to rebut the *in pari delicto* defense as applied to RICO claims, ignoring policies underlying the doctrine's application to RICO expressed in *Republic of Iraq*. *See* 768 F.3d at 163.  And the Trustee's argument that the statute of limitations for the RICO claims is equitably tolled based on "adverse domination" does not save the Trustee's claims from being untimely, (*see supra* Section II), nor does the Trustee point to any facts in the FAC that plug the holes in his predicate act allegations.

A.    **The Trustee Lacks Standing Because the Party Directly Injured By the Alleged Scheme and Better Situated to Bring a Claim Is PNB**

1.    **Standing Under the RICO Statute Is Limited to Parties Directly Injured as a Result of the Alleged Violation**

In his Opposition, the Trustee argues that Supreme Court precedent requires the Court to "ignore Modi's broad characterization of the alleged schemes and consider only whether the specific injuries alleged have 'some direct relation' to the specific conduct alleged." (Opp. at 22).  But Modi is not asking the Court to accept *his* characterization of an alleged scheme; to the contrary, he is asking that the Court accept the *Trustee's* characterization in the FAC.  In the FAC, the Trustee alleges a *single* scheme that he defined as the "Bank Fraud." (FAC ¶ 23).  According to the FAC, the purpose of the Bank Fraud was "to obtain loans, credits,

5

or other funds under false pretenses and without collateral," and the direct victims of the Bank Fraud were "numerous banks, including Punjab National Bank." (*Id.*). The allegedly fraudulent transactions were done "to propagate the Bank Fraud" and to "launder the proceeds of the Bank Fraud," and Modi and others engaged in various tactics to "cover up" or "hide their involvement in the Bank Fraud." (FAC ¶¶ 53, 143). The directly-injured party in the scheme alleged in the FAC was PNB, which is why the Trustee described the scheme as he did.[5]

Now, in a telling departure from the allegations of the FAC, the Trustee offers two new purported schemes—the "Funnel Scheme" and the "Exit Scheme"—in addition to relabeling the "Bank Fraud" as the "Bank Scheme." (*See* Opp. at 2-7). But it is too late for the Trustee to introduce new allegations and theories of the case: "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). And with respect to the scheme actually alleged in the FAC, the directly injured party was PNB.[6] As explained in Modi's opening brief, (Modi Br. at 20-22), courts "rarely 'go beyond the first step' when assessing causation under civil RICO," *Empire Merchs., LLC v. Reliable Churchill LLP*, 902 F.3d 132, 141 (2d Cir. 2018) (quoting *Hemi,* 559 U.S. at 10). This is true even if an injury may "flow" from the alleged RICO enterprise. (Opp. at 27). Here, where the Trustee described the alleged RICO enterprise as "an association-in-fact engaged in and affecting interstate and foreign commerce for a common and continuing purpose

---

[5] The Trustee also argues that Modi applies the incorrect test for RICO standing, focusing on whether the Bank Fraud was "aimed" at the Debtors. (*See* Opp. at 21). As Modi explained in his opening brief (*see* Modi Br. at 20), his motion is grounded in bedrock Supreme Court precedent holding that to state a RICO claim, there must be "some direct relation between the injury asserted and the injurious conduct alleged" and that "direct relationship" does not extend beyond the "first step" of causation between the RICO violation itself and the alleged injury. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9-10 (2010).

[6] The Trustee asserts that this is an issue of causation, rather than standing. (Opp. at 20 n.8). But that distinction is irrelevant because the substantive issue is the same: whether the Debtors have been directly injured such that the Trustee can state a RICO claim on their behalf. *See, e.g., Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 286 (1992) (Scalia, J., concurring in the judgment) ("The ultimate question here is statutory standing . . . .").

of formulating and implementing a common scheme to defraud PNB for the Defendants'

personal enrichment" (FAC ¶ 240), the directly injured party is PNB. Any injury the Debtors

may have sustained was an ancillary result of the alleged "Bank Fraud," (*see* Modi Br. at 20, 22-

23), and, therefore, the Trustee lacks standing to bring RICO claims.

