Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
Shruti Panchavati, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
sullivann@whiteandwilliams.com
*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br><br>FIRESTAR DIAMOND, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10509 (SHL)<br><br>(Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of<br>FIRESTAR DIAMOND, INC., FANTASY, INC.,<br>and OLD AJ, INC. f/k/a A. JAFFE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NIRAV DEEPAK MODI, MIHIR BHANSALI,<br>and AJAY GANDHI,<br><br>Defendants. | Adv. Proc. No. 19-01102-shl |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MIHIR BHANSALI'S MOTION FOR
<u>RULE 11 SANCTIONS OR TO STRIKE CERTAIN PLEADINGS</u>**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...............................................................................................1
PROCEDURAL HISTORY......................................................................................................2
ARGUMENT..............................................................................................................................5
    I.    THE TRUSTEE SHOULD BE SANCTIONED
         PURSUANT TO RULE 11....................................................................................5
        A.    The Relevant Law .......................................................................................5
        B.    Sanctions Are Warranted Because Allegations Are False, Unfounded, or
             Otherwise Intentionally Misleading............................................................6
            i.    Allegations Regarding Source of Funds for Apartment Purchase ...................6
            ii.    Claims Surrounding the M.R. Family Trust......................................................8
            iii.    Claims Surrounding the Purvi Mehta Wire........................................................9
            iv.    Allegations Regarding Threats to Kill, Destruction of Evidence, and Give
                False Testimony ...............................................................................................9
    II.   IN THE ALTERNATIVE, THE ALLEGATIONS SHOULD BE STRICKEN .........11
    III.  CONCLUSION...................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abner Realty, Inc. v. Adm'r of Gen. Servo Admin.*,
　1998 U.S. Dist. LEXIS 11042 (S.D.N.Y. 1998) ................................................................. 6, 9

*Benthos Master Fund, Ltd. v. Etra*,
　2019 U.S. Dist. LEXIS 104492 (S.D.N.Y. June 20, 2019) ...................................................... 5

*In re September 11th Liab. Ins. Coverage Cases*,
　243 F.R.D. 114 (S.D.N.Y. 2007) ........................................................................................... 5

*Saltz v. City of NY*,
　129 F.Supp.2d 642 (S.D.N.Y. 2001) ................................................................................. 5, 9

*Shetiwy v. Midland Credit Mgmt.*,
　2014 U.S. Dist. LEXIS 104244 (S.D.N.Y. July 28, 2014) ...................................................... 5

**STATUTES**

Racketeer Influenced and Corrupt Organizations Act ................................................................. 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(b) ............................................................................................................ 5, 6

Fed. R. Civ. P. 12(f) ............................................................................................................... 10

Defendant Mihir Bhansali ("Mr. Bhansali"), by and through his undersigned attorneys, White and Williams LLP, respectfully submits this Memorandum of Law in support of his Motion for Rule 11 Sanctions against the Plaintiff, Richard Levin, as Chapter 11 Trustee of Firestar Diamond, Inc. Fantasy, Inc., and Old AJ, Inc., f/k/a A. Jaffe, Inc. (the "Trustee") or, in the alternative, to strike certain allegations made in the First Amended Adversary Complaint, dated September 20, 2019, in this proceeding (the "FAC").

## PRELIMINARY STATEMENT

In this adversary proceeding, the Trustee has alleged that Mr. Bhansali was a participant in a wide-ranging, fraudulent, scheme involving a group of non-debtor entities that led to substantial losses to certain creditors of the Debtors, who in turn asserted claims against the bankruptcy estate. In the Amended Complaint, the Trustee has asserted claims against Mr. Bhansali and others sounding in breach of fiduciary duty, corporate waste, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Amended Complaint is the second iteration of the Trustee's claims against Mr. Bhansali. The original complaint was filed in March 2019, and after Mr. Bhansali moved to dismiss that complaint, the Trustee sought and received various extensions of time in which to respond, before finally serving an Amended Complaint. To overcome the clear pleading deficiencies in the original complaint, the Amended Complaint relies heavily on a number of salacious and demonstrably false allegations all of which implicate Mr. Bhansali in serious wrongdoing – including not only breaches of his fiduciary duty, but also extortion, bribery, destruction of evidence and threats of murder. Many of these allegations are contradicted – if not entirely refuted – by substantial evidence that clearly was available to the Trustee when preparing the Amended Complaint.

