353 N. CLARK STREET CHICAGO, IL 60654-3456

JENNER&BLOCK LLP

December 2, 2019

**Via E-Mail**

Thomas E. Butler
White and Williams LLP
7 Times Square
Suite 2900
New York, NY 10036
butlert@whiteandwilliams.com

Vincent E. Lazar
Tel +1 312 923 2989
vlazar@jenner.com

Re:   *Levin v. Modi, et al.* (Adv. No. 19-1102) (Bankr. S.D.N.Y)

Dear Mr. Butler:

I write in response to your November 13, 2019 letter to my colleague, Carl Wedoff, in which you demand, based on Rule 11(b) of the Federal Rules of Civil Procedure, that our client Richard Levin, as Trustee (the "**Trustee**"), withdraw or correct his First Amended Complaint (Adv. Dkt. 28) (the "**Amended Complaint**") in Adv. No. 19-1102 (the "the **Adversary Case**") against your client Mihir Bhansali.[1]

We decline. In the course of investigating and alleging the facts set forth in the Amended Complaint, Jenner & Block LLP ("**Jenner & Block**") took its obligations under Rule 11(b) seriously. As described below, we implemented rigorous processes and safeguards designed to ensure adequate support for the allegations in the Amended Complaint. Your letter provides no evidence, and we have come across no evidence, that casts doubt on those allegations. While your letter fails to trigger the notice provision of Rule 11, as a courtesy, we are responding to your assertions now to help the parties move on to the merits. We do so without waiving any privileges or protections that may apply to our underlying work product.

**A.    The Rule 11 Standard**

Rule 11(b) provides that, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 11(b)(1), and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3).

---

[1] Your letter incorrectly identified Mr. Wedoff as the attorney who certified the Amended Complaint. As I signed the Amended Complaint, I will treat your letter as directed to me.

CHICAGO  LONDON  LOS ANGELES  NEW YORK  WASHINGTON, DC          WWW.JENNER.COM

To satisfy the requirements of Rule 11(b)(3), "[t]he inquiry need not be infallible but it must be objectively reasonable under the circumstances." *Elfoulki v. Brannons Sandwich Shop, LLC*, 2016 WL 3542458, at *2 (S.D.N.Y. June 22, 2016). "A fact assertion does not violate Rule 11(b)(3) if there was at least some support for it at the time the assertion was made, even if the support was weak or inferential. . . . In general, an assertion of fact is supported if there is some proof—direct or indirect—that can be marshaled in support of it." 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 1 (Feb. 2019 Update). Indeed, "parties and their attorneys are entitled to base their complaints on statements of witnesses, reports of their investigators and hearsay reports and statements of others until such time, if ever, as they are satisfied that the statements and other evidence are not competent or are otherwise untrustworthy." *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1934004, at *13 (S.D.N.Y. Aug. 21, 2002) (quoting *In re Air Disaster at Lockerbie, Scotland*, 144 F.R.D. 613, 617 (E.D.N.Y. 1992)) (alterations omitted); *see also Samuels v. Wilder*, 906 F.2d 272, 274 (7th Cir. 1990) ("Counsel must investigate, but need not have in hand before filing enough proof to establish the case."). Moreover, allegations made on information and belief "are generally not sanctionable unless it was objectively unreasonable to believe that they were 'likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]'" *Lan v. Time Warner, Inc.*, 2016 WL 6778180, at *8 (S.D.N.Y. Oct. 18, 2016)

As for the "improper purpose" prohibition under Rule 11(b)(1), the Second Circuit has endorsed the view that "'complaints are not filed for an improper purpose if they are non-frivolous.'" *Sussman v. Bank of Israel*, 56 F.3d 450, 458-59 (2d Cir. 1995) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

### B.    Jenner & Block's Rigorous Investigation

Prior to filing the Amended Complaint, Jenner & Block, with the assistance of the Trustee's financial advisors at Alvarez & Marsal Disputes & Investigations LLC ("**A&M**"), conducted a thorough investigation into the facts alleged in the Amended Complaint. As the Examiner's investigation was already underway when the Trustee was appointed in June 2018, the Trustee's investigation did not begin in earnest until the Trustee obtained access to the Examiner's discovery materials in or around January 2019.[2] For this reason, along with time constraints arising from Nirav Modi's arrest in England and potential extradition to India, the original complaint was based primarily on the contents of the Examiner's report.

From April to September 2019, Jenner & Block and A&M (which also served as the Examiner's financial advisor) spent hundreds of hours reviewing and analyzing many of the more than five million documents obtained from the debtors and third parties, conducting interviews of various witnesses, and monitoring developments in the myriad relevant foreign proceedings. As the Amended Complaint was being drafted, Jenner & Block and A&M memorialized factual support for each paragraph of the Amended Complaint. That support includes both primary evidence such as emails, bank statements, financial statements, shipping documentation, and invoices, and secondary materials such as interview memoranda, the Examiner's report, filings in the foreign proceedings, and various other secondary sources discussing the contents of foreign

---

[2] Unless otherwise defined, all capitalized terms in this letter shall have the meaning ascribed to them in the Amended Complaint.

2

materials to which the Trustee did not have direct access. Before being finalized, the allegations and their support were reviewed and approved by A&M. We also specifically reviewed the support for every allegation a final time to ensure that those allegations made "on information and belief" were likely to have evidentiary support after reasonable opportunity for further investigation, and satisfied ourselves that they were.

