**BEFORE THE HON'BLE APPELLATE TRIBUNAL, PMLA, NEW DELHI**

FPA-PMLA-3021/MUM/2019

IN

OC NO. 1050/2018 IN P.A.O. 17/2018 DATED 05.10.2018

**IN THE MATTER OF:**

Mrs. Rakhi Bhansali                                                                 ...Appellant

**V/s**

The Deputy Director,

Directorate of Enforcement                                              ...Respondent

**REPLY FOR AND ON BEHALF OF RESPONDENT TO THE APPEAL FILED BY MRS. RAKHI BHANSALI IN ORIGINAL COMPLAINT NO. 1050 OF 2018.**

**MOST RESPECTFULLY SHOWETH:-**

1. That the Respondent (Complainant in OC no. 1050/2018) has read and understood the contents of the appeal filed by Mrs. Rakhi Bhansali and it is hereby submitted at the outset that the averments/allegations and submissions made by the Appellant are denied save and except to the extent specifically admitted hereinafter or being matter of record. The Respondent reiterates and relies upon the contents of OC no. 1050/2018 filed by the Complainant and the same are reiterated in context of this appeal.

2. That the present appeal filed by Mrs. Rakhi Bhansali is completely erroneous and misconceived both in facts as well as law and completely devoid of merits. It deserves to be rejected at threshold for being mischievous, half baked and ignorant of the principles of law.

3. It is submitted that the properties attached vide PAO no. 17/2018 have been attached under the *value thereof* route u/s 2 (1)(u) of PMLA, 2002. The Hon'ble Tribunal may appreciate that the persons accused of money

laundering i.e. Sh. Nirav Modi and others, have very cleverly and cunningly siphoned off the proceeds of crime abroad, for their wrongful gain and enrichment. In this case, as the proceeds of crime or the properties derived/obtained from such proceeds, more specifically by Sh. Mihir Bhansali, were not available for attachment, the property in PAO no. 17/2018 has been attached representing the value of such proceeds siphoned abroad.

**Brief Facts**

(i) During the course of investigation in the said ECIR, it was revealed that Sh. Mihir Bhansali was de facto authority number 2 to Sh. Nirav Modi in the entire controlling system and was actively involved in the diversion and laundering of the funds received from PNB LOUs. In his statement dated 15.06.2018 recorded us/ 50 (2) &. (3) of PMLA 2002, Shri Shailesh Chautala, Ex Manager of Firestar International Pvt. Limited, inter-alia stated that, Mihir Bhansali asked him to arrange 6-7 people for "Jokham" work in SACHIN Surat on salary of about 10-12 Thousand INR; "Jokham" means transferring , counting, weighing etc. of Diamonds/Gold as per the wish of company; He ( Shailesh Chotala) was not told about the name of company in which these people are going to be appointed; For this salary, he could not arrange any sufficiently educated person; He had communicated the same to Mihir Bhansali; Mihir told him (Shailesh Chotala) that any type of people will be suffice provided they should have ID proofs; These 6 persons arranged by Mr. Shailesh Chotala were made the partners in the firms M/s Solar Exports, M/s Stellar Diamonds and M/s Diamond R US. On the name of these

three firms fraudulent LOUs were issued and money was siphoned off from the Punjab National bank.

(ii) Mihir Bhansali was instrumental in setting up the scheme of transferring and layering of funds generated from the fraudulent LOUs. With his active involvement several dummy companies were formed all over the world including Dubai and Hong Kong to camouflage the real transactions. Mr. Mihir Bhansali also formed the necessary façade of overseas companies for layering the proceeds of crime generated from the fraudulent LOUs issued. He also appointed the employees/ex-employees as dummy directors in these companies. He ensured that the directors should be trust worthy and in the words of Shri Himanshu Trivedi, Ex-Director of Firestar Group "who do not apply much brain". A secure internal email communication system was also developed at his instance and its server was deliberately kept in Dubai for any eventuality. Apart from fund transfer and setting of shadow entities, he was actively involved in rotation of goods, melting of precious metal extracted from dismantling of jewelry and low-quality jewelry, production/export-import with artificially high value declaration. In their statements, Mr. Kurian Mathews (General Manager, Accounts of Firestar Diamond FZE), Mr. Saju Paulose (General Manager, Accounts, Firestar Diamond Pvt Limited), Mr. Satyendra Shukla General Manager of Firestar Diamond FZE), Mr. Shyamsunder Wadhwa (Vice President, Firestar Group) and more than 10 Dummy Directors of shadow entities based in Hongkong and Dubai confirmed the above role of Mr. Mihir Bhansali in formation of

shadow entities, fund movement and other affairs of Nirav Modi controlled shadow entities.

