Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
WHITE AND WILLIAMS LLP
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-714-3070
Fax: 212-631-4431
butlert@whiteandwilliams.com
*Attorneys for Mihir Bhansali*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., et al., | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |
| RICHARD LEVIN, Chapter 11 Trustee of FIRESTAR DIAMOND, INC., FANTASY, INC., and OLD AJ, INC. f/k/a A. JAFFE, INC., | Adv. Proc. No. 19-01102-shl |
| Plaintiff, | |
| v. | |
| NIRAV DEEPAK MODI, MIHIR BHANSALI, and AJAY GANDHI, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW OF DEFENDANT MIHIR BHANSALI
IN FURTHER SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11 OR,
ALTERNATIVELY, TO STRIKE CERTAIN PLEADINGS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................ 3

    A.    Sanctions are Warranted Because the Trustee Has Failed to Show that the Challenged Allegations are Objectively Reasonable ................................................................. 3

    B.    The Allegations About the Use of Funds From the Bank Fraud to Purchase the Apartment Are Not Objectively Reasonable ............................................................. 5

        1..... It is Not Objectively Reasonable for the Trustee to Rely on Allegations in Another Pleading He Himself Drafted to Support the Challenged Allegations in the Amended Complaint ................................................................................................... 6

        2 ......... The Enforcement Directorate's Abandonment of the Same Allegation Shows the Trustee's Allegation Was Objectively Unreasonable ................................................ 9

    C.    Allegations Regarding M.R. Family Trust are Objectively Unreasonable  Because the Bank Records Wholly Contradict the Trustee's Rank Speculation ......................................... 11

    D.    Allegations Surrounding Extortion, Bribery, Threats to Kill and Destruction of Evidence are Unsupported ........................................................................... 12

    E.    Sanctions are Appropriate Because the Trustee Failed to Demonstrate that Any Adequate Pre-Filing Investigation Was Conducted ............................................... 15

    F.    Regardless of Whether the Court Awards Sanctions, the Challenged Allegations Should be Stricken ............................................................................................... 17

CONCLUSION ..................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*,
  2007 U.S. Dist. LEXIS 42639 (S.D.N.Y. June 7, 2007)..........................................23

*Bletas v. Deluca*,
  2011 U.S. Dist. 133132 (S.D.N.Y. Nov. 14, 2011) ..........................................9, 16

*Bletas v. Deluca*,
  2011 U.S. Dist. LEXIS 133132 (S.D.N.Y. Nov. 14, 2011)..........................8, 17, 18

*Burger v. Health Ins. Plan*,
  684 F. Supp. 46 (S.D.N.Y. 1988) ...........................................................22

*Cabble v. Rolleison*,
  2006 U.S. Dist. LEXIS 7385 (S.D.N.Y. Feb. 24, 2006)..........................................22

*Calloway v. Marvel Entertainment Group, Div. of Cadence Indus. Corp.*,
  854 F.2d 1452 (2d Cir. 1988).................................................................20

*Capital Bridge Co. v IVL Tech., Ltd.*,
  2007 U.S. Dist. LEXIS 79771 ................................................................21

*Colliton v. Cravath*,
  2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 23, 2008)..........................................8

*Corporate Print. Co. v. N.Y. Typographical Union No. 6*,
  886 F. Supp. 340 (S.D.N.Y. 1995) ...........................................................8

*De Ponce v. Buxbaum*,
  1992 U.S. Dist. LEXIS 15730 (S.D.N.Y. Oct. 14, 1992) ..........................................20

*Elfoulki v. Brannons Sandwich Shop, LLC*,
  2016 U.S. Dist. LEXIS 81601 (S.D.N.Y. June 22, 2016)..........................................17

*Eskofot A/S v E.I. Du Pont De Nemours & Co.*,
  872 F. Supp. 81 (S.D.N.Y. 1995) ...........................................................21

*Gold v. Fields*,
  1993 U.S. Dist. LEXIS 8094 (S.D.N.Y. June 11, 1993)..........................................16

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
  298 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................11

*In re Austl. & N.Z. Banking Group Ltd. Sec. Litig.*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010)..........................................................17

*In re Obasi*,
    2011 Bankr. LEXIS 5011 (Bankr. S.D.N.Y. Dec. 19, 2011)...................................................9

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)........................................................................................................13

*Pannonia Farms, Inc. v. USA Cable*,
    2006 U.S. Dist. LEXIS 73519 (S.D.N.Y. Oct. 5, 2006) ...........................................................9

*Perez v. Posse Comitatus*,
    373 F.3d 321 (2d Cir. 2004)........................................................................................13, 17, 18

*ResQN.com, Inc. v. Lansa, Inc.*,
    382 F. Supp. 2d 424 (S.D.N.Y. 2005)...............................................................................10, 21

*Sherman v. Reilly (In re Reilly)*,
    244 B.R. 46 (Bankr. D. Conn. 2000) ......................................................................................10

*Wine Enthusiast, Inc. v Vinotemp Intl. Corp.*,
    2019 U.S. Dist. LEXIS 55715 (S.D.N.Y. Apr. 1, 2019).........................................................21

## STATUTES

Rule 11(b)(3)...........................................................................................................................8, 10

Defendant Mihir Bhansali ("Mr. Bhansali"), by and through his undersigned counsel, White and Williams LLP, respectfully submits this Reply Memorandum of Law in in further support of his Motion (the "Motion") for Rule 11 Sanctions against the Plaintiff Chapter 11 Trustee of Firestar Diamond, Inc. Fantasy, Inc., and Old AJ, Inc., f/k/a A. Jaffe, Inc.'s (the "Trustee") or, in the alternative, to strike certain allegations made in the First Amended Adversary Complaint, dated September 20, 2019, in this proceeding (the "FAC").