    The Trustee points to allegations that the Debtors' assets were depleted and

professional fees were incurred as a result of the so-called cover up. (Opp. at 23, 25). The cases

cited by the Trustee, however, permit claims to survive only where the plaintiff had a concrete

interest in the entity directly injured by the alleged RICO scheme. *See, e.g., D'Addario v.

D'Addario*, 901 F.3d 80, 87 (2d Cir. 2018) (Defendant was "alleged to have destroyed the value

of the Estate, in which [the plaintiff], as a beneficiary, has an identifiable interest under

Connecticut law"); *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d

898, 906-08 (11th Cir. 1998) (holding that "a shareholder's injuries that result from racketeering

activity directed toward a corporation are too indirect to sustain a RICO claim," but a "a

shareholder's derivative suit . . . alleges an injury that befalls the corporation directly").

    Here, in contrast, the FAC alleges a "Bank Fraud" with PNB as the victim and

does not allege that the Debtors had a cognizable interest in PNB's alleged injuries. The Trustee

does not allege that the Debtors were direct *victims* of the alleged Bank Fraud; rather, he alleges

that "the Debtors were directly involved in import and export transactions underlying

fraudulently procured LOUs." (FAC ¶ 54; *see also id.* ¶¶ 53-60). In light of such allegations,

the Trustee's new argument that "each Actual Fraudulent Transfer . . . directly injured the

Debtors and only indirectly harmed PNB and other creditors," (Opp. at 24), constitutes a

wholesale reversal in position that must be rejected. In contrast to *Holmes*'s requirement of

direct injury, the FAC focuses on "harm flowing merely from the misfortunes visited upon a

third person"— here, PNB—but then seeks to recover damages for harm sustained by admitted

co-conspirators, the Debtors.  *See Holmes*, 503 U.S. at 268-69.  "[T]he link is too remote

between" the Debtors' alleged harm and the Bank Fraud, *id*. at 271, because it extends beyond

the "first step" of causation between the alleged RICO violation itself and the alleged injury, *see*

*Hemi*, 559 U.S. at 10 (citing *Holmes*, 503 U.S. at 271).

      The Trustee further argues that the payment of professional fees in connection

with a bankruptcy proceeding can be a cognizable RICO injury.  (*See* Opp. at 25-26).  While

true, this argument ignores that the Debtors' payment of professional fees here is also ancillary to

the direct harm purportedly suffered by PNB.  The FAC describes the alleged obstruction as

"tactics to conceal and destroy evidence of [Modi and his co-defendants'] involvement in the

Bank Fraud both prior to and after the Bank Fraud's exposure."  (FAC ¶¶ 142, 277-89).

Accordingly, PNB was the directly-injured victim of the alleged obstruction, based on the

purported destruction of evidence.  While the Debtors may have incurred additional fees as a

result of alleged efforts to cover up the Bank Fraud, any such fees are a secondary or ancillary

result of the harm allegedly inflicted upon PNB.[7]

### 2.    PNB Is Better Situated to Pursue Claims Against Modi

      The Trustee argues that PNB may not have a viable RICO claim against Modi and

that PNB's injury is based on different conduct from the Debtor's injuries, and that PNB thus

---

[7] In describing the alleged harm to the Debtors, the Trustee asserts that "the plaintiff need only allege that
it has suffered an injury from at least one or more of the predicate acts comprising the RICO violation."
(Opp. at 26 (quoting *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 543 (S.D.N.Y.
2014))).  In *dicta*, the Second Circuit referenced the "any predicate act" approach favorably but did not
resolve the issue.  *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1347 (2d Cir. 1994).  More
recent Second Circuit cases (post-*Hemi*), however, tend not to use this language.  As the Second Circuit
set forth in *Empire Merchants*, for example, a RICO plaintiff must show "the asserted *racketeering
activity* directly caused its injury."  *Empire Merchants*, 902 F.3d at 142 (emphasis added); *see also De
Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 401-02 (S.D.N.Y. 2015) ("To sustain a private cause
of action under RICO, a plaintiff must allege . . . causation of the injury by the defendant's violation[ of
18 U.S.C. § 1962].").  The injury caused by the racketeering activity here is to PNB.