Given the seriousness of these frivolous allegations, counsel for Mr. Bhansali sent a letter to the Trustee's counsel informing him that these allegations were without basis and setting forth

in considerable detail the reasons why, including by pointing to uncontested evidence that demonstrated this. As a result, Mr. Bhansali requested that they be withdrawn to avoid a motion for Rule 11 sanctions. The Trustee refused to do so.

Now, Mr. Bhansali seeks imposition of Rule 11 sanctions against the Trustee for making demonstratively false and baseless allegations or, in the alternative, an order striking these allegations. It is well established that the purpose of a pleading is to put the defendants on notice of the allegations against them. It is equally well established that any such allegations must be made in good faith and be supported by a basis in fact, and that it is wholly improper to make allegations for an ulterior motive, such as harassment or putting undue pressure on the party. By making the challenged allegations, the Trustee has violated these well-established tenets of law. As set forth in detail below, the Trustee has made a number of allegations that lack any semblance of factual support that appear intended only to inflict maximum harm on Mr. Bhansali. While these serious defects in his pleading were brought to his attention, the Trustee has steadfastly refused to alter the Amended Complaint in any fashion and pointedly refused to withdraw or alter the allegations at issue. Under these circumstances, Rule 11 sanctions, are entirely warranted.

Should the Court determine that Rule 11 sanctions are not appropriate, the less drastic remedy of striking the relevant pleadings should be granted. It is well established that Courts have broad discretion to strike salacious and scandalous allegations from a pleading, particularly where it is apparent that they are intended only to inflict such harm. Such is the case here.

For the reasons stated herein and discussed in detail below, the Motion should be granted.

## PROCEDURAL HISTORY

In his original Complaint, filed on or about March 27, 2019, the Trustee asserted claims against Mr. Bhansali and two other individual defendants, Nirav Modi ("Modi") and Ajay Gandhi ("Gandhi") (collectively, "Defendants"), arising from what the Trustee alleged was a pattern of

fraudulent activity involving a number of non-debtor entities and directed primarily toward a third-party, Punjab National Bank ("PNB"). Declaration of Nicole A. Sullivan, dated March 27, 2020 ("Sullivan Decl.") ¶ 2, Ex. A.

On or about May 25, 2019, Mr. Bhansali and Gandhi each moved to dismiss the Complaint on various grounds, including untimeliness, lack of standing, and failure to state a cognizable claim. Sullivan Decl. ¶ 3, Ex. B. Over the course of the next few months, the Trustee sought and obtained various extensions of time to respond to that motion, but ultimately, the Trustee did not respond to the motion at all. *Id*. Rather, on September 20, 2019, the Trustee filed the Amended Complaint, in which the Trustee attempted to expound upon the earlier allegations. Sullivan Decl. ¶ 4, Ex. C (previously, "FAC").

Among the new allegations included in the Amended Complaint were a number of claims that were entirely refuted by documents in the possession of the Trustee or otherwise were based upon allegations that had been discredited in related litigation arising from the purported fraud. In particular:

- The Amended Complaint alleged that "[o]n March 22, 2017, Bhansali and his wife purchased Apartment 24A at 50 Riverside Boulevard in New York City for approximately $7.1 million, of which approximately $5.3 million was paid in cash." Without further basis, the Amended Complaint also alleged that "[u]pon information and belief, this apartment was purchased using proceeds of the [PNB] Bank Fraud." (FAC ¶¶ 138, 140);