In addition, as you will recall, Jenner & Block sent drafts of the Amended Complaint to you and Mr. Gandhi's counsel for settlement purposes on September 10 and 13, 2018—more than a week prior to its filing on September 20, 2018. These drafts contained substantially all of the allegations referenced in your letter. During your telephone conference on September 16, 2018 with my colleague Angela Allen, you noted the seriousness of the Trustee's allegations and reminded him of our obligations under Rule 11. However, other than denying that Mr. Bhansali's apartment was purchased with proceeds of the fraud, you did not specifically deny any allegation nor submit evidence to rebut any of them.

C.  **Mr. Bhansali's Principal Assertions Lack Merit**

As we had a good-faith basis for each allegation in the Amended Complaint, we decline to undertake a point-by-point rebuttal of your letter, nor are we inclined to discuss every piece of evidence we relied upon. Even so, the specific concerns expressed in your letter are unfounded. *First*, your letter's characterizes the Trustee's allegation in paragraph 151 as "Nehal Modi and others, at Mr. Bhansali's direction" engaged in the misconduct alleged. That is not what paragraph 151 alleges. Rather it alleges various iterations of "Nirav Modi, or others operating at Modi or Bhansali's direction, . . ." Moreover, in addition to the overarching "information and belief" qualification in the prefatory language of paragraph 151, all allegations of particular instances of misconduct by Mr. Bhansali, other than in subparagraph (i), which you do not question, are further qualified in whole or in part as being on information and belief (subparagraphs (ii), (iii), (iv), and (v)). And the allegations assert only "direction *or* coordination," assert the involvement of others, or quote witnesses or other direct evidence.

Moreover, your statement that "[n]or have we come across any evidence imputing such threats to Mr. Bhansali" is contradicted by the Enforcement Directorate's reply attached to your letter, which alleges, among other things: "After the scam broke out, he [Bhansali] along with Mr. Nehal Modi visited Dubai and tried their best by way of creating fear of agencies/inducement/threatening in the minds of Directors/owners of shadow entities to discourage them from joining the investigation."

*Second*, nothing we have reviewed to date, including the materials attached to your letter, establishes that the 50 Riverside Boulevard apartment was not purchased using the proceeds of fraud. You assert that Ms. Bhansali submitted "incontrovertible proof" sufficient to cause the Indian authorities to "effectively concede" this issue, but despite the opportunity to provide any such proof before the Trustee filed the Amended Complaint or with your letter, you failed to do so. Moreover, the Enforcement Directorate explained in the reply on which you rely that Ms. Bhansali's arguments on this point were "completely misplaced and incorrect" and that "the said property was attached under 'value thereof' route, and therefore, there was no need to show that [proceeds of crime] ha[ve] been utilized in [the] purchase of said property.") In other words, the

3

Directorate chose not to trace the purchase money because there was no need to do so, not because of anything Ms. Bhansali submitted.

Relatedly, the Trustee's allegation that Purvi Mehta wired Mr. Bhansali $1,500,000 in February 2017 is not "misleading," as your letter asserts. Whether Mr. Bhansali repaid Ms. Mehta has nothing to do with whether the funds she wired in February 2017 constituted proceeds of fraud or whether those funds were used to purchase the apartment. And, in any event, we did consider the October 2, 2017 wire you reference, but it appeared to have been funded using the $2,132,902.56 in suspicious "deposits" and "special next day credits" Mr. Bhansali received on September 28, 2017, which easily could have represented fraudulent proceeds themselves. In addition, as alleged in paragraph 141 of the Amended Complaint, Ms. Mehta separately wired an additional $750,000 to Mr. Bhansali on June 29, 2017.

*Third*, as made clear in paragraph 68(iv) of the Amended Complaint, the Trustee's allegation concerning payments from DRUS to the M.R. Family Trust are based on the auto-saved version of a spreadsheet recovered from Mr. Bhansali's computer, which identifies a INR 32.83 crore "withdrawal" to "MR Family Trust" in fiscal year 2011-2012. Given this document, the Trustee's allegation that "[u]pon information and belief, the M.R. Family Trust received INR 32.83 crore (approximately $4.57 million) from DRUS in fiscal year 2011-212" was objectively reasonable. Nor does the bank statement attached to your letter disprove the Trustee's allegation. For example, the M.R. Trust could easily have other bank accounts or the funds could have been transferred to a third party for the benefit of the M.R. Trust or Bhansali family.

*Finally*, the complaint itself identifies the factual bases for the remaining allegations referenced in your letter. For example, the allegations in paragraphs 281 and 282 that Mr. Bhansali "corruptly endeavored to influence, obstruct, or impede" are based on the allegations in paragraphs 278, 279, and 280. Moreover, the allegation that Mr. Bhansali "flatly refused to cooperate" was taken verbatim from the Examiner's report. (*see* Dkt. 394 at 127.) Similarly, the allegations in paragraph 181 (oversight and control over NMI inventory) are based on, among other things, the allegations in paragraph 182 and paragraph 183. Paragraphs 181, 182 and 183 are further supported by, among other things, statements made during witness interviews conducted by the Trustee. Elsewhere, your letter conflates allegations of Mr. Bhansali's conduct with allegations of injuries sustained by the debtors as a result of such conduct. For example, paragraph 289 alleges the defendants' "violations … caused injury to each Debtor's property by, among other things … delaying the Trustee's appointment and impairing his ability to recover from U.S. Affiliates." This language describes the consequences of Mr. Bhansali's violations, not the conduct constituting such violations, and is well-supported by the evidentiary material the Trustee gathered.

4

### D. Conclusion

In short, we carefully investigated and vetted the facts alleged in the Amended Complaint. Our efforts and precautions fully satisfied Rule 11(b)'s requirements, and the resulting allegations in the complaint comply with the Rule's requirements.

Very truly yours,

Vincent E. Lazar