(iii) Mihir Bhansali is the director in many USA companies including Nirav Modi INC, Firestar Diamond International Inc., Synergies Corporation, A. Jaffe, AVD Trading Inc. Firestar Group Inc. Firestar Diamond Inc. Fantasy Inc, Sandberg & Sikorski Corporation, Central Park Real Estate LLC, Firestar Group Inc, Firestar Fine jewelry Inc, Firestar jewelry Inc. Firestone Inc& Twin Field Investment Amongst others.

(iv) According to the Report of John J. Carney, Examiner appointed by the United States Bankruptcy Court Southern District of New York in bankruptcy case filed by Firestar Group of Companies USA, Mihir Bhansali is associated with and the Director of Twin Fields Investments Limited. The report further confirmed the diversion of funds to the tune of USD 26.9 Million to Twin Fields Investment Limited from Fine Classic FZE. M/s Fine Classic FZE is a Dubai Based company owned/controlled by Ms. Purvi Modi which received monies from Dubai and Hong Kong based beneficiaries of fraudulent LOUs in guise of trade outstanding. This fact is also corroborated in the statement recorded u/s 50 (2) & (3) of PMLA, 2002 of Mr. Nilesh Mistry (Accountant of Fine Classic FZE, UAE) dated 30.06.18 that USD 50 Million was diverted to Twin Fields Investments Limited from Fine Classic FZE. During the investigation, Bank statement of account of Fine Classic FZE (a shell company owned by Purvi Modi) maintained in Emirates NBD Bank, has been obtained. The

sample entries pertaining to the transfer of Money to Twin Field Investments is as under:





(v) In his statement u/s 50 (2) & (3) of PMLA, Mr. Satyendra Shukla, General Manager of Firestar Diamond FZE stated that 50 Kg gold (Approximately worth INR 150 Million, USD 2.14 Million) was taken away by Nehal Modi and Mihir Bhansali in Feb-March 2018 from Firestar Diamond and jewelry FZCO. Mihir Bhansali also took 2,50,000 Dirham from the petty cash of Firestar Diamond FZE.

(vi) After the scam broke out, he along with Mr. Nehal Modi visited Dubai and tried their best by way of creating fear of agencies/inducement/threatening in the minds of Directors/owners of shadow entities to discourage them from joining the investigation.

(vii) After the initiation of investigation in India, he transferred the ownership of his immovable property as mentioned in para 10 to his wife's name for the consideration of merely 10 USD. This transfer of the ownership of immovable property was done with the intention to avoid the clutches of the US agencies or Indian Agencies on this property.

(viii) In view of the preceding paras, it is revealed that Mihir Bhansali was co-conspirator and beneficiary of the scam. Twin Fields Investments Limited in which he is the Director & benefitted from the scam to the tune of at least USD 50 Million. Mr. Mihir Bhansalialong with Mr. Nehal Modi had taken away proceeds of crime in form of the Gold having value USD 2.14 Million from the Dubai office of Firestar. He also took substantial amount of cash from Dubai Firestar office illegally.

(ix) It is pertinent to mention here that the cash and Gold taken away by Mihir Bhansali is the part of Proceeds of Crime as substantial amount of LOU funds were diverted to Firestar FZE in guise of circular or rotational transactions from Hong Kong and Dubai based beneficiaries. From Hong Kong based beneficiaries of LoUs, the amount to the tune approx. USD 550 Million was diverted to Firestar Diamond FZE and similarly, from Dubai Based beneficiaries of LoUs, atleast 30 Million USD was diverted to Firestar Diamond FZE. These facts were brought out in the statements of Shri Divyesh Gandhi, Accountant of Hong Kong based dummy companies and beneficiaries of LoUs and Mr. Kurian Mathews, Supervisor of Accounts of Firestar Diamond FZE and Dubai Based dummy companies and beneficiaries of LoUs.