## PRELIMINARY STATEMENT

In his Motion, Mr. Bhansali set forth why certain allegations in the FAC were not only unfounded, but actually refuted by substantial evidence that Mr. Bhansali's counsel had shared with the Trustee. For that reason, he argued that Rule 11 sanctions are appropriate, or, in the alternative, the offensive allegations should be stricken from the FAC. Instead of withdrawing these incendiary, but baseless, allegations in the face of Mr. Bhansali's arguments, in his Opposition, the Trustee doubles down on them. Rather than acknowledging that the claims are baseless, he instead seeks to bolster them by ignoring the contrary evidence while offering conjecture, speculation, and a series of convoluted arguments, and by citing to his own pleading in a separate litigation as somehow authoritative. And, where he does not have any of these tools at his disposal, he fails to address the challenged allegations at all. Indeed, the Opposition serves only to illustrate further why the Motion should be granted, insofar as the Trustee fails to establish that he had a proper basis for asserting any of the challenged allegations.

First, the Trustee fails to establish a proper basis for allegation that the Bhansali's family apartment was "purchased" with the "proceeds" of the "Bank Fraud." He ignores irrefutable evidence to the contrary that was provided to him, and instead relies upon *allegations he himself asserted in a separate complaint* – allegations that amount to nothing more than supposition and speculation regarding a transfer that was made to, and paid back by Mr. Bhansali. He also attempts

-1-

to sidestep the fact that the same allegations were made and later abandoned by the Indian government offering self-serving conjecture as to what the government's motive in doing so was – conjecture that flies in the face of common sense. All of this collapses under the weight of the facts that the Trustee chooses to ignore.

Second, the Trustee fails to establish that there was an objectively reasonable basis for his allegation that Diamond 'R' US," a non-debtor entity, transferred substantial sums to the M.R. Family Trust. The Trustee relies entirely on a spreadsheet indicating that such a transfer had been considered, while again sidestepping relevant account records showing that the M.R. Trust never received this transfer. The Trustee goes so far as to contend that the transfer might have been made to a different account. Of course, the Trustee has no basis for believing that such account existed, let alone that a transfer was made to it. So again, he offers nothing but rank speculation to support this claim.

Third, and most egregiously, the Trustee fails even to mention what support he purportedly had for his incendiary allegations that Mr. Bhansali participated in extortion, bribery, threats of murder and destruction of evidence. Instead, the Trustee commits several pages of his Opposition to his explanation for why other allegations that Mr. Bhansali obstructed the investigation into the alleged fraud have support. But these allegations are not the subject of the Motion, and any "support" that the Trustee contends that he has for them is irrelevant. And, indeed, the other complaint that the Trustee relies so heavily to support his allegations about the purchase of the Apartment does not allege that Mr. Bhansali was involved in this wrongdoing; evidencing the lack of any basis for this claim. There is no basis for these allegations, and the Trustee's continued assertion of them is sanctionable.

Finally, even if sanctions are not awarded, the allegations at issue should be stricken from the FAC. The Trustee challenges this contention by arguing that the allegations are germane to his breach of fiduciary duty claims, and asserting, in conclusory fashion, that they do not prejudice Mr. Bhansali in any fashion. But these baseless allegations, which the Trustee will be unable to prove, will certainly not help him to prevail on any of his claims. And, the claim that they are not prejudicial to Mr. Bhansali defies logic. The Trustee has accused Mr. Bhansali of acts of moral depravity – profiteering, extortion, destruction of evidence, and even threatening murder. He has made these allegations without even a hint of actual support. There is no question that these outrageous claims are prejudicial to Mr. Bhansali, as they would be to anyone in his position. In the absence of any actual support, these allegations – even if they do not subject the Trustee to sanctions – should be stricken.

## ARGUMENT

### A.  Sanctions are Warranted Because the Trustee Has Failed to Show that the Challenged Allegations are Objectively Reasonable

While Rule 11 sets a high burden, to avoid the imposition of sanctions, the Trustee has to respond to a Rule 11 motion with more than just his own speculation and supposition and efforts to stretch the "facts" to fit his spurious and scandalous allegations. *See Bletas v. Deluca*, 2011 U.S. Dist. LEXIS 133132, at *41 (S.D.N.Y. Nov. 14, 2011) (finding that plaintiff's allegation of bribery amounted to "gross speculation," warranting Rule 11 sanctions). Indeed, it is well established that, to avoid Rule 11 sanctions, a party must set forth a good faith basis for the belief that the allegations were "premised upon *existing facts in the record*." *Corporate Print. Co. v. N.Y. Typographical Union No. 6*, 886 F. Supp. 340, 345 (S.D.N.Y. 1995) (emphasis added) (awarding sanctions); *see Colliton v. Cravath*, 2008 U.S. Dist. LEXIS 74388, at *38 (S.D.N.Y. Sept. 23, 2008) ("Under Rule 11(b)(3), plaintiffs must have an adequate, non-frivolous basis in fact for their claims.").