cannot be a better-situated plaintiff. (Opp. at 28). But the availability of a *RICO* claim, or for

that matter *any* other specific type of claim against a defendant, is not the determining factor as

to whether a plaintiff has RICO standing. Rather, as the Supreme Court and the Second Circuit

have instructed, "the availability of 'a more immediate victim that is better situated to sue' cuts

against finding proximate cause" and can abrogate RICO standing. *Empire Merchants*, 902 F.3d

at 144 (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)); *Anza v. Ideal

Steel Supply Corp.*, 547 U.S. 451, 460 (2006). The Supreme Court has recognized that a better-

situated plaintiff need not have the identical claim or recovery as the party without standing. *See

Anza*, 547 U.S. at 460 (noting that a better-situated plaintiff might recover tax revenue as

opposed to lost sales). Here, PNB is an available plaintiff with an incentive to bring claims

against Modi (*i.e.*, fraud and otherwise) based on the alleged Bank Fraud and other related

transactions; in fact, it already has.

        The relevant inquiry in determining whether a better situated plaintiff exists is

whether the potential plaintiff "would have concrete incentives to try" to recover for its injury.

*Hemi*, 559 U.S. at 12; *see also Anza*, 547 U.S. at 460; *Empire Merchants*, 902 F.3d at 144. PNB

not only has such an incentive, but it has initiated several proceedings before tribunals in India to

recover the allegedly stolen funds.[8] And, further demonstrating PNB's intention and capacity to

pursue a recovery for its alleged injuries, PNB has appeared in this proceeding and filed a Proof

of Claim that mirrors the FAC's central allegations. *See* Proof of Claim of Punjab National Bank

---

[8] *See, e.g.*, Charul Shah, *PNB Seeks Control Over Properties of Nirav Modi to Recover Bank Dues*,
HINDUSTAN TIMES (Jan. 11, 2020), https://www.hindustantimes.com/cities/ hand-over-nirav-s-properties-
to-us-pnb/story-dVeB4T0vlhMlMopEaXCrKO.html; *DRT Pune Directs Nirav Modi to Pay Rs 7300
crore with Interest to PNB*, BUSINESS STANDARD (July 6, 2019), https://www.business-
standard.com/article/news-ani/drt-pune-directs-nirav-modi-to-pay-rs-7300-crore-with-interest-to-pnb-
119070600340_1.html.

Against Firestar Diamond, Inc., *In re Firestar Diamond, et al.*, No. 18-bk-10509 (Bankr.

S.D.N.Y. Nov. 29, 2018) (the "PNB Claim").

### B.     The Trustee's RICO Claims Are Barred by the Doctrine of *In Pari Delicto*

In his opening brief, Modi argued that the Trustee's RICO claims should be

dismissed based on the doctrine of *in pari delicto*, relying in part on the Second Circuit's

decision in *Republic of Iraq*. The Trustee responds by arguing that the *in pari delicto* doctrine

does not apply here because Modi was a corporate insider. (*See* Opp. at 28-29). While a

corporate insider may not be permitted to rely on the doctrine in defending against breach of

fiduciary duty and other common-law claims, *see, e.g., Flaxer v. Gifford (In re Lehr Constr.

Corp.)*, 551 B.R. 732, 739 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016), the policy

underlying the RICO statute compels a different result here.

In *Republic of Iraq*, the Republic of Iraq brought RICO and other claims against

entities that allegedly had conspired with the regime of Iraq's then-President, Saddam Hussein,

for damages resulting from the subversion of the United Nation's Oil-For-Food Programme. 768

F.3d at 153-54. The defendants moved to dismiss the RICO claims because the Hussein Regime

was in "de facto control of the nation" and had "'designed and instigated' the corruption." *Id.* at

152, 163. The district court agreed, and the Second Circuit affirmed. The Court of Appeals

found that the Hussein Regime's actions were attributable to Iraq itself, and that the Regime bore

substantially equal responsibility as the defendants for the Programme's corruption. *Id.* at 163,

164-65. Accordingly, the court dismissed the RICO claims on the basis of *in pari delicto*. *Id.* at

167-68.

The situation here is analogous to that in *Republic of Iraq* because the Debtors

"bear[] at least substantially equal responsibility for the violations [they] seek[] to redress."