- The Amended Complaint alleged that "[u]pon information and belief, the M.R. Family Trust received INR 32.83 crore (approximately $4.57 million) from DRUS [Diamonds 'R' Us] in fiscal year 2011-2012." (FAC ¶¶ 129-130);

-3-

- The Amended Complaint alleged that "[o]n February 24, 2017, Purvi Mehta wired $1,500,000 to Mihir Bhansali's personal checking account at HSBC." (FAC ¶ 137);

- The Amended Complaint alleged, in conclusory fashion, that Nehal Modi and others at Mr. Bhansali's direction "threatened to kill or falsely implicate Ashish Lad, a director of Unity, if he revealed anything to the investigative authorities."; "destroyed cell phones of Shadow Entity Directors"; "removed 150 boxes of pearls"; and "bribed Anish Lad INR 2,000,000 (approximately $28,000) to give false testimony to judicial authorities in Europe)." (FAC ¶ 151).

Once again, none of the aforementioned allegations had any basis in fact. Indeed, many were refuted by the relevant documents, or otherwise appeared to have been the product of conflating evidence against unrelated parties with Mr. Bhansali in an effort to taint him based on allegations that had been asserted against others.

In light of the seriousness and salaciousness of the aforementioned allegations and their falsity, Mr. Bhansali's counsel sent a letter to counsel for the Trustee outlining the specific allegations and substantial evidence refuting the allegations and requesting that the allegations be withdrawn. Sullivan Decl. ¶ 5, Ex. D. On or about December 2, 2019, the Trustee wrote back to Mr. Bhansali's counsel. Sullivan Decl. ¶ 6, Ex. E. The Trustee refused the request that the allegations be withdrawn. *Id.* In his three-page letter, counsel attempted to provide a "rationale" for each one of the allegations. *Id.* Such rationale were only notable for the leaps in logic that the Trustee took in an effort to preserve these allegations. On February 20, 2020, Mr. Bhansali's counsel sent an email to counsel for the Trustee inquiring if the Trustee had reconsidered his position and was willing to withdraw any of the sanctionable allegations, which counsel responded

-4-

it was unlikely the Trustee would change his position. Sullivan Decl. ¶ 7 Ex. F. This Motion followed.

## ARGUMENT

## THE TRUSTEE SHOULD BE SANCTIONED PURSUANT TO RULE 11

**A.     The Relevant Law**

Rule 11(b) of the Federal Rules of Civil Procedure imposes an obligation on counsel to make an "inquiry reasonable under the circumstances" prior to filing, and present only factual allegations that "have evidentiary support or… will likely have evidentiary support." It also mandates that a party not file claims "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  It is well established that "[a] baseless factual contention poses a greater threat to justice than a baseless legal contention" and, as such, submission of claims "utterly lacking support" is improper and sanctionable under Rule 11. *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y. 2007); *see also Shetiwy v. Midland Credit Mgmt.,* 2014 U.S. Dist. LEXIS 104244, at *9 (S.D.N.Y. July 28, 2014) (finding that Rule 11 was violated where attorneys "fail[ed] to ensure a factual basis for each of their allegations"); *Saltz v. City of NY*, 129 F.Supp.2d 642, 646-47 (S.D.N.Y. 2001) (awarding sanctions where counsel failed to investigate client's claims for a year before filing and pursued them despite lack of evidentiary support). It is equally well established that sanctions under Rule 11(c) are warranted for "false, misleading, improper, or frivolous representations to the court." *Benthos Master Fund, Ltd. v. Etra*, 2019 U.S. Dist. LEXIS 104492 at *11 (S.D.N.Y. June 20, 2019).