4. During the course of investigation, at the stage of issuance of PAO, it was found that the Appellant Mrs. Rakhi Bhansali, the wife of Mr Mihir Bhansali was homemaker and her wealth appeared to have derived from her husband Mr. Mihir Bhansali. A snapshot of her declaration for opening the bank account no. 00011010014264 on her name in HDFC Bank, India is as under: -



6. During the course of investigation, it is revealed that the property in New York, USA (worth US$ 7.1 Million) had been purchased by Mr. Mihir Bhansali in USA on March 13, 2017. The property was initially purchased jointly in the name of Mihir Bhansali and Rakhi Bhansali. However, later, after the criminal case was registered, Mihir Bhansali transferred ownership to his wife Mrs. Rakhi Bhansali for nominal value US$ 10 only (w.e.f. 28, Feb, 2018)

7. As mentioned above, substantial amount of proceeds of crime has been transferred to Mihir Bhansali and his company in form of Gold, cash and transfer of funds which are not available for attachment directly. The property jointly owned by Mrs. Rakhi Mihir Bhansali and Mr. Mihir Bhansali, was transferred in the name of Mrs. Rakhi Mihir Bhansali right at the eve of the criminal case being registered against Nirav Modi, Mihir Bhansali and others. As the proceeds in this case had been siphoned off by the accused Sh. Mihir Bhansali and as this property was also being obfuscated by putting it in the name of the Appellant exclusively, Therefore, the said property was considered to be provisionally attached by way of the said impugned PAO representing the value of *proceeds of crime* in terms of its definition in Section 2 (1) (u) of PMLA, 2002 as 'the value of any such property'.

**Parawise reply to Grounds -**

1. There was no violation of principles of natural justice. The appellant was given with ample opportunity to present her case before the concerned authority, provided with all the necessary documents and

informed about the proceedings well in time. The due process as laid down by law has been followed and there was no deviation whatsoever which may remotely amount to violation of principles of natural justice.

2. It is stated here that even if the Respondent has multiple addresses, it is not mandatory to serve the copies of PAO on all of these addresses. The Cuffe Parade property at the address registered in India is still in the name of Mr. Mihir Bhansali/Ms. Rakhi Bhansali and serving of copies of PAO/OC at this address is adequate. Also the email attaching the PAO and Notice was forwarded to Mr. Mihir Bhansali on 13.12.2018 and the next date of hearing was intimated to Ms. Rakhi Bhansali on 01.02.2019.

3. In respect of recording of reasons to believe by the Respondent, it is submitted that the PAO was issued only after recording of reasons as postulated in Section 5 (1) of the Act. Further, the reasons for issuance of the PAO are recorded in the PAO itself and the language of the impugned PAO is self-explanatory to say the least. It is further submitted that though Section 5 postulates that the officer attaching the properties has to record 'reasons to believe', the Act nowhere envisages that such 'reasons to believe' are to be provided to the appellant to prove that the PAO has been issued on such reasons. Further, the reasons to believe are also part and parcel of PAO, a copy of which has been served on the Appellant. The Appellant's arguments on this ground are flawed from their conception as they proceed on the wrong assumption that firstly the property has been attached as proceeds of crime itself (whereas it has been attached under 'value thereof' route) and secondly that the

standard of proof applicable in criminal prosecutions will be applicable in adjudication proceedings as well.

4. The allegation of the appellant that no proof of generation of POC and its utilization in the said property has been submitted by the Respondent and allegations against Sh. Mihir Bhansali are wrong, is completely misplaced and incorrect. It is reiterated that the said property was attached under 'value thereof' route, and therefore, there was no need to show that PoC has been utilized in purchase of the said property. Furthermore, the appellant needs to meet the allegations made against Sh. Mihir Bhansali only before the Spl. Court, PMLA, during the trial and not at the stage of adjudication.

5. That it may be appreciated that the property provisionally attached by the Respondent was in the peril of being alienated/transferred/concealed by the accused as already admitted by the Appellant that the property was later transferred in her name by Sh. Mihir Bhansali in 28.02.2018. Furthermore, Sh. Mihir Bhansali has laundered substantial amount of PoC and is evading prosecution. In the event the Special Court convicts the accused persons, the Appellant can approach the Special Court u/s 8 (8) of the PMLA, 2002 for restoration of confiscated property. The appellant can even approach the Court for restoration of the property under second proviso to Section 8(8) *even during the pendency of the trial*, subject to her satisfying the Court that she had acted in good faith and suffered loss despite having taken all reasonable precautions and was not involved in money laundering.