Furthermore, "as the Advisory Committee Notes to [] Rule [11] makes abundantly clear, '[t]he person signing, filing, submitting, or advocating has a nondelegable responsibility to the court" to make a pre-filing inquiry into the accusations and assure there is a good faith basis in fact for the claims. *In re Obasi*, 2011 Bankr. LEXIS 5011, at *12 (Bankr. S.D.N.Y. Dec. 19, 2011) (citing the Fed. R. Civ. P. 11, Advisory Committee Notes).

Rule 11 mandates that the drafter of a pleading takes responsibility for the claims presented to ensure that the accusations are well-grounded in fact with the goal of deterring the filing of baseless accusations. Fed. R. Civ. P. 11, Advisory Committee Notes. While it is true that a litigant need not know all the facts that support a claim at the time of pleading, it is also true that a "shot in the dark" is sanctionable, and that the time to inquire into the basis of the allegation is *prior* to the filing, not after the fact or otherwise in response to a Rule 11 motion. *See Bletas v. Deluca*, 2011 U.S. Dist. 133132, at *37 (S.D.N.Y. Nov. 14, 2011) (stating that shots in the dark are sanctionable); Fed. R. Civ. P. 11, Advisory Committee Notes (noting that Rule 11 requires litigants to 'stop-and-think' before initially making [] factual contentions").

In addition, Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting ***upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention***." Fed. R. Civ. P. 11, Advisory Committee Notes (emphasis added). Courts have routinely imposed Rule 11 sanctions where a litigant – even after receiving a full explanation of the flaws of his case – continues to press untenable claims. *See e.g., Pannonia Farms, Inc. v. USA Cable*, 2006 U.S. Dist. LEXIS 73519, at *23 (S.D.N.Y. Oct. 5, 2006) (imposing sanctions against counsel for persisting in pursuing claims in a complaint even after "the factual and legal defects of the complaint and the possibility of Rule 11 sanctions had been clearly

explained to him"); *ResQN.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 453 (S.D.N.Y. 2005) ("[W]here a claim is baseless, or where a party continues to assert an unfounded position, a violation of Rule 11 may be found."). This is because "a litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *ResQN.com, Inc.*, 382 F. Supp. 2d at 453 (quoting *Gambello v. Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002)).[1]

As discussed below, the challenged allegations should subject the Trustee to sanctions.

### B. The Allegations About the Use of Funds From the Bank Fraud to Purchase the Apartment Are Not Objectively Reasonable

The Amended Complaint alleges that proceeds from the Bank Fraud were used to purchase the Bhansali Family's Manhattan residence (the "Apartment"). The Trustee's Opposition establishes that his claim is based solely on the allegation that Nirav Modi's sister, Purvi Mehta, transferred certain money to Mr. Bhansali and – because she was Modi's sister and alleged to have been involved in funneling the proceeds from the Bank Fraud – this money must have been from the Bank Fraud. Opp., p. 6.

When presented with indisputable evidence that the Indian Government had dropped its prior claim that any proceeds from the Bank Fraud were used to purchase the Apartment, and that

---

[1] The Trustee's reliance on *Sherman v. Reilly (In re Reilly)*, 244 B.R. 46, 50 (Bankr. D. Conn. 2000) for the argument that "[e]ven if further investigation yields no additional support for these allegations, Rule (b) 'does not require a formal amendment to pleadings for which evidentiary support is not obtained'" is misplaced. Opp., p. 6. In *In re Reilly*, the court found that the initial "was nonfrivolous at the time it was filed" and the litigant had "made no effort to subsequently pursue that complaint" after learning that the claims were unsupported, which satisfied the obligations under Rule 11 that requires a litigant not to advocate claims or defenses after learning they are baseless. *Id.* However, here, the Amended Complaint was frivolous at the time it was filed and, despite facts to the contrary, the Trustee has continued to advocate claims that are unsupported.

all monies transferred prior to the purchase of the Apartment from Purvi Mehta to Mr. Bhansali

had been paid back with interest – and thus, that uncontroverted evidence demonstrated that the

Apartment purchase was *not* made from proceeds of the Bank Fraud – the Trustee refused to

withdraw the allegation. Instead, the Trustee doubled down on this spurious claim.  In so doing he

relies upon (1) allegations the Trustee himself pled in a separate complaint against the Modi

family; (2) his self-serving and facially flawed contention that the Indian Government did not

concede that these allegations were baseless, but instead concluded it did not need to trace the

funds used to purchase the Apartment to the Bank Fraud; (3) his allegations that Mr. Bhansali had

a prominent role in the Bank Fraud; and (4) his claim that repayment to Mehta is irrelevant

particularly given his unsupported allegation that Mr. Bhansali's repayment was sourced from

"suspicious" funds. As discussed in detail below, none of these assertions establish an objectively

reasonable basis to make the allegation that the Family Apartment was paid for with the proceeds

of the Bank Fraud, and the Trustee's refusal to withdraw this allegation violates Rule 11.