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985). As described in

Modi's opening brief, the FAC is replete with descriptions of the Debtors' central involvement in the alleged scheme to defraud PNB.  (*See* FAC ¶¶ 53-60 (describing the Debtors' role in the Bank Fraud); Modi Br. at 27-28).  According to the FAC, the Debtors received approximately $24 million in proceeds from the alleged scheme.  (*See* FAC ¶¶ 54-55, 57-58, 81, 125, 197).  And the only reason that any allegedly fraudulent transfers from the Debtors, (*id.* ¶¶ 173-87), could have occurred is that the Debtors are alleged to have been critical waystations for the Bank Fraud's ill-gotten gains, (*see, e.g.*, *id.* ¶¶ 54-57).

The Trustee asserts that *in pari delicto* does not apply to Modi because he was a "corporate insider," largely relying on breach of fiduciary duty cases and not cases involving RICO claims.  (Opp. at 28-29).  But it would undermine the central purpose of RICO if a member of the fraudulent scheme could utilize the statute to re-apportion ill-gotten gains among wrongdoers.  *See Edwards*, 437 F.3d at 1155; *United States v. Turkette*, 452 U.S. 576, 585 (1981).  As the Eleventh Circuit has recognized, it "would be anomalous, to say the least, for the RICO statute to make racketeering unlawful in one provision, yet award the violator with treble damages in another provision of the same statute."  *Edwards*, 437 F.3d at 1155; *see also Republic of Iraq,* 768 F.3d at 167-68.  Here, the Trustee alleges that the Debtors were co-conspirators within the alleged RICO enterprise.  (*See* FAC ¶¶ 53-60, 298-303).  The Debtors' "recovery under RICO would not divest RICO violators of their ill-gotten gains; it would result in a wealth transfer among similarly situated conspirators."  *Edwards*, 437 F.3d at 1155; *see also Republic of Iraq,* 768 F.3d at 167-68.

11

C.     **The Trustee Fails to Adequately Allege that Modi Committed A RICO Predicate Act**

1.     **The Trustee Fails to Plead Mail or Wire Fraud or Unlawful Transportation of Stolen Property by Modi with Particularity**

Contrary to his arguments, (Opp. at 31-33), the Trustee does not plead mail and wire fraud or unlawful transportation of stolen property with the particularity Rule 9(b) requires. As noted in Modi's opening brief, (Modi Br. at 29-31), the Trustee premises the alleged mail and wire fraud predicate acts on specific communications. But only two of those communications involve Modi, and neither sets forth a representation alleged to be false or misleading. The Trustee responds by referencing cases that stand for the unremarkable proposition that even facially innocent mails or wires can satisfy Rule 9(b)'s particularity requirement where the complaint alleges "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications." (Opp. at 32 (citations omitted)). But, unlike the cases cited, the Trustee here fails to allege with particularity the actual connection between the alleged scheme and Modi's communications.

The FAC includes, for example, allegations describing communications sent to Modi wherein a co-defendant discussed a payment plan involving fund transfers to "clean-up" the accounts receivable and accounts payable of one of the Debtors' alleged U.S. affiliates. (FAC ¶ 81(ii)). These allegations do not explain, however, whether the communications were false or fraudulent, or how they were connected to the alleged scheme to defraud. The Trustee cites another email in which the same co-defendant asks Modi whether he should seek a "listing" of whom to make payments of $1 million to in India, and Modi offers a two-word email, "Yes pls." (*Id.* ¶ 81(xi)). The Trustee then tries to connect this email to the purported scheme by alleging that the co-defendant had already requested the listing one day earlier, and alleging that the recipients of the earlier email were involved in the alleged Bank Fraud. (*Id.*). But again, the

12

Trustee does not allege that Modi's email was false or misleading; without more information, it would be completely speculative to assume that the email was connected to or part of the alleged fraud scheme. The Trustee alleges, "on information and belief," that the emails related to repayment of LOUs, but that is insufficient to satisfy Rule 9(b)'s requirements. *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 313 (S.D.N.Y. 2015) (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)).