**B.     Sanctions Are Warranted Because Certain Allegations Are
False, Unfounded, or Otherwise Intentionally Misleading**

The record suggests that the Trustee has categorically failed to comply with his duties under Rule 11 to make "an inquiry reasonable under the circumstances," to verify that "the factual contentions have or… will likely have evidentiary support," and refrain from filing "for any improper purpose." Fed. R. Civ. P. 11(b)(3). The failure to make a reasonable inquiry to determine the inaccuracies gives rise to an inference of an improper purpose. *See Abner Realty, Inc. v. Adm'r of Gen. Servo Admin.,* 1998 U.S. Dist. LEXIS 11042, at 3-8 (S.D.N.Y. 1998) (failing to make a reasonable inquiry, including conducting basic research that would have revealed the inaccuracies, gave rise to the inference that the action was filed for improper purposes). As set forth below, any reasonable inquiry would have revealed that at least several allegations were patently false or entirely unsupported or were put forth in a manner that rendered them deliberately misleading. And the procedural circumstances herein would suggest that the Trustee knowingly put forth such allegations in an effort to harass, harang, and pressure Mr. Bhansali.

### i.     Allegations Regarding Source of Funds for Apartment Purchase

Once again, the Amended Complaint states, without basis, that an apartment owned by Mr. Bhansali and his wife, Rakhi Bhanslai ("Rakhi") in New York City was purchased using proceeds of the "PNB Bank Fraud." FAC ¶¶ 138-139. The identical allegation was raised by the Indian authorities in a proceeding currently pending before the adjudicating authority under the Prevention of Money Laundering Act, 2002, in Mumbai, India. Sullivan Decl. ¶ 8, Ex. G. In that proceeding, these allegations were contested by Rakhi, who submitted incontrovertible proof demonstrating that the apartment was not purchased with any funds relating in any way to misconduct alleged by the Trustee in the Amended Complaint or, for that matter, relating in any way to Mr. Bhansali's role at Firestar. On the contrary, the funds came from Rakhi's family.

-6-

***The Indian authorities never contested the evidence submitted by Rakhi.*** Instead, following the submission of detailed evidence that the funds for the purchase of the apartment came from Rakhi's family, the Indian government effectively abandoned the claim that the apartment was purchased with proceeds of the fraud. Instead, in their reply to the proof submitted by Rakhi's attorneys, the Indian authorities altered their theory of the case, arguing that they had the right to seize the apartment as some form of "substitute proceeds," because of their inability to find and freeze any proceeds of the fraud. This is evidenced by their reply submission, a copy of which is attached to the Sullivan Decl. ¶ 9, Ex. H. Thus, by continuing to assert the claim that the apartment was purchased with proceeds of the alleged fraud, the Trustee perpetuates a claim that was abandoned by the party that originally made it.

The Trustee's response to Mr. Bhansali's claim that this allegation was frivolous actually illustrates further that it is. First, the Trustee points to the fact that he had provided a draft of the Amended Complaint before it was filed as somehow excusing him from the consequences of the frivolous pleadings. We have uncovered no support for such assertion. Indeed, the provision of draft containing false and inflammatory allegations prior to filing actually suggests an ulterior motive – a thinly veiled threat to besmirch Mr. Bhansali's reputation through such allegations unless he agreed to settle the case ion terms acceptable to the Trustee. The Trustee also takes issue with the characterization of the Indian authorities' response, claiming that, in fact, the Indian authorities had not abandoned this claim but rather "the Enforcement Directorate chose not to trace the purchase money because there was no need to, not because of anything [Rakhi] submitted." Sullivan Decl. ¶ 6, Ex. E. This argument fails to address why the Enforcement Directorate originally sought to "trace the proceeds" but only abandoned that effort in the face of evidence it could not counter. But most notably, the Trustee pointed to no basis other than the Indian

-7-

proceedings to support this allegation. The Trustee's persistence in asserting discredited allegations is sanctionable.