6. The Hon'ble Tribunal may appreciate that the provisional attachment of properties by the Complainant is only to deprive the accused from enjoying the benefits of their criminal activity and to

preserve the proceeds of crime, for prosecution under PMLA, 2002. The claim of the appellant for restoration of property would lie only with the Special Court u/s 8 (8) of the Act. The PMLA does not deprive a legitimate claimant's right or interest in a property and u/s 8 (8), the appellant has the remedy to approach the Special court for restoration of the attached properties. In this regard, the observations of the Hon'ble Delhi High Court, in its judgment dated 02.04.2019, in 'DD, Directorate of Enforcement vs. Axis Bank and Ors.', Crl. Appeal no. 143/2018, assume significance –

"....

*158. A hypothecatee or a mortgagee, thus, has a limited interest in the property, the right restricted to have the debt realized by putting the hypothecated goods or mortgaged property to sale. There is no ownership, or right to possess, vesting in either. At the same time, it must be added that the charge or encumbrance of a third party in a property attached under PMLA can be treated as "void" if there is material to show that it had been created "to defeat" the law, such declaration rendering the property liable to attachment and confiscation in favour of the Government vesting it "free from all encumbrances".*

*...*

*169. In view of above-noted legislative scheme, it must be clarified that if the order confirming the attachment has attained finality, or if the order of confiscation has been passed or, further if the trial of a case for the offence under Section 4 PMLA has commenced, the claim of a party asserting to have acted bonafide or having legitimate interest will have to be inquired into and adjudicated upon only by the special court.*

*170. But, the above exception cannot be applied to all cases of bona fide third party claimants so as to confer a general right to seek release of such property as last mentioned above from attachment even in cases where the encumbrance is created or interest acquired at a time around or after the date or period of criminal activity. In this category of cases, the third party will have the additional burden to prove that it had exercised due diligence having "taken all reasonable precautions" at the time of acquisition of such interest or creation of such charge, the jurisdiction to entertain and inquire into such claim and grant relief of release after order of attachment has attainted finality, or of restoration after order of confiscation, vesting only in the special court under Section 8(7) & (8) PMLA. The due diligence is to be tested amongst others, on the touchstone of questions as to whether the party had indulged in transaction after due inquiry about untainted status of the asset or legitimacy of its acquisition."*

7. It may further be appreciated that Money-laundering, while apparently comprising of one or more apparently clear and simple financial transactions or dealings with property, in reality involves a complex web of transactions that are processed through three stages— the placement, layering and integration stage. When laundering operations are pursued across State boundaries, flows of funds would involve several routes. The investigation qua such complex web of transactions involves high degree of effective and meticulous examination of large and dense volume of records. Where proceeds of crime are layered through plural transactions, the intent to camouflage the source of the property as a derivative of

criminality renders it difficult to identify the succeeding transactions as relatable to the initial proceeds of crime. It is for this reason and to effectuate the purposes of the Act that Section 23 incorporates the presumption that where money-laundering involves two or more connected transactions and one or more such transactions is/are proved to be involved in money-laundering, then for the purposes of adjudication or confiscation under Section 8, it shall, unless otherwise proved to the satisfaction of the adjudicating authority, be presumed that the remaining transactions form part of such interconnected transactions *i.e.,* involved in money-laundering as well. In view of the other transactions which prima facie show money laundering, all the connected transactions also fall in the realm of money laundering by virtue of presumption u/s 23 of PMLA,2002.

8. The investigation conducted so far has revealed that the funds have been transferred overseas for settlement of LOUs obtained earlier by the said entities and also for making payment to alleged overseas suppliers. Shri Nirav Modi and his associates, including Sh. Mihir Bhansali, husband of Appellant have not co-operated with the investigation at all as they have not appeared before the IO despite of summons being issued to them under the provisions of the PMLA, 2002.

9. That the present Appeal is devoid of law and merits and deserves to be dismissed at the very threshold for reasons elucidated in the preceding paragraphs.

## **PRAYER**

In the facts and circumstances stated hereinabove, it is most humbly prayed that this Appellate Tribunal may graciously be pleased to-:

(a) Dismiss the instant appeal bearing no.FPA-PMLA-3021/MUM/2019 and consequently confirm the Provisional Attachment Order No. 17/2018 dated 05.10.2018 in ECIR/MBZO-I/03/2018.

(b) Pass such and further orders as deemed fit and proper in the light of the above facts and circumstances.

DEPUTY DIRECTOR
DIRECTORATE OF ENFORCEMENT
MUMBAIL ZONAL OFFICE-1
(RESPONDENT)

THROUGH

MOHAMMAD FARAZ
ADVOCATE
B-11, LOWER GROUND FLOOR
NIZAMUDDIN WEST
NEW DELHI-110013
MOBILE:- +91-9910465908