    1.  It is Not Objectively Reasonable for the Trustee to Rely on Allegations in Another
        Pleading He Himself Drafted to Support the Challenged Allegations in the
        Amended Complaint

The Trustee relies primarily on the allegations he pled in a separate complaint, the so-called

"Modi Family Complaint," to buttress his allegations that the Apartment was purchased using

proceeds of the purported Bank Fraud. *See* Opp., pp. 3, 8-9. While there are certain circumstances

where an attorney may rely on allegations in another pleading to support his allegations[2], we have

uncovered no precedent that allows an attorney to avoid his Rule 11 obligations by relying on his

---

[2] Courts have permitted litigants to rely on allegations in another complaint only in limited circumstances, such as when a party is relying on statements of a confidential witness statement. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 125 (S.D.N.Y. 2014). (discussing whether plaintiff could rely on "confidential witnesses cited in another complaint to meet their pleading burden"). No such circumstance is present here.

own allegations in a separate pleading. Notably, the Trustee has not submitted any legal authority
for the proposition that parties can rely on mere allegations in other pleadings drafted by the signer
himself as a basis for allegations in a new pleading. Thus, the Trustee's reliance on the allegations
in the Modi Family Complaint to satisfy his Rule 11 obligations is wholly insufficient.

The Trustee also argues that his allegations are objectively reasonable because Modi's
sister, Purvi Mehta, transferred $1.5 million into Mr. Bhansali's personal account two weeks
before the purchase that was used as collateral for the HSBC mortgage and cash to purchase the
Apartment.[3] These contentions are based on nothing more than his own allegations in the Modi
Family Complaint that (1) Purvi Mehta was a "key conduit for laundering proceeds of the Bank
Fraud"; (2) Mr. Bhansali had a prominent role in the Bank Fraud; and (3) Modi purchased his own
apartment with proceeds from the Bank Fraud. Opp. pp. 8-9. In fact, a consideration of the actual
evidence around this claim – or lack thereof – reveals that there is no plausible basis for these
allegations.

First, the Trustee has failed to submit any indicia of factual evidence to demonstrate that
the funds transferred by Purvi Mehta were proceeds of the purported Bank Fraud (or, for that
matter, any fraud) or that Mr. Bhansali had any knowledge of the source of funds. Other than his
own unsubstantiated allegations in the Modi Family Complaint, the Trustee provides no support
for the claim that Purvi Mehta "acted as a key conduit for laundering proceeds of the Bank Fraud."
*See e.g.*, Opp., p. 8-9. Similarly, the Trustee provides no support for the claim that "Nirav Modi
funneled additional fraud proceeds through Purvi Mehta around the same time to purchase his own
apartment" other than his own identical allegations in the Modi Family Complaint. Opp., p. 9. The

---

[3] Even accepting the Trustee's argument, it is clear that - at most - only 20% of the funds for the Apartment came
from the alleged Bank Fraud, which still does not support the Trustee's misleading allegation that the Apartment
was purchased entirely using proceeds of the fraud.

Trustee's own uncorroborated statements in separate proceedings are not "facts" or "evidence" that can be used to support allegations in the Amended Complaint. Significantly, no support for any such allegation can be found in either the Examiner's 171-page Report or in the submissions by the Enforcement Directorate, both of which thoroughly investigated Mr. Bhansali and his alleged participation in the Bank Fraud.

The Trustee's outright dismissal of the fact that Mr. Bhansali paid back this money, simply because repayment "has nothing to do with whether the funds wired [] constituted proceeds of fraud, or whether those funds were used to purchase the Apartment" and it is likely that repayment was sourced from suspicious deposits (Opp. p. 9) only further illustrates the flaw in his position. Indeed, the circular logic he employs shows the lengths the Trustee is willing to go to stretch the facts here. Not surprisingly, the Trustee has submitted no support for his belief that the repayment was sourced from so-called "suspicious" funds that "plausibly represented fraudulent proceeds themselves" (Opp., p. 9). In fact, Mr. Bhansali's bank statements (to which the Trustee evidently has access) demonstrate that the repayment of the loan was made using legitimate funds received by Mr. Bhansali from the sale of his prior residence that was purchased in 2008, prior to the alleged Bank Fraud. Specifically, Mr. Bhansali's HSBC bank statement from September 2017 had an initial balance of only $22,853.30 and shows that Mr. Bhansali received approximately $2,132,895 in deposits from sale of his apartment. Declaration of Nicole A. Sullivan dated April 28, 2020 ("Supp. Sullivan Decl.") ¶ 2, Ex. A. These amounts are confirmed by the checks Mr. Bhansali received on closing. *Id*. Mr. Bhansali's October 2017 bank statement then shows that these funds were used to repay Purvi Mehta the loan with interest. *Id*. Without any basis other than his own rank speculation, it is clear that that the repayment was not made by any "suspicious" funds and that the omission of these additional key facts (that clearly undercut the Trustee's theory) was

intentional and done to suggest misleadingly some nefarious conduct. And, as courts have warned, "the creativity of an attorney may not transcend the facts of a given case." *Levine v. F.D.I.C.*, 2 F.3d 476, 478 (2d Cir. 1993).