The Trustee's analogy of his complaint to that in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), is misplaced. (*See* Opp. at 33). There, the plaintiff alleged that the defendant, an officer of a bankrupt corporation, concealed a major asset of the bankrupt corporation from its creditors by "execut[ing] a sham document" to initiate a fraudulent transfer; "returned ownership and control" of the asset "through a complicated series of transactions"; and "initiated frivolous lawsuits against" the plaintiff "[i]n a further attempt to delay" the plaintiff from collecting its debt." *Bankers Trust*, 859 F.2d at 1098-99; *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, . . . where and when they took place, and . . . explain why they were fraudulent.'") (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). Here, unlike *Bankers Trust*, the Trustee offers only conclusory assertions, rather than specific factual allegations, to connect Modi to the alleged scheme to defraud. (*See, e.g.*, FAC ¶¶ 175-77).

The Trustee further argues that communications do not need to demonstrate fraudulent intent on their face and that intent to defraud can be inferred. (*See* Opp. at 33). But to satisfy Rule 9(b), "plaintiffs must allege facts that give rise to a *strong inference* of fraudulent intent." *Acito v. IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995) (emphasis added); *accord Sanchez*

*v. Hoosac Bank*, No. 12 Civ. 8455(ALC), 2014 WL 1326031, at \*4-5 (S.D.N.Y. Mar. 31, 2014). Here, rather than allege facts giving rise to a strong inference that Modi had the requisite fraudulent intent, the Trustee relies on conclusory assertions that the mails and wires were somehow connected to schemes to "deplete the Debtors' assets" and "loot the U.S. Affiliates." (Opp. at 33). The alleged connection between facially-innocent mails or wires to the unlawful scheme must be pleaded with particularity, *see, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at \*11 (S.D.N.Y. Mar. 15, 1994), and here it is not.

In the same vein as the deficiencies with the mail and wire fraud claims, the Trustee's National Stolen Property Act ("NSPA") allegations fail Rule 9(b)'s particularity requirement because they are based on perfunctory allegations of Modi's knowledge of "transfers by U.S. Affiliates of funds fraudulently received from the Debtors to foreign Modi-Controlled Entities" (the so-called "Subsequent Transfers"). (FAC ¶ 255). The paragraphs that the Trustee points to as examples of "solid factual allegations," (Opp. at 34), do not explain how the communications by Modi—some of which pre-date the alleged PNB Scheme—give rise to the inference that he knew certain funds had been fraudulently transferred. The Trustee's Opposition, moreover, ignores the absence of allegations in the FAC that could give rise to an inference that Modi participated in any of the Subsequent Transfers. (*See* Modi Br. at 32). Accordingly, the Trustee has not adequately alleged that Modi violated the NSPA.

## 2.    The Trustee Fails to Plead Money Laundering Violations Against Modi

The Trustee's money laundering claims fail because he does not plausibly allege that Modi conducted or attempted to conduct a financial transaction involving the proceeds of specified unlawful activity. *See* 18 U.S.C. §§ 1956, 1957; *see also United States v. Maher*, 108

F.3d 1513, 1527-28 (2d Cir. 1997); *United States v. Roy*, 375 F.3d 21, 24 (1st Cir. 2004) (stating

that the *actus reus* of a money laundering offense is the affirmative "conducting of (or attempted

conducting of) financial transactions involving the proceeds of unlawful activity").

Tellingly, the Trustee cites multiple paragraphs of the FAC that refer to Modi

only generally, without any allegation regarding Modi's affirmative involvement in conducting,

planning, or facilitating any transaction.  For example, the Trustee invokes paragraphs 174 and

175 to support his money laundering allegations.  (Opp. at 35).  Each of these paragraphs,

however, lists Modi only in its introductory recitals.  (FAC ¶¶ 174-75).  The itemized transfers

alleged in paragraph 175 of the FAC do not contain a single allegation that Modi participated in,

facilitated, or directed any of the transfers.  (*E.g.*, *id.* ¶ 175(vi) ("On May 6, 2013, FDI wired

$652,239 to FDII.  That same day, FDII wired $463,389 to Tri Color.  The next day, FDII wired

$280,005 to Empire.")).  In contrast, the relevant allegations describe how Bhansali and Gandhi

allegedly initiated, executed, or directly participated in the transfers—for example, by e-mailing

wire instructions and signing transaction documents, (*see, e.g.*, *id.* ¶ 175(iii)-(iv))—while

omitting any description of how Modi allegedly "orchestrated" these transactions.  Based on the

FAC, the "Court would . . .  need to infer the basic fact that [Modi] was involved in moving the

money," which it cannot and should not do.  *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 323

(S.D.N.Y. 2014).