### ii. Claims Surrounding the M.R. Family Trust

Likewise, the Trustee has asserted, and continues to stand by, the frivolous claim that the so-called M.R. Family Trust received approximately $4,570,000 from Diamonds 'R' Us during fiscal year 2011-2012 for the benefit of Mr. Bhansali and his family. (FAC ¶ 129-130). The Amended Complaint fails to provide any substantiation for that allegation. Nor could it. In fact, M.R. Family Trust's bank statements for the period of May 31, 2007 through March 31, 2018, conclusively establish that there was never any $4.57 million transfer to the M.R. Family Trust account at any time between 2011 and 2012. Sullivan Decl. ¶ 10, Ex. I. On the contrary, the only amount deposited in the trust between 2007 and 2018 was INR 150,000 – approximately $2,107. *Id*. It would appear that the Trustee has improperly assumed that monies that DRUS allocated were actually paid to Mr. Bhansali. While DRUS records indicate that this amount had been so allocated, as a result of the DRUS bankruptcy proceedings, the $4,570,000 reflected as "owed" to Mr. Bhansali was never paid to Mr. Bhansali or his family.

Once again, the Trustee largely sidesteps this conclusive evidence. While he claimed that it was "objectively reasonable" to have made the allegation, given the existence of a spreadsheet indicating that the transfer had been made, his only response to the proof that it was not is his assertion that "the M.R. Trust could easily have other bank accounts or the funds could have been transferred to a third party for the benefit of the M.R. trust or Bhansali family." Sullivan Decl. ¶ 6, Ex. E. Such rank speculation is insufficient in the face of clear evidence to the contrary. And, of course, the Trustee offered no explanation for why, had there been an actual transfer, these funds would not have been transferred to the relevant account. That is because no such explanation

actually exists. The Trustee's insistence on pursuing a demonstrably false claim suggests an improper ulterior motive and should be sanctioned.

### iii. Claims Surrounding the Purvi Mehta Wire

The Trustee also makes allegations regarding the receipt of funds into Mr. Bhansali's personal checking account that purportedly demonstrate diversion of such funds for his benefit. FAC ¶ 137. Once again, however, the Amended Complaint is deliberately misleading on this issue insofar as it neglects to mention that this sum was a loan to Mr. Bhansali, which was in fact repaid – together with substantial interest – on October 2, 2017. This is clearly reflected in Mr. Bhansali's HSBC bank statement for the period September 30, 2017 to October 31, 2017. Sullivan Decl. ¶ 11, Ex. J. That this loan was repaid by Mr. Bhansali surely should have been ascertainable from whatever source had initially led the Trustee and his counsel to determine that there had been an initial $1.5 million loan here and the Trustee in his responsive letter acknowledges that it had been. Sullivan Decl. ¶ 6, Ex. E. The Trustee's allegation and attempt to claim that this was a diversion of funds rather than a loan properly made and paid back with interest is again a frivolous allegation.

### iv. Allegations Regarding Extortion, Bribery, Threats to Kill, and Destruction of Evidence

Most shockingly, the Trustee asserts, in conclusory fashion, incendiary allegations that, at Mr. Bhansali's direction, other parties threatened to murder or falsely implicate witnesses to the alleged wrongdoing; destroyed cell phones of "Shadow Entity" directors (and therefore destroyed pertinent evidence); removed valuable boxes of pearls; and bribed one other party to provide false testimony to judicial authorities in Europe. FAC ¶ 151. Clearly, allegations of complicity in threats of murder, extortion, bribery, and destruction of evidence are among the most insidious allegations included in the Amended Complaint and among the most insidious allegations that one could imagine. Such allegations, however, are without any basis whatsoever in fact. Included in the

factual record from investigations conducted overseas is evidence about such threats that implicate Defendant Modi, but not Mr. Bhansali. Sullivan Decl. ¶ 12, Ex. K. Indeed, none of the witness statements that were provided to authorities in India, which the Trustee appears to have access to and which appear to have formed the basis for this allegation, suggests that Mr. Bhansali participated directly or indirectly in any of this conduct. *Id*.