Moreover, simply asserting the allegations "on information and belief" does not help the Trustee here. Rule 11 requires that each challenged claim be individually evaluated for sanctions purposes (*see Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)), and the HSBC Bank account statements submitted by the Trustee do not raise any inference, much less a plausible inference, to support this alleged statement. Even assuming that Ms. Mehta provided $50,000 in "side collateral" for the HSBC Bank loan, this alone does not support the Trustee's claim, as alleged in the Amended Complaint, that the Apartment was "***purchased***" using proceeds of the transferred funds. That is the allegation in question, and such allegation go far beyond the bounds of the existing facts.

Having failed to submit any evidence that the funds transferred were proceeds of the so-called Bank Fraud, the Trustee's refusal to withdraw these allegations in the Amended Complaint is unreasonable.

      2.   <u>The Enforcement Directorate's Abandonment of the Same Allegation Shows the Trustee's Allegation Was Objectively Unreasonable</u>

Contrary to the Trustee's claims, following the submission of detailed evidence from Mrs. Bhansali that the Apartment was purchased using her personal funds and a loan by HSBC Bank, the Enforcement Directorate certainly did – at least implicitly if not expressly – abandon its claim that the Apartment was purchased using proceedings of the purported Bank Fraud. In its original submission, the Enforcement Directorate required Mrs. Bhansali to show cause "why all or any of such property should not be declared to be the properties involved in Money – Laundering." Supp. Sullivan Decl. ¶ 3, Ex. B. In response, and contrary to the Trustee's theory, Mrs. Bhansali

submitted uncontested proof through detailed transactional summaries that showed that, of the

$7.1 million purchase price of the Apartment, $5.27 million was funded by her through personal

funds from her family and the balance was paid by a loan from HSBC Bank; and no funds were

advanced by Mr. Bhansali. Supp. Sullivan Decl. ¶ 4, Ex. C.

    This information was made available to the Trustee and incontrovertibly refute any

allegations that funds transferred by Ms. Mehta were used to purchase the Apartment. Indeed, it

was only following Ms. Bhansali's submission that the Enforcement Directorate then tacitly

amended its theory to instead seize the Apartment as some form of substitute proceeds which did

not require that the funds be traced to the fraud. Declaration of Nicole A. Sullivan dated March

31, 2020 ("Sullivan Decl.") ¶ 9, Ex. H. In response, the Trustee asserts that the Indian Government

"never attempted to trace the funds used to purchase the Apartment to the Bank Fraud" but instead

was always "pursuing the Apartment under the 'or the value of'" the proceeds of a crime, and thus,

never abandoned or altered any argument about the source of funds. Opp. p. 7. What the Trustee

wholly ignores and is of the utmost importance, the ED admitted in its opposition to Rakhi's appeal

that the Apartment cannot be sourced back to the Bank Fraud:

> In this case, as the proceeds of crime or the properties derived/obtained from such proceeds, more specifically by Sh. Mihir Bhansali, were <u>not available</u> for attachment, the property in PAO no. 17/2018 has been attached representing the value of such proceeds siphoned abroad.

Sullivan Decl. ¶ 9 Exhibit H, p. 8, ¶ 3 (emphasis added). The Indian government thus abandoned

its prior theory that the apartment was purchased with fraudulent proceeds, and adopted a new

theory: that because the apartment cannot be attached as actual proceeds, it should be attached

instead as a substitute for unavailable proceeds.

    Instead of acknowledging this incontrovertible evidence, the Trustee instead doubles down

on the allegation and concocts a new "theory" based the maze of events referenced above. But that

theory ultimately is based solely on the Trustee's own supposition, which he contends make his allegations objectively reasonable. This simply does not meet the Rule 11.

### C. Allegations Regarding M.R. Family Trust are Objectively Unreasonable Because the Bank Records Wholly Contradict the Trustee's Rank Speculation

The sole basis for the Trustee's allegations surrounding the M.R. Family Trust is an un-authored excel spreadsheet purportedly showing "cash flows from Diamond 'R' US," a non-debtor entity, "to the M.R. Family Trust in the amount of 32.83 crore INR (~$4.5 million)." Opp., p. 10. However, the Trustee's clear misreading of the spreadsheet – and subsequent lack of due diligence after receiving information from Mr. Bhansali refuting the claims – warrants sanctions because Rule 11 does not "give parties free reign to fire shots into the proverbial dark." *Bletas v. Deluca*, 2011 U.S. Dist. 133132, at *37 (S.D.N.Y. Nov. 14, 2011).