Moreover, while the Trustee alleges that the transfers involved money derived

from specified unlawful activity, (FAC ¶ 267), he fails to plead that Modi actually knew tainted

money was involved.  *See, e.g.*, *Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 1:14-cv-3318, 2015

WL 2400182, at *8 (S.D.N.Y. 2015), *aff'd sub nom.* 640 F. App'x 56 (2d Cir. 2016).  The Court

cannot infer from paragraphs alleging only Modi's general involvement in alleged business

15

dealings, (*see* FAC ¶¶ 173-76), that he *knew* particular funds were derived from unlawful

activity.  The critical omission here is that the allegations relied on by the Trustee do not tie

Modi's alleged "participation and involvement in the fraudulent schemes," (Opp. at 35), to the

listed transactions with anything more than conclusory statements.

### 3.  The Trustee Fails to Plead Obstruction of Justice Against Modi

With respect to the predicate act of obstruction of justice, the FAC includes

allegations of document destruction and witness tampering by individuals supposedly acting at

Modi's behest, but no actions by Modi himself.  The Trustee further argues that it is enough to

trigger Modi's liability that, even before the petition was filed, a bankruptcy was reasonably

foreseeable; further, the Trustee contends that a bankruptcy examiner "should" constitute a

"judicial officer." (*Id.* at 35-38).  But the Trustee ignores Modi's core arguments.

*First*, the Trustee asserts that Modi's involvement in the alleged pre- and post-

petition obstructive behavior can be inferred from his allegation that Modi conspired with or

directed others to engage in obstructive conduct.  (*Id.* at 38; FAC ¶ 288).  The Trustee's

substantive obstruction allegations, however, describe specific acts performed by others.  (*See,

e.g.*, FAC ¶¶ 151, 164-70; 277-289).  Similarly, the allegations in paragraph 151 reveal that the

Trustee has hedged almost every allegation against Modi by alleging that acts were committed

by either Modi "or others operating at his behest" or direction.  (*Id.* ¶ 151 (vii)).  As argued in

Modi's opening brief, such conclusory allegations of knowledge or control are not sufficient.

*See Apex Maritime Co., Inc. v. OHM Enters., Inc.*, No. 10-cv-8119, 2011 WL 1226377, at *4

(S.D.N.Y. 2011) (holding that the "unadorned invocation of dominion and control is simply not

enough" to satisfy Rule 8(a)); (*see also* Modi Br. at 34).

*Second,* with respect to the Trustee's allegations of *pre-petition* conduct, he

cannot show the required nexus between Modi's conduct and the bankruptcy proceeding.  The

bankruptcy proceeding was not "pending," and the Trustee fails to explain how one could have

or should have been "anticipated." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 563 (S.D.N.Y. 2014).

This is not a situation where a "a grand jury proceeding was 'foreseeable' because the defendant

was aware 'that he was the target of an investigation.'" *United States v. Binday*, 804 F.3d 558,

590 (2d Cir. 2015) (quoting *United States v. Persico*, 645 F.3d 85, 108 (2d Cir. 2011)).  While

the FAC does allege that Modi and his co-Defendants took steps to thwart investigations prior to

the petition date, those allegations make clear that only *Indian* and *European* authorities were

conducting those probes.  (*See* Modi Br. at 34; FAC ¶¶ 151, 151(v)).[9]  The Trustee provides no

legal support for the novel theory that knowledge of a *foreign* governmental investigation makes

a *U.S.* bankruptcy proceeding reasonably foreseeable.