Once again, the Trustee proffered no basis for including Mr. Bhansali in these allegations. Despite the extraordinarily serious and damning nature of these allegations and the incredibly profound potential implications for Mr. Bhansali, no factual support was articulated for these claims other than the Trustee's purported "information and belief." Notably, that factual allegations are "identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances." *Saltz v. City of NY*, 129 F.Supp.2d 642, 646 (S.D.N.Y. 2001). Nor does the fact that the allegations "assert only 'direction or coordination,' . . . or assert the involvement of others," alter the frivolity of these allegations. On the contrary, it would appear that the Trustee, lacking any basis for actually alleging that Mr. Bhansali participated in this conduct, nevertheless besmirch him with these allegations, while attempting to insulate himself from criticism by pointing to his various "qualifiers." But this behavior even more strongly suggest that there was an "improper purpose" in violation of Rule 11. *See Abner Realty, Inc. v. Adm'r of Gen. Servo Admin.,* 1998 U.S. Dist. LEXIS 11042, at 19 (S.D.N.Y. 1998) (noting that pleading egregious allegations without basis or inquiry must give rise to the inference that the allegations were made with an improper purpose).

All of these factors strongly suggest that the Trustee's goal in including these allegations was to increase the likelihood of additional legal problems for Mr. Bhansali or perhaps to cajole

-10-

or extort him into an unjust settlement (or at the very least to create a basis for continuing a Complaint that should never have been brought in the first place) rather than to further the legal claims alleged. This improper purpose is directly violative of Rule 11.

In short, the aforementioned allegations have no basis in fact whatsoever or are refuted by the pertinent evidence. The Trustee's insistence on making such assertions, and pointed refusal to abandon them upon their flaws being pointed out, suggests an ulterior motive. Under these circumstances, Rule 11 sanctions are appropriate.

## II.     IN THE ALTERNATIVE, THE ALLEGATIONS SHOULD BE STRICKEN

Should the Court choose not to grant Rule 11 sanctions, it should nevertheless embrace the lesser remedy of striking the allegations pursuant to Rule 12 of the Federal Rules. Rule 12(f) of the Federal Rules permits a party to "strike from pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matters." The Court has wide discretion in addressing a motion to strike. While the pleading must be viewed in a light most favorable to the pleader, such standard is relaxed where the allegations are truly scandalous. Moreover, courts will grant such motions where the challenged language bears no possible relation to the controversy or could cause prejudice.

Here, the Court should exercise its discretion and grant the Motion to Strike. As set forth in detail above, each of the challenged allegations either has no support or is in fact refuted by existing evidence that the Trustee has simply chosen to ignore. And these allegations certainly fit under the rubric "scandalous." Certainly, allegations of participation in a massive fraud; diversion of substantial funds to personal accounts; and participation in plots to murder; bribe; extort; or destroy evidence relating to other parties fit under the heading of "scandalous." Indeed, the potential prejudice for Mr. Bhansali is both clear and enormous. A representative of a government or other third party reading these publically available allegations would no doubt reach the

-11-

conclusion that Mr. Bhansali is a truly nefarious and heinous character, and the implications of such a conclusion are far-reaching and enormous. This is made all the more troublesome by the fact that the allegations have only the most tangential relationship to the issues before the Court. To the extent the Trustee wishes to pursue claims for breach of fiduciary duty, corporate waste, and related alleged wrongdoing, he is certainly free to do so. But attempting to destroy Mr. Bhansali's character in the meantime is unacceptable. The allegations should be stricken.

### III.  CONCLUSION

For the reasons set forth above, the Court should grant Rule 11 sanctions as a result of the frivolous allegations or, in the alternative, should issue an Order directing that the allegations be stricken from the Amended Complaint and such further relief as is just under the circumstances.

Dated:  New York, New York
        March 31, 2020

**WHITE AND WILLIAMS LLP**

*/s/ Nicole A. Sullivan*
Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
Shruti Panchavati, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
sullivann@whiteandwilliams.com
*Attorneys for Mihir Bhansali*