The Trustee merely presumed without ever corroborating that the spreadsheet noting information of Diamond 'R' US reflects amounts paid to the M.R. Family Trust as opposed to amounts apportioned, but never transferred. In the face of bank statements showing that no such payment was ever transferred into the M.R. Family Trust account, the Trustee stands by the allegation arguing he had a "reasonable basis for making" the claim because the use of the words "cash flow" and "withdrawals" in the spreadsheet "more plausibly denote actual transfers." *Id.*, p. 11. While this may have been an acceptable conclusion at the time of filing, the Trustee's refusal to withdraw the allegation, despite documentary evidence contradicting it based on nothing more than his rank speculation about the meaning of words in a spreadsheet should subject him to sanctions.

The Trustee's sole argument in defense of his continued support of this false allegation is solely that the bank statement "does not prove that the M.R. Family Trust does not have other bank accounts" or that the monies were not transferred elsewhere. This argument fails because it is not

only based on pure conjecture but also improperly seeks to shift the burden to Mr. Bhansali to disprove the posited allegations, which is not the standard. It is the *pleader* that bears the "affirmative duty" to assure that the pleading has factual validity. *Gold v. Fields,* 1993 U.S. Dist. LEXIS 8094, at *6 (S.D.N.Y. June 11, 1993). This is particularly important as the Trustee is essentially arguing that he was objectively reasonable in continuing to make this allegation unless Mr. Bhansali can prove a negative, *i.e.* that no other bank accounts exists. It is the Trustee's burden to set forth a reasonable evidentiary basis in support of the allegation other than his own conjecture, which he has failed to do. *See In re Austl. & N.Z. Banking Group Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) (finding that, where the plaintiff could not identify any evidence for the allegations, the inclusion of certain paragraphs was sanctionable); *Elfoulki v. Brannons Sandwich Shop, LLC*, 2016 U.S. Dist. LEXIS 81601, at *10-11 (S.D.N.Y. June 22, 2016) ("[A] party is not entitled to wait and see whether he or she might get lucky at a deposition and find some support to retroactively bless the pre-complaint inquiry."). Thus, these claims are objectively unreasonable and warrant sanctions.

### D.  Allegations Surrounding Extortion, Bribery, Threats to Kill and Destruction of Evidence are Unsupported

For purposes of Rule 11, "a complaint is not reviewed as an 'indivisible unit'; [i]nstead, 'claims are analyzed individually'" to determine if there is sufficient factual support for the specific challenged claim. *Bletas v. Deluca*, 2011 U.S. Dist. LEXIS 133132, at *36 (S.D.N.Y. Nov. 14, 2011); *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

Here, the Motion does not challenge as violative of Rule 11 each and every allegation in the Amended Complaint surrounding Mr. Bhansali's purported attempt to "thwart the investigation of the fraud" (Opp., p. 12), but rather focuses on four specific statements. The specific challenged allegations are that Nehal Modi and others at Mr. Bhansali's direction: (1) "threatened to kill or

falsely implicate Ashish Lad, a director of Unity, if he revealed anything to the investigative authorities" (FAC ¶ 151(ii)); (2) "destroyed cell phones of Shadow Entity Directors" (FAC ¶ 151(iii)); (3) "removed 150 boxes of pearls" (FAC ¶ 151(iv)); and (4) "bribed Anish Lad INR 2,000,000 (approximately $28,000) to give false testimony to judicial authorities in Europe" (FAC ¶ 151(v)). Despite the fact that these are the allegations being challenged, ***none of these four individual allegations is even addressed by the Trustee in Opposition***. Instead, the Trustee simply asserts that "[t]he Trustee is entitled to rely on the Enforcement Directorate's investigative findings." Opp., p. 14. The Trustee then spends the next four pages discussing in detail the objectively reasonable basis for his related allegations of threats, bribery and destruction of evidence, that were not challenged in the Motion. While the Trustee arguably could rely on allegations in another pleading such as those by the Enforcement Directorate, the analysis is not nearly as simple as the Trustee makes it seem.

First and foremost, the Enforcement Directive's investigative findings do not support the four challenged allegations. Specifically, none of the witness statements aver that Mr. Bhansali committed any of the purported wrongdoings, including any threats to Mr. Lad. The statements aver other wrongful acts committed by Mr. Bhansali that were also alleged by the Trustee in the Amended Complaint, and again, were not challenged as sanctionable on this Motion. The Trustee cannot do an end run around his Rule 11 obligations by asserting that there was an objectively reasonable basis for some of the allegations in paragraph 151 while ignoring that the four challenged allegations have no basis in fact and no evidentiary support. Once again, for the purposes of Rule 11, a complaint is not reviewed as an 'indivisible unit' but instead "claims are analyzed individually" to determine if there is sufficient factual support for the allegation claimed. *Bletas v. Deluca*, 2011 U.S. Dist. LEXIS 133132, at *36 (S.D.N.Y. Nov. 14, 2011); *Perez v. Posse*

*Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) (stating that Rule 11 requires that each challenged claim be individually evaluated for purposes of sanctions).