    *And third*, the Trustee cites no case to support his claim that a bankruptcy

examiner "should" constitute a "judicial officer" for purposes of obstruction of justice.  (Opp. at

35).  No court has held that a bankruptcy examiner is a "judicial officer" under the obstruction

statute.[10]  Indeed, in the context of discovery immunity, one court has held the opposite: that a

bankruptcy "examiner is not a judicial officer" and "is better analogized to a court-appointed

expert."  *See In re Adelphia Commc'ns Corp.*, 348 B.R. 99, 107-08 (Bankr. S.D.N.Y. 2006).

That is so because the "'examiner's findings have no binding effect on the court.'"  *Id.* at 107

n.19 (quoting *In re FiberMark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006)).

    Accordingly, the Trustee does not adequately plead obstruction of justice as a

predicate act.

---

[9] The Trustee's argument that "Section 1512 applies to conduct that occurs outside of the United States," (Opp. at 37), does not affect the analysis.  18 U.S.C. § 1512(h) merely extends the statute to obstructive conduct that occurs in a foreign country; it does not purport to apply to alleged obstruction of foreign investigations.

[10] The Trustee does not allege that Modi engaged in obstruction of justice following the appointment of the Trustee on June 14, 2018.

**D.      The Trustee's RICO Claims Against Modi Are Limited by the Applicable Statute of Limitations**

Modi moved to partially dismiss the RICO claims because much of the underlying conduct occurred beyond RICO's four-year statute of limitations.  The Trustee responds by asserting that two injuries are timely because they resulted from acts taken in the months leading up to and following the bankruptcy filing, and that the acts outside the four-year limitations period are still timely based on the adverse domination doctrine.  (Opp. at 39).  The former argument can be disregarded because Modi sought only *partial* dismissal of the RICO claims on statute of limitations grounds for that reason.  As for the latter argument, the Trustee has failed to demonstrate that Modi completely dominated the affairs of the Debtors to warrant application of the doctrine.

A plaintiff that "seeks to toll the statute on the basis of domination of a corporation has the burden of showing 'a full, complete and exclusive control in the directors or officers charged.'"  *United Fruit*, 373 F.2d at 414; *see also Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 447-48 (S.D.N.Y. 1998) (invoking the "complete domination" test).  As discussed in Section II above, the Trustee's allegations do not establish that Modi exercised complete, unilateral control over the Debtors.[11]  Accordingly, the adverse domination tolling doctrine does not apply and the Trustee's RICO claims should be partially dismissed as outside the statute of limitations.

**E.      The Trustee Fails to Plead a RICO Conspiracy Claim Against Modi**

To the extent the Trustee fails to plead a substantive RICO violation, the FAC also cannot state a claim for RICO conspiracy.  *See First Capital Asset Mgmt. v. Satinwood, Inc.*,

---

[11] The specific sections of the FAC that the Trustee cites as evidence of "exclusive" control, paragraphs 18, 61-91, and 188-94, describe nothing more than Modi's indirect ownership of the Debtors and "broad oversight."  These allegations do not demonstrate that Modi himself exercised complete domination and control.

385 F.3d 159, 182 (2d Cir. 2004).  Assuming *arguendo* that the Trustee has standing to assert a

RICO claim against Gandhi or Bhansali, the Trustee still must allege that Modi had more than

general knowledge of the alleged conspiracy.  *See Cofacredit, S.A. v. Windsor Plumbing Supply*

*Co., Inc.*, 187 F.3d 229, 244-45 (2d Cir. 1999) ("Cofacrèdit necessarily had to establish that the

. . . [defendants] agreed to commit two predicate acts in furtherance of a pattern of racketeering

activity . . . .").  Here, the FAC fails to identify the specific predicate acts to which Modi

knowingly and willfully agreed and, therefore, fails to state a viable RICO conspiracy claim.

## **CONCLUSION**

For the foregoing reasons and those set forth in Modi's opening brief, the Court

should dismiss or, at least, substantially narrow the claims against Modi.

Dated: New York, New York           Respectfully Submitted,
       January 27, 2020

By: */s/ Daniel S. Ruzumna*
PATTERSON BELKNAP WEBB & TYLER LLP
Daniel S. Ruzumna
Daniel A. Lowenthal
Alejandro H. Cruz
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222
*druzumna@pbwt.com*
*dalowenthal@pbwt.com*
*acruz@pbwt.com*

*Attorneys for Nirav Deepak Modi*