Notably, while the Trustee asserts substantially similar allegations in the Modi Family Complaint, none of these same allegations even mention Mr. Bhansali, despite his inclusion in over 70 paragraphs in the Modi Family Complaint. The fact that these very same allegations have been abandoned in the Trustee's Modi Family Complaint serves only to further underscore the Trustee's lack of a good faith basis in seeking to maintain them here. For instance, while the Amended Complaint alleges that Mr. Bhansali was involved in threats to kill or falsely implicate individuals, the Modi Complaint clarifies that "Ashish Lad, a director of Shadow Entity Unity, told Indian authorities *that Nirav Modi threatened to kill or falsely implicate* Lad if he revealed anything to the investigative authorities." Supp. Sullivan Decl. ¶ 5, Ex. D ("Modi Family Compl.") ¶ 275 (iv) (emphasis added). Similarly, while in the Amended Complaint, the Trustee claims that "Nehal Modi, *upon information and belief acting at the direction of or in the coordination with Nirav Modi and Mihir Bhansali*" both "removed 150 boxes of pearls," "bribed Ashish Lad with INR 2,000,000" and "destroyed cell phones" (FAC ¶ 151(iv)-(v) (emphasis added)), the Modi Family Complaint abandons this claims and alleges only that "Nehal Modi removed over $6 million in diamonds and 150 boxes of pearls from one of the Hong Kong-based Modi-Controlled Entities"; "Nehal Modi destroyed cell phones of Shadow Entity directors"; and "Nehal Modi bribed Ashish Lad with INR 2,000,000" (Modi Family Compl. 275 ¶¶ (iii), (vi), (vi)).

Given the incendiary nature of the allegations, including that Mr. Bhansali threatened to **murder** someone and the absence of any evidentiary basis offered by the Trustee, the allegations are objectively unreasonable. The Trustee's assertion that a "wet umbrella is enough to allege rain" only serves to further illustrate this. While a wet umbrella might be a sufficient basis to allege that

-14-

it is raining, a trip to Dubai does not support a claim that Mr. Bhansali was involved in threats of

murder. It would appear that these scandalous allegations are only intended to defame and bring

pressure to bear on Mr. Bhansali. The Court should impose sanctions.[4]

### E.  Sanctions are Appropriate Because the Trustee Failed to Demonstrate that Any Adequate Pre-Filing Investigation Was Conducted

"The obligation imposed by Rule 11 is to make a reasonable pre-filing investigation" and,

where, as here, the allegations are objectively unreasonable, courts next examine "[i]f the attorney

[] failed to make an objectively reasonable inquiry" for purposes of sanctions. *De Ponce v.*

*Buxbaum*, 1992 U.S. Dist. LEXIS 15730, at \*62-63 (S.D.N.Y. Oct. 14, 1992). "[W]hat constitutes

a reasonable inquiry may depend on such factors as how much time for investigation was available

to the signer; whether he had to rely on a client for information as to the facts underlying the

pleading . . . ; or whether he depended on forwarding counsel or another member of the bar."

*Calloway v. Marvel Entertainment Group, Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1470 (2d

Cir. 1988) (citing the Fed. R. Civ. P. Rule 11 advisory committee's note to 1983 amendment).

Moreover, the failure to submit "an affidavit to the district court describing a pre-filing inquiry . .

. alone strongly suggests that no inquiry was made." *Id*.

Critically important here is that the Trustee has not submitted ***any*** evidence to show that

any pre-filing investigation was conducted, never mind a reasonable pre-filing investigation. The

Trustee acknowledges that, at the time the Amended Complaint was drafted, he had adequate

information and time for investigation, including access to "five million documents obtained from

---

[4] The Trustee's claim that the Motion was served "notwithstanding the explanations in the Trustee's Responsive Letter and without otherwise responding to that letter" is false, and misleadingly suggests that sufficient opportunity was not afforded to address the challenges. Counsel for Mr. Bhansali made every effort to resolve this matter without motion practice. In fact, Mr. Bhansali's counsel contacted counsel for the Trustee to further discuss the deficiencies, but counsel for the Trustee advised that a further conversation would not be helpful in resolving the issues. Supp. Sullivan Decl. ¶ 7.

the debtors and third parties," witnesses and a "myriad" of relevant foreign proceedings. Sullivan Decl. ¶ 6, Ex. E. The Trustee also had the massive report that had been prepared by the Examiner, which did not address any of the challenged allegations despite the Examiner's 120-day investigation. Supp. Sullivan Decl. ¶ 6, Ex. E. Nevertheless, despite having previously claimed in response to the Rule 11 Letter that "Jenner & Block, with the assistance of the Trustee's financial advisors at Alvarez & Marsal Disputes & Investigations LLC ("A&M")" performed a "thorough investigation" into the challenged allegations, the Trustee has tellingly failed to put forth any evidence of that "thorough investigation" in opposition to the Motion. Sullivan Decl. ¶ 6, Ex. E.

Moreover, the Trustee failed to submit a single supporting declaration from any individual, including the independent accountant, or even a time record to buttress any of his claims. *See ResQNet.com, Inc. v Lansa, Inc.*, 382 F. Supp. 2d 424, 454 (S.D.N.Y. 2005) (finding that a declaration by counsel and supporting time records were sufficient to show that a reasonable pre-filing inquiry was conducted); *Capital Bridge Co. v IVL Tech., Ltd*., 2007 U.S. Dist. LEXIS 79771, at *31 (S.D.N.Y. Oct. 26, 2007 (finding that counsel "appears to have undertaken a minimally reasonable pre-filing infringement inquiry in light of the [] Declaration"); *Wine Enthusiast, Inc. v Vinotemp Intl. Corp.*, 2019 U.S. Dist. LEXIS 55715, at *2 (S.D.N.Y. Apr. 1, 2019) (noting that sanctions were not warranted and counsel "submitted a declaration outlining the inquiry that he undertook"). This begs the question whether these omissions were deliberate because the Trustee knows there is no good faith basis to allege the challenged allegations.

By not submitting any such support, the Trustee has not shown that he conducted any, much less a reasonable, investigation into the allegations prior to initiating the Amended Complaint, which further supports an award of sanctions.

-16-

### F. *Regardless of Whether the Court Awards Sanctions, the Challenged Allegations Should be Stricken*

In the Opposition, the Trustee argues that the challenged allegations should not be stricken claiming that they are relevant to his claims against Mr. Bhansali for breach of fiduciary duty or under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and also that they are not unduly prejudicial.

"A motion to strike allegations from a pleading should be granted where 'no evidence in support of the allegation would be admissible.'" *Eskofot A/S v E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 93 (S.D.N.Y. 1995). As detailed above, each of the challenged allegations in the Amended Complaint either has no factual basis or is otherwise contradicted by the existing record, which the Trustee chooses to ignore. Indeed, the Trustee offers no current information that supports these claims, and the Trustee notably fails to identify any possible discovery in his Opposition that would shed a different light on the plausibility of these allegations.

Furthermore, given their lack of support, these allegations can be of limited relevance to the Trustee's claims for breach of fiduciary duty or RICO. Having failed to cite any evidentiary basis for the allegation that the funds transferred by Ms. Mehta were proceeds of the Bank Fraud or that the M.R. Family Trust received funds from Diamond 'R' US, the Trustee's statements surrounding the transfer, the purchase of the Apartment or the M.R. Family Trust cannot support a claim for breach of fiduciary duty. Similarly, the Trustee has failed to cite to any evidence supporting Mr. Bhansali's involvement in the alleged threats to kill Mr. Lad, bribery of Mr. Lad, theft of certain pearls or destruction of any cell phones that could reasonably support a claim under RICO.

Finally, the Trustee's cursory conclusion that "none of the Trustee's allegations unduly prejudice Bhansali" does not withstand scrutiny. It has been held that "[a] scandalous allegation is

one that reflects unnecessarily on the defendant's moral character" and "[e]ven where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" *Cabble v. Rolleison*, 2006 U.S. Dist. LEXIS 7385, at *32 (S.D.N.Y. Feb. 24, 2006). Allegations have been found to be scandalous and prejudicial where they "reflect[] cruelly on the defendants' moral characters" and "[i]f presented to the jury, [] would evoke sympathy towards the plaintiff for reasons having no connection with the alleged" claims. *Burger v. Health Ins. Plan*, 684 F. Supp. 46, 52-53 (S.D.N.Y. 1988) (striking certain allegations relating to "criminal activity in billing for services").

As set forth in the Motion, the challenged allegations – of realizing substantial personal benefits from a massive fraud and participation in plots to murder, bribe, extort, or destroy evidence relating to other parties – are among the most heinous imaginable, and are inherently scandalous and prejudicial. Without question, these allegations reflect negatively on Mr. Bhansali's moral character, unfairly portraying him to be a nefarious and wicked person who engaged in conduct far more reprehensible than that which is at the core of the Amended Complaint's allegations. And, at the same time, the draw sympathy for the Trustee for reasons unrelated to these underlying claims. These allegations are even more scandalous given the Trustee's utter lack of factual support. *See e.g., Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 2007 U.S. Dist. LEXIS 42639, at *8 (S.D.N.Y. June 7, 2007) (finding that the word "improper" in a pleading was "without factual support" and legal support and, thus, "could be considered scandalous"). The prejudicial nature of the accusations combined with their lack of support warrants that, even in the absence of an award of sanctions, the claims be stricken.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that the Court should grant Rule 11 sanctions as a result of the frivolous allegations or, in the alternative, should issue an Order

directing that the allegations be stricken from the Amended Complaint and such further relief as

is just under the circumstances.

Dated:  New York, New York
        April 28, 2020

**WHITE AND WILLIAMS LLP**

_/s/ Nicole A. Sullivan_
Nicole A. Sullivan, Esq.
Thomas E. Butler, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Tel: 212-631-4420
Fax: 212-631-4
butlert@whiteandwilliams.com
_Attorneys for Mihir Bhansali_